**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| **Kelly Dawsey,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **COMPLAINT** |
| ) | |
| **Bayerische Motoren Werke** ) | **(Jury Trial Demanded)** |
| **Aktiengesellschaft and BMW** ) | |
| **Manufacturing Co., LLC collectively** ) | |
| **d/b/a "BMW Group",** ) | |
| ) | |
| **Defendants.** ) | |

Plaintiff, through her attorney, would respectfully show as follows:

**Parties**

1.      Plaintiff is a resident of Greenville County, South Carolina and, at all relevant times, was employed by Defendants in Spartanburg County, South Carolina.

2.      Plaintiff is a white, English speaking United States citizen, was born in and has been a lifelong resident of the United States.

3.      Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") is a foreign corporation with a principal place of business in Munich, Bavaria, Germany.

4.      Defendant BMW Manufacturing Co., LLC ("BMW Manufacturing") is a Delaware limited liability company with a principal place of business in Spartanburg County, South Carolina.

**Integrated Nature of BMW Group**

5.      Defendants represent themselves as "BMW Group" -- an integrated enterprise for human resource ("HR") and marketing purposes, and they maintain a common web site: https://www.bmwgroup.com

6.      BMW AG wholly owns and operates BMW Manufacturing and operates it, along with other affiliates, through a common "Board of Management" and "Supervisory Board," both of which are in Germany.

7.      The German Board of Management is comprised of executives from various disciplines (HR, production, customer/brands/sales, finance, purchasing, and development), who exercise common control over the various affiliates.

8.      BMW Group touts its integrated nature on its web site, which refers collectively to Defendants as a single enterprise.   For example:

> As a global company, the BMW Group operates 31 production and assembly facilities in 15 countries and has a global sales network in more than 140 countries. As of December 2019, the BMW Group had a workforce of 126[,]016 employees[1]

9.      BMW advertises for career ladders ("Careers Worldwide") under which applicants are told that they can transfer to sites such as the one in Spartanburg.[2]

10.      Since the opening of the Spartanburg Plant, BMW Manufacturing management has included German nationals from BMW AG and other affiliates, who are transferred to the Spartanburg Plant.   At the Spartanburg plant, these individuals are

---

[1]      https://www.bmwgroup.com/en/company/locations.html.

[2]      https://www.bmwgroup.com/en/careers.html

–2–

referred to as "Internationals" or "ex-pats," while United States citizens are referred to commonly in Spartanburg as "domestic."

11.    BMW Group maintains a centralized function for human resource and labor relations functions at the corporate headquarters in Munich.

12.    Various managers at the Spartanburg Plant report directly to managers at BMW AG and other BMW Group affiliates.

13.    BMW Group institutes common manufacturing, analytics, logistics, automation, and engineering methods throughout its affiliates.[3]

14.    BMW Group issues "integrated reports" on such issues as environmental compliance based on the common board of management policies, which it attributes to "integrated management of the company."[4]

**Structure of management and job levels in human resources**

15.    BMW Group maintains a level system of classifying jobs based primarily on points or scores derived from the Mercer system.

16.    At BMW Manufacturing, there is one Level I position, which is occupied by the president of BMW Manufacturing. That position is currently held by Robert Englehorn (German).    BMW Group's common board of management announced Englehorn's transfer from the Munich plant in 2021.

17.    Level II is a vice president level.    The vice president ("VP") of HR at BMW Manufacturing is the only Level II executive in HR.

---

3        https://www.bmwgroup.com/en/innovation/company/industry-4-0.html#Smart_Logistics

4        https://www.press.bmwgroup.com/global/article/detail/T0327384EN/bmw-group-becomes-first-premium-manufacturer-to-publish-integrated-group-report?language=en

18.    Individuals in Level I and Level II positions with personal grades of 13 or above are known at BMW as holding "OFK" positions, an acronym for obere Führungskräfte, which means senior executive.    At BMW Group, OFK employees are moved around to various affiliates and plants within the BMW Group at the direction of the common board of management.

19.    Level III is the next highest position.    In Spartanburg in 2021 there were two level III designated managers in human resources: (1) Plaintiff; and (2) a male.    The male actually occupied a Level IV position, but BMW designated his position "Level III" during the time he occupied it only because he had previously occupied another position that was designated Level III.

20.    At all times relevant to the claims raised herein, Plaintiff's position was TX-60, which was responsible for strategic matters such as planning. Plaintiff also was responsible for benefits and employee compensation, and she handled significant projects, such as policies and practices regarding COVID testing and vaccination and the scheduled ramp down and ramp up of personnel during the pandemic related shutdown, which required significant understanding of various U.S. laws and practices.

