IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Kelly Dawsey, ) | Civil Action No. 7:22-cv-3738-TMC |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| Bayerische Motoren Werke and ) | |
| BMW Manufacturing Co., LLC, ) | |
| ) | |
| Defendants. ) | |

Plaintiff brought this action against Defendants Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), a German corporation headquartered in Munich, and BMW Manufacturing Co. LLC ("BMW MC"), a Delaware limited liability company which has a principal place of business in Greer, South Carolina. Plaintiff alleges Defendants unlawfully discriminated against her on the basis of national origin, race and sex in violation of Title VII, and race discrimination in violation of 42 U.S.C. § 1981. (ECF No. 20). In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a Magistrate Judge for all pretrial proceedings. Subsequently, BMW AG filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (FRCP). (ECF No. 42). Plaintiff submitted a response in opposition (ECF Nos. 45, 59) to which BMW AG filed a reply (ECF No. 52).

Now before the Court is the Magistrate Judge's Report and Recommendation ("Report"), recommending that the Court deny the Motion to Dismiss (ECF No. 65 at 18). BMW AG timely

submitted objections to the Report (ECF No. 68), and Plaintiff has replied to those objections (ECF No. 69). This matter is ripe for review.

**I. Facts**

Viewing the allegations of the amended complaint, the affidavits and other supporting documents in a light most favorable to Plaintiff, *see Mylan Labs., Inc., v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993), the relevant facts are these. BMW MC is an indirect subsidiary of BMW AG; BMW AG "does not directly own or hold any interest in [BMW MC]." (ECF No. 42-3 at 2–3). Rather, the two are separate legal entities that observe separate corporate formalities. *Id*. No member of BMW AG's Board of Management serves as a director or officer for BMW MC. *Id*. BMW MC operates a vehicle assembly plant in Greer, South Carolina, where it produces a number of different BMW brand models. (ECF No. 42-2 at 2). BMW AG, however, is not registered to conduct business in South Carolina, does not own real property in South Carolina, and does not maintain an office or other facility in South Carolina. (ECF No. 42-3 at 2).

Plaintiff, an American citizen, was employed by BMW MC as a department manager in HR planning. (ECF No. 20 at 8). Plaintiff's position was designated as "TX-60"—a Level III job. *Id*. Plaintiff reported directly to Christina Petrasch, VP of HR for BMW MC, a Level II position. *Id*. at 7. Robert Englehorn is the president of BMW MC, the only Level I position. *Id*. Petrasch and Englehorn are both German citizens. According to Plaintiff, BMW AG was directly involved in BMW MC HR operations on a regular basis, and BMW AG had to approve changes in benefits, salary and management structure. (ECF No. 45-1 at 5). Thus, Plaintiff alleges, a promotion to Level IV, II or II at the BMW plant in Greer requires approval of BMW AG in Germany. *Id*. at 2. Furthermore, Plaintiff claims BMW AG "directed a headcount reduction in human resources in Greer." *Id*. at 5.

Plaintiff claims that in September 2021, Petrasch told her that BMW AG had decided to replace her (Petrasch) as the VP of HR at BMW MC with Sherry McCraw, an American.  (ECF No. 20 at 9).  Plaintiff also asserts that Petrasch indicated that the BMW Group follows a rule "that if there is a domestic VP, there must be one German national next in line" to "serve as a bridge to Germany."  *Id*.  Plaintiff further alleges that Petrasch elaborated that the only way to get a "local" like McCraw "into the VP of HR position was to have a German in Plaintiff's position (TX-60)."  *Id*.  Although Englehorn indicated in his affidavit that he alone enjoys authority over personnel decisions at BMW MC, (ECF No. 52-1), Plaintiff presented evidence that Petrasch "repeatedly told [her] what the moves would be in human resources in Greer."  (ECF No. 45-1 at 1).  Finally, in November 2021, Plaintiff was removed from the TX-60 position and told a German national, Eva Burgmeier, "needed to be put in that position since the VP of HR was now a domestic and the position considered the next in line is the planning function of the department" that had been occupied by Plaintiff.  (ECF No. 20 at 10).  Petrasch subsequently told Plaintiff she was be moved to a Level IV position outside of the HR department.  Plaintiff ultimately resigned in order to continue her HR career at another company.  (ECF No. 20 at 12).

