1/11/24, 8:49 PM U.S. Supreme Court Appears to Side with Employee Alleging Discriminatory Transfer in Oral Argument | Jackson Lewis

7:22-cv-03738-TMC-KFM    Date Filed 02/20/24    Entry Number 97-35    Page 1 of 4



Legal Update Article

# U.S. Supreme Court Appears to Side with Employee Alleging Discriminatory Transfer in Oral Argument

12.12.23

Stephanie L. Adler-Paindiris, Stephanie E. Satterfield & Joseph C. Toris

Even as the U.S. Supreme Court heard oral argument in *Muldrow v. City of St. Louis, Mo.*, No. 22-193, on Dec. 6, 2023, on the narrow issue of whether Title VII of the Civil Rights Act of 1964 prohibits job transfers that do not cause a "significant disadvantage" to workers, it hinted at future battles over the scope of workplace discrimination. The justices appeared sympathetic to workers and expressed concerns about limiting the scope of Title VII.



## Background

Petitioner Jatonya Muldrow of the St. Louis Police Department argued that her eight-month transfer out of the Department's Intelligence Division constituted discrimination within the meaning of Title VII, even though she had not suffered any economic damages as a result of the transfer.

The federal district court dismissed Muldrow's discrimination claim, finding she had failed to establish proof of harm resulting from the transfer. This decision was later affirmed by the U.S. Court of Appeals for the Eighth Circuit.

## Plaintiff's Arguments

Muldrow's argument was simple: discrimination, in and of itself, is a harm intended to be remedied by Title VII. While the Court appeared receptive to this argument,

1/11/24, 8:49 PM US Supreme Court Appears to Side with Employee Alleging Discriminatory Transfer in Oral Argument | Jackson Lewis

Case 7:22-cv-03738-TMC-KFM    Date Filed 02/20/24    Entry Number 97-35    Page 2 of 4

with multiple justices noting that discrimination is unquestionably morally wrong, they struggled over the potential consequences of such a decision.

Justice Elena Kagan noted that prior Court decisions held the term "discriminate against" in Title VII refers to distinctions or differences in treatment that injure protected individuals, suggesting there are also distinctions or differences in treatment that do not cause injury.

Muldrow's counsel acknowledged there are some things that occur in the workplace that could be considered trivial or *de minimis,* but he argued that, if these occurred because of an individual's protected characteristic, they "immediately become nontrivial" for the purposes of Title VII. This harm, Muldrow's counsel argued, was different from the type of stigmatizing harm the Court had recognized as resulting from discrimination in situations such as separate water fountains. According to Muldrow, any decision in the workplace made on account of a protected characteristic is denigrating and demeaning even if it is not stigmatizing.

This argument led both Justice Clarence Thomas and Justice Amy Coney Barrett to question whether a decision that held any differential treatment in the workplace that results in an injury would affect employers' efforts to increase diversity in the workplace. Muldrow stated that this question was not currently before the Court.

Justice Samuel Alito acknowledged disparate treatment based on protected characteristics is wrong. However, he viewed the tests developed by the lower courts (such as the "significant disadvantage" requirement imposed by the Eighth Circuit in affirming the dismissal of Muldrow's case) as establishing a threshold for these matters to be actionable. While indicating he was not sure of the appropriate articulation for this threshold, Justice Alito believed "some sort of threshold" had to be reached before an employee could go to court. Muldrow argued that the act of discrimination itself cleared this threshold "in all but the most unusual cases."



Justice Ketanji Brown Jackson noted that, to the extent the Court was concerned that individuals who had not suffered any concrete harm as the result of discrimination, this concern may be addressed by the lack of damages in such instances. Muldrow agreed the lack of damages would limit the instances in which frivolous or marginal claims made their way into court.

