# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

|  |  |
|---|---|
| KELLY DAWSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 7:22-cv-03738-TMC-KFM |
| ) | |
| BAYERISCHE MOTOREN WERKE ) | |
| AKTIENGESELLSCHAFT and BMW ) | |
| MANUFACTURING CO., LLC collectively ) | |
| d/b/a "BMW GROUP," ) | |
| ) | |
| Defendants. ) | |

## REPLY IN SUPPORT OF
## BMW MANUFACTURING CO., LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant, BMW Manufacturing Co., LLC ("BMW MC" or the "Company"), by and through its undersigned counsel of record, hereby submits this Reply in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

### I.     INTRODUCTION

In January 2022, Plaintiff Kelly Dawsey voluntarily resigned from employment at BMW MC prior to the effective date of a reorganization of the HR Department. As part of that reorganization, BMW MC planned for Plaintiff to move from one HR Department Manager position (TX-60) to another HR Department Manager position (TX-64). Rather than accept BMW MC's plan for her, Plaintiff quit to accept a Director of Human Resources position at another local company, a job for which she had been searching for months (prior to the reorganization) and that she had accepted more than a month before her resignation. In candid testimony under oath in her deposition, Plaintiff admitted that the job search, accepting another

1

job, and resigning were life choices led by faith, divine intervention, and signs from God for the next chapter of her life.

However, shortly after her voluntary resignation from BMW MC, Plaintiff began her legal proceedings against the Company alleging that she had been discriminated against based on national origin, race, and sex, and further alleging that she had been constructively discharged from employment by BMW MC. Following extensive discovery, BMW MC moved for summary judgment on Plaintiff's claims of discrimination based primarily on the fact that Plaintiff cannot prove that she suffered any adverse employment action. In response to BMW MC's Motion for Summary Judgment, Plaintiff seemingly abandons her constructive discharge claim, asserts novel legal theories not supported by the law, and files a 44-paragraph Second Declaration, all in an effort to avoid the dismissal of her case. However, these drastic steps do nothing to save her case as a matter of law.

Recognizing the potential for abuse by employees who quit their jobs and only afterward claim discrimination, the Fourth Circuit has established and consistently applied high standards to such claims. Here, Plaintiff is unable to escape the fact that when she left employment at BMW MC, she was still in the TX-60 Department Manager position and had suffered no adverse employment action. Plaintiff's attempt to create a legal claim by speculating about what might have happened had she in fact transferred to the TX-64 Department Manager role is the very abuse about which the Fourth Circuit cautions. Absent such speculation, which the Fourth Circuit clearly prohibits, Plaintiff cannot prove that she suffered any adverse employment action as a result of alleged discrimination by BMW MC. Accordingly, BMW MC's Motion for Summary Judgment should be granted.

## II.     LEGAL ARGUMENT

**A.     Plaintiff Cannot Prevail On Her Discrimination Causes of Action Because She Suffered No Adverse Employment Action.**

As fully briefed in the Memorandum in Support of BMW MC's Motion for Summary Judgment ("BMW MC's Memorandum"), the Fourth Circuit has held that a plaintiff must show the existence of an adverse employment action to establish a valid claim of employment discrimination under Title VII or Section 1981. *See, e.g., Ali v. Alamo Rent-A-Car, Inc.*, 8 F. App'x 156, 158 (4th Cir. 2001); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999); *see also Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (requiring the plaintiff to establish an adverse employment action to support a Section 1981 claim). In her Response, Plaintiff attempts to sidestep this fundamental element of proof in her claims against BMW MC. However, regardless of Plaintiff's creative attempts to avoid her burden of proof, absent any adverse employment action her discrimination claims fail as a matter of law.

**1.     In the Face of Summary Judgment, Plaintiff Now Runs from Her Claim of Constructive Discharge.**

In Plaintiff's Opposition to Defendant BMW MC's Motion for Summary Judgment (Plaintiff's "Response"), Plaintiff states that BMW MC tries "to knock down a straw man" in making arguments regarding the alleged constructive discharge of Plaintiff. (ECF No. 97 at 24.) Plaintiff further states that she "doesn't have to prove constructive discharge, and it never was the gravamen of her Complaint." *Id*. However, that is a very interesting position given that the focus of Plaintiff's case against BMW MC has always been that she was constructively discharged. On January 26, 2022, less than two (2) weeks after she resigned from employment at BMW MC, Plaintiff filed a Charge of Discrimination in which she asserts that she was "constructively discharged on the basis of my national origin, sex, and race." (Pl. Dep. Ex. 59.) Then, in her Amended Complaint, Plaintiff clearly pleads a constructive discharge by alleging that she "had no

