UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| KELLY DAWSEY, | ) | |
| | ) | |
| Plaintiff, | ) | CA 7:22-cv-3738-TMC-KFM |
| v. | ) | |
| | ) | |
| BAYERISCHE MOTOREN WERKE | ) | |
| AKTIENGESELLSCHAFT and BMW | ) | |
| MANUFACTURING CO., LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Bayerische Motoren Werke Aktiengelsellschaft ("BMW AG"), by and through its undersigned counsel, hereby submits this memorandum in support of it motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## INTRODUCTION

BMW AG is a German corporation and the ultimate corporate parent to over 200 direct and indirect subsidiaries throughout the world, including South Carolina-based BMW Manufacturing Co., LLC ("BMW MC"). Plaintiff, a former employee in the Human Resources department of BMW MC, voluntarily resigned from her employment with BMW MC in January 2022. Plaintiff was employed at all times by BMW MC, but nevertheless asserts identical discrimination claims against BMW AG as she does against BMW MC, all arising from *BMW MC's plan* to reassign her laterally to a new Department Manager position *at BMW MC*.

Plaintiff's claims against BMW AG survived dismissal under Rule 12(b)(2) because Plaintiff's allegations and affidavits, taken as true at the motion to dismiss stage, were deemed sufficient to allege a basis for exercising personal jurisdiction over BMW AG. Specifically,

Plaintiff was found, at that stage, to have "alleged facts plausibly support[ing] a claim that BMW AG was ***directly involved in and, in fact, controlled*** the HR decisions at issue in this case." (District Court Order, ECF. 90 at 9) (emphasis added).

Fact discovery has now closed, and Plaintiff's allegations of BMW AG's direction and control over the alleged personnel decisions about her position at BMW MC have been revealed for what they are – speculation directly at odds with the actual facts established by the testimony of those with firsthand personal knowledge. Those undisputed facts show that the contemplated personnel decisions at issue were directed and controlled by BMW MC personnel, including its President, Dr. Robert Engelhorn. No self-serving affidavit or citation to Plaintiff's own testimony can create a factual dispute sufficient to survive summary judgment on this dispositive issue. Because the undisputed facts show that BMW AG *did not* direct or control the personnel plans at issue, there is no basis for the continued exercise of personal jurisdiction over BMW AG, and summary judgment should be granted in favor of BMW AG.

Even if a basis for the exercise of personal jurisdiction over AG existed – and it does not – Plaintiff's claims fail for at least two additional independent reasons. First, Plaintiff cannot show that BMW AG was her employer such that BMW AG can be subject to Title VII and Section 1981 liability. Second, even assuming, *arguendo*, that Plaintiff's speculation about BMW AG directly controlling personnel decisions at BMW MC was true, *The Treaty of Friendship, Commerce, and Navigation between the United States of America and the Federal Republic of Germany* would bar Plaintiff's claim of national origin discrimination. Under the Treaty, BMW AG is entitled, without exposure to liability, to direct the employment of certain personnel at its US subsidiaries.

## STATEMENT OF THE CASE

Plaintiff filed this lawsuit on October 28, 2022. (ECF No. 1). Plaintiff filed an Amended Complaint on February 9, 2023. (ECF No. 20). Plaintiff asserts causes of action for national origin

discrimination, race discrimination, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq*. ("Title VII"). (ECF No. 20 at pp. 13-16). She also asserts a cause of action for race discrimination under 42 U.S.C. § 1981 ("Section 1981"). (ECF No. 20 at p. 15).

BMW AG filed a Motion to Dismiss for Lack of Personal Jurisdiction on March 6, 2023. (ECF 42). On June 21, 2023, the Magistrate Judge issued his Report denying BMW AG's Motion to Dismiss (ECF 65) (the "Magistrate's Report"). BMW AG timely filed objections, and on February 7, 2024, the District Court adopted the Magistrate's Report while clarifying the meaning of certain language in that Report. (ECF 90) (the "Order"). BMW AG answered Plaintiff's Amended Complaint on February 21, 2024. (ECF No. 96). The parties have completed fact discovery, and these claims are now ripe for summary judgment.

## STATEMENT OF FACTS[1]

### *BMW AG Does Not Control BMW MC's Operational and Personnel Decisions*

1.    BMW AG is a German corporation and indirect parent of BMW MC. (ECF 14-3, McCraw Decl. ¶ 6; ECF 14-2, Koepnick Decl. ¶¶ 5-6, 14-15). BMW MC is a separately organized limited liability corporation under Delaware law. (ECF 14-3, McCraw Decl. ¶ 4).

2.    BMW MC's financial accounts, books, and records are maintained separate and independent from those of BMW AG, and BMW MC, files its own tax returns regarding payroll taxes and property taxes. (*Id.* ¶¶ 6-7).

---

[1] References to the Statement of Facts are made as "SOF ¶ __". For purposes of this motion, any facts about which there is an evidentiary dispute have been construed in the light most favorable to Plaintiff. BMW AG reserves the right to challenge Plaintiff's allegations if summary judgment is denied in whole or in part.

3.      No member of BMW AG's Board of Management is a director, officer, or employee of BMW MC. (*Id.* ¶ 17). No member of BMW AG's Supervisory Board is a director, officer, or employee of BMW MC. (*Id.* ¶ 18).

4.      BMW MC is managed by its own independent management team, led by its President, currently Dr. Robert Engelhorn. (*Id.* ¶ 9). Dr. Engelhorn became President of BMW MC on September 1, 2021. (Petrasch Dep. 126:4-18).

5.      BMW MC's corporate structure includes multiple departments, each led by a Vice President. (ECF 14-3, McCraw Decl. ¶ 10). The BMW MC President and Vice Presidents are officers of BMW MC. (*Id.*).

6.      The Human Resources department (TX-6), led by the Vice President of Human Resources, is responsible for, among other things, hiring, promotion, demotion, discipline, and termination of MC personnel. (ECF 14-3, McCraw Decl. ¶ 13).

