## No. 3943

——

## UNITED STATES OF AMERICA
### and
## FEDERAL REPUBLIC OF GERMANY

**Treaty of Friendship, Commerce and Navigation (with Protocol and exchange of notes). Signed at Washington, on 29 October 1954**

*Official texts: English and German.*

*Registered by the United States of America on 25 July 1957.*

———

## ÉTATS-UNIS D'AMÉRIQUE
### et
## RÉPUBLIQUE FÉDÉRALE D'ALLEMAGNE

**Traité d'amitié, de commerce et de navigation (avec Protocole et échange de notes). Signé à Washington, le 29 octobre 1954**

*Textes officiels anglais et allemand.*

*Enregistré par les États-Unis d'Amérique le 25 juillet 1957.*

No. 3943.   TREATY[1] OF FRIENDSHIP, COMMERCE AND NA-
VIGATION BETWEEN THE UNITED STATES OF AME-
RICA AND THE FEDERAL REPUBLIC OF GERMANY.
SIGNED AT WASHINGTON, ON 29 OCTOBER 1954

The United States of America and the Federal Republic of Germany desirous
of strengthening the bonds of friendship existing between them and of encouraging
closer economic and cultural relations between their peoples, and being cognizant
of the contributions which may be made toward these ends by arrangements
promoting mutually advantageous commercial intercourse, encouraging mutually
beneficial investments, and establishing mutual rights and privileges, have resolved
to conclude a Treaty of Friendship, Commerce and Navigation, based in general
upon the principles of national and of unconditional most-favored-nation treatment
reciprocally accorded, and for that purpose have appointed as their Plenipoten-
tiaries :

The President of the United States of America :

    Mr. John Foster Dulles, Secretary of State of the United States of America,
      and

The President of the Federal Republic of Germany :

    Dr. Konrad Adenauer, Federal Chancellor and Federal Minister of Foreign
      Affairs,

who, having communicated to each other their full powers found to be in due form,
have agreed as follows :

### Article I

1. Each Party shall at all times accord fair and equitable treatment to the
nationals and companies of the other Party, and to their property, enterprises and
other interests.

2. Between the territories of the two Parties there shall be, in accordance
with the provisions of the present Treaty, freedom of commerce and navigation.

### Article II

1. Nationals of either Party shall, subject to the laws relating to the entry
and sojourn of aliens, be permitted to enter the territories of the other Party, to
travel therein freely, and to reside at places of their choice.   Nationals of either

---

[1] Came into force on 14 July 1956, one month after the day of the exchange of the instru-
ments of ratification which took place at Bonn on 14 June 1956, in accordance with article XXIX.

Party shall in particular be permitted to enter the territories of the other Party and to remain therein : (*a*) for the purpose of carrying on trade between the territories of the two Parties and engaging in related commercial activities ; (*b*) for the purpose of developing and directing the operations of an enterprise in which they have invested, or in which they are actively in the process of investing, a substantial amount of capital.

2.  Each Party undertakes to make available the best facilities practicable for travel by tourists and other visitors with respect to their entry, sojourn and departure, and for the distribution of information for tourists.

3.  Nationals of either Party, within the territories of the other Party, shall enjoy freedom of conscience ; and they shall be at liberty to hold religious services, both private and public, at suitable places of their choice.

4.  Nationals of either Party shall be permitted, within the territories of the other Party, to gather information material for dissemination to the public, and shall enjoy freedom of transmission of such material to be used abroad for publication by the press, radio, television, motion pictures, and other means ; and they shall be permitted to communicate freely with other persons inside and outside such territories by mail, telegraph and other means open to general public use.

5.  The provisions of the present Article shall be subject to the right of either Party to apply measures that are necessary to maintain public order and protect the public health, morals and safety.

*Article III*

1.  Nationals of either Party within the territories of the other Party shall be free from molestations of every kind, and shall receive the most constant protection and security.  They shall be accorded in like circumstances treatment no less favorable than that accorded nationals of such other Party for the protection and security of their persons and their rights.  The treatment accorded in this respect shall in no case be less favorable than that accorded nationals of any third country or that required by international law.

2.  If, within the territories of either Party, a national of the other Party is taken into custody, the nearest consular representative of his country shall on the demand of such national be immediately notified and shall have the right to visit and communicate with such national.  Such national shall : (*a*) receive reasonable and humane treatment ; (*b*) be formally and immediately informed of the accusations against him ; (*c*) be brought to trial as promptly as is consistent with the proper preparation of his defense ; and (*d*) enjoy all means reasonably necessary to his defense, including the services of competent counsel of his choice.

*Article IV*

1. Nationals of either Party shall be accorded national treatment in the application of laws and regulations within the territories of the other Party that establish a pecuniary compensation or other benefit or service, on account of disease, injury or death arising out of and in the course of employment or due to the nature of employment.

2. Nationals of either Party shall furthermore be accorded national treatment with regard to the application of social security laws and regulations within the territories of the other Party under which benefits are provided without examination of financial need in the following cases : (*a*) sickness, including temporary disability for work, and maternity; (*b*) old age, invalidity, or occupational disability ; (*c*) death of the father, spouse, or any other person liable for maintenance ; (*d*) unemployment.

*Article V*

1. Property of nationals and companies of either Party shall receive the most constant protection and security within the territories of the other Party.

2. The dwellings, offices, warehouses, factories and other premises of nationals and companies of either Party located within the territories of the other Party shall not be subject to molestation or to entry without just cause. Official searches and examinations of such premises and their contents, when necessary, shall be made only according to law and with careful regard for the convenience of the occupants and the conduct of business.

3. Neither Party shall take unreasonable or discriminatory measures that would impair the legally acquired rights or interests within its territories of nationals and companies of the other Party in the enterprises which they have established, in their capital, or in the skills, arts or technology which they have supplied.

