NITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| KELLY DAWSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CA 7:22-cv-3738-TMC-KFM |
| v. | ) |
| | ) |
| BAYERISCHE MOTOREN WERKE | ) |
| AKTIENGESELLSCHAFT and BMW | ) |
| MANUFACTURING CO., LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

BMW AG submits this Reply in Support of its Motion for Summary Judgment (ECF No. 102) and in response to Plaintiff's Opposition (ECF No. 104) (the "Opposition" or "Opp.").[1]

**INTRODUCTION**

Taking Plaintiff's allegations and declarations as true at the motion to dismiss stage, the District Court repeatedly emphasized that Plaintiff's claims only survived dismissal under Rule 12(b)(2) based on Plaintiff's allegation that "BMW AG was ***directly involved in and, in fact, controlled the HR decisions at issue in this case***." (Order at 9-11) (emphasis added). Fact discovery has now closed, and the undisputed facts show that BMW AG *did not control the personnel decisions at issue* – they were directed and controlled by BMW MC personnel. (*See* MB SOF ¶¶ 12-22). Accordingly, there is no basis for the continued exercise of specific personal jurisdiction over BMW AG, and summary judgment should enter for BMW AG. (Order at 12-13).

---

[1] BMW AG's Memorandum in Support of the Motion for Summary Judgment (ECF No. 103) is referred to as the "Moving Brief" or "MB." Capitalized terms not otherwise defined shall have the meaning given to them in the Motion and Moving Brief.

Confronted with this reality, Plaintiff has filed an Opposition focused on distraction, leading with fifteen pages of purported "Facts" that barely address, let alone overcome, the fact that BMW AG *did not* control the specific personnel decisions at issue. Instead, Plaintiff takes a broad approach, citing anything she can muster to try to show that BMW AG engaged with its domestic subsidiary, BMW MC. Plaintiff waits until page thirteen to even address the critical personnel decisions, and then she cites no evidence that raises a genuine and material issue as to the fact that BMW MC controlled and directed the personnel decisions at issue in this dispute.

Further, what Plaintiff presents as "Facts" are inherently unreliable. Lacking independent and admissible evidence, Plaintiff cites her own testimony and declarations *dozens* of times, and even files a *third* declaration in a vain attempt to keep BMW AG in this case. The law is clear that such self-serving citations cannot carry the day at summary judgment. And where she does cite other evidence, it is often out of context and self-servingly paraphrased.

Plaintiff's approach is unavailing. The District Court made clear that BMW AG's continued involvement in this suit turns on whether BMW AG directed and controlled the plan at BMW MC to move Ms. Burgmeier to the TX-60 position and move Plaintiff laterally in the Human Resources department. The undisputed evidence shows that BMW AG did not – these decisions were directed and controlled by BMW MC – and summary judgment should enter for BMW AG.

Plaintiff's arguments on BMW AG's other three independent grounds for summary judgment similarly fail. BMW AG was never Plaintiff's employer, and Plaintiff has not created a disputed issue of fact to survive summary judgment. Plaintiff misrepresents BMW AG's argument about the FCN Treaty. And Plaintiff's Opposition does not change the fact BMW MC's summary judgment arguments also carry the day for BMW AG.

# ARGUMENT

**I.     THE COURT LACKS PERSONAL JURISDICTION OVER BMW AG.**

**A.     BMW AG Did Not Control the Personnel Decisions That Precipitated Plaintiff's Resignation from BMW MC.**

The continued exercise of specific personal jurisdiction over BMW AG turns on whether BMW AG's "suit-related conduct [creates] a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). At the motion to dismiss stage, Plaintiff argued that the "substantial collaboration" between a BMW AG and its domestic subsidiary (BMW MC) was sufficient to meet Plaintiff's *prima facie* burden. Plaintiff's theory, of course, risked contravening the extensive body of personal jurisdiction and corporate law that allows foreign parent companies to establish domestic subsidiaries, and to engage with those subsidiaries in a meaningful and significant manner, without giving rise to personal jurisdiction over the foreign parent:

> [I]f the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent and is not acting merely as one of its departments, personal jurisdiction over the parent corporation may not be acquired simply on the basis of the local activities of the subsidiary company.

