**In the United States District Court**
**District of South Carolina**
**Greenville Division**

| | | |
|---|---|---|
| Kelly Dawsey, | ) | 7:22-03738-TMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Bayerische Motoren Werke | ) | |
| Aktiengesellschaft and BMW | ) | |
| Manufacturing Co., LLC collectively | ) | |
| d/b/a "BMW Group," | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Objections to the Magistrate Judge's**
**Report and Recommendation on**
**Defendants' Motions for Summary Judgment [ECF 113]**

Brian P. Murphy
Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400

I.    Introduction ................................................................................................ 1

II.   Objections .................................................................................................. 1

    A.  An adverse action occurs when the employer *announces* the action, which is also
        when a claim accrues and the statute of limitations commences. ....................... 1

        1.  The Magistrate Judge's Recommendation mis-states the scope of *Ricks*. .... 1

        2.  The rule created by the Magistrate Judge could never work ......................... 6

    B.  The Magistrate Judge erred in viewing the adverse actions as speculative. ........ 7

        1.  There was nothing speculative about the moves at issue .............................. 7

        2.  It does not matter whether the announced adverse action occurs. ................ 8

        3.  BMW's contradictory arguments ................................................................ 8

        4.  The cases cited by the Magistrate Judge are distinguishable. ...................... 9

        5.  The case relied on by BMW in reply supports Dawsey. .............................. 13

    C.  Other errors related to all claims .................................................................... 13

        1.  The Magistrate Judge relied on disputed facts and failed to properly credit
            Dawsey's resignation evidence ................................................................. 13

        2.  The Magistrate Judge erred to the extent he focused on the cessation of
            employment. ........................................................................................... 14

    D.  The Magistrate Judge's adverse action analysis does not resolve all claims. .... 14

        1.  The Magistrate Judge's recommendation disregards the scope of the relief
            sought. .................................................................................................... 14

        2.  The Magistrate Judge's rationale should not apply to Section 1981. ........... 15

        3.  The Magistrate Judge's dismissal of compensation-related allegations
            violates the Lilly Ledbetter Act. ................................................................ 15

    E.  Section 703(a)(2) nationality claim: The Magistrate Judge erred by
        recommending judgment on a claim Defendants never addressed in a Motion. 16

        1.  Issue preservation ................................................................................... 16

        2.  Section 703(a)(2) makes classification itself unlawful. ............................... 17

        3.  Rejection of the 703(a)(2) claim also is improper based on the relief sought.
            ................................................................................................................ 18

        4.  *James* is not instructive ........................................................................... 18

III.  Conclusion ............................................................................................... 19

## I. Introduction

Kelly Dawsey respectfully submits the following Objections to the Magistrate Judge's Report and Recommendation [ECF 113].[1]  Fed. R. Civ. P. 72(b)(2).  As a recent D.C. Circuit opinion shows, the Magistrate Judge's reasoning reflects a fundamental error of law.  The Magistrate Judge's analysis also does not resolve all issues.  Further, his recommendations violate Rule 56 by drawing inferences for the moving party.

## II. Objections

**A.    An adverse action occurs when the employer *announces* the action, which is also when a claim accrues and the statute of limitations commences.**

**1.    The Magistrate Judge's Recommendation mis-states the scope of *Ricks*.**

The Magistrate Judge erroneously concluded that Dawsey cannot establish an adverse action because she quit before BMW implemented its reorganization.  [*See* ECF 113 at 13-14].[2]  The Magistrate Judge is mistaken in believing that *Ricks* and *Chardon* do not control when an adverse action occurs.[3]  This is error because: (1) an adverse action happens when a claim accrues; (2) a claim accrues and the statute of limitation

---

[1]    The Report addresses the merits of BMW MC's Motion for Summary Judgment [ECF 92].  In a footnote to a separate motion regarding personal jurisdiction, BMW AG purported to "incorporate" BMW MC's arguments.  [ECF 103 at 26 n. 9].

[2]    The Magistrate Judge did not question whether removal from one's job or a demotion is adverse under *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024).

[3]    *Delaware State College v. Ricks*, 449 U.S. 250, 256-58 (1980) (claim arose when professor notified of denial of tenure and pending termination and not when the resulting termination occurred); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) ("[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.").

commences at the same time; and (3) both happen when the employer announces the decision.

