IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| KELLY DAWSEY, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    C.A. No. 7:22-cv-03738-TMC-KFM <br> ) |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT and BMW MANUFACTURING CO., LLC collectively d/b/a "BMW GROUP," | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**BMW MANUFACTURING CO., LLC'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Defendant BMW Manufacturing Co., LLC ("BMW MC"), by and through its undersigned counsel, respectfully submits this Response to Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge (ECF No. 115; "Plaintiff's Objections"). As set forth below, Plaintiff's Objections are without merit and this Court should grant summary judgment to Defendants on all causes of action asserted by Plaintiff.

**I.     INTRODUCTION**

Prior to her voluntary resignation from employment in January 2022, Plaintiff was employed by BMW MC as one of five Department Managers in the BMW MC's Human Resources ("HR") Department, a position in which she reported directly to the Vice President of Human Resources. (ECF No. 113 at 2; Pl. Dep. Ex. 41 at BMW MC 253.) In the fall of 2021, following the appointment of a new CEO and the pending departure of the Vice President of Human Resources, BMW MC developed a plan to reorganize the HR Department. (ECF No. 113 at 2-3.) As part of that reorganization, BMW MC planned for Plaintiff to laterally transfer from one HR

Department Manager position (TX-60) to another HR Department Manager position (TX-64). (ECF No. 113 at 5-6; Pl. Dep. Ex. 36; Petrasch Dep. 18:9-17, Ex. 2.) Although these plans were announced to the HR Department in late 2021, they were not scheduled to be implemented until February 2022.  (Pl. Dep. 250:17-251:3, 252:12-254:13, 288:9-289:2, Exs. 41-42.) However, on January 3, 2022, before any changes occurred in the HR Department, Plaintiff notified BMW MC that she was resigning from employment to become the Director of Human Resources at another local company (Madewell Concrete), a position she described as a great job opportunity that she could not pass up. (ECF No. 113 at 10; Pl. Dep. 300:11-301:20, 304:25-305:5, Ex. 54.)  Plaintiff admits that she began looking for another job in September 2021, prior to ever learning of BMW MC's proposal to reorganize the HR Department.  (ECF No. 113 at 8-9; Pl. Dep. 269:2-13, Ex. 44 at pp. 1, 5-8.)

Plaintiff filed this lawsuit on October 28, 2022.  (ECF No. 1.)  Plaintiff filed an Amended Complaint on February 9, 2023.  (ECF No. 20.)  Plaintiff asserts causes of action for national origin discrimination, race discrimination, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq.* ("Title VII"), and a separate cause of action for race discrimination under 42 U.S.C. § 1981 ("Section 1981"). (ECF No. 20 at p. 15.) Plaintiff's claims all relate to her perceived unfair treatment related to the planned reorganization of the HR Department, even though she voluntarily left employment at BMW MC before that reorganization ever occurred. On February 16, 2024, BMW MC filed a Motion for Summary Judgment as to all claims asserted by Plaintiff. (ECF No. 92.)  Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") also filed a Motion for Summary Judgment as to all claims on March 8, 2024. (ECF No. 102.)

On June 21, 2024, U.S. Magistrate Judge Kevin F. McDonald issued a Report and Recommendation (the Magistrate's "Report") in which he recommended that Defendants' Motions

2

for Summary Judgment be granted as to all of Plaintiff's claims. (ECF No. 113). Without reaching the question of whether Plaintiff's flimsy evidence could support an inference of discrimination, Magistrate Judge McDonald concluded that Plaintiff had not suffered any adverse employment action and thus could not establish a valid claim of discrimination under either Title VII or Section 1981. Because Plaintiff disavowed any claim of constructive discharge, Magistrate Judge McDonald found that her voluntary resignation before the transfer precluded a claim of discrimination.