**Plaintiff's job history and duties**

21.    Plaintiff joined BMW in June 1995 as a staff recruiter.    Plaintiff moved into associate relations.    BMW then promoted her to coordinator in associate relations. She then gained additional human resource experience in compensation.    BMW then promoted Plaintiff to manager in compensation and organization.    To broaden Plaintiff's experience further, she was moved to HR services in a section manager role.    In or around 2014, BMW again promoted Plaintiff to department manager for HR planning,

which included compensation, benefits, HR planning, organization, and the family medical center.

22.    Plaintiff performed her duties and was employed solely within the United States.

**Defendants' Use of Nationality in Filling Positions**

23.    Defendants have maintained a practice in human resources of ensuring that a German national is either the head (Level II) or in a secondary role (Level III) at the Spartanburg Plant.   There have been, for example, six vice presidents of human resources at the Spartanburg Plant.   With the exception of the tenure of the first two VPs, Defendants have maintained the practice of having a German national in one of the two positions.

24.    Plaintiff first learned of this initiative during the tenure of the fourth vice president at the plant, a German national named Johannes Trauth.   The practice was documented at that time.

25.    Trauth's successor was another German National, Christine Petrasch.   As an example of both the integrated nature of Defendants and the centralized HR function, Defendants announced: "BMW Manufacturing announced today that Christine Petrasch has been named the new Vice President of Human Resources.   Petrasch succeeds Johannes Trauth, who has returned to Germany as the Head of HR Services."[5]

---

5    https://www.bmwgroup-werke.com/spartanburg/en/news/2018/bmw-manufacturing-announces-management-change-petrasch.html

**Plaintiff removed from her job based on nationality**

26.    On or about September 15, 2021, Petrasch told Plaintiff that she had met with Englehorn.  Petrasch told Plaintiff that BMW Group had determined that Sherry McCraw, who is a White American, would be the next VP of HR in Spartanburg. Petrasch reiterated that BMW Group has a rule that if there is a domestic VP, then there must be one German national next in line, which would be a Level III position.   Petrasch further explained that it would not make sense to bring a German in to a Level IV position. Plaintiff immediately explained that it is obvious that she is the person who will be displaced based on the position she held, and Petrasch did not argue the point.

27.    In a subsequent meeting on or about September 29, Petrasch again told Plaintiff that the only way BMW Group could get a local into the VP of HR position was to have a German in Plaintiff's position (TX-60) to serve as a "bridge to Germany."

28.    Petrasch reiterated that the decision was made by the manufacturing board member (Germany), a board member for human resources (Germany), and Englehorn (from Germany, currently assigned to Spartanburg).  Petrasch explained that the decision to move McCraw to human resources was part of an agreement to have a German national fill Spartanburg's assembly manufacturing vice president position (TX-4) that had been occupied by McCraw.

29.    Plaintiff asked Petrasch if BMW Group gave any consideration to the content of the job in deciding to move a German national into her position.   Petrasch confirmed that job duties were not a factor.

30.    Petrasch told Plaintiff that Petrasch had been given two tasks: (1) to implement the decision to bring in the German national; and (2) to communicate with McCraw.

31.    On November 11 2021, Englehorn, Petrasch, and McCraw met with the HR management in Spartanburg to announce the changes.    During the meeting, Petrasch again reiterated that Plaintiff was being removed from TX-60 because a German national needed to be put in that position since the VP of HR was now a domestic and the position considered the next in line is the planning function of the department.    Englehorn also told the HR management group during the meeting that they need an ex-pat on the team to have a connection with Munich (BMW AG) since BMW AG controls the finances.

32.    The German national chosen by BMW Group to replace Plaintiff is Eva Burgmeier.    Burgmeier has apparently spent her entire career in Germany and has no apparent experience in ERISA, with American laws, or with U.S. compensation practices and systems.    Burgmeier's inexperience is demonstrated by the fact that, after Plaintiff left the company, Defendants transferred another HR manager back to compensation and benefits to compensate for Burgmeier's unfamiliarity with the areas of responsibility into which she has been placed.

**Plaintiff told that, if she was offered a position, it would have been a demotion to Level IV**

33.    In late 2021, Petrasch began to encourage Plaintiff to look for jobs outside of HR.    When Plaintiff inquired as to why, Petrasch repeatedly told Plaintiff that they were considering moving her to different positions, but that the positions would be designated as Level IV.    Petrasch also announced that the other Level III in the department (who was in a Level IV position) would be moved out to a project.