## II. Legal Standards

### A. Rule 12(b)(2)

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge."  *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).  Upon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing jurisdiction exists. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Generally speaking, when a district court decides a pre-trial motion to dismiss for lack of personal jurisdiction

3

without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction and the Court is to construe the pleadings, affidavits and other supporting documents presented to the court in the light most favorable to plaintiff. *Mylan Labs*., 2 F.3d at 60.

"In a personal jurisdiction analysis, (1) a state's long-arm statute must authorize the exercise of jurisdiction under the facts presented, and (2) the statutory assertion of personal jurisdiction must comply with due process." *Wallace v. Yamaha Motors Corp, U.S.A*., No. 19-2459, 2022 WL 61430, at *2 (4th Cir. Jan. 6, 2022). "Because South Carolina has interpreted its long-arm statute to extend personal jurisdiction to the constitutional limits imposed by federal due process, our inquiry must focus on due process." *Id*. (citing *Sonoco Prods. Co. v. Inteplast Corp*., 867 F. Supp. 352, 354 (D.S.C. 1994) ("Under South Carolina law, the first requirement [of personal jurisdiction] collapses into the second.")). In order for a court's "exercise of jurisdiction over a nonresident defendant [to] comport[] with due process," the defendant must have "'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state" would not "'offend traditional notions of fair play and substantial justice.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

There are two categories into which personal jurisdiction falls: "general" or "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984).  Plaintiff does not suggest general jurisdiction is available in this case. Accordingly, the question is whether specific jurisdiction can be exercised over BMW AG.  Specific jurisdiction obtains when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros*,  466 U.S. at 414 n.8. To determine whether specific jurisdiction exists, the court must consider "(1) the extent to which [Defendants have] purposefully availed [themselves] of the privilege of conducting activities in

4

the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable." *Carefirst of Md.*, 334 F.3d at 397 (internal quotation marks omitted).

### B. Magistrate Judge Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017));

5

*see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

### III. Discussion

#### A. Magistrate Judge's Report

In applying the purposeful availment prong of the specific jurisdiction analysis, the Magistrate Judge correctly noted that the key question is "whether the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there,'" (ECF No. 65 at 14 (quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559–60 (4th Cir. 2014)), and considered the nonexclusive list of factors identified by the Fourth Circuit as relevant to the purposeful availment analysis, *see id*. (citing *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 133 (4th Cir. 2023)). The Magistrate Judge concluded, "construing all relevant pleading allegations in the light most favorable to the plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, . . . that the nature and level of BMW AG's contacts with South Carolina are sufficient to establish purposeful availment at this stage." *Id*. at 15. The Magistrate Judge reasoned as follows:

> While BMW AG does not have offices or agents, own property, or have a license or registration to conduct business in South Carolina, there is evidence of BMW AG purposefully availing itself of the privilege of conducting business in the state through its substantial collaboration with BMW MC. As set out above, the plaintiff conversed with employees at BMW AG on a weekly basis, and she had to obtain BMW AG's approval for changes in benefits, salary structure, bonuses, and management structure at BMW MC. Further, there is evidence that the P circle, which was comprised solely of management at BMW AG, oversaw some of the HR operations in Greer. For example, the P circle conducted succession planning for BMW MC employees, and the P circle's approval was required to promote an employee to a Level IV, III, or II position in HR at BMW MC. The plaintiff also testified that BMW AG directed a headcount reduction at BMW MC and specified a number of employees in each area that needed to be cut. There have also been overlapping employees, with employees transferring from BMW AG to BMW MC, and vice versa. Moreover, although Dr. Engelhorn provided that the ultimate employment decisions were his responsibility, there is evidence that BMW AG was

involved in removing the plaintiff from the TX-60 position pursuant to a BMW Group policy about filling positions based on nationality, filling that role with a German employee at BMW AG, and selecting Ms. Burgmeier as the plaintiff's replacement. Taking this together, these contacts cannot be described as random or fortuitous, but rather, as coordinated and purposefully maintained.

*Id*. at 14–15.