In support of Muldrow's position, the Solicitor General argued that any transfer in the workplace based on a protected characteristic is inherently harmful because it affects the terms, conditions, and privileges of employment within the meaning of Title VII. She also agreed that marginal claims of discrimination would not clog the

courts because the employee still needed to be able to plead the elements of a claim of discrimination. Even when courts have imposed some threshold for these claims, the Solicitor General argued, the viability of the claim often is not resolved until the end of discovery.

Perhaps previewing a majority opinion, Justice Jackson observed that, by narrowing the scope of the issue before the Court to transfers, the Court had avoided the necessity of addressing other employment decisions that may lead to supposedly trivial situations in the workplace. The Court's opinion, therefore, would address only transfers based on protected characteristics, leaving determinations as to other employment actions for a later date.

## Defendant's Arguments

The City of St. Louis argued that Title VII's language that makes it unlawful to "discriminate against" an employee requires not just differential treatment, but also some significant material objective harm, as held by the lower courts. The City argued this reading was consistent with prior Court decisions analyzing this statutory language, both in Title VII and other contexts.

The City further argued that courts of appeals had been applying a material harm requirement in Title VII cases for at least 30 years. Under this standard, a Title VII plaintiff must show they suffered some harm in the workplace in terms of responsibilities, chances for advancement, or other detriment. The City argued this was not a high bar, but was necessary to weed out claims based solely on personal preferences and subjective sensitivities. According to the City, a discriminatory act that led to stigmatization would be sufficient.



Justice Jackson observed that the City's argument assumed there was a harm requirement under Title VII. The City argued this was consistent with Muldrow's position, particularly her concession that some issues such as having different restrooms based on gender would not implicate Title VII. Justice Kagan countered that situations such as gender-specific bathrooms were a discrete category and that the petitioner's position was both simple and easy to understand in terms of Title VII's language. She noted the City's position requiring an additional showing of harm would lead to a situation where a court would need to determine the appropriate amount of harm, something beyond the language of Title VII.

The City argued that discrimination itself was not a harm, but rather comprised of two elements, disadvantageous terms and harm, that would often run together. Justice Neil Gorsuch countered that the case law under Title VII stands for the

1/11/24, 8:49 PM  U.S. Supreme Court Appears to Side With Employee Alleging Discriminatory Transfer in Oral Argument - Jackson Lewis

7:22-cv-03738-TMC-KFM    Date Filed 02/20/24    Entry Number 37-35    Page 4 of 4

proposition that it was sufficient once an individual is treated differently on the basis of a protected characteristic; courts did not need to engage in a further examination of whether that injury is material or whether a reasonable person would be offended by it. Justice Gorsuch postulated that requiring such an examination added a "different extra textual layer" to Title VII that relied too heavily on an individual judge's sensibilities as to "how bad is bad enough."

Based on the justices' questioning, it appears likely that their ultimate decision, expected in 2024, will be in Muldrow's favor. However, this decision may be limited to workplace transfers, leaving a wide variety of other employment actions in which the employee does not suffer any material harm for future cases. These other employment actions, including employers' diversity, equity, and inclusion initiatives, present a different set of considerations that the Court may find more difficult conceptually to address.

Jackson Lewis attorneys are available to answer questions about the potential impact of the Court's decision and help develop effective policies and procedures around lateral transfers and other employment actions.

©2023 Jackson Lewis P.C. This material is provided for informational purposes only. It is not intended to constitute legal advice nor does it create a client-lawyer relationship between Jackson Lewis and any recipient. Recipients should consult with counsel before taking any actions based on the information contained within this material. This material may be considered attorney advertising in some jurisdictions. Prior results do not guarantee a similar outcome.



Focused on labor and employment law since 1958, Jackson Lewis P.C.'s 950+ attorneys located in major cities nationwide consistently identify and respond to new ways workplace law intersects business. We help employers develop proactive strategies, strong policies and business-oriented solutions to cultivate high-functioning workforces that are engaged, stable and diverse, and share our clients' goals to emphasize inclusivity and respect for the contribution of every employee. For more information, visit https://www.jacksonlewis.com.