3

reasonable alternative but to resign." (ECF No. 20 at ¶¶ 63, 72.) Finally, Plaintiff's Response to the Motion to Dismiss filed by BMW AG asserts that "Plaintiff nowhere alleges that her resignation was voluntary. To the contrary, her pleading alleges a constructive discharge." (ECF No. 45 at p. 2, n. 3.) Therefore, since Plaintiff has asserted from the outset of this legal action that she was constructively discharged by BMW MC, it certainly is odd that she now tries to eschew that claim. However, this change in position is not surprising given the utter lack of evidence in the record to support her claim that she had no choice but to resign.

To establish a constructive discharge, Plaintiff must prove that her working conditions were "so intolerable that a reasonable person in the employee's position would have felt compelled to resign" and that she in fact resigned from employment at BMW MC because of those conditions. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211-12 (4th Cir. 2019) (citing *Green v. Brennan*, 136 S. Ct. 1769, 1776-78 (2016)). As fully addressed in BMW MC's Memorandum, Plaintiff cannot meet her burden on either of those two elements. (*See* ECF No. 92-1 at 14-22.) Significantly, Plaintiff offers no factual or legal argument in response to the overwhelming evidence showing that she voluntarily resigned from employment. Accordingly, BMW MC is entitled to summary judgment on Plaintiff's claim that she was constructively discharged by BMW MC.[1]

---

[1] As noted above, from the outset of this legal action, Plaintiff has asserted that she was constructively discharged by BMW MC and alleges damages that flow from that alleged adverse employment action. However, in the absence of a constructive discharge, one must ask what is left for the Court to decide in this case? If Plaintiff's departure from BMW MC was not a constructive discharge, then this simply is a case where Plaintiff voluntarily resigned from employment prior to any planned transfer of position.

### 2.   Plaintiff's Novel Notice of Adverse Employment Action Theory Is Not Supported by the Law.

Rather than advance a constructive discharge theory, Plaintiff now tacks in a different direction in a last-ditch effort to meet her burden to prove that she suffered an adverse action. Although Plaintiff concedes that she was never moved out of the TX-60 Department Manager position prior to her voluntary resignation from employment, she now claims that she suffered adverse action when BMW MC notified her of the planned reorganization of the HR Department in the fall of 2021. (ECF No. 97 at 19-20.) This argument is not supported by the law.

In a novel theory, Plaintiff alleges that notice of a "possible" adverse employment action is sufficient to establish that she suffered adverse action. *Id*. However, Plaintiff fails to cite to any case law that stands for this proposition. Instead, she cites to a litany of cases that are easily distinguishable from the present case for two reasons. First, none of these cases is factually similar to the situation presented in this case – a voluntary resignation.  Second, the pertinent issue in the cases cited by Plaintiff is when a discrimination cause of action arises for statute of limitations purposes, which is fundamentally different from the question of what the actual adverse employment action is.

Plaintiff initially cites to two denial of tenure claims in the public education employment context. Plaintiff cites to *Del. State Coll. v. Ricks*, 449 U.S. 250, 259, 101 S. Ct. 498, 505 (1980), for the proposition that the "claim arose when professor notified of denial of tenure and pending termination and not when the resulting termination occurred."  (ECF No. 97 at 19.) However, in *Ricks*, the sole issue before the Supreme Court was when the statute of limitations began to run in a situation where the plaintiff was denied tenure. *Ricks* at 258-59.  Importantly, the Court held in *Ricks* that the denial of tenure was the alleged unlawful employment practice and thus the limitations period began running when the plaintiff was notified that tenure had been denied

5

instead of upon the final date of employment.[2] *Id*. Plaintiff also relies upon *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S. Ct. 28, 29 (1981), another denial of tenure case in the public context, for the proposition that "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." (ECF No. 97 at 19.) However, comparable to *Ricks*, the issue presented to the Supreme Court in *Chardon* related to the running of the one-year statute of limitations for a Section 1983 claim. 454 U.S. at 8. The parenthetical used by Plaintiff is misleading, as the "proper focus" quoted was the Court's focus on the date of the denial of tenure for purposes of the accrual date of the statute of limitations. *Id*. *Chardon* does not stand for the global proposition sought by Plaintiff that the adverse employment action occurred upon notice— it is limited to an analysis of the statute of limitations.