7.      As President of BMW MC, Dr. Engelhorn has authority to make all decisions related to the operations of BMW MC, including personnel decisions. (*Id.* ¶¶ 11, 15; ECF 14-2, Koepnick Decl. ¶ 15; Engelhorn Dep. 60:4-15). Although officials at BMW MC regularly communicate with officials at BMW AG, decision-making authority on matters that concern BMW MC resides with BMW MC. (ECF 14-3, McCraw Decl. ¶ 12).

*2016 Expat Guidelines*

8.      In January 2016, Plaintiff created "Expat Guidelines for Plant Spartanburg" at the direction of Mr. Johannes Trauth, then Vice President of Human Resources for BMW MC. (ECF 100-1 pp. 7-21; Pl. Dep. 191:14-193:9).

9.      Plaintiff never updated the document after its creation in January 2016. (Pl. Dep. 201:11-13). There is no mention of BMW AG in the document. (ECF 100-1 pp. 7-21).

*Plaintiff's Employment at BMW MC*

10.    Plaintiff was, at all times, an employee of BMW MC. She was hired by BMW MC, promoted by BMW MC, and decisions regarding her compensation and benefits were made by BMW MC. (Pl. Dep. 36:15-38:22, 302:13-303:4).

11.    When Plaintiff resigned from employment with BMW MC in January 2022, she submitted her resignation to her supervisor at BMW MC, not to anyone at BMW AG. (Pl. Dep. 302:13-303:4).

*BMW MC's Restructuring of Its Human Resources Department*

12.    In 2021, Christine Petrasch was the Vice President of HR at BMW MC. (Petrasch Dep. 8:20-9:3). Ms. Petrasch was scheduled to end her international assignment in Spartanburg and return to Germany at the end of 2021, so BMW MC needed to fill the role of Vice President of Human Resources. (Petrasch 126:4-18).

13.    In early September 2021, Dr. Engelhorn made the decision that Sherry McCraw, who at the time was the Vice President of Assembly at BMW MC, would become the next Vice President of HR at BMW MC. (Engelhorn Dep. 9:19-21, 59:2-9).

14.    In July 2021, while still working in Germany but after he was selected to become President of BMW MC, Dr. Engelhorn met Eva Burgmeier, then a department manager in the central Human Resources Department at BMW AG, who was interested in an international assignment. (Burgmeier Dep. 45:5-14, 46:20-47:1).

15.    On September 9, 2021, after Dr. Engelhorn was in his position as President of BMW MC, he had a teleconference meeting with Ms. Burgmeier. (Burgmeier Dep. 45:5-46:11). During that call, he told Ms. Burgmeier that there would be a Department Manager opening at BMW MC in early 2022 and asked if she was interested in taking an international assignment to

work at BMW MC. (Burgmeier Dep. 45:5-46:11). Dr. Engelhorn did not indicate which position she would fill in the BMW MC Human Resources Department. (Burgmeier Dep. 46:3-7).

16.     On September 23, 2021, Ms. Petrasch prepared a draft document outlining a proposed reorganization of the HR Department. (Pl. Dep. Ex. 34; Petrasch Dep. Ex. 1). According to that draft, Ms. Burgmeier would assume the TX-60 Department Manager role, and Plaintiff would move to Department Manager of TX-61 (Associate Relations).

17.     At the end of September 2021, Ms. Petrasch met with Dr. Engelhorn and Ms. McCraw, the incoming BMW MC Vice President of HR, to discuss the proposed reorganization. (Engelhorn Dep. 23:20-24:3; McCraw Dep. 15:24-16:9).

18.     During that meeting, Ms. McCraw expressed concerns with the proposal to move Plaintiff to the TX-61 Department Manager role. (McCraw Dep. 16:10-18:20). Ms. McCraw believed, based upon her experience working with Plaintiff, that the TX-64 Department Manager position was a better fit for Plaintiff. (McCraw Dep. 16:14-17:1).

19.     Ms. McCraw recommended that Corey Epps remain in the TX-61 Department Manager position and that Plaintiff be moved to the TX-64 Department Manager role. (McCraw Dep. 16:2-5). Dr. Engelhorn agreed with Ms. McCraw's recommendation. (Engelhorn Dep. 23:13-19, 66:15-67:18).

20.     On October 1, 2021, Ms. Petrasch prepared an updated chart reflecting that Ms. Burgmeier would assume the TX-60 Department Manager role and Plaintiff would move to Department Manager of TX-64. (Pl. Dep. Ex. 36; Petrasch Dep. 18:9-17, Ex. 2).

21.     On January 3, 2022, Plaintiff resigned from employment at BMW MC. (Pl. Dep. 300:11-301:20). At the time Plaintiff left BMW MC on January 14, 2022, she was still in the TX-60 Department Manager position. (Pl. Dep. 313:16-20).

22.    The plans to bring Eva Burgmeier to BMW MC on an international assignment, to place her in the TX-60 Department Manager role, and to laterally transfer Plaintiff to the TX-64 Department Manager role, were all prepared by BMW MC personnel. (Engelhorn Dep. 23:13-24:3, 66:15-67:18; McCraw Dep. 15:24-17:1; Petrasch Dep. 18:9-17).

## ARGUMENT

## I.    STANDARD OF REVIEW

The Supreme Court has held that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" S.*C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959, 962 (D.S.C. 2018) (quoting Fed. R. Civ. P. 56(a)). In deciding a summary judgment motion, one must view the facts and inferences in the light most favorable to the non-moving party. *See Matshushita Elect. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 579-88 (1986). The moving party has the burden to establish that, based on the pleadings, affidavits, and discovery on file, it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Celotex Corp.*, 477 U.S. at 324; *Ruffin v. Shaw Indus.*, 149 F.3d 294, 301 (4th Cir. 1998).