4. Property of nationals and companies of either Party shall not be taken within the territories of the other Party, except for the public benefit and in accordance with due process of law, nor shall it be taken without just compensation. Such compensation shall represent the equivalent of the property taken and shall be made in an effectively realizable form and without unnecessary delay. Adequate provision shall have been made at latest by the time of the taking for the determination and the giving of the compensation.

No. 3943

2-cv-03738-TMC-KFM　Date Filed 03/22/24　Entry Number 104-22　Page 5 o

5. Nationals and companies of either Party shall in no case be accorded, within the territories of the other Party, less than national treatment and most-favored-nation treatment with respect to the matters set forth in paragraphs 2 and 4 of the present Article. Moreover, enterprises in which nationals or companies of either Party have a substantial interest shall be accorded, within the territories of the other Party, not less than national treatment and most-favored-nation treatment in all matters relating to the taking of privately owned enterprises into public ownership and to the placing of such enterprises under public control.

### Article VI

1. Nationals and companies of either Party shall be accorded national treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights. It is understood that companies of either Party not engaged in activities within the territories of the other Party shall enjoy such access therein without any requirement of registration or domestication.

2. Contracts entered into between nationals or companies of either Party and nationals or companies of the other Party, that provide for the settlement by arbitration of controversies, shall not be deemed unenforceable within the territories of such other Party merely on the grounds that the place designated for the arbitration proceedings is outside such territories or that the nationality of one or more of the arbitrators is not that of such other Party. Awards duly rendered pursuant to any such contracts, which are final and enforceable under the laws of the place where rendered, shall be deemed conclusive in enforcement proceedings brought before the courts of competent jurisdiction of either Party, and shall be entitled to be declared enforceable by such courts, except where found contrary to public policy. When so declared, such awards shall be entitled to privileges and measures of enforcement appertaining to awards rendered locally. It is understood, however, that awards rendered outside the United States of America shall be entitled in any court in any State thereof only to the same measure of recognition as awards rendered in other States thereof.

### Article VII

1. Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment with respect to engaging in all

-cv-03738-TMC-KFM    Date Filed 03/22/24    Entry Number 104-22    Page 6 o

types of commercial, industrial, financial and other activity for gain, whether in a dependent or an independent capacity, and whether directly or by agent or through the medium of any form of lawful juridical entity. Accordingly, such nationals and companies shall be permitted within such territories : (*a*) to establish and maintain branches, agencies, offices, factories and other establishments appropriate to the conduct of their business ; (*b*) to organize companies under the general company laws of such other Party, and to acquire majority interests in companies of such other Party ; and (*c*) to control and manage enterprises which they have established or acquired. Moreover, enterprises which they control, whether in the form of individual proprietorships, companies or otherwise, shall in all that relates to the conduct of the activities thereof, be accorded treatment no less favorable than that accorded like enterprises controlled by nationals or companies of such other Party.

2. Each Party reserves the right to limit the extent to which aliens may establish, acquire interests in, or carry on enterprises engaged within its territories in communications, air or water transport, taking and administering trusts, banking involving depository functions, or the exploitation of land or other natural resources. However, new limitations imposed by either Party upon the extent to which aliens are accorded national treatment, with respect to carrying on such activities within its territories, shall not be applied as against enterprises which are engaged in such activities therein at the time such new limitations are adopted and which are owned or controlled by nationals or companies of the other Party. Moreover, neither Party shall deny to transportation, communications and banking companies of the other Party the right to maintain branches and agencies, in conformity with the applicable laws and regulations, to perform functions necessary for essentially international operations in which they engage.

3. The provisions of paragraph 1 of the present Article shall not prevent either Party from prescribing special formalities in connection with the establishment of alien-controlled enterprises within its territories ; but such formalities may not impair the substance of the rights set forth in said paragraph.

4. Nationals and companies of either Party, as well as enterprises controlled by such nationals or companies, shall in any event be accorded most-favored-nation treatment with reference to the matters treated in the present Article.

### Article VIII

1.   Nationals and companies of either Party shall be permitted to engage, within the territories of the other Party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists of their choice.   Moreover, such nationals and companies shall be permitted to engage accountants and other technical experts regardless of the extent to which they may have qualified for the practice of these professions within the territories of such other Party, for the particular purpose of making for internal purposes examinations, audits and technical investigations for, and rendering reports to, such nationals and companies in connection with the planning and operation of their enterprises, and enterprises in which they have a financial interest, within such territories.

2.   Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to engaging in scientific, educational, religious and philanthropic activities, and shall be accorded the right to form associations for that purpose under the laws of the country.   Nothing in the present Treaty shall be deemed to grant or imply any right to engage in political activities.

### Article IX

1.   Nationals and companies of either Party shall be accorded within the territories of the other Party : (*a*) national treatment with respect to leasing land, buildings and other real property appropriate to the conduct of activities in which they are permitted to engage pursuant to Articles VII and VIII and for residential purposes, and with respect to occupying and using such property ; and (*b*) other rights in real property permitted by the applicable laws of such other Party.

2.   Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to acquiring, by purchase, lease, or otherwise, and with respect to owning and possessing, personal property of all kinds, both tangible and intangible.   However, either Party may impose restrictions on alien ownership of materials dangerous from the standpoint of public safety and alien ownership of interests in enterprises carrying on the activities listed in the first sentence of paragraph 2 of Article VII, but only to the extent that this can be done without impairing the rights and privileges secured by Article VII or by other provisions of the present Treaty.

3.   Nationals and companies of either Party shall be accorded national treatment, within the territories of the other Party, with respect to acquiring prop-

erty of all kinds by testate or intestate succession or under judicial sale to satisfy valid claims.    Should they because of their alienage be ineligible to continue to own any such property, they shall be allowed a period of at least five years in which to dispose of it.

4.    Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to disposing of property of all kinds.

### *Article X*

1.    Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment with respect to obtaining and maintaining patents of invention, and with respect to rights in trade-marks, trade names, trade-labels, and industrial property of every kind.