Wright & Miller § 1069.4; *see also* ECF No. 42-1 at 15. For example, courts in this District have held that sharing of executives, employees moving back and forth, and requiring parent approval for hiring decisions were insufficient to exercise personal jurisdiction over a parent company.[2]

Cognizant of this, the District Court did not let Plaintiff's claims proceed on her broad theory of "substantial collaboration." Instead, the District Court repeatedly emphasized that BMW

---

[2] G*ray v. Riso Kagaku Corporation*, 82 F.3d 410, 1996 WL 181488, at *3 (declining to exercise personal jurisdiction despite: the parent funding the subsidiary; a majority of the subsidiary's board being associated with the parent; the subsidiary seeking approval from the parent before hiring officials); *Hofferth v. Janssen Pharma., Inc.*, No. 17-1560, 2020 WL 1536218, at *9 (D.S.C. Mar. 31, 2020) ("employees working and moving seamlessly between corporate entities" held insufficient); *ScanSource, Inc. v. Mitel Networks Corp.*, No. 11-00382, 2011 WL 2550719, at *6 (D.S.C. June 24, 2011) (sharing executives held insufficient).

3

AG's role as a parent corporation was insufficient to create a basis for the exercise of personal jurisdiction and that Plaintiff's claims only survived dismissal under Rule 12(b)(2) based on Plaintiff's *allegations* that BMW AG was directly involved and controlled the *specific* personal decisions at issue in this employment dispute:

> As noted previously, the Magistrate Judge found that the alleged facts plausibly supported a claim that BMW AG was ***directly involved in and, in fact, controlled the HR decisions at issue*** in this case. The Court reads the Report's use of the phrase "substantial collaboration" to mean BMW AG was ***directly involved in the alleged decision to remove Plaintiff from her position*** based on nationality. *See* (ECF No. 65 at 14-15). In expanding on this phrase, the Magistrate Judge detailed BMW AG's conduct that reflected involvement that was more than supervisory in nature – as alleged by Plaintiff, ***BMW AG may have been the ultimate decisionmaker, orchestrating the removal of Plaintiff from her position*** in the Greer, S.C. plant: . . . According to the allegations, BMW AG substantially engaged with the HR department for BMW MC, a forum resident, ***directed the removal of Plaintiff from her position*** in the forum state based on national origin, and, therefore, made the decision giving rise to this action.

Order at 9-11 (emphasis added). Thus, if the undisputed facts show – as they do – that BMW MC directed and controlled the specific personnel decisions that precipitated Plaintiff's resignation, summary judgment is proper for BMW AG.

As BMW AG's Statement of Facts demonstrates, the string of events that Plaintiff claims led to her voluntary resignation were directed and controlled by BMW MC not BMW AG. Specifically, BMW MC President Robert Engelhorn made the decision that Sherry McCraw would become the next Vice President of HR at BMW MC and the decision to bring Eva Burgmeier to BMW MC on an international assignment and to place her in the TX-60 Department Manager role. Moreover, the reorganization plan to laterally transfer Plaintiff to the TX-64 role was made by BMW MC officers Dr. Engelhorn, Sherry McCraw, and Christine Petrasch. MB SOF ¶¶ 13, 22.

The burden thus shifted to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial" on these dispositive facts. *Bowers v. Univ. of S.C.*, No. 20-4486-MGL-KDW, 2023 WL 5756321, at *1 (D.S.C. July 6, 2023). Plaintiff has not met her burden.

4

Plaintiff reaches the dispositive issues on page thirteen of her "Facts" section. In the first subsection ("BMW AG was involved in the removal of Dawsey"), Plaintiff cites no facts that draw into question the established fact that Dr. Engelhorn, Ms. Petrasch, and Ms. McCraw – all BMW MC officers – made the reorganization plan to move Plaintiff to the TX-64 position. MB SOF ¶ 22. In fact, Plaintiff concedes in multiple places that BMW MC controlled the decision making. *See* Opp. 13 ("BMW MC confirms that, *in making the decision*, 'Dr. Engelhorn communicated . . . .'") (citation omitted); *id.* at 16 ("Likewise, while Engelhorn and Petrasch may have made the challenged decisions . . . ."). This concession is dispositive.