Because all three coincide, the Magistrate Judge by stating that *Ricks* only governs when the statute of limitations commences. *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304-05 (2d Cir. 2017) ("The [*Ricks*] Court's conclusion that a discrimination claim accrues upon notice of termination, rather than upon the implementation of that decision, **necessarily implies that the notification of termination qualifies as an adverse employment action**."); *Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019) ("[T]he mere **notice of termination is a cognizable adverse employment action** regardless of whether the employer follows through.") (emphases added).

"A claim accrues when the plaintiff has the right to assert it in court." *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 22-1008, 2024 U.S. LEXIS 2885, at *11 (U.S. July 1, 2024). That happens "when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief." *Id.* at * 16 (quoting *Green v. Brennan*, 578 U. S. 547, 554 (2016).

The "complete and present cause of action" standard also governs when the statute of limitations period commences.

> [A] "'limitations period commences when the plaintiff has a complete and present cause of action.'" [*Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U. S. 409, 418 (2005)]. "[A] cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997).

2

*Green*, 578 U.S. at 554; *accord A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) ("The applicable statute of limitations begins to run once a claim accrues.")

So when does a claim accrue for employment discrimination claims?  In other words, when does an employee have a "complete and present cause of action?"  *Ricks* and *Chardon* also control that issue. "As applied to the employment discrimination context, . . . a claim accrues when the disputed employment practice — the demotion, transfer, firing, refusal to hire, or the like — **is first announced** to the plaintiff." *Almond v. Unified Sch. Dist. #501*, 665 F.3d 1174, 1177-78 (10th Cir. 2011) (emphasis added) (Gorsuch, J.); *accord Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1222 (10th Cir. 2006) ("Generally, a cause of action accrues 'on the date the **employee is notified** of an adverse employment decision by the employer.'") (quoting *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003)).[4]

The leading employment discrimination law treatise aptly describes the announcement as being "[w]hen discrimination has occurred."  Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* Ch. 27.II.A.7 at 27-24  to -25 (6th ed. 2020) ("Lindemann & Grossman"); *id.* Ch. 12.VI.B.3 at 12-38 to -39 ("the alleged discriminatory act occurs the date the employee received notice of the adverse decision, rather than on the date the decision took effect . . . .").  Fourth Circuit cases are in accord.

---

[4]     *Chicago Teachers Union v. Bd. of Educ. of Chi.*, 2020 U.S. Dist. LEXIS 33202, at *25-26 (N.D. Ill. Feb. 25, 2020) ("Although *Ricks* made th[e announcement vs implementation] distinction for purposes of evaluating when a claim accrues for statute of limitations purposes, it is also instructive" for purposes of determining when an adverse action occurs."); *see also Chicago Teachers Union, Local 1 v. Bd. of Educ. of City of Chicago*, 419 F. Supp. 3d 1038, 1046-47 (N.D. Ill. Jan. 3, 2020).

*Hospodor v. Burlington Indus.,* No. 99-2017, 2000 U.S. App. LEXIS 2679, at *3 (4th Cir. Feb. 23, 2000) (termination claim arose when the plaintiff "received notice that he was to be terminated")*; Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) (noting that the discriminatory act was the employer informing plaintiff of his removal as branch manager) (citing Ricks); *Smith v. Univ. of Md. Balt.*, 770 F. App'x 50, 50 (4th Cir. 2019); *Weaver v. United States Postal Serv.*, No. 1:19-2700-JMC-PJG, 2020 U.S. Dist. LEXIS 116396, at *4-5 (D.S.C. May 26, 2020) ("The limitations period for an employment discrimination action based on an unlawful termination begins to run from the date that the employer notifies an employee of his termination, even if the termination is pending."), *adopted*, 2020 U.S. Dist. LEXIS 115853, at *8 (D.S.C. July 1, 2020); *see also Simmons v. S.C. State Ports Auth.*, 694 F.2d 63, 65 (4th Cir. 1982).