Plaintiff filed Objections to the Magistrate's Report on July 7, 2024. (ECF No. 115.) Plaintiff's objections fail to raise any new or valid legal arguments as to why Magistrate Judge McDonald's ruling was erroneous. Accordingly, the Court should adopt the Magistrate's Report and grant summary judgment to Defendants.

## II.   STANDARD OF REVIEW

The Court must review *de novo* a party's specific objections to a Magistrate Judge's report and recommendation. 28 U.S.C. § 636(b)(1). Yet the Court reviews the Magistrate Judge's conclusions only for clear error where a party files "objections" that are merely restatements of her arguments and fails to specifically identify the aspects of the Magistrate Judge's analysis to which she objects. *Id.* (adopting report and recommendation because plaintiff merely restated her claims and failed to argue where Magistrate Judge erred in his analysis).

Here, many of Plaintiff's "objections" are recitations of the same arguments she made in opposition to BMW MC's Motion for Summary Judgment. For example, Plaintiff again attempts to rely on two denial of tenure cases, *Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S. Ct. 498, 505 (1980) and *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S. Ct. 28, 29 (1981), to support her claim that notice of a potential adverse employment action is the adverse action. (ECF

3

No. 115 at 1.) However, this is the very same argument that Magistrate Judge McDonald carefully analyzed and rejected in his Report. (ECF No. 113 at 14.) Likewise, Plaintiff simply regurgitates her argument that BMW MC's Motion for Summary Judgment should be denied as to her Section 703(a)(2) national origin discrimination claim because BMW MC did not specifically reference this Section of the statute in its Motion. (ECF No. 115 at 16-17.) This argument was also specifically rejected in the Magistrate's Report. (ECF No. 113 at 16.) Therefore, to the extent that Plaintiff's Objections are simply a repackaged version of the same arguments that she already made in response to BMW MC's Motion for Summary Judgment, she is not entitled to a *de novo* review of such objections. Nevertheless, applying any standard of review, including *de novo*, results in the affirmation of the Magistrate's recommendation.

### III.     ARGUMENTS

**A.     The Magistrate Judge Properly Ruled That Plaintiff Cannot Establish A Claim For Discrimination Under Title VII and Section 1981 Because She Suffered No Adverse Employment Action.**

The law in the Fourth Circuit is well-settled that a plaintiff must prove the existence of an adverse employment action to establish a valid claim of employment discrimination under Title VII or Section 1981. *See, e.g., Ofoche v. Apogee Medical Group*., 815 F. App'x 690, 692 (4th Cir. 2020); *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *Love-Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004)*; Ali v. Alamo Rent-A-Car, Inc*., 8 F. App'x 156, 158 (4th Cir. 2001). In this case, there is no dispute that Plaintiff voluntarily resigned from her position at BMW MC in January 2022 to take the Director of Human Resources position at Madewell Concrete. Yet Plaintiff does not claim that her separation from BMW MC was an adverse employment action in

4

the form of constructive discharge.[1] Instead, Plaintiff now alleges in defending against summary judgment that she suffered adverse employment action in the fall of 2021 when BMW MC *notified* her of its plan to transfer her from the TX-60 Department Manager position to the TX-64 Department Manager position, a change that was not scheduled to occur until February 2022. (Pl. Dep. 250:17-251:3, Ex. 41.)  Plaintiff concedes that at the time she resigned from employment with BMW MC in January 2022, no changes had been made to the HR Department, and she still held the TX-60 Department Manager position. (Pl. Dep. 300:11-301:20, 303:9-20, 313:16-20, Ex. 54.) Therefore, as the Magistrate Judge correctly recognized, Plaintiff's adverse employment action argument is improperly based upon speculation about what might have happened had she remained employed by BMW MC instead of resigning to take another job. (ECF No. 113 at 14-15.) Based upon these facts, Magistrate Judge McDonald rejected Plaintiff's novel argument that notice of a potential future transfer constitutes adverse employment action and held that summary judgment should be awarded to BMW MC and BMW AG based upon Plaintiff's failure to prove that she suffered an adverse employment action. (*Id.*)