34.    Petrasch arranged for Plaintiff to interview for other positions in other departments, none of which involved HR or for which Plaintiff was likely the best candidate.

35.    Defendants never offered Plaintiff a position and never promised her one.

**Plaintiff told that a nonwhite employee would be receiving preferential treatment**

36.     Defendants also employed a black male, Corey Epps, a Level IV employee.   Defendants told Plaintiff that, while they might move Plaintiff to a level IV position (which they never did), they were going to promote Epps from level IV position to level III.

**Plaintiff resigns to accept best available employment opportunity**

37.    Plaintiff began looking for positions outside of BMW as she had no offers at BMW and she wished to continue her career in human resources.   Plaintiff accepted an HR position at another company and resigned from BMW.   Petrasch told her that she could "100,000% understand" Plaintiff's decision under the circumstances.

38.    Defendants' actions were intentional, willful, and in reckless disregard for the rights of Plaintiff.

39.    Prior to commencing this action, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which issued a Notice of Right to Sue.   Plaintiff commences this action within ninety days of her receipt thereof.

**Count I**
**For a First Cause of Action**
**National Origin Discrimination**
**Title VII**

40.     Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

41.     Defendants maintain one or more policies and or practices that "discriminate against . . . individual[s] with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin" in violation of Section 703(a)(1) of Title VII.   42 U.S.C. § 2000e-2(a)(1).

42.     Defendants maintain one or more policies and or practices that "limit, segregate, or classify" employees "with respect to . . . compensation, terms, conditions, or privileges of employment, because of . . . national origin" in violation of Section 703(a)(2) of Title VII.   *Id.* § 2000e-2(a)(2).

43.     Defendants removed Plaintiff from her job and informed her of a forthcoming demotion based on her national origin.

**Count II**
**For a Second Cause of Action**
**Race Discrimination**
**Title VII**

44.     Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

45.     Defendants maintain one or more policies and or practices that "discriminate against . . . individual[s] with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . race" in violation of Section 703(a)(1) of Title VII.   42 U.S.C. § 2000e-2(a)(1).

46.    Defendants discriminated against Plaintiff regarding compensation and classification on the basis of her race.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claims of sex discrimination in violation of Title VII and that she be granted all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive and other relief, including but not limited to actual/make whole relief such as reinstatement to her former position and level, compensatory and punitive damages, attorney fees, expenses, costs, and pre- and post-judgment interest, and all other and further relief as to this Court appears necessary and proper.

**Count III**
**For a Third Cause of Action**
**Race Discrimination**
**Section 1981**

47.    Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

48.    Defendants discriminated against Plaintiff regarding compensation and classification on the basis of her race.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claims of race discrimination in violation of Section 1981 and that she be granted all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive and other relief, including but not limited to actual/make whole relief such as reinstatement to her former position and level, compensatory and punitive damages, attorney fees,

expenses, costs, and pre- and post-judgment interest, and all other and further relief as to this Court appears necessary and proper.

**Count IV**
**For a Fourth Cause of Action**
**Sex Discrimination**
**Title VII**

49.     Plaintiff incorporates by reference the foregoing allegations as if set forth here in full.

50.     Petrasch told Plaintiff that human resources could have only two level III managers.

51.     Petrasch discussed the possibility of moving Plaintiff to TX-64, which had been occupied by a male.   Petrasch told Plaintiff that, if Plaintiff was put in that position, she would be downgraded to a Level IV because that was the level for the position. When Defendants filled that position with a male, however, they kept him at a level III because he had previously filled a Level III position.     In short, while Defendants "red circled" a male to keep him at Level III, they told Plaintiff that they would not retain her at a level III if she was put in the very same position.

52.     Keeping Plaintiff in TX-64 at a level III would have left BMW with two level III managers.   Defendants, however, told Plaintiff that they were going to promote Epps (male) to level III at the same time they told Plaintiff that she would be demoted if retained.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claims of race discrimination in violation of Title VII and that she be granted all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive and other relief, including but not limited to actual/make whole relief such as reinstatement to her

former position and level, compensatory and punitive damages, attorney fees, expenses, costs, and pre- and post-judgment interest, and all other and further relief as to this Court appears necessary and proper.

Respectfully submitted this 27th day of October, 2022

s/ Brian P. Murphy
Brian P. Murphy, Fed. I.D. No. 6405
Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400