As for the relationship between Plaintiff's claims and BMW AG's activities directed at the forum state, the Magistrate Judge found that Plaintiff "has met her burden of showing that her claims arose out of BMW AG's forum-related activities sufficient to survive BMW AG's motion to dismiss." *Id*. at 17.  The Report explained:

> Here, the plaintiff alleged that Ms. Petrasch informed her that individuals in Germany made the decision to remove the plaintiff from the TX-60 position and fill that position with a German based on a BMW Group policy. Moreover, the plaintiff testified that individuals from Germany called Ms. Petrasch with the decision. Further, Dr. Engelhorn testified that he talked with individuals in Germany on more than one occasion about Ms. Burgmeier filling the TX-60 position. Dr. Engelhorn also recognized that the head of HR in Germany first suggested Ms. Burgmeier for the position. Moreover, Dr. Engelhorn consulted management in Germany about this decision because of the need for BMW MC "to align with [the] international production network." Based on the foregoing, . . . the plaintiff has met her burden . . . .

*Id*. at 17.

Finally, in assessing the constitutional reasonableness of the exercise of personal jurisdiction over BMW AG by this Court, the Magistrate Judge properly considered additional factors including "'the burden on the defendant, the court's ability to conveniently and efficiently resolve the dispute, the interest of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining effective relief, and the interests of the state in furthering substantive policies.'" *Id*. (quoting *dmarcian*, 60 F.4th at 135).  The Magistrate Judge found "based on the record before the court, BMW AG litigating in South Carolina would not be unduly burdensome. BMW AG engaged with BMW MC in South Carolina regularly. Further, South Carolina has an interest in this litigation given that BMW MC is located in Greer and the plaintiff's employment occurred there." *Id*. at 18.

7

Accordingly, the Magistrate Judge determined that Plaintiff has pled a prima facie case sufficient to permit the exercise of personal jurisdiction over BMW AG at this stage of the litigation and recommended that the Court deny BMW AG's motion to dismiss.

### B. Objections

BMW AG filed Objections to the Report, (ECF No. 69), repeating much of the argument presented to and considered by the Magistrate Judge. As an initial matter, Plaintiff notes that rehashing arguments is not a "proper way to present objections." (ECF No. 69 at 2 n.3). Indeed, the Court agrees with Plaintiff's observation to this extent: Having this Court consider such repetitive arguments would not seem to produce the efficient use of judicial resources at the heart of the Magistrates Act but, instead, result in the magistrate judge and the district court performing identical tasks. Nonetheless, the Court must review BMW AG's objections under a *de novo* standard. *See Elijah*, 66 F.4th at 460 (explaining that "objections need not be novel to be sufficiently specific" and that an objection merely restating all of the claims triggers *de novo* review as long as "the grounds for objection are clear").

One theme that seems to run throughout BMW AG's objections is that the Magistrate Judge erroneously based personal jurisdiction on the mere fact that BMW AG's subsidiary is located in South Carolina. (ECF No. 68 at 6, 13–14). BMW AG points out that where a foreign parent company's "'connection with South Carolina is limited to the normal attributes of a parent-subsidiary relationship,'" a court in this district cannot exercise personal jurisdiction over that parent company. *Id*. at 15 (quoting *Watters v. Kirk*, No. 0:12-cv-338-CMC, 2012 WL 831452 (D.S.C. Mar. 12, 2012). In support of its objections along these lines, BMW AG relies upon cases rejecting the general premise that a foreign corporation is subject to personal jurisdiction simply based upon the parent's *relationship* with a subsidiary that is subject to jurisdiction here. (ECF