Plaintiff next turns to Fourth Circuit authority that supposedly supports her novel notice theory. However, like the Supreme Court rulings, these cases all involve statute of limitations issues. Plaintiff first cites to *Hospodor v. Burlington Indus.*, No. 99-2017, 2000 U.S. App. LEXIS 2679, at *3 (4th Cir. Feb. 23, 2000), a case which addressed the 180-day limitation period to file a charge with the EEOC. There, in a termination case where the employer gave a final and unequivocal notice of the termination date for employment, the Fourth Circuit held that "the time for filing EEOC charges accrues when the employee receives notice of his termination, not when the termination occurs." *Id*. Similarly, the decision in *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 964-5 (4th Cir. 1982), turned on whether the employer's notice that it was removing the plaintiff from a manager position started the 180-day filing period. 694 F.2d at 964. Lastly, Plaintiff cites to *Smith v. Univ. of Md. Balt.*, 770 F. App'x 50, 50 (4th Cir. 2019), a case in which the Fourth

---

[2] The *Ricks* Court noted the limited application of the case and stated that "[c]omplaints that employment termination resulted from discrimination can present widely varying circumstances. . . . The application of the general principles discussed herein necessarily must be made on a case-by-case basis." *Id* at n. 9.

Circuit stated that a Section 1981 claim had a four-year statute of limitation and that plaintiff's claim was properly dismissed, as a "discriminatory discharge claim accrues when the employee receives notice of the termination, not on the last day of employment."

In choosing to rely on statute of limitations cases to support this notice theory, Plaintiff relies primarily on cases involving terminations of employment, a factual scenario fundamentally different than what is presented here. Indeed, the Supreme Court has held that the time for accrual is measured differently when a plaintiff voluntarily resigns. *See Green v. Brennan*, 578 U.S. 547, 136 S. Ct. 1769, 1776 (2016) (holding that where plaintiff voluntarily resigns following an alleged discriminatory act, limitations period began to run when plaintiff submitted resignation). **Ultimately, however, none of these cases addresses, let alone resolves, what constitutes "adverse action" as an element of a plaintiff's discrimination claims**.

There is no dispute in this case that Plaintiff voluntarily resigned from employment at BMW MC prior to the time that she transferred from the TX-60 Department Manager position to the TX-64 Department Manager position. (Plaintiff Dep. 313:16-20.) BMW MC is not aware of any court that has ever held that the notice of a future transfer of positions is an actual adverse employment action. However, BMW MC can direct this court to decisions in the Fourth Circuit that involved similar factual circumstances as those presented here, and those rulings fail to support Plaintiff's novel notice theory. For example, in *James v. Booz-Allen & Hamilton, Inc.*, the African American plaintiff alleged that he was given notice that a white male employee was taking over his project manager role and that he would be moved to another position, which the plaintiff viewed as a demotion because of diminished prospects for promotion. 368 F.3d 371, 372 (4th Cir. 2004). There, the Fourth Circuit did not view the notice of potential demotion as an adverse employment action, but instead required the plaintiff to prove adverse employment action through a constructive discharge theory. *Id.* Likewise, in *Cole v. Wake Cty. Bd. of Educ.*, 494 F. Supp. 3d

7

338, 345 (E.D.N.C., February 28, 2020), *affirmed* 834 F. App'x 820, 821-22 (4th Cir. 2021) (per curiam), *cert. denied*, 141 S. Ct. 2746 (2021), the plaintiff, a school principal, was notified that she was being removed from her position and transferred to an administrative role, a position that she perceived was a demotion. The plaintiff never reported to the new assignment and asserted a claim of race discrimination. *Id*. at 344.  There, neither the District Court nor the Fourth Circuit concluded that the notice of reassignment was an adverse employment action for the plaintiff, but instead required the plaintiff to establish adverse employment action by proving a constructive discharge. *Id.* at 345-46.