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Turner v. BFI Waste Servs.*, 268 F. Supp. 3d 831, 835 (D.S.C. 2017) (citing *Anderson*, 477 U.S. at 252; *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997)). "[T]o defeat summary judgment, the

7

nonmoving party must identify an error of law or a genuine issue of disputed material fact." *Pruitt*, 318 F. Supp. 3d at 962 (citing Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 256). The non-moving party must show more than some "metaphysical doubt" that genuine and material factual issues exist. *See Matsushita*, 475 U.S. at 586. The "mere existence of a scintilla" of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the non-moving party must show that, upon the record taken as a whole, a rational trier of fact could find for the non-moving party. *Id.* at 248-49.

For the reasons set forth below, the undisputed record evidence and controlling law establish that BMW AG is entitled to judgment as a matter of law on Plaintiff's claims.

## II.     <u>THE COURT LACKS PERSONAL JURISDICTION OVER BMW AG.</u>

Determining whether a court's jurisdiction over a defendant is proper requires "(1) determining if the state's long-arm statute confers jurisdiction and (2) whether the exercise of jurisdiction, if authorized [by the long-arm statute], is consistent with the Due Process requirements of the Fourteenth Amendment." *Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 109 (D.S.C. 2009) (citing *Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 213 (4th Cir. 2002)). Because South Carolina's long-arm statute is coextensive with the full reach of due process, the statutory inquiry necessarily merges with the constitutional inquiry. *See Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 657 n.2 (4th Cir. 1989); *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997).

"The due process test for personal jurisdiction involves two components: minimum contacts and fairness." *Duong*, 2019 WL 13109647, at *3.

> Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). Due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails

itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," *World-Wide Volkswagen*, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. *See id.* at 292.

*Id.* at \*3; *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).

Plaintiff has not alleged that AG is subject to general personal jurisdiction in South Carolina Thus, the issue is only whether the Court can exercise specific personal jurisdiction over AG – that is, jurisdiction dependent upon AG's "suit-related conduct [creating] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state." *Duong*, 2019 WL 13109647, at \*3 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Courts in the Fourth Circuit apply a three-part test when evaluating whether to exercise personal jurisdiction over a foreign defendant: "(1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally 'reasonable.'" *Id.* (citations omitted); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

A.    <u>No Basis Exists for the Exercise of Specific Jurisdiction Over AG.</u>

Prior to discovery, at the motion to dismiss stage, Plaintiff was only required to make a *prima facie* showing of personal jurisdiction, and the Court was required to "construe the pleadings, affidavits and other supporting documents presented to the court in the light most favorable to plaintiff." Order at 3-4, 12; *Cambridge Towel Co., Inc. v. Zimmer Am. Corp.*, No.

7:14-04089, 2015 WL 6894300, at *2 (D.S.C. Nov. 9, 2015) (citation omitted). In denying AG's

Motion to Dismiss for Lack of Personal Jurisdiction, the District Court emphasized that the Court

had the discretion to "deny the motion to dismiss for lack of personal jurisdiction without prejudice

and afford the moving party 'the right to re-raise its jurisdictional challenges at summary judgment

should discovery reveal that the Court does not, in fact, have personal jurisdiction.'" Order at 12-

13 (quoting *SC Advisors 7, LLC v. Rudnick*, No. 19-cv-0716, 2020 WL 4227469, at *4 (W.D.N.C.

July 23, 2020). Accepting Plaintiff's allegations as true, the District Court did exactly that:

> Accordingly, BMW AG's Motion to Dismiss (ECF No. 42 is hereby **DENIED**
> ***without prejudice*** to BMW AG's right to re-assert its challenge to personal
> jurisdiction at the summary judgment stage should discovery establish as a matter
> of law that the Court does not enjoy personal jurisdiction.

Order at 13 (emphasis in original).

Fact discovery has now closed, and BMW AG re-raises its jurisdictional challenges as the

discovery record reveals that the Court does not, in fact, have personal jurisdiction over BMW

AG. . BMW AG, as the movant, "bears the initial burden of demonstrating that summary judgment

is appropriate." *Bowers v. Univ. of S.C.*, No. 20-4486-MGL-KDW, 2023 WL 5756321, at *1

(D.S.C. July 6, 2023) (citation omitted). As set for the below, the undisputed facts establish that

BMW AG has met its burden. The burden thus shifts to Plaintiff to "set forth specific facts showing

that there is a genuine issue for trial," a burden that the Plaintiff cannot meet. *Id.*

Plaintiff's claims survived Rule 12(b)(2) dismissal based on Plaintiff's *allegation* that AG

"was directly involved in and, in fact, controlled the HR decisions at issue in this case," and more

specifically, "directed the removal of Plaintiff from her position in the forum state based on

national origin, and, therefore, made the decision giving rise to this action." Order at 9-11. At

summary judgment, Plaintiff can no longer rely on these unsupported allegations:

> However, when a defendant asserts that the court lacks personal jurisdiction in a
> summary judgment motion after the close of discovery, as [defendant] has done

> here, ***the plaintiff must support its prima facie showing with an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant***. If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought. Summary judgment is appropriate when the pleadings, depositions, affidavits, and discovery on file ***show there is no genuine issue of material fact such that the moving party must prevail as a matter of law***.

2015 WL 6894300, at *2 (emphasis added).

Here, the undisputed facts show that BMW MC controlled the HR reorganization at issue in this case, and it was the decision of BMW MC to propose to move Plaintiff to a new position. While BMW MC updated and at times aligned with BMW AG personnel on these personnel issues – which does not create a basis for the exercise of personal jurisdiction over a foreign parent[2] – there is no evidence that BMW AG directed or controlled these decisions. Nor can Plaintiff's affidavits and testimony, based on speculation and hearsay, create a disputed issue of fact as to this dispositive issue.

As set forth below, Plaintiff cannot meet her burden on any one of the specific personal jurisdiction elements, let alone all three as is necessary for the exercise of personal jurisdiction. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Because there is no basis for exercising personal jurisdiction over BMW AG, BMW AG respectfully requests that summary judgment be entered on all claims.[3]

---

[2] *See Gray v. Riso Kagaku Corporation*, 82 F.3d 410, 1996 WL 181488, at *3 (4th Cir. 1996) (subsidiary seeking approval from parent before hiring officials does not establish personal jurisdiction over parent).