2.    The Parties undertake to cooperate in furthering the interchange and use of scientific and technical knowledge, particularly in the interests of increasing productivity and improving standards of living within their respective territories.

### *Article XI*

1.    Nationals of either Party residing within the territories of the other Party, and  nationals and companies of either Party engaged in trade or other gainful pursuit or in scientific, educational, religious or philanthropic activities within the territories of the other Party, shall not be subject to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, within the territories of such other Party, more burdensome than those borne in like situations by nationals and companies of such other Party.

2.    With respect to nationals of either Party who are neither resident nor engaged in trade or other gainful pursuit within the territories of the other Party, and with respect to companies of either Party which are not engaged in trade or other gainful pursuit within the territories of the other Party, it shall be the aim of such other Party to apply in general the principle set forth in paragraph 1 of the present Article.

3.    Nationals and companies of either Party shall in no case be subject, within the territories of the other Party, to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, more

burdensome than those borne in like situations by nationals, residents and companies of any third country.

4. In the case of companies and of nonresident nationals of either Party engaged in trade or other gainful pursuit, within the territories of the other Party, such other Party shall not impose or apply any tax, fee or charge upon any income, capital or other basis in excess of that reasonably allocable or apportionable to its territories, nor grant deductions and exemptions less than those reasonably allocable or apportionable to its territories. A comparable rule shall apply also in the case of companies organized and operated exclusively for scientific, educational, religious or philanthropic purposes.

5. Each Party reserves the right to : (*a*) extend specific tax advantages on the basis of reciprocity ; (*b*) accord special tax advantages by virtue of agreements for the avoidance of double taxation or the mutual protection of revenue ; and (*c*) apply special provisions in allowing, to nonresidents, exemptions of a personal nature in connection with income and inheritance taxes.

### *Article XII*

1. Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment by the other Party with respect to the assumption of undertakings for, and the making of, payments, remittances, and transfers of moneys and financial instruments.

2. It is agreed that no provision of the present Treaty shall be applied in such a manner as to alter arrangements applicable to either Party by virtue of its membership in the International Monetary Fund.

3. Neither Party may, with respect to the other Party, in any manner impose exchange restrictions which are unnecessarily detrimental to or arbitrarily discriminate against the claims, investments, transportation, trade or other interests of nationals and companies of such other Party or their competitive position. Should either Party impose exchange restrictions with respect to the other Party, it will remove them as rapidly as it is able to do so considering its economic condition.

4. The two Parties, recognizing that the international movement of investment capital and the returns thereon would be conducive to the full realization of the objectives of the present Treaty, are agreed that such movements shall not be unnecessarily hampered. In accordance with this mutually agreed principle, each Party undertakes to afford to nationals and companies of the other Party

reasonable facilities for the withdrawal of funds earned by them as a result of making or maintaining capital investments as well as for the transfer of capital investments. The same principle applies with respect to the compensation referred to in Article V, paragraph 4.

5. The term "exchange restrictions" as used in the present Article includes all restrictions, regulations, charges, taxes, fees, and other requirements imposed by either Party, which burden or interfere with the assumption of undertakings for, or the making of, payments, remittances, or transfers of moneys and financial instruments.

6. All questions arising under the present Treaty concerning foreign exchange restrictions will be governed by the provisions of the present Article.

### Article XIII

Nationals and companies of either Party engaged in business within the territories thereof may operate as commercial travelers either directly or by means of agents or employees within the territories of the other Party, in conformity with the applicable laws and regulations. Such commercial travelers shall, upon their entry into and departure from the territories of such other Party and during their sojourn therein, be accorded most-favored-nation treatment in respect of the customs and other matters, including, subject to the exceptions in Article XI, paragraph 5, taxes and charges applicable to them, their samples, their advertising material and the taking of orders, and regulations governing the exercise of their functions.

### Article XIV

1. Each Party shall accord most-favored-nation treatment to products of the other Party, from whatever place and by whatever type of carrier arriving, and to products destined for exportation to the territories of such other Party, by whatever route and by whatever type of carrier, with respect to customs duties and charges of any kind imposed on or in connection with importation or exportation or imposed on the international transfer of payments for imports or exports, and with respect to the method of levying such duties and charges, and with respect to all rules and formalities in connection with importation and exportation.

2. Neither Party shall impose restrictions or prohibitions on the importation of any product of the other Party, or on the exportation of any product to the territories of the other Party, unless the importation of the like product of, or the exportation of the like product to, all third countries is similarly restricted or prohibited.

No. 3943

3. Either Party may impose prohibitions or restrictions on sanitary or other customary grounds of a non-commercial nature, or in the interest of preventing deceptive or unfair practices, provided such prohibitions or restrictions do not arbitrarily discriminate against the commerce of the other Party.

4. Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment by the other Party with respect to all matters relating to importation and exportation.

5. If at any time a question should arise concerning the application of paragraph 2 of the present Article, the two Parties shall consult with a view to determining the application thereof. If such consultation, or consultation pursuant to Article XXIV, paragraph 5, does not lead to a mutually satisfactory conclusion, either Party may give written notice of termination of the present Article ; and, notwithstanding the provisions of Article XXIX, the present Article shall terminate three months following receipt of such notice by the other Party.

6. The provisions of the present Article shall not apply to advantages accorded by either Party by virtue of a customs union or free-trade area of which it may become a member, so long as it informs the other Party of its plans and affords such other Party adequate opportunity for consultation.

## Article XV

1. Each Party shall promptly publish laws, regulations, and administrative rulings of general application pertaining to rates of duty, taxes or other charges, to the classification of articles for customs purposes, and to requirements or restrictions on imports and exports or the transfers of payments therefor, or affecting their sale, distribution or use ; and shall administer such laws, regulations and rulings in a uniform, impartial and reasonable manner. As a general practice, new or more burdensome administrative requirements affecting imports shall not be enforced until after public notice thereof.