Plaintiff's other "Facts" do not compel a different result.[3] Despite her acknowledgement that Dr. Engelhorn was the decision maker, Plaintiff attempts to sow doubt as to who was directing and controlling these decisions with her conclusory assertion – *without citation* – that "Petrasch left no doubt that BMW Group in Germany was making the decision." Opp. 13; *see also infra* p. 11. The law is clear: Plaintiff "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Turner v. BFI Waste Servs.*, 268 F. Supp. 3d 831, 835 (D.S.C. 2017) (citation omitted). Nor does Plaintiff meet her burden by her assertion that Dr. Engelhorn communicated with personnel at BMW AG about his decision making. Op. 13-14. Informing and aligning with a parent company are hallmarks of a parent-subsidiary relationship, and, in this case, do not evidence any control of the decision-making process by BMW AG. *See infra* n.2.

---

[3] At times, Plaintiff improperly refers to "BMW" generally when discussing conduct that is indisputably BMW MC's. *See, e.g.*, Opp. 13 ("Petrasch told Dawsey that BMW replaced Petrasch . . . ."), 13 n.3 (". . . which BMW filled with . . . ."). The conduct of each defendant must be considered separately. *See Givens v. Erie Ins. Co.*, No. 22-824-HMH, 2022 WL 2759167, at *6 (D.S.C. July 14, 2022) ("The due process requirements must be met as to each defendant, and thus the court is to assess individually each defendant's contacts with South Carolina.") (citation omitted).

5

In the second subsection ("BMW AG also directly involved in the selection of Eva Burgmeier for TX-60" [sic]), Plaintiff again acknowledges that Dr. Engelhorn "made the decision to appoint Burgmeier at BMW MC." Opp. 14. This is dispositive, and Plaintiff's other points do not compel a different result. Plaintiff asserts that Dr. Engelhorn communicated with BMW AG about Ms. Burgmeier, which makes sense because she would be transferring from BMW AG to BMW MC, and alignment was important. *See* Engelhorn Dep. 53:25-54:3. Plaintiff's last point of emphasis is that Ms. Burgmeier's name originally came from a list of BMW AG personnel interested in an international assignment. Opp. 14, 16. Again, this makes sense as she was transferring from BMW AG. More importantly, there is no evidence that BMW AG controlled the actual process and decision making – that undisputedly rested with BMW MC.

In Plaintiff's last attempt to create a factual dispute, she asserts that Dr. Engelhorn and Ms. Petrasch previously worked for BMW AG. Opp. 16. This is not in dispute, nor is it relevant. Both were personnel of BMW MC at the time of the relevant decision making, and their duties and obligations were owed to BMW MC. ECF 14-3 (McCraw Aff.) ¶ 16. Plaintiff's attempt to describe the minutiae of their employment agreements, which is the subject of her *third* declaration, is often factually incorrect and, more importantly, immaterial. The dispositive question as to whether the Court can maintain personal jurisdiction over BMW AG is whether BMW AG directed and controlled the personnel decisions at issue. The undisputed facts establish that BMW MC alone controlled these decisions, and summary judgment should enter for BMW AG.

**B.**     **The Exercise of Personal Jurisdiction Over BMW AG Is Not Constitutionally Reasonable.**

To maintain personal jurisdiction over BMW AG, Plaintiff must also prevail in showing that continuing to exercise personal jurisdiction would be constitutionally reasonable. In its Moving Brief, BMW AG detailed the acute and unnecessary burden of keeping BMW AG in this

6

suit. MB 18-19. Plaintiff responds by suggesting that this factor need not be separately analyzed. Opp. 17. To the contrary, the constitutional reasonableness argument requires evaluating the relative burdens and interest of the parties, and the judicial system's interest in obtaining efficient resolutions. Order at 4-5. Plaintiff's only substantive response is in a footnote, where Plaintiff asks, rhetorically, "South Carolina courts would have no interest in providing a forum to remedy the violation of federally-protected civil rights of a South Carolinian?" Opp. 17 n.5. Of course, South Carolina does, and that is why this case has proceeded for so long against BMW MC, the proper defendant. On the other hand, there is no compelling interest in forcing BMW AG to continue in this dispute between Plaintiff and her former employer, especially where there is no contention that Plaintiff cannot obtain the relief she seeks from BMW MC. MB 19.

      C.      **Plaintiff's Distracting and Unreliable "Facts" Section Cannot Meet Her Burden at Summary Judgment.**

Plaintiff's "Facts" section goes far beyond any reasonable background necessary for the reader and instead appears intent on distracting from the core of this dispute. BMW AG does not have the space to offer a point-by-point refutation, nor is correcting extraneous facts necessary for the Court's decision making. But three high-level responses are warranted.