Post-announcement developments are irrelevant to liability. An employer, for example, cannot unring the bell with post-announcement changes. *Shultz*, 867 F.3d at 305-06 (finding that a "notice of termination itself constitutes an adverse employment action, even when the employer later rescinds the termination"); C*hicago. Teachers Union, Local 1*, 419 F. Supp. 3d at 1046 (fact that teachers experienced no loss did not negate adverse action arising from discriminatory layoff notices).

Likewise, Dawsey's resignation changes nothing. In *Van Horn v. Del Toro*, No. 23-5169, 2024 U.S. App. LEXIS 15154, at *1 (D.C. Cir. June 21, 2024),[5] the D.C. Circuit affirmed that a plaintiff's post-announcement resignation is irrelevant because the adverse action occurred when the employer announced the action. The employer in *Van*

---

[5]    The D.C. Circuit issued this decision the same day the Magistrate Judge issued the Report and Recommendation.

*Horn* involuntarily transferred the plaintiff from D.C. to Naples, Italy. The plaintiff didn't go. He announced he was retiring and would not accept the position. *Id.* at *2. He later revoked his retirement. The employer then transferred him twice. First, it transferred the plaintiff from D.C. to Norfolk, Virginia. It then *announced* a transfer to Great Lakes, Illinois. *Id.* at *3. But the plaintiff quit before the Great Lakes transfer.

The employer argued that the Naples and Great Lakes transfers were not adverse actions because the plaintiff effectively thwarted the Naples transfer and voluntarily quit before the Great Lakes transfer. The D.C. Circuit rejected both arguments based on *Ricks* and its progeny:

> Nor does it matter to the adverse-action analysis that the Naples and Great Lakes transfers were never effectuated. As *Singletary v. Howard University*, 939 F.3d 287, 300 (D.C. Cir. 2019), recognized, **an adverse employment action becomes cognizable when the employer provides notice of the action to the employee, "regardless of whether the employer follows through."** *See also Del[aware] State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." (cleaned up)); *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011) (Gorsuch, J.) ("[A] claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff."). Accordingly, **the Naples and Great Lakes transfers were adverse employment actions on announcement**, no matter that Van Horn never went to Naples and retired rather than relocate to Great Lakes.

*Id.* at **7-8 (emphases added).

In September 2021, BMW informed Dawsey that it was removing her from TX-60. [ECF 97 § II(I)]. In November, BMW announced that move and the later decision to demote Dawsey to a FL IV position. [*Id.*]. Under *Ricks*, *Chardon*, and the other cited authorities, these are the dates on which the statute of limitations for those actions commenced. Under *Corner Post*, *Green*, and *Almond*, that is the same time at which Dawsey's claims accrued. Lindemann & Grossman instructs that this is when

5

discrimination occurs. And *Van Horn* confirms that announced decisions are "adverse employment actions" even if the plaintiff resigns in response.

The Magistrate Judge's belief that *Ricks* does not define when an adverse action occurs is an error of law. For this reason alone, the Court should decline to adopt the Report and Recommendation.

### 2.     The rule created by the Magistrate Judge could never work.

Law aside, there are many practical problems with uncoupling the commencement of the statute of limitations from the determination of when an adverse action occurs. The Magistrate Judge's analysis would allow employers to shorten the statutes of limitations unilaterally. It could even eliminate the ability of individuals to bring a claim.

BMW told Dawsey it was removing her from TX-60 in September. That is when the statute of limitations began to run under *Ricks* and *Chardon*. But BMW did not fully implement the change until five months later. [ECF 92-2 at 124]. In a deferral date, such as South Carolina, the Magistrate Judge's rule would approximately halve the time for Dawsey to file a charge. One county away in North Carolina, a plaintiff under these facts would only have a month to file. If the employee worked for the government, it would be impossible to bring a case.[6]

Neither BMW nor the Magistrate Judge can cite a case that uncouples the adverse action from the commencement of the statute of limitations. This is merely one reason why.

---

[6]     In many states, employees have only 180 days to file a Charge. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). The anomaly presented by the Magistrate Judge's analysis would be even more pronounced for federal employees, who must commence proceedings within 45 days of an adverse action. 29 CFR §1614.105(a)(1).

6

**B.      The Magistrate Judge erred in viewing the adverse actions as speculative.**

The Magistrate Judge also erred in finding that BMW's announced decisions were merely speculative.   [ECF 113 at 13, 14].   BMW's decisions, such as Dawsey's displacement from TX-60, are not speculative. Even so, whether BMW implemented the decision is immaterial.