While Defendants' summary judgment motions were pending, the Supreme Court decided *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024), in which the Court held that a plaintiff challenging an involuntary transfer must show "some harm respecting an identifiable term or condition of employment" in order to pursue a claim of discrimination.  In her objections, Plaintiff avoids any substantive discussion of the *Muldrow* standard or how she could proceed with a claim under this standard. Plaintiffs' reluctance to engage the question is understandable. Having resigned her employment before her transfer, it is impossible for her—or a jury—to assess whether

---

[1] Although Plaintiff's Complaint appeared to allege that her resignation from BMW MC was a constructive discharge, in response to BMW MC's Motion for Summary Judgment she abandoned that allegation. (ECF No. 113 at 15, n. 3.)

5

she would have suffered "some harm" by taking the new position. Finding "some harm" would require speculation, an evidentiary route blocked by express Fourth Circuit precedent. *See James v. Booz-Allen & Hamilton, Inc*., 368 F.3d 371, 376 (4th Cir. 2004 ) ("speculation about the future adverse consequences of a reassignment may not rise to the level of a genuine dispute"); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 62 (4th Cir. 1995) ("[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion.").

In response to the Magistrate's Report, Plaintiff doubles down on her argument that *notice* of a proposed restructuring of the HR Department was the adverse employment action on which her claims rest. Although Plaintiff's citations feign legal support for her argument, the reality is that Plaintiff has failed to cite to a single precedential case holding that notice of a future potential transfer is, in fact, an adverse employment action. Rather, the case law compels a contrary conclusion. Accordingly, this Court should adopt the ruling of the Magistrate Judge.

### 1. The Applicable Law in the Fourth Circuit Does Not Support Plaintiff's Adverse Employment Action Theory.

In response to BMW MC's Motion for Summary Judgment, Plaintiff claimed that despite her voluntary resignation from employment, she suffered an adverse employment action when BMW MC notified her that it planned to transfer her to a different Department Manager position in conjunction with a future reorganization of the HR Department. (ECF No. 115 at 2-6.) Plaintiff's argument was based primarily upon two Supreme Court cases that do not address the adverse action standard, *Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S. Ct. 498, 505 (1980), and *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S. Ct. 28, 29 (1981). As the Magistrate Judge correctly ruled, the cases on which Plaintiff relies "in support of her argument do not [have] any bearing on the issue here, as all of those cases deal with when the statute of limitations accrues and not what constitutes an adverse employment action." (ECF No. 113 at 14.)

6

In her Objections, Plaintiff argues that the Magistrate Judge incorrectly held that the *Ricks* and *Chardon* decisions do not establish when an adverse employment action occurs. (ECF No. 115 at 1-2.) Without citing to any controlling authority, Plaintiff declares that "an adverse action happens when a claim accrues" and that "both happen when the employer announces the decision." (*Id.*) In an effort to support this new legal standard, Plaintiff cites to cases from other federal circuits that, like *Ricks* and *Chardon*, address statute of limitations issues. However, as the Magistrate Judge correctly recognized, stating that a cause of action accrues at the time of notice of termination to the plaintiff is not equivalent to the requirement for a Title VII plaintiff to prove the existence of an adverse employment action. (ECF No. 113 at 14.) The notice of termination simply triggers the running of the statute of limitations for a plaintiff to assert a claim. An allegedly discriminatory act that does not cause any harm is not actionable; an adverse employment action is a universally recognized fundamental element of every Title VII discrimination claim. *See, e.g., Burlington*, 548 U.S. at 68; *Ofoche*, 815 F. App'x at 692; *Adams*, 789 F.3d at 431; *Love-Lane,* 355 F.3d at 786.