8

No. 68 at 13) (citing *Gray v. Riso Kagaku Corp.*, 82 F.3d 410 (4th Cir. 1996) (unpublished) (rejecting argument that foreign parent company "had the requisite minimum contacts with South Carolina because [its] wholly owned subsidiaries . . . do business in South Carolina'")); *id.* at 14 (citing *Fowler v. SSC Seneca Operating Co., LLC*, No. 8:21-cv-00430-HMH, 2023 WL 35936, at *6 (D.S.C. Jan. 4, 2023) ("[M]erely owning a subsidiary does not confer personal jurisdiction over [a parent company]." (internal quotation marks omitted)); *id.* (citing *Mylan Labs.*, 2 F.3d at 61, for the proposition that "a domestic subsidiary's contacts can[not] be imputed to a foreign parent" absent "exceptional circumstances"); *id.* at 13 (citing *Fitzhenry v. USHealth Grp., Inc.*, No. 15-cv-3062-DCN, 2016 WL 319958, at *4 (D.S.C. Jan. 27, 2016) (same)). The Court rejects this criticism of the Report. As Plaintiff states in reply, "[t]he Magistrate judge made specific findings that have nothing to do with the mere corporate relationship between BMW AG and BMW MC." (ECF No. 69 at 2). Indeed, the Report contains numerous facts reflecting BMW AG's direct involvement, participation and control in the alleged actions that form the basis for Plaintiff's claims. *See id.* at 3–6 (block quoting the voluminous supporting facts set forth in the Report). Accordingly, the Court overrules this line of objections.

In a related objection, BMW AG contends the Report erroneously found jurisdiction on the novel basis of "substantial collaboration" between a foreign parent company and its subsidiary located in the forum state. (ECF No. 68 at 15–20). BMW AG argues that under the Magistrate Judge's reasoning, "whenever a foreign parent engages in typical supervisory conduct with a US-based subsidiary, the foreign parent would be subject to personal jurisdiction." *Id.* at 19. The Court disagrees that the Magistrate Judge took such a position in the Report. As noted previously, the Magistrate Judge found that the alleged facts plausibly supported a claim that BMW AG was directly involved in and, in fact, controlled the HR decisions at issue in this case. The Court reads

9

the Report's use of the phrase "substantial collaboration" to mean BMW AG was directly involved in the alleged decision to remove Plaintiff from her position based on nationality. *See* (ECF No. 65 at 14–15). In expanding on this phrase, the Magistrate Judge detailed BMW AG's conduct that reflected involvement that was more than supervisory in nature—as alleged by Plaintiff, BMW AG may have been the ultimate decisionmaker, orchestrating the removal of Plaintiff from her position in the Greer, S.C. plant:

> [P]laintiff conversed with employees at BMW AG on a weekly basis, and she had to obtain BMW AG's approval for changes in benefits, salary structure, bonuses, and management structure at BMW MC. Further, there is evidence that . . . [approval of the P circle, which was comprised solely of management at BMW AG] . . . was required to promote an employee to a Level IV, III, or II position in HR at BMW MC. The plaintiff also testified that BMW AG directed a headcount reduction at BMW MC and specified a number of employees in each area that needed to be cut [and] . . . there is evidence that BMW AG was involved in removing the plaintiff from the TX-60 position pursuant to a BMW Group policy about filling positions based on nationality, filling that role with a German employee at BMW AG, and selecting Ms. Burgmeier as the plaintiff's replacement. Taking this together, these contacts cannot be described as random or fortuitous, but rather, as coordinated and purposefully maintained.

(ECF No. 65 at 14–15). In contrast to BMW AG's contention, the Magistrate Judge did not conclude that the Court can exercise personal jurisdiction here based on the conduct of BMW MC where BMW AG was engaged merely in supervisory conduct. The objection is overruled.

In finding that BMW AG purposefully availed itself of the privilege of conducting business in South Carolina based on the foregoing facts, the Magistrate Judge, citing *Universal Leather*, noted that "[t]he Fourth Circuit 'generally ha[s] concluded that a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" (ECF No. 65 at 14 (quoting *Universal Leather*, 773 F.3d at 560)). BMW AG argues that *Universal Leather* does not apply because it did not involve collaboration between parent and subsidiary defendant corporations but rather between "two parties engaged in

10

an arm's length commercial transaction that gave rise to the litigation." (ECF No. 68 at 16). The Court agrees with Plaintiff, however, that BMW AG has not pointed to anything showing that *Universal Leather* has no relevance here. *See* (ECF No. 69 at 8). According to the allegations, BMW AG substantially engaged with the HR department for BMW MC, a forum resident, directed the removal of Plaintiff from her position in the forum state based on national origin, and, therefore, made the decision giving rise to this action. Accordingly, the Court overrules this objection as well.