Plaintiff asks this Court to adopt her novel legal theory that she suffered an adverse employment action in the fall of 2021 when notified that she was being transferred to another Department Manager position as part of BMW MC's planned reorganization of the HR Department. However, Plaintiff's theory is not supported by any applicable law. To the contrary, when faced with a similar fact pattern where the plaintiff left employment prior to the organizational change taking effect, courts in the Fourth Circuit have required the plaintiff to prove adverse employment action by establishing a constructive discharge.  Plaintiff has failed to do so in this case.

      **3.**      **Plaintiff Cannot Prove That She Suffered Adverse Employment Action.**

Plaintiff's discrimination claims fail as a matter of law if she cannot establish that she suffered an adverse employment action.  *See Ali*, 8 F. App'x at 158; *Boone*, 178 F.3d at 256; *Honor*, 383 F.3d at 188.  As set forth above in Section A.1., Plaintiff offers no response to (and actually evades) BMW MC's argument that she has failed to prove a constructive discharge. If there is no constructive discharge claim, then the only possible adverse employment action at issue in this case is the transfer of Plaintiff from the TX-60 position to the TX-64 position, which she viewed

8

as a "possible demotion." (ECF No. 20, ¶¶ 69-70.)  **However, this transfer never happened.**[3] The undisputed evidence establishes that prior to the planned effective date of the reorganization in February 2022, Plaintiff voluntarily resigned from employment. (Pl. Dep. 300:11-301:20, 303:9-20, Ex. 54.) Plaintiff admits that as of her last day of employment at BMW MC, she was still in the TX-60 Department Manager position.  (Plaintiff Dep. 313:16-20.) Therefore, to the extent Plaintiff claims that she suffered an adverse employment action because of her transfer from TX-60 to TX-64, that is impossible because the transfer never occurred.

It appears that Plaintiff's entire adverse employment action argument hinges on her claim that the transfer to the TX-64 Department Manager position would have been a "possible demotion." However, since Plaintiff resigned before ever moving to the TX-64 position, her claim of demotion is based upon speculation, which the Fourth Circuit has routinely held is insufficient to defeat summary judgment. *See, e.g., James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (the court is not allowed to rely on speculation, guesswork, or conjecture in establishing the existence of an adverse employment action). In *Cole*, the Fourth Circuit affirmed the decision of the District Court rejecting the very type of speculation that Plaintiff attempts to utilize here to show adverse employment action.  834 F. App'x 820. There, the plaintiff refused to accept a reassignment that she perceived would be a demotion. *Id.*  In rejecting the speculative claims of the plaintiff, the District Court stated:

> Cole's argument, however, asks the court to assume her career trajectory for a job in which she failed to report to work, and to speculate that if she had reported to work as DIS, then she would not have received a promotion. Cole's speculation about her future prospects for promotion do not suffice. *See, e.g., James*, 368 F.3d at 377. Even viewing the evidence in a light most

---

[3] In her Response, Plaintiff discusses the pending *Muldrow* case in the U.S. Supreme Court. However, the facts in *Muldrow* are easily distinguishable from the present case as the plaintiff in *Muldrow* was in fact transferred to another position, which allegedly involved decreased responsibility.  Here, Plaintiff left before she was ever transferred and thus her argument about having lesser responsibility in the TX-64 position is based upon mere speculation.

> favorable to Cole, she has failed to raise any genuine issue of material fact concerning whether reassigning her to the DIS position was an adverse employment action. It was not.

*Id.* at 346.

Just as in *Cole*, Plaintiff in this case attempts to create a genuine issue of material fact by relying on speculation about what might have happened had she in fact transferred into the TX-64 Department Manager position. Such speculation is insufficient to avoid summary judgment. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). Therefore, since Plaintiff has failed to establish that she suffered an adverse employment action, her claims of discrimination against BMW MC fail as a matter of law, and BMW MC's Motion should be granted.

**B.    Plaintiff Has Asserted Only a Single National Origin Discrimination Claim, and BMW MC Is Entitled to Summary Judgment on That Claim.**

Plaintiff argues that she brought two separate causes of action for national origin discrimination, the first under 42 U.S.C. § 2000e-2(a)(1) ("Section 703(a)(1)") and the second under 42 U.S.C. § 2000e-2(a)(2) ("Section 703(a)(2)"). Plaintiff takes the position that because BMW MC's Motion for Summary Judgment did not even mention her claim under Section 703(a)(2), the Motion should be denied as to that claim. However, this position is meritless based on both the facts and law.