[3] To the extent the Court determines, because it lacks personal jurisdiction over BMW AG, that entry of dismissal of Plaintiff's claims is more appropriate than entering judgment, BMW AG respectfully requests that the Court dismiss all claims against BMW AG because the undisputed facts establish, as a matter of law, that the Court has no basis to exercise personal jurisdiction over BMW AG.

B.     **BMW AG Has Not Purposefully Availed Itself Of South Carolina Sufficient to Give Rise to Personal Jurisdiction.**

"The purposeful availment inquiry is grounded on the traditional due process concept of 'minimum contacts,' which itself is based on the premise that 'a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there.'" *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014) (citations omitted). Courts in this Circuit look to several nonexclusive factors to determine whether a defendant has purposefully availed itself of a forum, including:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*Id.* at 560 (quoting *Consulting Eng'r Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

It is undisputed that AG "does not have offices or agents, own property, or have a license or registration to conduct business in South Carolina." Order at 6. And Plaintiff has repeatedly disclaimed reliance on any theory of alter ego, agency, or veil piercing whereby a domestic subsidiary's contacts may be imputed to a foreign parent in exceptional circumstances. Magistrate's Report at 11; ECF No. 45 ("Plaintiff is not suing BMW on any vicarious liability theory, and the Court should not be confused by BMW AG's efforts to discuss theories like piercing the corporate veil and alter ego.").

Instead, the District Court held that Plaintiff's allegations of purposeful availment were sufficient to allege a *prima facie* showing of personal jurisdiction over BMW AG based on BMW AG's alleged *direct involvement and control over* the specific decisions about Plaintiff's

12

employment. Critically, the District Court clarified that BMW AG's alleged "substantial collaboration with BMW MC" – relied on in the Magistrate's Report to assert to personal jurisdiction over BMW AG – meant more than the type of supervisory conduct and interactions that are the hallmark of parent-subsidiary relationships, and instead should be construed "to mean BMW AG was ***directly involved in the alleged decision to remove Plaintiff from her position based on nationality***." Order at 9-10.[4]

The District Court repeatedly emphasized that it was relying on Plaintiff's allegations that AG was directly involved in and controlled the decision to remove Plaintiff from her employment as a basis, at the motion to dismiss stage, for the exercise of personal jurisdiction over BMW AG:

- "Indeed, the Report contains numerous facts reflecting ***BMW AG's direct involvement, participation and control*** in the alleged actions that form the basis for Plaintiff's claims."

- "As noted previously, the Magistrate Judge found that the alleged facts plausibly supported a claim that ***BMW AG was directly involved in and, in fact, controlled the HR decisions at issue in this case***. The Court reads the Report's use of the phrase 'substantial collaboration' to mean ***BMW AG was directly involved*** in the alleged decision to remove Plaintiff from her position based on nationality."

---

[4] To have held otherwise would have violated the Due Process Clause of the Constitution and personal jurisdiction jurisprudence that permits "out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation omitted). "[I]f the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent and is not acting merely as one of its departments, personal jurisdiction over the parent corporation may not be acquired simply on the basis of the local activities of the subsidiary company." Wright & Miller § 1069.4; *see also Gray v. Riso Kagaku Corp.*, 82 F.3d 410 (4th Cir. 1996) ("Gray argues that Riso Kagaku had the requisite minimum contacts with South Carolina because Riso Kagaku's wholly owned subsidiaries marketed Riso Kagaku's products in South Carolina. But the mere fact that Riso Kagaku's subsidiaries do business in South Carolina does not confer personal jurisdiction over Riso Kagaku."); *Watters v. Kirk*, No. 12-338, 2012 WL 831452, at *3 (D.S.C. Mar. 12, 2012) ("Neither [defendant's] status as parent corporation nor its administrative role in procuring insurance for its subsidiary are sufficient to support the assertion of personal jurisdiction.").

- "[A]s alleged by Plaintiff, ***BMW AG may have been the ultimate decisionmaker, orchestrating the removal of Plaintiff from her position*** in the Greer, S.C. plant. . . ."

- "According to the allegations, BMW AG substantially engaged with the HR department for BMW MC, a forum resident, ***directed the removal of Plaintiff from her position*** in the forum state based on national origin, and, therefore, ***made the decision giving rise to this action***."

Order at 9-11 (emphasis added).[5]

While these *allegations* were taken at face value – as was required at that time –discovery has now closed, and the record is devoid of support for Plaintiff's speculative allegations that BMW AG directly controlled the BMW MC personnel decisions at issue, including the proposed lateral move of Plaintiff to the TX-64 position. Instead, the undisputed facts show that BMW MC, not BMW AG, directed and controlled the personnel plans at issue in this case. *See* SOF ¶¶ 12-22. Specifically, BMW MC President Dr. Engelhorn, and BMW MC leadership, made the decisions to bring Ms. Burgmeier to BMW MC on an international assignment, to place her in the TX-60 Department Manager role, and approved the plan to transfer Plaintiff laterally to the TX-64 Department Manager role. *Id.* While the evidence shows that BMW MC leadership, at times, informed, updated, and aligned with BMW AG on personnel decisions at BMW MC, these are the hallmarks of a parent company engaging in supervisory conduct that do not give rise to personal jurisdiction. *See supra* n.4; *see also* Order at 10.

The burden thus shifts to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial" as to whether "BMW AG controlled the HR decisions at issue in this case." *Bowers*,

---

[5] Relying on Plaintiff's allegations that she was removed from her position, the Court's Order denying BMW AG's Rule 12(b)(2) motion repeatedly cites BMW AG's supposed involvement in this "removal." Yet Plaintiff has conceded that she was never removed from her position because she resigned before BMW MC took any of the actions about which she complains. (Pl. Dep. 313:16-20). The factual linchpin of Plaintiff's jurisdictional argument is now absent.