2. Each Party shall maintain an appeals procedure under which nationals and companies of the other Party, and importers of products of such other Party, shall be able to obtain prompt and impartial review, and correction when warranted, of administrative action relating to customs matters, including the imposition of fines and penalties, confiscations, and rulings on questions of customs classification and valuation by the administrative authorities. Penalties imposed for infractions of the customs and shipping laws and regulations concerning docu-

cv-03738-TMC-KFM    Date Filed 03/22/24    Entry Number 104-22    Page 12

mentation shall be merely nominal in cases resulting from clerical errors or when good faith can be demonstrated.

3. With reference to marking requirements applicable to imported products, each Party shall as a general practice : (*a*) allow required marks of origin to be affixed after importation ; (*b*) not permit markings that result in misrepresenting the true origin of the products ; and (*c*) not apply requirements that entail an expense which is economically prohibitive or that result in seriously damaging the product.

## Article XVI

1. Products of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment in all matters affecting internal taxation, sale, distribution, storage and use.

2. Articles produced by nationals and companies of either Party within the territories of the other Party or by companies of the latter Party controlled by such nationals and companies, shall be accorded therein treatment no less favorable than that accorded to like articles of national origin by whatever person or company produced, in all matters affecting exportation, taxation, sale, distribution, storage and use.

## Article XVII

1. Each Party undertakes (*a*) that enterprises owned or controlled by its Government, and that monopolies or agencies granted exclusive or special privileges within its territories, shall make their purchases and sales involving either imports or exports affecting the commerce of the other Party solely in accordance with commercial considerations, including price, quality, availability, marketability, transportation and other conditions of purchase or sale ; and (*b*) that the nationals, companies and commerce of such other Party shall be afforded adequate opportunity, in accordance with customary business practice, to compete for participation in such purchases and sales.

2. Each Party shall accord to the nationals, companies and commerce of the other Party fair and equitable treatment, as compared with that accorded to the nationals, companies and commerce of any third country, with respect to : (*a*) the governmental purchase of supplies ; (*b*) the awarding of concessions and other government contracts ; and (*c*) the sale of any service sold by the Government or by any monopoly or agency granted exclusive or special privileges.

-cv-03738 TMC KFM Date Filed 03/22/24 Entry Number 104-22 Page 13

3. Neither Party shall impose any measure of a discriminatory nature that hinders or prevents the importer or exporter of products of either country from obtaining marine insurance on such products in companies of either Party.

### Article XVIII

1. The two Parties agree that business practices which restrain competition, limit access to markets or foster monopolistic control, and which are engaged in or made effective by one or more private or public commercial enterprises or by combination, agreement or other arrangement among such enterprises, may have harmful effects upon commerce between their respective territories. Accordingly, each Government agrees upon the request of the other Government to consult with respect to any such practices and to take such measures, not precluded by its legislation, as it deems appropriate with a view to eliminating such harmful effect.

2. No enterprise of either Party, including corporations, associations, and government agencies and instrumentalities, which is publicly owned or controlled shall, if it engages in commercial, industrial, shipping or other business activities within the territories of the other Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein.

### Article XIX

1. Vessels under the flag of either Party, and carrying the papers required by its law in proof of nationality, shall be deemed to be vessels of that Party.

2. So long as both Parties follow systems of tonnage measurement which are substantially similar, tonnage certificates issued by either Party shall be accepted by the other Party, and vessels shall not be subject to new measurements in the ports of such other Party.

3. The term "vessels", as used in the present Treaty, means all types of vessels, whether privately owned or operated, or publicly owned or operated; but this term does not include vessels of war.

### Article XX

1. Vessels of either Party shall have liberty, on equal terms with vessels of the other Party and on equal terms with vessels of any third country, to come with

their cargoes to all ports, places and waters of such other Party open to foreign commerce and navigation. Such vessels and cargoes shall in the ports, places and waters of such other Party be accorded in all respects national treatment and most-favored-nation treatment.

2.  Vessels of either Party shall be accorded national treatment and most-favored-nation treatment with respect to the right to carry all cargo that may be carried by vessel to or from the territories of the other Party.

3.  Goods carried by vessels under the flag of either Party to or from the territories of the other Party shall enjoy the same favors as when transported in vessels sailing under the flag of such other Party. This applies especially with regard to customs duties and all other fees and charges, to bounties, drawbacks and other privileges of this nature, as well as to the administration of the customs and to transport to and from port by rail and other means of transportation.

4.  The coasting trade and inland navigation are excepted from the provisions of the present Article. However, the vessels of each Party shall be accorded by the other Party most-favored-nation treatment with respect to the coasting trade and inland navigation. Moreover, it is understood that vessels of either Party shall be permitted to discharge portions of cargoes at any ports, places or waters of the other Party open to foreign commerce and navigation, and to proceed with the remaining portions of such cargoes to any other such ports, places or waters, and they shall be permitted to load in like manner in the same voyage outward, at the various ports, places and waters open to foreign commerce and navigation ; but a right to engage in the coasting trade or inland navigation may not thereby be claimed.

5.  The provisions of the present Article shall not apply to fishing vessels.

*Article XXI*

If a vessel of either Party runs aground or is wrecked on the coasts of the other Party, or if it is in distress and must put into a port of the other Party, the latter Party shall extend to the vessel as well as to the crew, the passengers, the personal property of crew and passengers, and to the cargo of the vessel, the same protection and assistance as would have been extended to a vessel under its own flag in like circumstances ; and shall permit the vessel after repairs to proceed with its voyage upon conformity with the laws applicable alike to vessels under its own flag. Articles salvaged from the vessel shall be exempt from all customs duties unless they pass into internal consumption ; but articles not entered for consumption may be

subject to measures for the protection of the revenue pending their exit from the country.

## *Article XXII*

1.　In all ports of either Party the masters of all vessels under the flag of the other Party, whose crews have ceased to be fully constituted on account of illness or for any other cause, shall be permitted to engage such seamen as may be necessary for the continuation of the voyage.