First, as noted above, Plaintiff's "Facts" section is replete with assertions, based largely on Plaintiff's successive declarations, about the relationship between BMW AG and its domestic subsidiary that have no bearing on the specific personal jurisdiction analysis at issue – i.e., whether BMW AG directed and controlled the specific personnel decisions at issue. These include topics like the corporate distinctions between BMW AG and MC, the nature and extent of BMW AG's supervisory role over BMW MC, and BMW AG's role in high-level policy setting for BMW MC. *See* Opp. 1-13. By focusing almost exclusively on general aspects of BMW AG's relationship to its subsidiary, Plaintiff appears to make an about-face to a theory of personal jurisdiction based on

7

agency, alter ego, or veil piercing that she disclaimed and waived a long time ago (and which, in any case, would not apply here). MB 12. When BMW AG moved to dismiss, Plaintiff declared that she is "not suing BMW [AG] on any vicarious liability theory, and the Court should not be confused by BMW AG's efforts to discuss theories like piercing the corporate veil and alter ego." ECF No. 45 at 1. Now, not only does Plaintiff devote much of her "Facts" to the types of factors courts consider under these theories of personal jurisdiction, Plaintiff cites and quotes at length personal jurisdiction cases based on these exact theories.[4] These cases are inapposite, and her reliance on them does not support the extension of jurisdiction here.

Second, although not always apparent, Plaintiff's "Facts" rely heavily on citations – many dozens – to her own testimony and *three* declarations. When confronted with facts she does not like, Plaintiff files another declaration to try to save her case against BMW MC (and BMW AG), and her personal jurisdiction case against BMW AG. In the Moving Brief, BMW AG cited extensive case law establishing, *inter alia*, that a "party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge." *Anderson v. United States*, No. 12-3203-TMC-KDW, 2015 WL 9918406, at *8 (D.S.C. Oct. 9, 2015); *see also* MB 15-16. Plaintiff's response to this body of case law is telling:

---

[4] *See* Opp. at 18-9 (citing *Manning v. Erhardt + Leimer, Inc.*, No. 17-CV-348, 2020 WL 759656, at *4 (W.D.N.Y. Feb. 7, 2020) ("For New York courts to have personal jurisdiction over a foreign parent company based on the actions of its domestic subsidiary, 'the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent.'"); *Wang v. Gen. Motors, LLC*, No. CV 18-10347, 2020 WL 4474163, at *6 (E.D. Mich. Aug. 4, 2020) ("The Sixth Circuit has adopted the alter-ego theory of personal jurisdiction, which 'provides that a non-resident parent corporation is amenable to suit in the forum if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'"); *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 485 (N.D.N.Y. 2019) ("Specifically, a 'plaintiff must show that the subsidiary is either an 'agent' or a 'mere department' of the parent corporation in order to exercise personal jurisdiction over the parent.'").

"There is no witness with as much first-hand knowledge about BMW MC's HR operations than Dawsey." Opp. 20. Such *ipse dixit* does not come close to meeting Rule 56's strict standard:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). While Plaintiff undoubtedly has personal knowledge about certain aspects of BMW MC's Human Resources Department, she has no independent personal knowledge about the specific personnel decisions at the crux of this personnel jurisdiction dispute – nor does she make any attempt to show that she is competent to testify about the operations of a German corporation for which she never worked. No matter how many declarations she files, that fact will not change. As a result, Plaintiff's disproportionate reliance on her own testimony – cited dozens of times – cannot meet her burden at summary judgment.

Finally, Plaintiff's paraphrasing and characterization of testimony is often misleading, if not outright wrong. For example, Plaintiff leads her Opposition with the assertion that Dr. Engelhorn "could not explain the distinction between BMW AG and BMW MC" and that he "stated that one would have to 'ask the lawyers'." Opp. 1. This does not come close to accurately reflecting Dr. Engelhorn's testimony. Dr. Engelhorn testified that BMW MC is a "fully-owned subsidiary of BMW AG," and when pushed to testify as to "any other relationship between BMW MC and other corporate entities between BMW MC and BMW AG," Dr. Engelhorn testified: "There are certain legal and finance bindings with other entities which I'm not aware of details. You have to ask our lawyers." Engelhorn Dep. 72:1-23. Plaintiff's other "descriptions" of the little testimony that she cites generally take this same approach.