Even if it were material, the Magistrate Judge's analysis violates two summary judgment tenets.  First, the Magistrate Judge allowed BMW to speak out of both sides of its mouth when it bore the burden of showing the *absence* of any disputed facts.  Second, the Magistrate Judge construed facts in the light most favorable to the moving party.

Finally, the cases relied on by the Magistrate Judge do not apply.  And the case relied on by BMW *helps* Dawsey.

**1.      There was nothing speculative about the moves at issue**

Even if BMW had some evidence that things were up in the air, the Magistrate Judge erred by construing facts in the light most favorable to BMW. The only evidence the Court should consider is what benefits the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

By the fall of 2021, the reorganization plan was not preliminary or speculative.  Burgmeier was coming from Germany.  Nobody claimed otherwise.  Once BMW decided that, Dawsey had to leave TX-60.  BMW's policy left no other choice. Burgmeier had to go into TX-60 because the policy required that a German be in that position since an American would be in TX-6.  [ECF 97 at 3-5].  Because Burgmeier was the only German at that level in HR, Dawsey could not have remained in TX-60.  [*Id.*] So the assertion that BMW's moves were speculative is unsupported by evidence.

2. **It does not matter whether the announced adverse action occurs.**

The Magistrate Judge rejected all claims based on the premise that an adverse action does not occur when the moving party argues that implementation was speculative. There are several Rule 56 problems with that rationale. But this Court need not go down that rabbit hole. As *Van Horn* illustrates, whether the plaintiff quits before implementation does not matter. [*Supra* § II(A)(1)]. Thus, even if it were proper to speculate and draw inferences for the moving party, one would only be speculating about an immaterial fact.

3. **BMW's contradictory arguments**

The Magistrate Judge also erred in allowing BMW to take inconsistent positions. When convenient, BMW argued that the reorganization was somehow in flux. But nobody from BMW said this, and there are no facts to which this Court could point to sustain judgment as a matter of law. On the contrary, BMW took the opposite position during this case. When Dawsey requested an admission that BMW had not offered Dawsey the TX-64 position, BMW MC denied the request based on its announcement in November 2021. [ECF 97-34 at 2 (Resp. to RTA 6)]. BMW also argued that Dawsey's resignation forced it to *change* its decision and keep Medley in TX-64. [ECF 92-1 at 12 ("As a result of Plaintiff's abrupt resignation in January 2022, the reorganization plan was put into disarray as Mr. Medley had to continue performing the TX-64 . . . duties"). Until then, there was no "disarray."

The Magistrate Judge should not have permitted BMW to claim that moves were speculative when it took the contrary position during discovery and in the Motion itself.

4.    **The cases cited by the Magistrate Judge are distinguishable.**

The Magistrate Judge relies primarily on *Ratcliff v. Spencer*, C/A No. 1:18-cv-757, 2019 WL 2375131, 2019 U.S. Dist. LEXIS 94641 (E.D. Va. June 4, 2019). [ECF 113 at 14]. The Magistrate Judge recognized that *Ratcliff*--which predates *Muldrow*—analyzed whether there was an adverse action. *Ratcliff* did not focus on when a claim arises. [ECF 113 at 14-15]. So not only are the facts in *Ratcliff* quite different, but the legal issues also are different.

*Ratcliff* is a constructive discharge case. The employee was on an inter-agency transfer program used to develop intelligence officers. A Memorandum of Understanding ("MOU") between the agencies governed the terms of the program. *Ratcliff*, 2019 U.S. District LEXIS 94641 at *3. Under the employer's revised policy, employees do not return to the job they held before the transfer. *Id.* ("An employee should not return to the exact same job"). At the same time, however, the MOU provided for a return to an equivalent position as determined by the employer. *Id.*

Toward the conclusion of the plaintiff's assignment, the parties discussed a few options for the plaintiff's next move. These included an extension of the transfer (aka JDA) and a cyber position. *Id.* at ** 6-7. The cyber position was "intended to be a position with the same pay, grade, and benefits the plaintiff enjoyed" before the transfer. *Id.* at *6. The position was merely a concept. The employer never finalized the function. The plaintiff quit "before her JDA . . . expired and before the design of the . . . proposed cyber position had been finalized." *Id.* at *7.