Moreover, the cases on which Plaintiff relies to support her notice argument all involve notice of a termination decision, which is fundamentally different than the factual circumstance presented in this case. Specifically, Plaintiff directs the Court to the opinions in *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304-05 (2d Cir. 2017), and *Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019), as supporting her novel theory. However, as the language highlighted by Plaintiff shows, these opinions both held that a **notice of termination** qualified as an adverse employment action.[2] (ECF No. 115 at 2.) In contrast, the

---

[2] The cases on which Plaintiff primarily relies in making her notice argument, including both *Ricks* and *Chardon*, involved the termination of tenured faculty members at educational institutions. *Ricks*, 449 U.S. at 259, 101 S. Ct. at 505 (1980); *Chardon*, 454 U.S. at 8, 102 S. Ct. at 29. In each of these cases, the educational institution was required to provide formal notice of termination to

notice at issue in this case related to a proposed reorganization of the HR Department. As part of that reorganization, BMW MC planned to move Plaintiff from one Department Manager position to another—without any impact on her rank, pay or benefits—a transfer that never actually occurred because Plaintiff resigned prior to any of the changes ever being implemented. As the Magistrate Judge correctly observed based upon the evidence in the record, the reorganization plans remained in flux prior to Plaintiff's resignation and changed further after she left employment. (ECF No. 113 at 15.) Therefore, the "notice" given to Plaintiff regarding the proposed reorganization and transfer of roles is not comparable to the definitive notice of termination issued in the cases on which Plaintiff relies. Based upon this critical factual difference, the holdings of the 10th Circuit and D.C. Circuit in *Shultz* and *Singletary*, respectively, provide no guidance to the Court in this case.

Highlighting the distinctions between the accrual of a claim and the existence of adverse action, in *Green v. Brennan*, 578 U.S. 547, 136 S. Ct. 1769 (2016), the Supreme Court held that when a plaintiff voluntarily resigns following an alleged discriminatory act, the limitations period begins to run when the plaintiff resigns, not when there is notice of the alleged discrimination. *Id.* at 1776. Since the *Green* decision establishes that a voluntary resignation case is to be treated differently from a termination case, Plaintiff's reliance on a litany of termination cases to support her novel theory is misplaced.[3]

---

the employee at a specific date in advance of the actual termination. *Ricks,* 449 U.S. at 252-53, 101 S. Ct. at 501; *Chardon*, 454 U.S. at 6, 102 S. Ct. at 28. Therefore, the cases cited by Plaintiff can easily be distinguished based upon factual differences. *See Ricks* at 258-59 (noting the limited application of the case and stating that "[c]omplaints that employment termination resulted from discrimination can present widely varying circumstances. . . . The application of the general principles discussed herein necessarily must be made on a case-by-case basis.").

[3] Even the *Shultz* decision, on which Plaintiff relies, recognizes the fundamental difference between a termination and other types of employment actions. 867 F.3d at 307 (holding that "a notice of termination is unlike other types of actions that an employer may take towards an employee").

Here, Plaintiff creates a smokescreen with her notice argument, but she never presents any evidence to prove that she suffered an adverse employment action or any form of harm at all. Although BMW MC had notified employees of the proposed reorganization of the HR Department, there is no dispute in this case that Plaintiff still held the TX-60 Department Manager position at the time she resigned from employment at BMW MC. (Plaintiff Dep. 313:16-20.) The Fourth Circuit has never held that such notice of a future transfer of positions is an adverse employment action. Instead, as the Magistrate Judge recognized, the case law in the Fourth Circuit clearly supports BMW MC's argument that a plaintiff who resigns prior to the effective date of a planned transfer cannot prove the existence of an adverse employment action. *See James,* 368 F.3d at 376 (holding that a plaintiff who resigns from employment prior to transfer is not allowed to rely on speculation, guesswork, or conjecture in establishing the existence of an adverse employment action), *abrogated on other grounds by Muldrow*, 144 S. Ct. 967 (2024); *Ratcliff v. Spencer*, C/A No. 1:18-cv-757, 2019 WL 2375131 (E.D. Va. June 4, 2019) (stating that the plaintiff "speculates on the impact of reassignment if she had not resigned, but she cannot cobble together an adverse employment action based on what might have been"). Absent any admissible proof that she suffered an adverse employment action, the Magistrate Judge properly ruled that Plaintiff's Title VII claims fail as a matter of law.[4]