To the extent that BMW AG objects to the Report on that basis that the Magistrate Judge erroneously considered hearsay contained in Plaintiff's affidavit and improperly "credited" Plaintiff's allegations and evidence "in the face of contradictory sworn affidavits" offered by BMW AG, (ECF No. 68 at 23–26), the Court rejects this argument for the same reasons the Magistrate Judge rejected it in the Report. (ECF No. 65 at 12 (quoting *Universal Leather*, 773 F.3d at 560 ( "[W]e find no merit in [Defendant's] attempt at this stage of proceedings to discredit the facts adduced in the affidavits filed by [Plaintiff]. Because the district court did not conduct an evidentiary hearing, the court was required to assume the credibility of [Plaintiff's] version of the facts, and to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [Plaintiff].")); *id.* at 13 (quoting *Universal Leather*, 773 F.3d at 561 ("[W]e do not evaluate the credibility of the statements in affidavits filed on [Plaintiff's] behalf or address any questions regarding the ultimate admissibility of evidence, nor do we decide whether [Plaintiff] has proved its contentions. Instead, we are required to determine whether [Plaintiff] has made at the motion to dismiss stage a prima facie showing that [Defendant] purposefully availed itself of the privilege of doing business in [the forum state] . . . .")).

Finally, the Report states that the Magistrate Judge "finds that the plaintiff has pled a prima facie case sufficient for the court to exercise jurisdiction over BMW AG *at this stage of the litigation* and recommends that the district court deny BMW AG's motion to dismiss." (ECF No. 65 at 18 (emphasis added)). Similarly, the Magistrate Judge stated that, "construing all relevant pleading allegations in the light most favorable to the plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, the undersigned finds that the nature and level of BMW AG's contacts with South Carolina are sufficient to establish purposeful availment *at this stage*." *Id*. at 15 (emphasis added). BMW AG takes exception to the use of the phrase "at this stage," arguing "[t[his is error" as "[t]his stage of the proceeding is precisely the stage of the proceedings where the important factor of personal jurisdiction over a foreign parent should be determined." (ECF No. 68 at 23). The Court disagrees. As pointed out multiple times, because the Court is deciding this motion without an evidentiary hearing, Plaintiff need only make a *prima facie* showing of personal jurisdiction. *See Mylan Labs*., 2 F.3d at 60. The Magistrate Judge's use of this phrase is perfectly appropriate. When a plaintiff "has made the requisite prima facie demonstration of personal jurisdiction, the Court can proceed as if it has personal jurisdiction over this matter, although factual determinations to the contrary may be made *at a later stage* of this proceeding." *SC Advisors 7, LLC v. Rudnick*, No. 3:19-cv-0716FDWDSC, 2020 WL 4227469, at *4 (W.D.N.C. July 23, 2020) (internal quotation marks omitted); *see Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 717 (E.D. Va. 2011) ("If this Court determines that Plaintiff has made a prima facie demonstration of personal jurisdiction *at this stage in the case*, the Court will proceed as if it has personal jurisdiction over this matter, although factual determinations to the contrary may be made at trial."). Accordingly, courts may, under certain circumstances, determine that the best course is to deny a motion to dismiss for lack of personal

jurisdiction without prejudice and afford the moving party "the right to re-raise its jurisdictional challenges at summary judgment should discovery reveal that the Court does not, in fact, have personal jurisdiction." *SC Advisors 7*, 2020 WL 4227469, at *5.

### IV. Conclusion

The Court has carefully considered the briefs of the parties and the materials submitted by the parties both in support of and in opposition to the Motion to Dismiss; the Report of the Magistrate Judge; BMW AG's objections to the Report; and Plaintiff's Reply to the Objections. For the reasons set forth above, the Court agrees with the findings, conclusions and recommendations of the Magistrate Judge and, therefore, **ADOPTS** the Report (ECF No. 65) and incorporates it as if set forth fully herein. The Court overrules each of BMW AG's objections, including those not discussed expressly herein, and finds no reason to deviate from the recommendations set forth in the Report. Accordingly, BMW AG's Motion to Dismiss (ECF No. 42) is hereby **DENIED *without prejudice*** to BMW AG's right to re-assert its challenge to personal jurisdiction at the summary judgment stage should discovery establish as a matter of law that the Court does not enjoy personal jurisdiction.

**IT IS SO ORDERED.**

Anderson, South Carolina                             s/Timothy M. Cain
February 6, 2024                                     United States District Judge