In both of her complaints, Plaintiff pleads only one cause of action for national origin discrimination. (ECF No. 1 at ¶¶ 40-43; ECF No. 20 at ¶¶ 66-72.) Plaintiff's attempt to defeat this Motion by now claiming at the eleventh hour that she actually has asserted two national origin causes of action must be rejected.

Regardless, Plaintiff's alleged cause of action under Section 703(a)(2) is not viable as a matter of law. As the Eleventh Circuit has held, Section 703(a)(2) cannot be used as the basis to

10

challenge individual employment decisions.[4] *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923-24 (11th Cir. 2018) ("[i]n short, section 2000e-2(a)(1) covers individual decisions, such as the alleged decision not to transfer Jefferson on the basis of her race and national origin, and section 2000e-2(a)(2) covers policies of general applicability."). Because Plaintiff seeks to challenge only an individual employment decision in this case, she cannot rely upon Section 703(a)(2) as the basis for such claim.

Even were an individual Section 703(a)(2) claim be viable here, the legal analysis of the discrimination claim is the same as under Section 703(a)(1). Contrary to Plaintiff's unsupported contention that she need not prove adverse action on this claim, courts have held that a claim under Section 703(a)(2) requires it. *See James*, 368 F.3d at 375 (stating that "[r]egardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required"); *Crawford v. Atlanta Indep. Sch. Sys.*, 2018 U.S. Dist. LEXIS 240500, at *61 (N.D. Ga. June 22, 2018) (holding that a plaintiff must prove adverse employment action since Section 703(a)(2) "does not simply prohibit actions that limit, segregate, or classify persons; rather the language prohibits such actions that deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee"). For the reasons set forth in BMW MC's Memorandum and above in Section II.A., Plaintiff has failed to establish the existence of any adverse employment action in this case.

### C. Plaintiff Cannot Establish a Direct Evidence Claim of National Origin Discrimination.

In her Response, Plaintiff argues that she has presented direct evidence of intentional national origin discrimination by BMW MC. (ECF No. 97 at 25-26.) As support for this argument,

---

[4] It does not appear that the Fourth Circuit has ever held that Section 703(a)(2) can be used as the basis to challenge individual employment decisions.

Plaintiff cites to a document entitled "Expat Guidelines for Plant Spartanburg" ("Expat Guidelines"), which Plaintiff claims is "a written policy to fill positions based on nationality." (ECF No. 97 at 3.) However, evaluated from both a legal and factual perspective, this document fails to establish that BMW MC discriminated against Plaintiff on the basis of her national origin.

Plaintiff's argument regarding direct evidence ignores the fact that "[r]egardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required." *James*, 368 F.3d at 375 (internal citations omitted). For the reasons detailed above and in BMW MC's Memorandum, Plaintiff has failed to present any evidence that she suffered an adverse employment action as required under prevailing Fourth Circuit law.

Nor does Plaintiff have direct evidence. The Fourth Circuit has held that direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and *that bear directly on the contested employment decision*." *Rhoads v. FDIC*, 257 F.3d 373, 391-92 (4th Cir. 2001) (emphasis added). In evaluating whether statements constitute direct evidence of discrimination, the Fourth Circuit has held that such statements must be "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023). Here, the "statement" that allegedly is direct evidence, the Expat Guidelines document, fails to meet any of these requirements.

Plaintiff cannot identify any evidence showing that her "direct evidence" had any bearing on BMW MC's planned transfer. Plaintiff relies on a document she prepared in January 2016, more than five-and-a-half years before the alleged employment decision at issue, as direct evidence that others discriminated against her in 2021. (Pl. Dep. 191:14-29, Ex. 29.) Yet Plaintiff has presented no evidence that the individuals involved in making the decisions related to the 2021

12

HR Department reorganization - Dr. Engelhorn, Ms. Petrasch, and Ms. McCraw - had any involvement whatsoever in the creation of that document or were even aware of it. (Petrasch Dep. 112:9-20.) To the contrary, Plaintiff admits that she drafted the document based upon input provided by Johannes Trauth. (Pl. Dep. 192:2-6.) Mr. Trauth has not worked at BMW MC since December 2017.[5] Based upon this fundamental disconnect between the preparation of the document and the actual decision at issue, the Expat Guidelines cannot be direct evidence of discrimination related to BMW MC's decision to move Plaintiff from the TX-60 Department Manager position to the TX-64 Department Manager position.