2023 WL 5756321, at a*1; Order 9. Plaintiff cannot meet her burden, and any attempt to rely on her own testimony and affidavits, or the 2016 Expat Guidelines, will fail.

### 1.     Plaintiff Cannot Create a Disputed Issue of Fact By Relying on Her Own Testimony, Affidavits, and Hearsay Evidence.

In denying BMW AG's Motion to Dismiss, the Magistrate Judge and the District Court relied heavily on Plaintiff's allegations about what Ms. Petrasch, then Vice President of HR of BMW MC, purportedly told Plaintiff in September 2021 about the decision to move her to the TX-64 position. *See* Order at 3; Magistrate's Report at 17; Am. Compl. ¶¶ 44-45; Dawsey Decl. ¶ 3. Those speculative and hearsay allegations – whether in the form of an affidavit or deposition testimony – no longer suffice. Plaintiff does not have independent personal knowledge about who made the proposal to move her to the TX-64 position, and the undisputed facts show that BMW MC Personnel, including Dr. Engelhorn controlled and directed the personnel planning. SOF ¶¶ 12-22. No witness other than Plaintiff has testified to the contrary (including Ms. Petrasch), nor is Plaintiff's speculation supported by any documentary evidence. Lacking independent personal knowledge, Plaintiff cannot create disputed issues of fact about who directed and controlled the personnel decision at issue by citing to her own affidavits and deposition testimony:

> A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore,* 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). "Rule 56(e) [ ] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

*Anderson v. United States*, No. 12-3203-TMC-KDW, 2015 WL 9918406, at *8 (D.S.C. Oct. 9, 2015), *report and recommendation adopted*, No. 12-3203-TMC, 2016 WL 320076 (D.S.C. Jan. 27, 2016).[6]

Moreover, Plaintiff's testimony about what Ms. Petrasch purportedly told her is inadmissible hearsay that cannot defeat summary judgment:

> In addition, several of the statements in Plaintiff's affidavit are inadmissible hearsay and cannot be used as evidentiary support to defeat a summary judgment motion. . . . More specifically, Plaintiff attempts to introduce out of court statements supposedly made to her by [her colleagues] through her affidavit. Plaintiff offers certain of these out of court statements as true and does not point to an exception to the hearsay rule that would allow these statements as evidence admissible at trial. As such, the statements are inadmissible hearsay that cannot be considered by the undersigned in ruling on Defendant's Motion for Summary Judgment.

*Colebrooke v. T-Mobile USA, Inc.*, No. 20-00397-RMG-MGB, 2021 WL 2813712, at *2–3 (D.S.C. May 26, 2021) (citations omitted), *report and recommendation adopted*, No. 20-00397-RMG, 2021 WL 2389778 (D.S.C. June 11, 2021).[7]

---

[6] *See also Bowers*, 2023 WL 5756321, at *1; *Reed v. Cold Creek Nurseries, LLC*, No. 21-3039-DCC-KDW, 2023 WL 4054545, at *2 (D.S.C. May 4, 2023), *report and recommendation adopted*, No. 21-03039-DCC, 2023 WL 4053054 (D.S.C. June 16, 2023) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion.") (quoting *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995)); *Ellis v. Harrelson Nissan of S.C., LLC*, No. 15-3322-MBS-KDW, 2017 WL 9286971, at *20 (D.S.C. May 22, 2017) (citations omitted), *report and recommendation adopted*, No. 15-3322-MBS, 2017 WL 4349212 (D.S.C. Sept. 29, 2017).

[7] Ms. Petrasch's statements are not those of a party opponent – she was an employee of BMW MC, not BMW AG, when she made the statements. Fed. R. Evid. 802(d)(2). Nor is there evidence of an agency relationship required under Rule 801(d)(2)(D). *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1247 (E.D. Pa. 1980), *rev'd on other grounds*, 475 U.S. 574 (1986) ("The issue to be considered is whether, assuming that a statement could come into evidence as an admission against the subsidiary, it may likewise be admitted into evidence against the parent corporation. While there is no precedent precisely on point, we think the answer is clear: the proponent of the evidence must show either that the subsidiary had authority to make a statement concerning the subject, under Rule 801(d)(2)(C), or that the subsidiary acted as the parent's agent and the statement concerned a matter within the scope of its agency, under Rule 801(d)(2)(D). Under either subsection of the rule, the proponent of the evidence must establish the existence of an agency relationship between the parent and the subsidiary under the applicable principles of agency law.").

## 2.     The 2016 Expat Guidelines Do Not Create a Disputed Issue of Fact.

A central allegation that the District Court considered relevant in denying BMW AG's Motion to Dismiss for Lack of Personal Jurisdiction, was a purported BMW AG "rule" that "if there is a domestic Vice President, there must be one German national next in line 'to' serve as a bridge to Germany." Order 3 (citing ECF 20 at 9). The only witness to testify as to the existence of such a rule is Plaintiff herself, and the only purported documentation of such a rule is a document titled "Expat Guidelines for Plant Spartanburg" that Plaintiff herself drafted in January 2016 at the direction of Mr. Johannes Trauth, then Vice President of Human Resources for BMW MC. SOF ¶¶ 8-9. Plaintiff herself testified that she was not aware of any other written rule, and Plaintiff testified that she never updated the document after its creation in January 2016. *Id.*

Even putting aside that the Expat Guidelines were drafted by Plaintiff five years before the events at issue, and are the only written evidence of a purported "rule," they suffer from a more fundamental problem for purposes of this motion – the document does not evidence any direct control or involvement by BMW AG in BMW MC's personnel decisions because it is, as Plaintiff's testimony confirms, a *BMW MC guideline*. There is no mention of BMW AG in the document, nor is there any testimony – including from Plaintiff – claiming that BMW AG was involved in any way with creating or implementing the document.

\* \* \*

Because Plaintiff cannot prevail on the first prong of the specific personal jurisdiction analysis, the inquiry should end there. *See, e.g.*, *Berry v. Secure Relationship, LLC*, No. 22-02815, 2022 WL 16720115, at \*6 (D.S.C. Nov. 4, 2022) (jurisdictional inquiry ends absent a showing that

17

defendant engaged in forum-state activities rising to the level of showing purposeful availment).