2.　Nationals of either Party who are seamen may be sent to ports of the other Party to join national vessels, in care of consular officers, either individually or in groups on the basis of seamen's papers issued in lieu of passports.　Likewise, nationals of either Party shall be permitted to travel through the territory of the other Party on their way to join vessels or to be repatriated on the basis of seamen's papers used in lieu of passports.

## *Article XXIII*

1.　There shall be freedom of transit through the territories of each Party by the routes most convenient for international transit :

(a) for nationals of the other Party, together with their baggage ;

(b) for other persons, together with their baggage, en route to or from the territories of such other Party ; and

(c) for products of any origin en route to or from the territories of such other Party, with or without trans-shipment, warehousing, breaking bulk or change in the mode of transport.

2.　The persons and things referred to in paragraph 1 of the present Article shall be exempt from customs duties, from duties imposed by reason of transit, and from unreasonable charges and requirements ; and shall be free from unnecessary delays and restrictions.

3.　The provisions of the present Article shall be subject to the right of either Party to apply measures referred to in Article II, paragraph 5, and nondiscriminatory regulations necessary to prevent abuse of the transit privilege.

## *Article XXIV*

1.　The present Treaty shall not preclude the application by either Party of measures :

(a) regulating the importation or exportation of gold, silver, platinum and the alloys thereof ;

(b) relating to fissionable materials, to radioactive by-products of the utilization or processing thereof, or to materials that are the source of fissionable materials ;

(c) regulating the production of or traffic in arms, ammunition and implements of war, or traffic in other materials carried on directly or indirectly for the purpose of supplying a military establishment ;

(d) necessary to fulfill its obligations for the maintenance or restoration of international peace and security, or necessary to protect its essential security interests ;

(e) denying to any company in the ownership or direction of which nationals of any third country or countries have directly or indirectly the controlling interest, the advantages of the present Treaty, except with respect to recognition of juridical status and with respect to access to courts ; and

(f) reserving rights and privileges with respect to its national fisheries and marine hunting, and the landing in its ports of fish or fish products or the catch or products of marine hunting taken on board the transporting vessel at sea.

2.   The most-favored-nation provisions of the present Treaty relating to the treatment of goods shall not apply to advantages accorded by the United States of America or its Territories and possessions to one another, to the Republic of Cuba, to the Republic of the Philippines, to the Trust Territory of the Pacific Islands or to the Panama Canal Zone.

3.   The most-favored-nation treatment provisions of the present Treaty shall not apply to advantages accorded by either Party to adjacent countries in order to facilitate frontier traffic.

4.   The provisions of the present Treaty relating to the treatment of goods shall not preclude action by either Party which is required or permitted by the General Agreement on Tariffs and Trade[1] during such time as such Party is a con-

---

[1] United Nations, *Treaty Series*, Vol. 55, p. 187 ; Vols. 56 to 64 ; Vol. 65, p. 335 ; Vol. 66, pp. 358 and 359 ; Vol. 68, p. 286 ; Vol. 70, p. 306 ; Vol. 71, p. 328 ; Vol. 76, p. 282 ; Vol. 77, p. 367 ; Vol. 81, pp. 344 to 377 ; Vol. 90, p. 324 ; Vol. 92, p. 405 ; Vol. 104, p. 351 ; Vol. 107, p. 83 ; Vol. 117, p. 387 ; Vol. 123, p. 303 ; Vol. 131, p. 316 ; Vol. 135, p. 336 ; Vol. 138, p. 334 ; Vol. 141, p. 382 ; Vols. 142 to 146 ; Vol. 147, p. 159 ; Vol. 161, p. 365 ; Vol. 163, p. 375 ; Vol. 167, p. 265 ; Vol. 172, p. 340 ; Vol. 173, p. 395 ; Vol. 176 ; Vol. 180, p. 299 ; Vol. 183, p. 351 ; Vol. 186, p. 314 ; Vol. 188, p. 366 ; Vol. 189, p. 360 ; Vol. 191, p. 364 ; Vol. 220, p. 154 ; Vol. 225, p. 258 ; Vol. 226, p. 342 ; Vol. 228, p. 366 ; Vol. 230, p. 430 ; Vol. 234, p. 310 ; Vol. 243, p. 314 ; Vols. 244 to 246 ; Vol. 247, p. 386 ; Vol. 248, p. 359 ; Vol. 250, p. 290 ; Vol. 253, p. 316 ; Vol. 256, p. 338 ; Vol. 257, p. 362 ; Vol. 258, p. 384 ; Vol. 261, p. 390 ; Vol. 265, and Vol. 271.

tracting party to the General Agreement. Similarly, the most-favored-nation provisions of the present Treaty shall not apply to special advantages accorded by virtue of the aforesaid Agreement.

5. If at any time the arrangements provided in the first sentence of paragraph 4 of the present Article should cease to be applicable, the provisions of Article XIV, paragraph 2, shall not apply for a period of twelve months to restrictions in effect at that time. During this period the two Parties will, upon the request of either of them, consult with a view to determining whether, in the light of circumstances then prevailing, any further adjustment may be necessary.

6. The present Treaty does not affect provisions of statute under which aliens may be permitted entry into the territories of a Party subject to express conditions regarding their engaging in gainful occupations therein.

### Article XXV

1. The term "national treatment" means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of such Party.

2. National treatment is accorded by the Federal Republic of Germany in the provisions of the present Treaty in consideration of the national treatment accorded by the United States of America to the nationals, companies, products, vessels, or other objects, of the Federal Republic of Germany, with respect to the same subject matter.

3. National treatment accorded under the provisions of the present Treaty to companies of the Federal Republic of Germany shall, in any State, Territory, or possession of the United States of America, be the treatment accorded therein to companies created or organized in other States, Territories, and possessions of the United States of America.

4. The term "most-favored-nation treatment" means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of any third country.