### D. **Plaintiff's Other Personal Jurisdiction Arguments Also Fail.**

Pages 19-25 of the Opposition is a laundry list of other unavailing arguments. To the extent BMW AG has not already addressed them above, they are addressed here.

9

***BMW AG Testimony.*** Plaintiff declares that the Court "should disregard all witness/declaration evidence from BMW AG" because "BMW AG's [sic] hid the ball during discovery and refused to offer any witnesses." Opp. 19-20. Plaintiff's assertion is as outlandish as it is wrong. BMW AG has fully participated in discovery since compelled to by this Court (Dkt. No. 78), and it is not BMW AG's responsibility to "offer" witnesses – it is Plaintiff's job to serve process for witnesses she needs – no process was ever sought for any BMW AG witnesses.

***McCraw Declaration.*** Plaintiff argues that Ms. McCraw "cannot testify as to BMW AG's accounting and tax issues," asserting that she "signed a sworn statement about the accounting and finance of BMW AG." Opp. 20 (citing Dkt. No. 42-2). This is wrong – Ms. McCraw's declaration addresses BMW MC and says *nothing* of BMW AG's accounting and tax issues.

***Motion to Dismiss Order.*** Plaintiff argues that the "Court's ruling on BMW AG's Motion to Dismiss was based on evidence, and not allegations," suggesting the personal jurisdiction question was already decided. (Opp. 20). To the contrary, the District Court emphasized that Plaintiff only made her *prima facie* case at that stage based on *allegations*.[5]

***Rule 4(k)(2).*** In another last-ditch effort, Plaintiff argues "if BMW AG is correct, then jurisdiction may be exercised under Rule 4(k)." Opp. 21-22. Under Rule 4(k)(2), Plaintiff has the burden of demonstrating that AG "is not subject to personal jurisdiction in any state" and that AG's "contacts with the United States as a whole support the exercise of jurisdiction consistent with the Constitution and laws of the United States." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir. 2002) (citation omitted). Plaintiff has not met

---

[5] *See* Order 9-11 ("the Magistrate Judge found that the ***alleged facts*** plausibly supported a claim that BMW AG was directly involved in and, in fact, controlled the HR decisions at issue"; "as ***alleged*** by Plaintiff, BMW AG may have been the ultimate decisionmaker, orchestrating the removal of Plaintiff from her position in the Greer, S.C. plant").

10

this burden – just the opposite, Plaintiff continues to assert that personal jurisdiction over BMW AG is proper in South Carolina. *Id.*; *see also Grayson v. Anderson*, 816 F.3d 262, 271 (4th Cir. 2016) ("In this case, the plaintiffs never argued, as they were required to do, that *no State* could exercise personal jurisdiction over [defendant]. In fact, the plaintiffs discuss only whether South Carolina could exercise jurisdiction over [defendant], without mentioning [defendant's] status in other States."). As the Fourth Circuit did in *Base Metal* and *Grayson*, this Court should reject Plaintiff's last-ditch attempt to establish an alternative basis for exercising personal jurisdiction over AG without any attempt to make the requisite showing.

**Hearsay.** Plaintiff devotes over three pages of her Opposition to the unsustainable argument that statements purportedly made by Ms. Petrasch to Plaintiff are not hearsay. Opp. 21, 22-25. In the face of overwhelming evidence from every witness, including Ms. Petrasch, that BMW MC held and exercised authority over the specific personnel decisions at issue, Plaintiff relies solely on her own version of a conversation she reportedly had with Ms. Petrasch to suggest otherwise. Plaintiff's arguments under Rule 801(d)(2)(C) and (D) fail for at least two reasons.

First, Plaintiff principally relies on her self-serving and conclusory interpretation that "Petrasch left no doubt that BMW Group in Germany was making this decision." Opp. 13. Such a conclusory description, in the absence of any actual statements, cannot constitute admissible evidence under any construct, much less under a hearsay exception.