*Ratcliff* did not address when a cause of action accrues. Rather, the issue was the existence of an adverse employment action. *See id.* at *10 ("Plaintiff claims two adverse

employment actions: (1) not being returned to the same or equivalent position in violation of [the memorandum governing her transfer]; and (2) constructive discharge.")

The adverse actions here are: (1) BMW removing Dawsey her from her TX-60 job; and (2) BMW demoting Dawsey to a FL IV position (TX-64).    The plaintiff in *Ratcliff* did not challenge a displacement.   Nor did he claim demotion.   The issue in *Ratcliff* was whether the refusal to reinstate the plaintiff to her prior job violated the MOU.   The second issue – constructive discharge – is not an issue in this case.   Because *Ratcliff* is based solely on the issue of what an adverse action is, it has no value.   *Muldrow* supplanted this Circuit's law in that area.   [ECF 110].

The Magistrate Judge incorrectly cites *Ratcliff* for the proposition that resignation makes equivalency of positions speculative.   [ECF 113 at 14-15].   The *Ratcliff* Court's discussion about equivalency was in the context of whether an offer of the cyber position would violate the MOU's "equivalent position" clause.   The *Ratcliff* Court noted that the entire debate on position equivalency was "irrelevant" because the employer never created a defined cyber position:

> The specific facts regarding the back-and-forth between Plaintiff and Richardson on the development of the cyber position provide context, but are irrelevant to whether an adverse employment action occurred, because Plaintiff resigned before any action was taken. It follows that it is impossible to say whether the cyber position, if it had been finally defined, would have the Plaintiff's previous position as a CHCO.

*Id.* at *11.

*Ratcliff*'s rationale cannot be applied here.   First, it has no application to BMW's removal of Dawsey from her TX-60 position.   Second, BMW fully defined the TX-64 position.   TX-64 was neither conceptual nor new.   Epps occupied the position, and TX-64 had an established job description and function level rating.   [ECF 97 at 9, 10].

10

If the moves were "speculative," the Magistrate Judge's rationale nonetheless stands Rule 56 on its head.  There are two possibilities one may infer from BMW's announcements: That they would happen, or that they would not.[7]  The Magistrate Judge erred in choosing the inference that benefits BMW.

In the end, Dawsey did not speculate. The Magistrate Judge did. He speculated that BMW might have changed its mind about putting Dawsey in the TX-64 position.[8]  By doing so, the Magistrate Judge created a new exception to *Ricks* and *Chardon* that would completely swallow their rule.  There is always some theory under which a future event might not occur.  [*Supra* n. 6].  If that were a viable reason to grant judgment, then summary judgment must be granted in every case.  Respectfully, this Court cannot overrule Supreme Court precedent in such a manner.

The Magistrate Judge's willingness to speculate runs counter to Fourth Circuit precedent.  In *Price*, the plaintiff argued that equitable estoppel should apply after the employer gave notice.  The plaintiff based this argument on the employer's post-announcement efforts to mitigate the decision, and there was allegedly "hope for rehire, transfer, or a continuing employment relationship."  *Price*, 694 F.2d at 965.  The Fourth Circuit nixed this plea.  It held that the claim accrued upon the announcement, and possible later developments could not protect the employee.  The Magistrate Judge's

---

[7]    These are the same two possibilities that apply to every future event.  Yet, there is not one case holding that an action is not adverse merely because nobody can predict the future.  If the Magistrate Judge's analysis were correct, no case could stand based on an announcement because, among other contingencies, there is always a possibility that affected employees could die post-announcement.

[8]    If such speculation were proper, no plaintiff could ever win.  Regardless of what happened, employers will simply argue that other scenarios were possible.  That is not how Rule 56 works.

rationale guts this reasoning as well.  The Magistrate Judge agrees that the statute of limitations clock starts running.  He finds, however, that the employee still cannot pursue the claim that *Price* requires him or her to pursue without delay.  Respectfully, the Magistrate Judge's reasoning cannot be reconciled with any other case.