---

[4] In her Objections, Plaintiff twice argues that her claim for "equitable relief does not turn on whether BMW MC ultimately transferred or demoted her." (ECF 115 at 16, 20.) She cites no support for this contention, nor does she explain what equitable relief the Court could fashion to rectify an action that BMW MC never took. To the contrary, adverse action is a necessary element of any discrimination claim. *See Ofoche*, 815 F. App'x at 692; *Adams*, 789 F.3d at 431; *Love-Lane*, 355 F.3d at 786.

### 2. The Unpublished D.C. Circuit Decision Cited by Plaintiff Does Not Provide Factual or Legal Support for Her Adverse Employment Action Theory.

As support for her adverse employment action theory, Plaintiff also directs the court to the recent ruling from the District of Columbia Circuit in *Van Horn v. Del Toro*, No. 23-5169, 2024 U.S. App. LEXIS 15154 (D.C. Cir. June 21, 2024), which is an unpublished decision from outside the Fourth Circuit. *Id*. at *11. **Therefore, the *Van Horn* decision carries no precedential value and is not binding upon this Court.** *See Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 546 n.4 (4th Cir. 2019) ("Unpublished decisions, of course, do not constitute binding precedent in this Circuit."). Equally as important, the *Van Horn* decision is factually distinguishable and is inconsistent with the precedents it purports to apply.

First, the holding in *Van Horn* can easily be distinguished from this case based upon the underlying facts. In *Van Horn*, the plaintiff, who worked at the Naval Criminal Investigative Service ("NCIS") office in Washington, D.C., was transferred to a position at the NCIS office in Naples, Italy. *Id*. at *1-2. This foreign assignment would have resulted in Van Horn being separated from her family for two years, and thus she refused the assignment. *Id*. at *2. Because her position in the Washington office had been filled by another employee, NCIS next assigned Van Horn to work in its Norfolk, Virginia office, a position in which she claimed that she was given no meaningful assignments. *Id*. at *3. Van Horn was later notified that she was being transferred to an opening in the NCIS office in Great Lakes, Illinois, but decided to retire instead of accepting that transfer. *Id*. Based upon the fact that each of these transfers required Van Horn to move geographically, the D.C. Circuit held that she could establish an adverse employment action, even though she never actually accepted the transfers to Italy and Illinois. *Id*. at *6-7.

In contrast to the facts in *Van Horn*, BMW MC never proposed to transfer Plaintiff out of the BMW MC facility in Greer, South Carolina. In the fall of 2021, BMW MC's new CEO,

10

Dr. Robert Engelhorn, worked with both the outgoing Vice President of HR (Christine Petrasch) and incoming Vice President of HR (Sherry McCraw) to reorganize the HR Department to align with his corporate vision and goals for the company. (Engelhorn Dep. 23:20-24:3; McCraw Dep. 15:24-18:20.) As part of the proposed reorganization of the HR Department, Ms. McCraw recommended moving Plaintiff from the TX-60 Department Manager position to the TX-64 Department Manager position. (McCraw Dep. 16:2-17:1; Engelhorn Dep. 23:13-19, 66:15-67:18.) Both Department Manager positions reported directly to the Vice President of Human Resources at BMW MC. (Pl. Dep. Ex. 41 at BMW MC 253.)