Moreover, although Plaintiff would lead this Court to believe that the terms "German" and "American" appear throughout the Expat Guidelines, that is a falsity. The document does not in any way reference national origin. Instead, the document indicates whether positions in the HR Department should be filled by 1) an international or domestic employee, 2) a domestic employee, or 3) a global employee. (Pl. Dep. Ex. 29.) The document states that the TX-60 Department Manager position can be either international or domestic. (Pl. Dep. 194:13-25, Ex. 29 at p. 6.) The document further states that the TX-60 Department has a need for an international inbound and suggests that if the Vice President of HR position is filled by a domestic employee, then the TX-60 Department Manager should be filled by an international employee (and vice versa). (Pl. Dep. Ex. 29 at p. 6.) **Nowhere in this entire Expat Guidelines document is there a single requirement that an employee be of a particular national origin to fill a position in the HR Department, nor does the document place any limits on the positions an employee can hold in the HR Department based upon national origin**.

---

[5] Mr. Trauth served as the Vice President of Human Resources at BMW MC until Christine Petrasch took over that role, which was on January 1, 2018. (Petrasch Dep. 8:20-24.)

In *Douglas v. Eaton Corp.*, 577 F. App'x 520 (6th Cir. 2014), the Sixth Circuit rejected a direct evidence argument under similar circumstances. There, the plaintiff argued that she had direct evidence of national origin discrimination because the employer had a stated preference for "local" candidates. *Id*. at 523, n.1. However, the Court found that the employer's policy was not direct evidence of national origin discrimination because it did not state a preference for people who were born in, or whose ancestors were from, a particular region. *Id*. Here, despite Plaintiff's repeated claim that the Expat Guidelines limit or classify positions in the HR Department based upon national origin (specifically "German"), that is not the case. Instead, this document simply expresses a preference for an international or domestic candidate to fill the position, regardless of the nationality of such candidate. Based upon the holding in *Douglas*, such a preference is not direct evidence of national origin discrimination.

To constitute direct evidence of discrimination, the Expat Guidelines must have actually been used by BMW MC to discriminate against employees based upon their nationality. No such evidence exists. The document, which was created by a former manager many years before the pertinent time period of this case, makes no reference to national origin. Therefore, since the Expat Guidelines document neither reflects directly the alleged discriminatory attitude nor bears directly on the contested employment decision, it is not direct evidence of discrimination. *Rhoads*, 257 F.3d at 391-92.

**D.     Plaintiff's Claims of Race and Sex Discrimination Fail as a Matter of Law Because Plaintiff Has Suffered No Adverse Employment Action.**

Because Plaintiff has not presented any direct evidence of discrimination as to either of her race or sex discrimination claims, she must prove her case through the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a prima

facie case of discrimination, Plaintiff must prove that she suffered an adverse employment action. *Love-Lane v. Martin*, 355 F.3d 766, 787 (4th Cir. 2004).

Rather than identify any adverse action on which her race and sex discrimination claims are based, Plaintiff instead directs the Court to focus on the allegedly preferential treatment shown by BMW MC to others. (ECF No. 97 at 27 ("the adverse employment actions here are best understood in terms of preferential treatment"), 31 ("adverse employment actions here are inextricably intertwined with the issue of the preferential treatment").) Nowhere in Plaintiff's brief does she identify any significant change in her employment status that resulted from BMW MC's alleged preferential treatment of Corey Epps (race) or Scott Medley (sex).[6] Plaintiff's failure to do so is fatal to both her race and sex discrimination claims.

### III.   CONCLUSION

For the reasons set forth herein and in BMW MC's Memorandum, Defendant BMW MC respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment as a matter of law in favor of BMW MC on all of Plaintiff's causes of action.

Respectfully submitted this the 7th day of March, 2024.

By: *s/ Ellison F. McCoy*
Ellison F. McCoy (Fed. I.D. No. 6389)
ellison.mccoy@jacksonlewis.com
D. Randle Moody II (Fed. I.D. No. 7169)
randy.moody@jacksonlewis.com
Mallory H. Gantt (Fed. I.D. No. 13867)
mallory.gantt@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
(864) 232-7000

*ATTORNEYS FOR DEFENDANT
BMW MANUFACTURING CO., LLC*

---

[6] As set forth above and in BMW MC's Memorandum, Plaintiff has failed to prove the existence of any adverse employment action as to her national origin discrimination.