Even if the inquiry continued, Plaintiff also fails on the second and third prongs.

**C.    The Undisputed Facts Show that Plaintiff's Claims Do Not Arise From Any Activity BMW AG Has Directed to South Carolina.**

Plaintiff's claims do not "arise out of" BMW AG's "forum-related activities." *Duong*, 2019 WL 13109647, at *3. It is undisputed that Plaintiff was an employee of BMW MC, and that she voluntarily resigned from her employment at BMW MC. The "possible demotion" that Plaintiff asserts gave rise to her voluntary resignation relates to a proposed reorganization prepared by BMW MC personnel, including the assignment of Ms. McCraw to be the Vice President of Human Resources at BMW MC, the hiring of Ms. Burgmeier in Plaintiff's prior position at BMW MC, and the plan to move Plaintiff to the TX-64 position at BMW MC. SOF ¶¶ 12-22.[8] Because Plaintiff's claims all relate to and arise from her employment at BMW MC, and personnel decisions made by BMW MC, the second prong of the specific personal jurisdiction test is not met, and summary judgment should be granted for BMW AG.

**D.    The Exercise of Personal Jurisdiction over BMW AG Is Not Constitutionally Reasonable.**

In determining whether jurisdiction is constitutionally reasonable, courts evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in

---

[8] Even if Plaintiff could create a disputed issue of fact as to whether BMW AG was responsible for the purported chain of events that ultimately led to Plaintiff voluntarily resigning from BMW MC – which she cannot – the fact that a foreign parent is involved in employment-related plans of its subsidiary, including decisions concerning the officers of its subsidiaries, is not sufficient to give rise to personal jurisdiction over the foreign parent. *See Gray v. Riso Kagaku Corporation*, 82 F.3d 410, 1996 WL 181488, at *3 (4th Cir. 1996) (subsidiary seeking approval from parent before hiring officials does not meet plaintiff's burden of establishing personal jurisdiction over parent); *see also* Order at 9-11 (stating supervisory conduct of a foreign parent is insufficient to establish purposeful availment).

18

obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Science Bd. Of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477).

Here, the burden on AG – a German company, with no domestic presence – being forced to litigate in South Carolina is manifest and significant. That burden is especially acute and evident here, where BMW AG has been compelled to remain in this case up until this point – including participating fully in fact discovery – on the basis of Plaintiff's speculation that BMW AG directly controlled the proposal to move her to the TX-64 position. While the Court was restricted by the requirement that Plaintiff's allegations be presumed true at the motion to dismiss stage, that is no longer the case, and Plaintiff's speculation has been thoroughly discredited. BMW AG should no longer be compelled to bear the burden of litigating this dispute between a South Carolina resident and her South Carolina based former employer. There is no judicial system interest served by such a result, especially where the exercise of jurisdiction over BMW AG offends principles of international comity, a consideration that must be addressed in these circumstances. *See Daimler AG v. Bauman*, 571 U.S. 117, 141–42 (2014) (noting the "risks to international comity [posed by an] expansive view" of jurisdiction allowing a foreign corporation to be haled into court based on the actions of its subsidiary). Finally, Plaintiff does not and cannot allege that she cannot obtain the relief she seeks from her former employer, BMW MC, a company with over 8,000 employees in South Carolina. McCraw Decl. ¶ 8.

* * *

BMW AG respectfully requests that the Court conclude, based on the undisputed facts, that personal jurisdiction does not exist over BMW AG in this matter, and grant summary judgment in favor of BMW AG.

### III.  BMW AG WAS NOT PLAINTIFF'S EMPLOYER AND CANNOT BE HELD LIABLE FOR DISCRIMINATION UNDER TITLE VII OR SECTION 1981.

Plaintiff was employed by BMW MC at all times relevant to this matter. SOF ¶ 10. Nevertheless, Plaintiff alleges that *BMW AG* discriminated against her on the basis of national origin, race, and sex in violation of Title VII fand Section 1981. (ECF No. 20 at pp. 13-16). For BMW AG to be liable for the employment-related actions of BMW MC, Plaintiff must establish either that BMW AG exercised excessive control over BMW MC or that BMW AG and BMW MC are an integrated employer. Because the "extraordinary circumstances" under which a parent company can be held liable for the discriminatory acts of a subsidiary do not exist in this case, BMW AG is entitled to summary judgment.

### A.  BMW AG Does Not Exercise Excessive Control Over BMW MC.

Under Title VII, an "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). "Although a direct employment relationship provides the usual basis for liability under the civil rights statutes, the ambiguity of the term "employer" in civil rights statutes has driven courts to fashion a variety of tests by which a defendant that does not directly employ the plaintiff may still be considered an employer under those statutes." *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999). However, "when a subsidiary hires employee, there is a strong presumption that the subsidiary, not the parent company, is the employer." *Johnson v. Flowers Indus.*, Inc., 814 F.2d 978, 982 (4th Cir. 1987). The Fourth Circuit has ruled that in the employment context, the parent

company can be considered the employer of the subsidiary's workers *only* if it "control[s] the employment practices and decision of the subsidiary" or "so dominate[s] the subsidiary's operations that the parent and the subsidiary are one entity and thus one employer." *Id*. at 981.

Here, BMW AG does not control the employment practices and decisions of BMW MC – the President of BMW MC has the authority to make all decisions related to the operations of BMW MC, including personnel decisions. SOF ¶ 7. Although officials at BMW MC regularly communicate with officials at BMW AG, decision-making authority on matters that concern BMW MC resides with BMW MC. *Id.* Specific to this case, BMW AG played no role in any of the employment decisions related to Plaintiff. SOF ¶¶ 12-22. Plaintiff was hired by BMW MC, decisions regarding her compensation and benefits were made by BMW MC, and she turned in her resignation to BMW MC. SOF ¶¶ 10-11. Further, the decisions to bring Eva Burgmeier to BMW MC on an international assignment, to place her in the TX-60 Department Manager role, and the proposal to transfer Plaintiff laterally to the TX-64 Department Manager role, were all made by individuals at BMW MC. SOF ¶¶ 12-22. Based upon these undisputed facts, BMW AG did not control the employment practices and decisions of BMW MC to the extraordinary extent required to find that BMW AG was the "employer" of Plaintiff.