5. As used in the present Treaty, the term "companies" means corporations, partnerships, companies and other associations, whether or not with limited liability and whether or not for pecuniary profit. Companies constituted under the applicable laws and regulations within the territories of either Party shall be deemed

companies thereof and shall have their juridical status recognized within the territories of the other Party.

6.   Without prejudice to other methods of establishing nationality, a person in possession of a valid passport issued by the competent authorities of either Party, or a valid identity document named in the Protocol, shall be considered a national of that Party.

### Article XXVI

1.   The territories to which the present Treaty extends shall comprise all areas of land and water under the sovereignty or authority of each Party, other than the Panama Canal Zone and the Trust Territory of the Pacific Islands.

2.   The present Treaty shall also apply from the date specified in Article XXIX, paragraph 2, to *Land* Berlin which for the purposes of the present Treaty comprises those areas over which the Berlin Senate exercises jurisdiction.

3.   It is a condition to the application of the present Treaty to *Land* Berlin, in accordance with the preceding paragraph, that the Government of the Federal Republic of Germany shall previously have furnished to the Government of the United States of America a notification that all legal procedures in Berlin necessary for the application of the present Treaty therein have been complied with.

### Article XXVII

1.   Each Party shall accord sympathetic consideration to, and shall afford adequate opportunity for consultation regarding, such representations as the other Party may make with respect to any matter affecting the operation of the present Treaty.

2.   Any dispute between the Parties as to the interpretation or the application of the present Treaty which the Parties do not satisfactorily adjust by diplomacy or some other agreed means shall be submitted to arbitration or, upon agreement of the Parties, to the International Court of Justice.

### Article XXVIII

The present Treaty shall replace and terminate provisions in force in Articles I through V, VII through XVI, and XXIX through XXXII, of the treaty of friendship, commerce and consular rights between the United States of America and Germany, signed at Washington December 8, 1923,[1] as amended by an exchange of

---

[1] League of Nations, *Treaty Series*, Vol. LII, p. 133, and Vol. LXXII, p. 480.

notes dated March 19 and May 21, 1925[1] and the agreement signed at Washington June 3, 1935,[2] and as applied by the agreement of June 3, 1953,[3] Article VI having terminated on June 2, 1954. Articles XVII through XXVIII of the said treaty, as amended by Article II of the agreement of June 3, 1953, shall continue in force between the United States of America and the Federal Republic of Germany, with territorial application to the same extent as that provided in Article XXVI of the present Treaty, until replaced by a consular convention between the two Parties or until six months after either Party shall have given to the other Party a written notice of termination of the said Articles.

### *Article XXIX*

1. The present Treaty shall be ratified, and the ratifications thereof shall be exchanged at Bonn as soon as possible.

2. The present Treaty shall enter into force one month after the day of exchange of ratifications. It shall remain in force for ten years and shall continue in force thereafter until terminated as provided herein.

3. Either Party may, by giving one year's written notice to the other Party, terminate the present Treaty at the end of the initial ten-year period or at any time thereafter.

IN WITNESS WHEREOF the respective Plenipotentiaries have signed the present Treaty and have affixed hereunto their seals.

DONE in duplicate, in the English and German languages, both equally authentic, at Washington this twenty-ninth day of October, one thousand nine hundred fifty-four.

For the United States of America :

John Foster DULLES

[SEAL]

For the Federal Republic of Germany :

ADENAUER

[SEAL]

---

[1] Leage of Nations, *Treaty Series*, Vol. LII, p. 133, and Vol. LXXII, p. 480.
[2] League of Nations, *Treaty Series*, Vol. CLXIII, p. 415.
[3] United Nations, *Treaty Series*, Vol. 253, p. 89.

-cv-03738-TMC-KFM Date Filed 03/22/24 Entry Number 104-22 Page 20

PROTOCOL

At the time of the signing of the Treaty of Friendship, Commerce and Navigation between the United States of America and the Federal Republic of Germany,[1] the undersigned Plenipotentiaries, duly authorized, have further agreed on the following provisions, which shall be considered integral parts of the aforesaid Treaty :

1. The spouse and unmarried minor children of a person permitted entry under the provisions of the second sentence of Article II, paragraph 1, shall also be permitted entry if accompanying him or following to join him.

2. The provisions of Article II, paragraph 1 (*b*), shall be construed as extending to nationals of either Party seeking to enter the territories of the other Party solely for the purpose of developing and directing the operations of an enterprise in the territories of such other Party in which their employer has invested or is actively in the process of investing a substantial amount of capital : provided that such employer is a national or company of the same nationality as the applicant and that the applicant is employed by such national or company in a responsible capacity.

3. The term "public health" in Article II, paragraph 5, and the term "sanitary grounds" in Article XIV, paragraph 3, comprise the protection of human, animal, and plant life and health.

4. The provisions of Article IV, paragraph 2, refer only to laws or regulations which either are national laws or regulations or are based in whole or in part on requirements of national laws or regulations.

5. The provisions of Article V, paragraph 4, shall apply to the property taken in the territories of either Party in which nationals or companies of the other Party have a direct or indirect interest.

6. With reference to Article VI, paragraph 1, nationals and companies of either Party appearing as plaintiff or intervening party before the courts of the other Party shall be exempt from obligation to post security for costs in such instances as nationals or companies of the other Party would be exempt ; exemption, however, is only granted if :

(*a*) the nationals have their permanent residence or the companies their establishment (main or branch), or

(*b*) the nationals or the companies have sufficient real property to cover costs, in the territory of that Party before the courts of which the suit is pending.

---

[1] See p. 4 of this volume.

7. With reference to Article VI, paragraph 1, nationals of either Party shall be accorded national treatment within the territories of the other Party :

(*a*) With respect to suits *in forma pauperis*, in proceedings in the Federal courts of the United States of America ;

(*b*) With respect to the pauper's right *(Armenrecht)* in proceedings before the courts of the Federal Republic of Germany, in types of cases which in the United States of America would fall within the Federal jurisdiction or could be brought before Federal courts.