Second, as to the words Plaintiff alleges Ms. Petrasch actually *spoke* (which Ms. Petrasch did not relate in her deposition), the hearsay exclusions under Rules 801(d)(2)(C) and (D) do not apply, and Plaintiff cites neither fact nor law that establish otherwise. Opp. 23-25. Plaintiff acknowledges that section (D) is an exception for statements made by an "agent," and every case Plaintiff cites requires that an agency relationship be established. *See* Opp. 22-24. Here, Plaintiff

11

has abandoned any theory of agency in the personal jurisdiction context (*see supra* p. 7-8), does not cite agency law, and does not engage in an agency analysis (which would fail). As to Section (C), which extends the opposing party exclusion to "authorized" persons, Plaintiff argues that an agency relationship is not required (Opp. 24-25), but *glaringly omits* text from the case she relies on that says exactly the opposite: "Under either subsection of the rule, the proponent of the evidence ***must establish the existence of an agency relationship between the parent and the subsidiary*** under the applicable principles of agency law." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1247 (E.D. Pa. 1980) (emphasis added).

*2016 Expat Guidelines.* Plaintiff continues her reliance on the draft and dated 2016 Expat Guidelines in an effort to concoct a factual dispute. Opp. 25. Plaintiff cites only her own declaration and testimony for the notion that the document was "codified" by Johannes Trauth, who was an employee of *BMW MC* when the document was created. Opp. 25. That contention – even if it were predicated on admissible evidence – is irrelevant. It does not address the fundamental problem: the creation of this document at BMW MC in 2016 does not provide any evidence of direct control or involvement by BMW AG in the BMW MC personnel decisions at issue. MB 17. Under no construct does this document address, much less meet, Plaintiff's burden.

## II. BMW AG WAS NOT PLAINTIFF'S EMPLOYER AND CANNOT BE HELD LIABLE FOR DISCRIMINATION UNDER TITLE VII OR SECTION 1981.

Plaintiff admits that she was always employed by BMW MC and has never been an employed by BMW AG. SOF ¶¶ 10-11. Despite this admission, she seeks to hold BMW AG liable for alleged discriminatory acts that occurred during her employment with BMW MC. To do so, she must prove that BMW MC and BMW AG were integrated employers under the test established by the Fourth Circuit in *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999). In its Moving Brief, BMW AG provided detailed evidence to establish that Plaintiff cannot prove any of the

12

elements of the integrated employer test. In response, Plaintiff's Opposition misrepresents applicable law and makes conclusory arguments that are not supported by the record evidence.

Initially, Plaintiff misrepresents the legal arguments and authorities cited by BMW AG on the integrated employer issue. Notably, Plaintiff says that BMW AG "is wrong to assert that there is a 'strong presumption' against application of the integrated employer doctrine." Opp. 29. However, BMW AG never made such an assertion. Instead, quoting directly from the Fourth Circuit's opinion in *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987), BMW AG argued that "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." Plaintiff mistakenly claims that this Court, in the case of *Carter v. Ascend Performance Material Holdings, Inc.*, No. 20- 4379-TMC, 2022 WL 4463021 (D.S.C. Sept. 26, 2022), rejected that principle from the Fourth Circuit. While that decision did reject the argument that there is a "strong presumption" against finding a parent company to be an integrated employer, that is not the argument made by BMW AG. Instead, BMW AG submits, based upon binding Fourth Circuit precedent, that there is a strong presumption that BMW MC is the employer because it hired Plaintiff. Plaintiff has presented no argument or evidence to refute this point or to overcome this strong presumption.

To establish that BMW MC and BMW AG are integrated employers, Plaintiff must prove all four elements of the test established in *Hukill*. In its Moving Brief, BMW AG established that none of the four *Hukill* elements are present in this case. In response, Plaintiff claims that there is "more than enough" evidence to show that BMW MC and BMW AG are integrated employers. Opp. 26-27. However, conspicuously absent from Plaintiff's Opposition is any admissible evidence to meet her burden of proof on this issue. Most notably, while Plaintiff agrees with BMW AG that centralized control of labor relations is the most important of the four elements, she does

13

not cite to a single fact in falsely asserting that BMW AG controls HR management at BMW MC. Opp. 28. In contrast, BMW AG has pointed the Court to uncontroverted evidence in the record establishing that the day-to-day personnel decisions at BMW MC are all made by BMW MC management, not by BMW AG. SOF ¶¶ 6-7. More specifically, as to the restructuring of the HR Department at BMW MC in the fall of 2021, the specific personnel action at issue in this lawsuit, every decision was made by an officer of BMW MC. SOF ¶¶ 12-22. In the absence of any admissible evidence showing that BMW AG exercised significant control over the day-to-day activities at BMW MC, Plaintiff cannot meet her burden to establish that BMW MC and BMW AG are an integrated employer.[6]

Accordingly, BMW AG cannot be liable for the employment decisions made by BMW MC with regard to Plaintiff.[7]

### III. UNDER PLAINTIFF'S OWN THEORY, HER NATIONAL ORIGIN CLAIM WOULD STILL BE BARRED BY INTERNATIONAL TREATY.

Faced with a Treaty that negates Plaintiff's claims against BMW AG, Plaintiff ignores that the argument is *in the alternative* – i.e., only if the Court determines that BMW AG directed and controlled the personnel decisions at issue, then the FCN Treaty would then bar Plaintiff's claims.