The Magistrate Judge also errs by citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004) while noting that *Muldrow* overturned its underlying "significant detriment" standard. [ECF 113 at 15].  *James* has virtually no value post-*Muldrow*.  Even before *Muldrow*, *James* did not apply when the decision involved a change of positions. [ECF 97 at 23 (citing *Spriggs v. Senior Servs. of Se. Va.*, No. 2:11cv182, 2012 U.S. Dist. LEXIS 74110, at *17 (E.D. Va. May 29, 2012))].  *James* certainly does not support the notion that BMW's decisions were speculative.

The Magistrate Judge cites *James* for the proposition that "'[s]peculation about the future adverse consequences of a reassignment may not rise to the level of a genuine dispute" and that it was "left to guesswork and conjecture.'"  [ECF 113 at 15 (citing *James*, 368 F.3d at 377)].  James's only "future adverse consequences" was the plaintiff's speculation that a limitation on project assignments could affect his billings.  He claimed that, if that happened, it could jeopardize future job prospects.  *James*, 368 F.3d at 376. This case involves no such speculation.

BMW's decision to remove Dawsey from TX-60 was complete.  There is no speculation about the effects of being demoted to TX-64 either.  TX-64 is a lower position, Dawsey's ability to advance would be affected, her benefits would be adversely affected, and BMW subjected her pay to pay cuts.  [ECF 97 at 10-13].  None of that is speculation. This case is nothing like *James*.

12

### 5.    The case relied on by BMW in reply supports Dawsey.

In its Reply, BMW cited *Green* for the proposition that the limitations period begins for a "voluntary resign[ation]" "when [the] plaintiff submitted [a] resignation." [ECF 100 at 7 (citing *Green v. Brennan*, 578 U.S. 547 (2016))]. As *Corner* Post makes clear,[9] *Green* supports Dawsey's position, not BMW's.

Like *Ricks* and *Chardon*, *Green* holds that a claim accrues when the employee gives *notice* of resignation, not when the resignation takes effect. *Green*, 578 U.S. at 554. Other courts recognize how *Green* easily fits within the *Ricks/Chardon* line of cases.

> [W]rongful discharge claims accrue, and limitation periods begin to run, at the time the employer notifies the employee that she is fired, not later on the last day of her employment. *Green v. Brennan*, 136 S. Ct. 1769, 1782 (2016); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *see Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 303 (S.D.N.Y. 2014) (applying Chardon to hold that the limitations period for a False Claims Act retaliation claim was triggered when plaintiff was notified of his termination).

*Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019).

The Magistrate Judge relied solely on his legal conclusion about when a cause of action accrues. Dawsey's showing of error in that regard should eliminate the need for the Court to address any other grounds.

### C.    Other errors related to all claims

### 1.    The Magistrate Judge relied on disputed facts and failed to properly credit Dawsey's resignation evidence.

The Magistrate Judge improperly based findings on evidence viewed in the light most favorable to BMW. The Magistrate Judge seemingly credited BMW's theories on Dawsey's plans to leave BMW. [ECF 113 at 8-9]. If that is what he intended, this is plain

---

[9]    *See supra* Section II(A)(1)(a).

13

error.  Dawsey has sworn that she "did not decide to resign from BMW until December 2021."  [ECF 97-1 at 7 ¶ 34].  Drawing inferences adverse to this violates Rule 56's most basic mandate.  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).

### 2.    The Magistrate Judge erred to the extent he focused on the cessation of employment.

The Magistrate Judge also discussed the cessation of Dawsey's employment. [ECF 113 at 9-10].  He noted, for example, that Dawsey is not alleging constructive discharge.  [*Id.* at 15 n. 3]  But this was never the basis of the Motion.  To the extent the Magistrate has gone beyond the issues raised and is implying that Dawsey cannot seek recovery for the cessation of employment, Dawsey respectfully objects.  Neither the cessation of employment nor the issue of remedies is before the Court.[10]

### D.    The Magistrate Judge's adverse action analysis does not resolve all claims.

### 1.    The Magistrate Judge's recommendation disregards the scope of the relief sought.

In adopting BMW's reply brief arguments, the Magistrate Judge failed to recognize that Dawsey seeks equitable relief, including declaratory and injunctive relief.  [ECF 20 at 13-14; *id.* at 14-15, 16].  Dawsey's entitlement to such relief does not turn on whether BMW ultimately transferred or demoted her.