Furthermore, the uncontroverted facts show that in the fall of 2021, when BMW MC announced the proposed reorganization of the HR Department and the plan to transfer Plaintiff to the TX-64 Department Manager position, the TX-64 position was occupied by Scott Medley.[5] (Pl. Dep. 96:1-16, Ex. 7 at p. 9, Ex. 41 at BMW MC 253; Medley Dep. 25:25-26:2.) Plaintiff admits that when Medley occupied the TX-64 position in the fall of 2021, he had the same rank, pay and benefits as she had. (Pl. Dep. 96:1-16, Ex. 7 at p. 9, Ex. 41 at BMW MC 253, Pl. Dep. 127:12-15, Ex. 26.) In addition, contrary to the facts in *Van Horn*, where the plaintiff was actually transferred to the NCIS office in Norfolk for a period of time and could definitively testify about the nature of the work she was performing in that position, **Dawsey was never transferred**. Therefore, the Court and jury would be left to speculate about the effects of the proposed transfer, which clearly is not permitted under prevailing Fourth Circuit law. *See James,* 368 F.3d at 376 (the court is not allowed to rely on speculation, guesswork, or conjecture in establishing the existence

---

[5] In her Objections, Plaintiff incorrectly states that Corey Epps occupied the TX-64 position at that time. (ECF No. 115 at 10.) As support for this statement, Plaintiff cites to the text of ECF No. 97, which is her brief in opposition to BMW MC's Motion for Summary Judgment. However, the evidence in the case proves the assertion wrong. (Pl. Dep. 96:1-16, Ex. 7 at p. 9, Ex. 41 at BMW MC 253; Medley Dep. 25:25-26:2.) Plaintiff cannot create a genuine issue of material fact by misstating the evidence.

11

of an adverse employment action); *Ennis*, 53 F.3d at 62 ("[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion"). Given these significant factual differences in the nature of the transfers at issue, the decision of the D.C. Circuit in *Van Horn* is factually inapposite and provides no meaningful guidance to this Court.

Second, the reasoning of *Van Horn*—an unpublished out-of-circuit decision—raises substantial questions about whether it is even correct. *Van Horn* relied on *Singletary v. Howard University*, 939 F.3d 287 (D.C. Cir. 2019), which held that the communication of a *termination decision*, even if rescinded, was an adverse action. *Singletary* in turn relied on *Shultz v. Congregation Shearith Israel*, 867 F.3d 298 (2d Cir. 2017), which, in holding the same, stated that "our holding concerns a notice of termination, and **does not apply to other types of potential adverse employment actions** that an employer may seek to rescind at a later date. A notice of termination is unlike other types of actions that an employer may take towards an employee . . . ." (emphasis added).

Like the cases on which *Van Horn* relies, other courts have consistently if not uniformly refused to treat a *notice of future adverse action* as equivalent to adverse action outside a final termination. *See, e.g., Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120-21 (7th Cir. 2009) ("We have explicitly held that 'a suspension without pay that is never served does not constitute an adverse employment action.'"); *Keeton v. Flying J, Inc.*, 429 F.3d 259, 263-64 (6th Cir. 2005) ("Other courts have also held that when an otherwise adverse employment action is rescinded before the employee suffers a tangible harm, the employee has not suffered an adverse employment action."); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267-68 (11th Cir. 2001) ("The caselaw in this area indicates that the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action."); *Najiy-Ullah 'Aziyz v. Cameca*, No. 20-cv-896-wmc, 2021 U.S. Dist. LEXIS 147680, at *13-14 (W.D. Wis. Aug. 6,

12

2021) (collecting cases and observing that "it is well-settled, however, that an employer's mere threat to take an adverse action is not actionable"). Whether or not a notice of *termination* is itself an adverse action—a proposition never recognized in the Fourth Circuit—the overwhelming weight of authority establishes that notice of any different type of future adverse action that is never effectuated is not itself adverse for purposes of proving a discrimination claim.

Finally, it is critical to note that the Supreme Court's holding in *Muldrow* is in accord with BMW MC's argument that notice of a contemplated transfer does not equate to adverse employment action. In *Muldrow*, the Court held that "[t]o make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment." 144 S. Ct. at 974. The plaintiff in *Muldrow* was able to meet this standard by showing that she was actually transferred from "a plainclothes job in a prestigious specialized division" to an administrative role and that such transfer resulted in her having to work weekends and losing her unmarked take-home vehicle. *Id*. at 977. Here, because Dawsey never transferred out of the TX-60 Department Manager position, **she cannot show that she suffered any harm to any identifiable term or condition of employment**.