In *Johnson*, the Fourth Circuit further stated that if the parent company dominates the subsidiary's operations, the parent and subsidiary could be considered one entity and thus one employer. *Johnson,* 814 F.2d at 981. "For example, the subsidiary may be highly integrated with the parent's business operations, as evidenced by the commingling of funds and assets, the use of the same work force and business offices for both corporations, and the severe undercapitalization of the subsidiary." *Id*. In *Johnson*, the 4th Circuit made clear that a parent company engaging in

"general oversight" is "characteristic of a parent-subsidiary relationship" that does not create a single employer, including where:

> [Subsidiary] management is responsible for the daily decisions in such vital areas as production, distribution, marketing, and advertising. In addition, [Subsidiary] has a separate board of directors and corporate officers, keeps its own business records, maintains separate bank accounts, and files independent tax returns. . . .

*Id*. at 981-82 (citation omitted).

As in *Johnson*, BMW AG does not dominate the operations of BMW MC to the extent required to find that BMW AG was Plaintiff's employer. Among other evidence:

- BMW MC is a separately organized limited liability corporation under Delaware law.

- BMW MC financial accounts, books, and records are maintained separate and independent from those of BMW AG.

- BMW MC files its own tax returns regarding payroll taxes and property taxes.

- BMW MC's income tax returns are filed in consolidation with BMW (US) Holding Corporation, not with BMW AG.

- BMW MC is managed by its own independent management team, led by its President. BMW MC's corporate structure includes multiple departments, each led by a Vice President. The BMW MC President and Vice Presidents are the officers of BMW MC.

- No member of BMW AG's Board of Management is a director, officer, or employee of BMW MC.

- No member of BMW AG's Supervisory Board is a director, officer, or employee of BMW MC.

SOF ¶¶ 1-7.

In this case, just as in *Johnson*, the record reveals that there is nothing extraordinary about the parent-subsidiary relationship between BMW AG and BMW MC. While BMW AG provides oversight and funding to BMW MC, there is no evidence that BMW AG "dominates" the operations of BMW MC. Accordingly, Plaintiff cannot establish that BMW AG was her employer for liability purposes under Title VII and Section 1981.

**B.    BMW AG and BMW MC Are Not an Integrated Employer.**

In rare instances, parent companies and subsidiaries may both be held liable under Title VII when they are an integrated enterprise or integrated employer. Companies are integrated enterprises when they are "so interrelated that they constitute a single employer." *Hukill*, 192 F.3d at 442. When determining whether companies are an integrated employer, courts consider the following factors: (1) common management; (2) interrelation of operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. *Id*. While no single element is dispositive, the most critical factor is control of labor relations. *Id*. (citing *Schweitzer v. Advanced Telemarketing Corp*., 104 F. 3d 761, 764 (5th Cir. 1997)). The record does not support a finding that BMW AG and BMW MC are an integrated employer.

**1.    BMW AG and BMW MC Do Not Have Common Management.**

The Fourth Circuit has held that a parent company and its subsidiary have common management when there is overlap in the management that handles the day-to-day operations of each company, as well as overlap in officers, directors, and personnel managers. *See Hukill*, 192 F.3d at 443. Courts typically find common management in cases when there is a common president or officer between the companies who has day-to-day control of both operations or where the companies have identical officers and directors. *Hukill*, 192 F.3d at 443 (citing *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987). That is not the case here. BMW MC has its own President and Vice Presidents, and there is no overlap between the officers of BMW MC and the Board of Management and Supervisory Board at BMW AG. SOF ¶¶ 3-5. The President of BMW MC has decision-making authority over all operational matters pertaining to BMW MC, and personnel matters at BMW MC are handled by the HR Department at BMW MC, which is managed by the Vice President of HR, a BMW MC official. SOF ¶¶ 6-7.

23

### 2.    BMW AG and BMW MC Do Not Have Interrelated Operations.

The second factor of the integrated employer test requires the Court to evaluate whether there is an interrelation of operations between the two companies. *Hukill*, 192 F.3d 437 at 442. To establish this element, there must be evidence that BMW AG dominated the operations of BMW MC. *See Wauben v. Protego (USA), Inc.*, No.: 2:05-2780-PMD-RSC, 2007 U.S. Dist. LEXIS 17319, at \*23-25 (D.S.C. Mar. 9, 2007) (citing *Harris v. Palmetto Tile, Inc.*, 835 F. Supp. 263, 268 (D.S.C. 1993)). There is no evidence in the record to support a finding that BMW AG dominates the operations of BMW MC. Although BMW AG provides oversight and funding to BMW MC consistent with a normal parent-subsidiary relationship, BMW MC is separately incorporated, maintains its own accounting records and bank accounts, has its own facilities, and has its own officers that are independent from BMW AG, including the BMW MC President who has decision making-making authority over operational issues at BMW MC. SOF ¶¶ 1-7. Such evidence does not support a finding that the operations of BMW AG and BMW MC are so interrelated that they should be considered a single employer. *Wauben* at \*22-23 (finding no interrelation of operations between a German parent corporation and South Carolina subsidiary where the companies maintained separate corporate identities, bank accounts, accounting records, and infrastructure).