8. With reference to Article VII, paragraph 1, a Party may apply regulations under which alien employees within its territories are required to have employment permits ; but, in keeping with the objectives of that paragraph, such regulations shall be administered in a liberal fashion as to nationals of the other Party. Furthermore, it is understood that legal provisions which reserve to nationals of the country the practice of state licensed professions or require state examinations and licenses and local residence are not precluded by the terms of that paragraph.

9. The provisions of Article VII do not obligate either Party to permit nationals and companies of the other Party to carry on businesses in its territories without fulfilling the requirements which are generally applicable by law.

10. The provisions of Article VII, paragraph 1, do not affect the right of either Party, in accordance with the agreements and objectives of the present Treaty, to apply special regulations to foreign insurance companies in order to ensure that such companies maintain the degree of responsibility and solvency required of similar domestic companies, but these regulations may not in their effect result in discrimination in substance against such foreign companies.

11. The term "communications" in Article VII, paragraph 2, includes radio and television, among other means of communication.

12. With reference to Article VII, paragraph 4, either Party may require that the granting of rights to engage in mining on the public domain shall be dependent on reciprocity.

13. The provisions of Articles VII, paragraph 1, and XIII shall not extend to the activity of peddlers and itinerant artisans in the exercise of their eoeupations as such.

14. Article XII, paragraph 1, is not concerned with rules regarding currencies as such and therefore does not preclude differential treatment of different currencies. It is only concerned with the rights of nationals and companies under whatever foreign exchange regulations may be in effect and is only designed to preclude

discriminations against nationals and companies on a nationality basis in the application of the foreign exchange regulations.

15.   The term "reasonable" in Article XII, paragraph 4, allows each Party to apply such measures as are required to fulfil its legal obligations, to secure goods and services essential to the health and welfare of its people, and to give consideration to special needs for other exchange transactions.

16.   Either Party may, for the protection of its currency and in the interest of servicing investments and providing for their repatriation, make the importation of capital dependent on a license.

17.   If more than one rate of exchange exists, the rate applicable to withdrawals under Article XII, paragraph 4, shall be a rate which is specifically approved by the International Monetary Fund for such transactions or, in the absence of a rate so approved, an effective rate which, inclusive of any taxes or charges on exchange transfers, is just and reasonable.

18.   In matters affecting internal taxation the national treatment provision of Article XVI, paragraph 1, shall not apply within the territories of either Party to special treatment of products made in whole or in part of materials grown or produced within the territories of such Party.   However, this provision shall apply only where such special treatment exists on the date of entry into force of the present Treaty.   Any enactment or amendment made subsequent to that date shall not alter such special treatment in a manner detrimental to the interests of the other Party.

19.   The provisions of Article XVII, paragraph 2 (*b*) and (*c*), and of Article XX, paragraph 2, shall not apply to postal services of either Party.

20.   With reference to Article XX, the term "cargoes" in the meaning of the present Treaty includes both goods and passengers.

21.   The provisions of Article XXIV, paragraph 2, shall apply in the case of Puerto Rico regardless of any change that may take place in its political status.

22.   Identity documents within the meaning of Article XXV, paragraph 6, shall include, *inter alia*,

(*a*) for the Federal Republic of Germany :

The certificate of residence *(Heimatschein)* and the seaman's book *(Seefahrtsbuch)* issued by the authorities of the Federal Republic of Germany, if the bearer is designated therein as a German national ;

No. 3943

(*b*) for the United States of America :

A card or certificate of identity and registration, or a United States merchant mariner's document, if the bearer is designated therein as a national of the United States.

23. Territories under the authority of a Party solely as a military base or by reason of temporary military occupation shall not be considered territories of that Party within the meaning of Article XXVI, paragraph 1.

24. It is agreed that after the Federal Republic of Germany becomes a Member of the United Nations or a Party to the Statute of the International Court of Justice, disputes to which Article XXVII, paragraph 2, refers, and which are not resolved by diplomacy or some other agreed means, shall be submitted to the International Court of Justice.

IN WITNESS WHEREOF the respective Plenipotentiaries have signed this Protocol and have affixed hereunto their seals.

DONE in duplicate, in the English and German languages, both equally authentic, at Washington this twenty-ninth day of October, one thousand nine hundred fifty-four.

> For the United States of America :
>
> John Foster DULLES
>
> [SEAL]
>
> For the Federal Republic of Germany :
>
> ADENAUER
>
> [SEAL]

-cv-03738-TMC-KFM    Date Filed 03/22/24    Entry Number 104-22    Page 24 o

## EXCHANGE OF NOTES

### I

DEPARTMENT OF STATE
WASHINGTON

October 29, 1954

Excellency :

I have the honor to refer to the treaty of friendship, commerce and navigation between the United States of America and the Federal Republic of Germany, signed today,[1] and to set forth the further agreement as follows :

The present special position of the United States of America and its personnel in Germany shall not be affected by the aforesaid treaty.

The aforesaid treaty shall not modify or derogate from the provisions of the conventions signed at Bonn on May 26, 1952[2] or such agreement or agreements as may modify or replace them.

Accept, Excellency, the renewed assurances of my highest consideration.

John Foster DULLES
Secretary of State
of the United States of America

His Excellency Dr. Konrad Adenauer
Chancellor of the Federal Republic of Germany

### II

[GERMAN TEXT — TEXTE ALLEMAND]

DER BUNDESKANZLER UND BUNDESMINISTER DES AUSWÄRTIGEN

Washington, den 29. Oktober 1954

Seiner Exzellenz dem Staatssekretär
   der Vereinigten Staaten von Amerika
Herrn John Foster Dulles

Herr Staatssekretär !