Plaintiff suggests that BMW MC is not covered by the treaty but does not address the applicability of BMW AG – a German company and thus a Party to the Treaty. Plaintiff tries to

---

[6] Interestingly, Plaintiff's Opposition is devoid of any response to BMW AG's argument based on this Court's decision in *Wauben v. Protega (USA), Inc.*, No. 05-2780-PMD-RSC, 2007 WL 775614, at *7 (D.S.C. Mar. 9, 2007). In *Wauben*, which involved similar facts, District Judge Duffy rejected the plaintiff's argument that the parent German corporation and subsidiary South Carolina corporation were integrated employers. *Id.* at *8-9. Based on Judge Duffy's holding in that case, Plaintiff cannot establish that BMW MC and BMW AG are integrated employers.

[7] Plaintiff has no answer to the fact that she has brought identical claims against BMW MC and BMW AG, and even if the Court determines that it has personal jurisdiction over BMW AG, *and* that BMW AG is Plaintiff's employer, the claims against BMW AG still fail for the reasons set forth in BMW MC's summary judgment motion. *See* MB 26 n.9.

14

have it both ways. First, Plaintiff claims BMW AG – a German company – made the decision. Then, Plaintiff argues it is BMW MC that should be the determinate company for purposes of the Treaty. (Opp. at 32-33). BMW AG is not arguing that Plaintiff cannot sue BMW MC – a domestic corporation – but rather that Plaintiff cannot sue BMW AG under the Treaty if the Court finds BMW AG controlled the decision-making process. *See Sumitomo Shoji Am. v. Avagliano*, 457 U.S. 176 (1982) (prohibiting United States subsidiary of Japanese company from claiming protection of the FCN Treaty, not foreign parent from claiming protection).

Lastly, Plaintiff files yet another self-serving declaration suggesting who she believes is "executive personnel" under the FCN Treaty. (ECF 104-9). There is simply no basis for this assertion and it contradicts her own allegations in the Amended Complaint. (ECF 20 ¶¶ 38-40). Plaintiff's citation to BMW AG's Statement of Facts (ECF 103, p. 4, ¶5) similarly fails as this is not the exclusive subset of "executive personnel" as Plaintiff suggests. Again, trying to have it both ways, Plaintiff asserts her position was the second highest level management position in the Human Resources Department with responsibility for compensation, benefits, HR planning, organization and the family medical center (ECF 20 ¶¶ 38-40), but when it would bar her claims against BMW AG, Plaintiff suggests the position was not "executive personnel."

If the Court somehow finds that BMW AG is subject to jurisdiction and was involved in the decision making complained of by Plaintiff, the FCN Treaty bars Plaintiff's national origin claims against BMW AG.

WHEREFORE, Defendant BMW AG respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of BMW AG on all of Plaintiff's causes of action.

| | |
|---|---|
| March 29, 2024 | Respectfully submitted, |
| | /s/ Kurt M. Rozelsky |
| | Kurt M. Rozelsky, Bar No. 6299<br>SPENCER FANE LLP<br>27 Cleveland St., Suite 201<br>P.O. Box 294 (29602-0294)<br>Greenville, SC 29601<br>Phone: 864.906.7694<br>Fax: 303.839.3838<br>Email: krozelsky@spencerfane.com |
| | Daniel S. Savrin (admitted *pro hac vice*)<br>Nathaniel P. Bruhn (admitted *pro hac vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Federal Street<br>Boston, MA 02110-1726<br>Phone:  1.617.951.8674<br>            1.617.951.8651<br>Fax: 1.617.428.6310<br>Email: daniel.savrin@morganlewis.com<br>            nathaniel.bruhn@morganlewis.com |
| | *Counsel for Defendant*<br>*Bayerische Motoren Werke Aktiengesellschaft* |