---

[10]    Nor is it accurate to say that termination damages require a constructive discharge showing.  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651-52 (4th Cir. 2002); *Scott v. Ameritex Yarn*, 7:99-cv-00173-HMH, ECF 46 (D. S.C. March 16, 2000).

### 2.      The Magistrate Judge's rationale should not apply to Section 1981.

This Court should also reject the Magistrate Judge's new rule because, even if it could somehow apply under Title VII, it would not apply to Dawsey's Section 1981 claim. Section 1981 does not contain the language that triggers liability under either Section 703(a)(1) or 703(a)(2).  Section 1981 focuses less on discrete transactions and more on whether an employee is subject to different terms and conditions.

> Because it was not the subject of this motion, the Court does not reach whether a plaintiff must show that the discrimination was "disadvantageous" under § 1981, as *Muldrow* held it must be under Title VII. *Compare Muldrow*, 144 S. Ct. at 974 (holding that Title VII "requires [the plaintiff] to show that the transfer brought about some 'disadvantageous' change in an employment term or condition" (citation omitted)), *with id.* at 980 (Kavanaugh, J., concurring in the judgment) ("[T]he text of Title VII does not require a separate showing of some harm. The discrimination is harm."). Muldrow's analysis of this point hinged on the negative connotation of "discriminate against." Id. at 974 ("The words 'discriminate against,'... refer to differences in treatment that injure employees." (cleaned up)). For § 1981, a similar analysis might apply to the positive connotation of the phrase "enjoyment of all benefits, privileges, terms, and conditions." But § 1981's requirement that "[a]ll persons ... have the same right" in "the making, performance, modification, and termination of contracts" might suggest that no disadvantageousness showing is necessary.

*Anderson v. Amazon.com, Inc.*, No. 23-cv-8347 (AS), 2024 U.S. Dist. LEXIS 98215, at *28 n.2 (S.D.N.Y. May 31, 2024).

### 3.  The Magistrate Judge's dismissal of compensation-related allegations violates the Lilly Ledbetter Act.

The Magistrate Judge's new proposed analysis also would not apply to compensation claims.   Dawsey complains, for example, about BMW's disparate compensation practices based on national origin, race, and sex.  [ECF 20 at 13 ¶¶ 67-68 (national origin); *id.* at 14 ¶ 75 (race); *id.* at 15 ¶ 78 (race) ; *id.* at 16 ¶ 81].

Congress made clear that being subject to an unlawful compensation policy is actionable.  Section 3 of the Lilly Ledbetter Act clarified that a claim for compensation

15

discrimination arises "when a discriminatory compensation decision or other practice **is adopted**, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice." 42 U.S.C. § 706e(3)(a) (emphasis added). The Magistrate Judge's proposed framework cannot be squared with this statute.

**E.     Section 703(a)(2) nationality claim: The Magistrate Judge erred by recommending judgment on a claim Defendants never addressed in a Motion.**

Unlike Section 703(a)(1), Section 703(a)(2) is narrow and leaves nothing to interpret:

> It shall be an unlawful employment practice for an employer . . . to limit. . . or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*Id*. § 2000e-2(a)(2). The Magistrate Judge correctly found that Dawsey brought a discrete claim under Section 703(a)(2). [ECF 113 at 10 n. 2].

BMW made no mentioned Section 703(a)(2) in its Motion. The Magistrate Judge erred in excusing this and allowed BMW to make arguments for the first time in reply. The Magistrate Judge's analysis of Section 703(a)(2) is also wrong because the adverse action line of cases interprets a different statutory provision.