This Court should decline Dawsey's invitation to follow a singular factually distinguishable and unpublished, out-of-circuit decision for a proposition rejected by overwhelming authority so that the parties can have a trial regarding wholly undefined and undefinable "damages." The Magistrate Judge's decision was correct and should be adopted.

**B.      The Magistrate Judge Did Not Err in Granting Summary Judgment to BMW MC on Plaintiff's Section 703(a)(2) National Origin Discrimination Claim.**

Plaintiff next asserts that the Magistrate Judge erred in granting summary judgment to BMW MC on Plaintiff's national origin discrimination claim under 42 U.S.C. § 2000e-2(a)(2) ("Section 703(a)(2)"). (ECF No. 115 at 16.) As noted above, the arguments related to the

Section 703(a)(2) claim in Plaintiff's Objections simply restate the arguments that Plaintiff made in response to BMW MC's Motion for Summary Judgment and thus should not be subject to a *de novo* review. However, regardless of the manner in which this Court analyzes this claim, the Magistrate Judge's award of summary judgment to BMW MC as to the Section 703(a)(2) claim was correct.

Plaintiff initially asserts that the Magistrate Judge erred in considering BMW MC's arguments as to the Section 703(a)(2) claim because those arguments were first raised in BMW MC's reply brief. However, this assertion is not accurate. In the Amended Complaint, Plaintiff's First Cause of Action is for national origin discrimination in violation of Title VII. (ECF No. 20 at 13-14.) Within that same First Cause of Action, Plaintiff alleges that BMW MC violated both Section 703(a)(1) and Section 703(a)(2) of Title VII. *Id*. As the Magistrate Judge properly recognized, BMW MC moved for summary judgment as to Plaintiff's cause of action for national origin discrimination. (ECF No. 113 at 16.) Therefore, the Magistrate Judge did not err in considering all arguments made by BMW MC in response to Plaintiff's cause of action for national origin discrimination, including the arguments in BMW MC's reply brief that were responsive to the novel and misguided argument Plaintiff offered.

Moreover, as the Magistrate's Report correctly ruled, the legal analysis of a national origin discrimination claim is the same under Section 703(a)(1) and Section 703(a)(2). Although Plaintiff argues that she was not required to establish an adverse employment action as part of her Section 703(a)(2) claim, this argument contravenes prevailing law. *See James*, 368 F.3d at 375 (stating that "[r]egardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required"); *see also Crawford v. Atlanta Indep. Sch. Sys.*, 2018 U.S. Dist. LEXIS 240500, at *61 (N.D. Ga. June 22, 2018) (holding that a plaintiff must prove adverse employment action since Section 703(a)(2) "does not simply prohibit actions that

14

limit, segregate, or classify persons; rather the language prohibits such actions that deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee"). Therefore, because Plaintiff has failed to establish the existence of an adverse employment action, the Magistrate Judge properly awarded summary judgment to BMW MC on both the Section 703(a)(1) and Section 703(a)(2) claims.[6]

**C.     The Magistrate Judge Properly Recommended Summary Judgment on Plaintiff's Remaining Discrimination Claims.**

In her Objections, Plaintiff further asserts that the Magistrate Judge erred in recommending summary judgment for BMW MC on her claims for race discrimination under Section 1981 and for compensation-related discrimination under Title VII. However, because Plaintiff has failed to establish the fundamental elements of those remaining claims, the Magistrate Judge correctly recommended their dismissal.