### 3.    BMW AG and BMW MC Do Not Have Centralized Control of Labor Relations.

The third, and most significant, factor of the integrated employer test is centralized control of labor relations. *Hukill*, 192 F.3d at 442. To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1363 (10th Cir. 1993) (citations omitted). The critical question is, "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Trevino*

24

*v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

Here, Dr. Engelhorn, President of BMW MC, has authority to make all decisions related to the operations of BMW MC, including personnel decisions. SOF ¶ 7. Employment matters at BMW MC are handled by the BMW MC's own HR Department, which is managed by the Vice President of HR, a BMW MC employee. SOF ¶ 6. There is no evidence in the record to establish that BMW AG controls any of the day-to-day employment decisions at BMW MC. Moreover, as to the employment decisions related to Plaintiff, she was hired by BMW MC, promoted by BMW MC, decisions regarding her compensation and benefits were made by BMW MC, and when she resigned, she submitted her resignation letter to BMW MC. SOF ¶¶ 10-11. Finally, the plans about which Plaintiff complains in this case, all of which related to the restructuring of the HR Department in the fall of 2022, were decided by officers of BMW MC. SOF ¶¶ 12-22.

### 4.      BMW AG Does Not Financially Control BMW MC.

The final factor in the integrated employer test is the degree of common ownership and financial control between the two entities. *Hukill*, 192 F.3d at 442. The existence of a parent-subsidiary relationship, as here, is not enough to impose liability on the parent. *Id. at* 444 (determining that common ownership was not enough to establish that parent and subsidiaries companies are an integrated employer).

In *Wauben,* District Judge Duffy addressed this issue in a similar case where the plaintiff argued that the parent German corporation and subsidiary South Carolina corporation were integrated employers. *Wauben* at *26-27. In finding that the two entities were not integrated employers, Judge Duffy held:

> The last factor is common ownership or financial control. Although [Parent] owned [Subsidiary], there is no evidence that [Parent] financially controlled [Subsidiary]. On the contrary, [Subsidiary] had its own bank accounts and accounting books, and it filed its own tax returns in the United States. As the Magistrate Judge noted, "[t]he fact of a parent-subsidiary relationship . . . is not sufficient, as a matter of

25

law, to impute liability to the parent for the alleged discriminatory actions of its subsidiary against that subsidiary's employees."

*Id.* (citations omitted). As in *Wauben*, BMW MC is separately incorporated, maintains its own bank accounts and accounting records, and files its own tax returns. SOF ¶ 2. There is no evidence in the record that BMW AG exercises financial control over BMW MC outside of the typical control exercised in a parent-subsidiary relationship. Therefore, Plaintiff cannot establish that BMW MC and BMW AG are integrated employers.[9]

## IV.    UNDER PLAINTIFF'S OWN THEORY, HER NATIONAL ORIGIN CLAIM WOULD STILL BE BARRED BY INTERNATIONAL TREATY.

In order to exercise personal jurisdiction over BMW AG, the Court would need to hold that the undisputed facts show that BMW AG directly controlled the personnel decisions at issue in this case, or that there is a disputed issue of material fact as to whether that is the case. Order at 9-11. While there is no evidence or law to support either result (*see supra* Part II), even if there were, Plaintiff's claims would be separately barred by the *Treaty of Friendship, Commerce, and Navigation between the United States of America and the Federal Republic of Germany*, signed on October 29, 1954, 7 UST 1839, TIAS 3593 (the "FCN Treaty"). This post-war treaty, like many others of that time, was ratified to promote commerce between nations. Specifically, the FCN Treaty mandates the freedom of commerce, and specifies that foreign companies who have established an American corporate subsidiary may "engage, within the territories of the other Party, accountants and other technical experts, executive personnel, attorneys, agents and other

---

[9] Plaintiff has brought identical claims against BMW MC and BMW AG. Should the Court determine that it has personal jurisdiction over BMW AG, *and* that BMW AG is Plaintiff's employer, the claims against BMW AG separately fail for the reasons set forth in BMW MC's summary judgment motion, which has been fully briefed. (ECF No. 92 et seq.). If the Court grants BMW MC's Summary Judgment Motion, judgment should enter for BMW AG on the same grounds. BMW AG accordingly incorporates by reference the BMW Summary Judgment Motion and requests entry of judgment on those additional grounds.

specialists *of their choice*." *Id.* § VIII(1) (emphasis added); *see also Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 934 (7th Cir. 1997) ("The legislative history of the post-war treaties suggests that both parties deemed the right to utilize the services of their own nationals in *managerial, technical, and confidential capacities* to be critical.") (emphasis added, citation omitted).

Without admitting and specifically denying that BMW AG dictated the placement decision of Ms. Burgmeier in the TX-60 position, and the plan to move Plaintiff to the TX-64 position, if there were any evidence upon which the Court could determine that BMW AG directed those decisions, BMW AG is protected from liability by the FCN Treaty.

Under the FCN and similar treaties, a foreign parent corporation is free to discriminate on the basis of citizenship where it places or directs the placement of personnel at its US subsidiary. *See Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185–89, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982); *Weeks v. Samsung Heavy Industries, Co., Ltd.*, 126 F.3d 926 (7th Cir. 1997) (affirming summary judgment dismissing racial and national origin discrimination claims allegedly violating Title VII). If BMW AG could be found to have directed the relevant personnel decisions at BMW MC – which it did not – the same result should hold and summary judgement should be granted because Plaintiff's claims are barred by the FCN Treaty.

WHEREFORE, Defendant BMW AG respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of BMW AG on all of Plaintiff's causes of action.

Dated: March 8, 2024

Respectfully submitted,

*/s/ Kurt M. Rozelsky*

Kurt M. Rozelsky, Bar No. 6299
SPENCER FANE LLP
27 Cleveland St., Suite 201
P.O. Box 294 (29602-0294)
Greenville, SC 29601
Phone: 864.695.5202
Fax: 864.695.5201
Email: krozelsky@spencerfane.com

Daniel S. Savrin (admitted *pro hac vice*)
Nathaniel P. Bruhn (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Phone:  1.617.951.8674
        1.617.951.8651
Fax: 1.617.428.6310
Email: daniel.savrin@morganlewis.com
        nathaniel.bruhn@morganlewis.com

*Counsel for Defendant*
*Bayerische Motoren Werke Aktiengesellschaft*