Ich beehre mich, auf den am heutigen Tag unterzeichneten Freundschafts-, Handels- und Schiffahrtsvertrag zwischen der Bundesrepublik Deutschland und den Vereinigten Staaten von Amerika Bezug zu nehmen und folgende weitere Vereinbarung festzustellen :

[1] See p. 4 of this volume.
[2] United States of America : *Treaties and Other International Acts Series 3425.*

No. 3943

Der genannte Vertrag berührt nicht die gegenwärtig noch bestehende besondere Stellung der Vereinigten Staaten von Amerika und ihres Personals in Deutschland.

Der genannte Vertrag bewirkt keine Änderung oder Abweichung von den Bestimmungen der am 26. März 1952 in Bonn unterzeichneten Verträge oder etwaiger Vereinbarungen zu ihrer Änderung oder Aufhebung.

Genehmigen Sie, Herr Staatssekretär, die erneute Versicherung meiner ausgezeichnetsten Hochachtung.

ADENAUER

[TRANSLATION [1] — TRADUCTION [2]]

THE FEDERAL CHANCELLOR AND FEDERAL MINISTER OF FOREIGN AFFAIRS

Washington, October 29, 1954

His Excellency John Foster Dulles
Secretary of State
  of the United States of America

Mr. Secretary :

I have the honor to refer to the treaty of friendship, commerce and navigation between the United States of America and the Federal Republic of Germany, signed today, and to set forth the further agreement as follows :

*[See note I]*

Accept, Mr. Secretary of State, the renewed assurance of my most distinguished consideration.

ADENAUER

---

[1] Translation by the Government of the United States of America.
[2] Traduction du Gouvernement des États-Unis d'Amérique.

III

October 29, 1954

Excellency :

During the discussion of Article XV, paragraph 1, of the treaty of friendship, commerce and navigation between the United States of America and the Federal Republic of Germany, signed today, the representatives of the two Governments exchanged views as to possible means available for affording protection to traders against sudden imposition of administrative measures adversely affecting their ability to plan and conduct their international business with reasonable assurance.

The representatives of the United States of America pointed out that under United States procedure new administrative measures affecting imports become effective, as a general practice, only upon the expiration of a transitory period of not less than 30 days after publication thereof.   Types of administrative measures falling under this procedure include, for example, the imposition or reduction of quotas, the increase of duties as a consequence of "escape clause" action or of a change in a uniform and established classification, and the withdrawal of trade agreement concessions.   They also explained that under Section 16.10a of the Customs Regulations a procedure exists whereby importers and foreign exporters may apply to the Commissioner of Customs for decisions of a binding character regarding the customs classification of particular articles intended for importation.

The German representatives stated that under German law and procedure importers and foreign exporters may, in advance of shipment, obtain binding customs information about tariff rates and expressly specified commodities valid as against any modification or cancellation, subject to the regulations of the *Allgemeine Zollordnung*, paragraph 86, subparagraph 3, for a period of three months. Moreover, paragraph 131 of the *Reichsabgabenordnung* affords the possibility for importers to apply for suspension or reduction of the customs duties payable by them, if a customs tariff modification affects them unfairly in individual cases. They further stated that upon promulgating new import restrictions or intensifying existing import restrictions the competent German government agencies will take into account in their administrative practices, as far as possible, the recommendations accepted by the Contracting Parties to the General Agreement on Tariffs and Trade, that is, the Standard Practices for Import and Export Restrictions and Exchange Controls.

The two Governments are agreed that neither has the intention of changing existing administrative procedures so as to provide less favorable facilities and treatment ; and that, moreover, further progress should be sought on a broad international basis in the development of measures designed to increase the cer-

tainty with which traders can plan their international business as against adminis-
trative actions affecting the international movement of products.

Accept, Excellency, the renewed assurances of my highest consideration.

John Foster DULLES
Secretary of State
of the United States of America

His Excellency Dr. Konrad Adenauer
Chancellor of the Federal Republic of Germany

IV

[GERMAN TEXT — TEXTE ALLEMAND]

DER BUNDESKANZLER UND BUNDESMINISTER DES AUSWÄRTIGEN

Washington, den 29. Oktober 1954

Seiner Exzellenz dem Staatssekretär
der Vereinigten Staaten von Amerika
Herrn John Foster Dulles

Herr Staatssekretär !

Bei den Verhandlungen über Artikel XV Absatz 1 des heute unterzichneten
Freundschafts-, Handels- und Schiffahrtsvertrags zwischen der Bundesrepublik
Deutschland und den Vereinigten Staaten von Amerika haben die Beauftragten
der beiden Regierungen ihre Auffassungen darüber ausgetauscht, wie den Ge-
schäftskreisen ein Schutz davor gewährt werden könnte, dass die plötzliche An-
wendung von neuen Verwaltungsvorschriften es ihnen erschwert, ohne Auslands-
geschäfte mit der erforderlichen Stetigkeit planen und durchführen zu können.

Die Beauftragten der Vereinigten Staaten von Amerika haben darauf hinge-
wiesen, dass nach amerikanischem Verfahren neue Verwaltungsmassnahmen,
welche die Einfuhr betreffen, im allgemeinen erst mit dem Ablauf einer Übergangs-
zeit von mindestens 30 Tagen nach ihrer Veröffentlichung wirksam würden. Zu
den Verwaltungsmassnahmen, auf welche dieses Verfahren Anwendung findet,
gehöre z. B. die Einführung oder Herabsetzung von Kontingenten, die Erhöhung
von Zöllen auf Grund einer „Ausweichklausel" oder durch Änderung einer bestehen-
den einheitlichen Tarifierung, ferner die Zurücknahme von Zugeständnissen in
Handelsabkommen. Sie haben ausserdem erklärt, dass Section 16.10 (a) der *Customs
Regulations* ein Verfahren vorsehe, nach welchem Einführer und ausländische
Ausführer bei dem Commissioner of Customs Entscheidungen bindenden Cha-
rakters über die Tarifierung von solchen Waren beantragen könnten, deren Ein-
fuhr beabsichtigt sei.