**1.     Issue preservation**

The Magistrate Judge erred by excusing BMW's failure to move for judgment on this claim. [*Id*. at 16 ("BMW MC moves for summary judgment on all of the plaintiff's claims and addresses her Section 703(a)(2) claim in its reply")]. This Court should not allow a moving party to first discuss substantive grounds, especially on a *different* claim, in a reply brief. *Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008); *United States*

16

*v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006); *Voeltz v. Bridge Charleston Invs. E, LLC*, Civ. A. No. 2:16-cv-2971-RMG, 2019 U.S. Dist. LEXIS 30277, at *10 (D.S.C. Feb. 26, 2019); *Bouchard v. Synchrony Bank*, No. 2:16-cv-1713-PMD, 2016 U.S. Dist. LEXIS 91327, at *7 (D.S.C. July 14, 2016); *Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc.*, No. 6:13-1067-HMH, 2013 U.S. Dist. LEXIS 158701, at *12 (D.S.C. Nov. 6, 2013).

Rule 56 should not be a game of "whack-a-mole" for nonmoving parties, who, unlike the movant, only get one brief before the Report and Recommendation.  Permitting moving parties to address new arguments in reply encourages sandbagging.   BMW Section 703(a)(2) arguments should have been (and should now be) summarily rejected.

**2.  Section 703(a)(2) makes classification itself unlawful.**

The Magistrate Judge's acceptance of BMW's reply arguments also is improper because the Magistrate Judge does not address the plain text of Section 703(a)(2).  The adverse action concept is not part of Section 703(a)(2) because the term interpreted by "adverse action" does not appear there.

The term "adverse action" does not appear in Title VII.  As *Muldrow* illustrates, "adverse action" is a term developed by the courts to define the contours of the phrase "discriminate against" in Section 703(a)(1).  *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024).  But the term "discriminate against" does not appear in Section 703(a)(2). [ECF 97 at 17-18].

Under Section 703(a)(2), the employer violates the act by classifying employees. Dawsey only needs to prove that she was subject to BMW's unlawful classification. *Bibbs v. Block*, 778 F.2d 1318, 1321-22 (8th Cir. 1985).  Here, BMW left no doubt that Dawsey was subject to its unlawful policy of classifying the occupants of TX-60 based on national origin.  [ECF 97 at 3-8].

17

### 3. Rejection of the 703(a)(2) claim also is improper based on the relief sought.

The Magistrate Judge's Section 703(a)(2) recommendation also is erroneous because, as shown above, Dawsey seeks equitable relief. *Bibbs*, 778 F.2d at 1322; *United States v. Chesapeake & O. R. Co.*, 471 F.2d 582, 586 (4th Cir. 1972) (overt practice of hiring by race for various positions warrants injunctive relief); *Brown v. Gaston Cty. Dyeing Mach. Co.*, 457 F.2d 1377, 1383 (4th Cir. 1972); *United States v. Med. Soc'y of S.C.*, 298 F. Supp. 145, 152 (D.S.C. 1969) ("In cases of racial discrimination, this Court has not only the power but the duty both to enjoin future discrimination and, so far as possible, to eliminate the continuing effects of past discriminatory practices.") That issue is not before the Court. BMW has not moved for judgment on the issue of any remedies.

### 4. *James* is not instructive

The Magistrate Judge again relied on *James* for the proposition that "[r]egardless of the route a plaintiff follows in proving a Title VII action, . . . the existence of some adverse employment action is required." [ECF 113 at 16 (quoting *James*, 368 F.2d at 375)].[11] This is error because the *James* Court was not talking about "routes" in terms of statutory provisions.

The "regardless of the route" language in *James* does not refer to proof under Section 703(a)(1) vis-à-vis 703(a)(2). That is clear from the court's singular reliance on *Hill*. *James*, 368 F.3d at 375 (citing *Hill,* 354 F.3d at 284-85). The *Hill* Court was not discussing the different provisions of Title VII. It could not have been. Section 703(a)(2) was not at issue in *Hill*. The section of *Hill* relied on by the Magistrate Judge discussed

---

[11]    The Magistrate Judge noted that *James* addresses the issue of adverse action and is no longer good law on that point. [ECF 113 at 16].

direct evidence vs pretext. *Hill*, 354 F.3d at 284-85. So, by "routes," the *Hill* Court was discussing proof schemes, not statutory liability provisions. The Magistrate Judge's interpretation of *James* cannot be squared with either *James* itself or with the plain language of Title VII.

### III. Conclusion

This Court should not adopt the Report and Recommendation.

Respectfully submitted this 7th day of July 2024.

       _s/ Brian P. Murphy_____
Brian P. Murphy
Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400