Plaintiff first asserts that she need not suffer an adverse employment action to pursue a race discrimination claim under Section 1981. (ECF No. 115 at 15.) However, that argument contradicts express binding precedent. The Fourth Circuit has repeatedly held that a plaintiff in a Section 1981 case must establish the same elements as applicable to claims under Title VII, including the existence of an adverse employment action. *See Love-Lane,* 355 F.3d at 786*; Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002) ("The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981."). Because the

---

[6] Further, Section 703(a)(2) cannot be used as the basis to challenge individual employment decisions. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923-24 (11th Cir. 2018) ("[i]n short, section 2000e-2(a)(1) covers individual decisions, such as the alleged decision not to transfer Jefferson on the basis of her race and national origin, and section 2000e 2(a)(2) covers policies of general applicability").

15

Magistrate Judge held that Plaintiff failed to prove that she suffered any adverse employment action, dismissal of the Section 1981 claim was proper.[7]

Plaintiff also alleges that the Magistrate Judge erred in granting summary judgment to BMW MC on her claims for compensation discrimination under Title VII. (ECF No. 115 at 15-16.) Specifically, Plaintiff claims that the Magistrate's Report cannot be squared with the requirements of the Lilly Ledbetter Fair Pay Act of 2009. However, the Lilly Ledbetter Act creates no new or separate cause of action for Plaintiff. Instead, the Act solely amended Title VII (as well as the Age Discrimination Act and Americans with Disabilities Act) to extend the applicable statute of limitations for compensation-related discrimination claims. *See Jones v. Richland Cty.*, No. 3:16-466-MBS-KDW, 2016 U.S. Dist. LEXIS 133530, *7 (D.S.C. June 13, 2016) (stating that the Ledbetter Act "does not create substantive rights, but instead clarifies the point of commencement of the statute of limitations in instances of wage discrimination"). Therefore, regardless of the Lilly Ledbetter Act, Plaintiff still must prove the elements of a national origin, race, or sex discrimination claim under Title VII to avoid summary judgment. *See Davis v. S.C. Dep't of Health & Envtl. Control*, Civil Action No. 3:13-cv-02612-JMC, 2015 U.S. Dist. LEXIS 128242, *7 (D.S.C. Sep. 11, 2015). Here, the Magistrate Judge correctly ruled that Plaintiff failed to prove the fundamental elements of her discrimination claims under Title VII. As a result, the Magistrate Judge rightly granted summary judgment to Defendants as to all of the discrimination claims asserted by Plaintiff.

---

[7] In sole support of her argument that the Magistrate Judge's ruling is not applicable to her Section 1981 claim, Plaintiff cites to an unpublished decision from the Southern District of New York in *Anderson v. Amazon.com, Inc.,* No. 23-cv-8347 (AS), 2024 U.S. Dist. LEXIS 98215 (S.D.N.Y. May 31, 2024). (ECF No. 115 at 15.) However, the portion of *Anderson* quoted by Plaintiff is clearly dicta. *Id.* at *28 n. 2. The ruling in *Anderson* instead recites the standard embraced by the Fourth Circuit: that the proof required under Section 1981 is the same as under Title VII. *Id.* at *27-28.

## IV.     CONCLUSION

For the reasons set forth herein, Defendant BMW MC respectfully requests that the Court fully adopt the Report and Recommendation of the Magistrate Judge and enter judgment as a matter of law in favor of BMW MC and BMW AG on all of Plaintiff's causes of action.

Respectfully submitted this the 19th day of July, 2024.

>By: *s/ Ellison F. McCoy*
>Ellison F. McCoy (Fed. I.D. No. 6389)
>ellison.mccoy@jacksonlewis.com
>D. Randle Moody II (Fed. I.D. No. 7169)
>randy.moody@jacksonlewis.com
>Mallory H. Gantt (Fed. I.D. No. 13867)
>mallory.gantt@jacksonlewis.com
>JACKSON LEWIS P.C.
>15 South Main Street, Suite 700
>Greenville, SC 29601
>(864) 232-7000
>
>*ATTORNEYS FOR DEFENDANT*
>*BMW MANUFACTURING CO., LLC*