IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Kelly Dawsey, | Civil Action No. 7:22-cv-3738-TMC |
| Plaintiff, | |
| v. | **ORDER** |
| Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC, | |
| Defendants. | |

Plaintiff Kelly Dawsey brought this action against Defendants Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), a German corporation headquartered in Munich, and BMW Manufacturing Co. LLC ("BMW MC"), a Delaware limited liability company which has a principal place of business in Greer, South Carolina.  Plaintiff alleges Defendants unlawfully discriminated against her on the basis of national origin, race and sex in violation of Title VII, and race discrimination in violation of 42 U.S.C. § 1981.  (ECF No. 20).  In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred automatically to a United States Magistrate Judge for all pretrial proceedings.  On February 7, 2024, the Court adopted the recommendation of the magistrate judge (ECF No. 65) and denied BMW AG's Motion to Dismiss for Lack of Personal Jurisdiction.  (ECF No. 90).  Shortly thereafter, BMW MC filed a Motion for Summary Judgment (ECF No. 92), and then BMW AG followed suit with a Motion for Summary Judgment of its own (ECF No. 102).  These summary judgment motions remained with the magistrate judge for issuance of a Report and

Recommendation ("Report") to the Court. After these motions were fully briefed,[1] the magistrate judge afforded the parties an opportunity to address the effect, if any, of the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which was issued shortly after briefing on the instant motions closed. (ECF No. 108). Each of the parties submitted a brief addressing *Muldrow*. (ECF Nos. 110 (Plaintiff); 111 (BMW MC); and 112 (BMW AG)).

Now before the Court is the magistrate judge's Report recommending that the Court grant both motions for summary judgment. (ECF No. 113 at 17). Plaintiff submitted objections to the Report (ECF No. 115), to which both BMW MC (ECF No. 116) and BMW AG (ECF No. 117) replied. In light of the thorough briefing submitted by the parties, as well as the voluminous materials presented to the Court, the Court has determined that the issues before it have been adequately covered by the parties and, as a result, a hearing is unnecessary for the Court to render a decision on the Defendants' summary judgment motions.

## I. Background[2]

BMW MC operates a vehicle assembly plant in Greer, South Carolina, where it produces a number of different BMW brand models. (ECF No. 42-2 at 2). BMW MC is part of the "BMW Group" – BMW AG's global vehicle production network. Defendants describe BMW AG as an "indirect" parent of BMW MC, (ECF Nos. 42-2 at 2; 103 at 3), with no direct control or

---

[1] *See* ECF Nos. 97 (Plaintiff's Response in Opposition to ECF No. 92); 100 (BMW MC's Reply to ECF No. 97); 104 (Plaintiff's Response in Opposition to ECF No. 102); and 106 (BMW AG's Reply to ECF No. 104).

[2] The magistrate judge thoroughly recounted the facts and evidence supporting them in the Report. (ECF No. 113 at 1–10). None of the parties objected to the magistrate judge's general recitation of the facts. Thus, the Court need not rehash the facts and evidence in detail here and merely provides a brief overview. To the extent that Plaintiff objects to the magistrate judge's handling of the facts in connection with a specific conclusion, the Court will address the objection, if necessary, when discussing that conclusion.

involvement in BMW MC's personnel decisions. This is a point of significant dispute, however, and Plaintiff has presented evidence she believes reflects direct involvement, including deposition testimony from BMW MC President Robert Engelhorn suggesting he reports directly to BMW AG. (ECF No. 104 at 2).

The BMW Group management hierarchy uses code designations to signify an employee's location and position. All production plants are designed with a "T" and BMW MC's Greer, South Carolina production plant is specifically designated with a "TX" code. Positions within the Human Resources ("HR") Department for BMW MC, in turn, are designated with a "TX-6" prefix. (ECF No. 92-2). The Vice President for HR who heads the department is designated simply as TX-6; reporting to the Vice President for HR are Department managers and Section Managers designated as TX-60, TX-61, TX-62, TX-64 and TX-65. (ECF No. 45-1).

Plaintiff, an American citizen, began working for BMW MC in 1995. By February 2015, Plaintiff had been promoted to the position of Department Manager in HR planning—a position designated as "TX-60." (ECF No. 20 at 8). In 2018, Plaintiff began reporting to Vice President Christina Petrasch ("Petrasch"), a German national who held the TX-6 position at BMW MC until March 2022. (ECF Nos. 97-1; 97-11 at 3). Plaintiff received excellent performance ratings from Petrasch and garnered consideration as a potential TX-6 HR Vice President.

On September 1, 2021, Robert Engelhorn ("Englehorn"), a German citizen, came from a position with BMW AG in Germany to become President of BMW MC. (ECF No. 92-4 at 8). Because Petrasch's employment contract was set to expire at the end of 2021, Englehorn wished to clarify who would fill the TX-6 position upon Petrasch's departure. *Id*. Engelhorn wanted a local rather than international employee to fill the TX-6 position (ECF No. 97-5) and selected Sherry McCraw ("McCraw"), an American engineer who had been serving as the Vice President

3

of Assembly at BMW MC (designated as "TX-4") at the time. (ECF No. 45-1). On September 15, 2021, Plaintiff received a telephone call from Petrasch who informed her that McCraw would be taking the TX-6 position and, significantly, that "there was a rule when TX-6 vice president of HR was a local, . . . there needed to be a German [next in] line." (ECF No. 92-2 at 21). That is, if McCraw, an American, was placed in the TX-6 position, such a rule would require a German to have the next position in the department hierarchy, potentially affecting Plaintiff's employment as the current TX-60. And, in fact, Plaintiff offered Defendants' "Expat Guidelines for Plant Spartanburg" ("Expat Guidelines") which reduced to writing their preference for "an alternating reporting structure of international and domestic below the Senior Management level." (ECF No. 97-23 at 4). The Expat Guidelines also contains an organizational chart, color-coded by domestic or international status, explaining that the "T[X]-60 department has a need for an international inbound (Planner or Dept Mgr ideally from [BMW AG] - tie to network) and should follow the status of T[X]-6" and specifically stating that if TS-6 is filled by an international employee, the TS-60 will be filled by a domestic employee, and vice-versa. *Id*. at 6.

On November 11, 2021, Englehorn, Petrasch and McCraw met with Plaintiff and other HR management personnel to announce the coming changes in the HR Department. (ECF No. 92-2 at 28). These changes followed the alternating reporting structure with McCraw taking over as T-6, and Eva Burgmeier ("Burgmeier"), a German HR Department manager for BMW AG with whom Englehorn was familiar, sliding into the TX-60 position that Plaintiff held. Plaintiff was further informed that as part of the restructuring she would be moved to the TX-64 position. *Id*. at 31. The evidence, construed in a light most favorable to Plaintiff as the non-moving party, reflected that a transfer from TX-60 to TX-64 qualified as a demotion. (ECF No. 97-1 at 2). According to Plaintiff, the TX-64 slot was classified as a Function Level (FL) IV position while the TX-60

position was an FL III job. *Id*.; (ECF No. 92-2 at 36). The salary range for FL III jobs at BMW MC is generally higher than for FL IV jobs, and bonuses and benefits are better. (ECF Nos. 97-1 at 6; 97-18). Additionally, Plaintiff testified that being demoted to an FL IV position would have ended her ability to advance to the TX-6 Department Manager job, an FL II position for which she once was a candidate; in nearly three decades at BMW MC, Plaintiff has never seen an employee receive a demotion from FL III to FL IV and then subsequently rise back to the FL II level.

As noted, HR managers were notified on November 11, 2021 of the intended hierarchical changes, and Plaintiff testified she was actually informed earlier by Petrasch on September 15, 2021, that McCraw was replacing Petrasch in the TX-6 position and Burgmeier would be taking Plaintiff's TX-60 Department Manager role. (ECF No. 97-4 at 35). Even before Plaintiff learned about the coming changes in the HR Department at BMW MC, however, she apparently began considering other employment. On September 10, 2021, Plaintiff had an initial virtual meeting with Sherrill Miller, an employment recruiter, and then retained Ms. Miller and executed a recruiting services contract on September 16, 2021, (ECF No. 92-2 at 42–43), the day after her conversation with Petrasch. Over the next three months, Miller reached out to numerous companies regarding HR positions. *Id*. at 43–54. On December 10, 2021, Plaintiff accepted a job offer from Madewell Concrete to become their Director of HR. *Id*. at 54.

On December 13, 2021, Plaintiff met with her HR team at BMW MC and explained she would be getting replaced by a German national at TX-60 and would be moved to the TX-64 position. *Id*. at 33–34. Plaintiff then participated in a meeting held by Petrasch for the entire BMW MC HR Department in which the managerial changes were announced. *Id*. at 32–33, 54–55. At that time, Plaintiff did not inform her team or her superiors that she had accepted another HR job with Madewell Concrete. *Id*. at 32–33, 54–55. Rather, on January 3, 2022, Plaintiff called

Petrasch and told her that she was resigning from BMW MC, *id*. at 57, and then provided written notification that her final day of employment at BMW MC would be January 14, 2022, *id*. at 129.

Plaintiff brought this action against Defendants on October 28, 2022. (ECF No. 1). In the amended complaint, Plaintiff asserts claims for national origin discrimination in violation of Section 703(a)(1) and Section 703(a)(2) of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), race discrimination in violation of Title VII, race discrimination in violation of 42 U.S.C. 1981 ("Section 1981"), and sex discrimination in violation of Title VII. (ECF No. 20). After the Court denied BMW AG's motion to dismiss, (ECF No. 90), both BMW MC and BMW AG filed motions for summary judgment. (ECF Nos. 92, 102). As noted previously, these motions have been fully briefed, including supplemental briefs from the parties on the effect, if any, of *Muldrow* on this case.

## II. Report

Both BMW MC (ECF No. 92 at 14–30) and BMW AG (ECF No. 102 at 1–2) argue that summary judgment is required on all of Plaintiff's claims because she is unable to show that she suffered an adverse employment action. In addressing this argument, the magistrate judge explained, in pertinent part, as follows:

> . . . "[An] adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007) (citation and internal quotation marks omitted). The Supreme Court of the United States has recently held that a plaintiff does not have to show that the harm incurred was significant. *Muldrow*, 144 S. Ct. at 974-76. She must simply show "some harm respecting an identifiable term or condition of employment." *Id*.
>
> The defendants argue that the plaintiff voluntarily resigned from employment, so she was therefore not subject to an adverse employment action (docs. 92; 100). While the law is clear that a voluntary resignation from employment is not an adverse employment action, *see Benjamin v. Sparks*, 986 F.3d 332, 352 (4th Cir. 2021), the plaintiff does not contend that this event is the basis of her claim. Rather, the plaintiff argues that she experienced adverse employment actions when (1) BMW decided to remove her from TX- 60 and (2) BMW decided

6

> to transfer her to TX-64 (doc. 97 at 21). The plaintiff contends that these actions easily meet the standard for "some harm" to the terms and conditions of her employment (*id.* at 21-24; doc. 110 at 4-5). The defendants, however, argue that these decisions are not adverse employment actions because, at the time the plaintiff resigned, she had neither been removed from TX-60 nor transferred to TX-64 (docs. 100 at 5-10; 111 at 2-4).
>
> The undersigned agrees with the defendants. The plaintiff is essentially alleging that being notified of a planned, future reorganization is an adverse employment action. However, she has failed to point to any case law in support of this proposition. The cases that the plaintiff does rely on in support of her argument do not hav[e] any bearing on the issue here, as all of those cases deal with when the statute of limitations accrues and not what constitutes an adverse employment action [citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-58 (1980) as cases relied upon by Plaintiff].
>
> . . .
>
> Here, the plaintiff resigned before she was ever removed from TX-60 or transferred to TX-64, so the undersigned is similarly left to speculat[e] about future potential harms. Moreover, the plaintiff resigned before Ms. McCraw was scheduled to be transferred from TX-4 to TX-6. The HR reorganization plan changed throughout the course of the latter part of 2021, and it may have changed again. While the Supreme Court lowered the standard for showing an adverse employment action in *Muldrow*, the plaintiff still is required to show "some harm." 144 S. Ct. at 974-76. At the time that the plaintiff resigned, she simply had yet to experience any harm to the terms and conditions of her employment (see doc. 110 at 4) ("Here, the announced transfer would have reduced [the plaintiff's] rank from FL III to FL IV. [The plaintiff] would have gone from a high-level strategy position to a non-departmental manager position that does not require any experience in HR") (emphasis added) (internal citations and quotation marks omitted). Based on the foregoing, the undersigned recommends that the district court grant the defendants' motions for summary judgment on these claims.

(ECF No. 113 at 13–15).

Additionally, the magistrate judge rejected Plaintiff's argument that BMW MC's summary judgment motion only addressed her national origin discrimination claim under Section 703(a)(1) of Title VII and did not cover her claim under Section 703(a)(2) claim. *Id*. at 16. With respect to this claim, the magistrate judge explained as follows:

> Section 703(a)(2) provides that it is unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's

7

> race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Court of Appeals for the Fourth Circuit has made clear that claims under both Section 703(a)(1) and Section 703(a)(2) require the existence of an adverse employment action. *See James v. Booz-Allen & Hamilton, Inc*., 368 F.3d 371, 375 (4th Cir. 2004) (noting, in the context of Title VII Section 703(a)(1) claims and Section 703(a)(2) claims, that "[r]egardless of the route a plaintiff follows in proving a Title VII action, . . . the existence of some adverse employment action is required"), *abrogated on other grounds by Muldrow v. City of St. Louis, Mo*., 144 S. Ct. 967 (2024). Moreover, as discussed above, the plaintiff resigned before she was removed from TX-60 or transferred to TX-64. Accordingly, because the plaintiff's status as an employee had not yet been affected and she had not yet been denied any employment opportunities, the undersigned further recommends that the district court grant summary judgment on the plaintiff's Section 703(a)(2) claim.

(ECF No. 113 at 16).

The magistrate judge, therefore, recommended that the Court grant Defendants' motion for summary judgment as to all of Plaintiff's claims. *Id*. at 17.

### III. Standard of Review

### Report of the Magistrate Judge

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F.

8

Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, "'the court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate's Report.'" *Floyd v. City of Spartanburg S.C.*, Civ. A. No. 7:20-cv-1305-TMC, 2022 WL 796819, at *9 (D.S.C. Mar. 16, 2022) (quoting *Elliott v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. Mar. 31, 2017); *see also Elijah*, 66 F.4th at 460 n. 3 (noting "district court judges are not required to consider new arguments posed in objections to the magistrate's recommendation").

BMW MC suggests the Court apply a clear error standard of review to Plaintiff's objections to the Report in this case, arguing that the objections, in large part, are mere "recitations of the same arguments she made in opposition to BMW MC's Motion for Summary Judgment" and that, "to the extent that Plaintiff's Objections are simply a repackaged version of the same arguments" already considered by the magistrate judge, "she is not entitled to a de novo review of such objections." (ECF No. 116 at 3–4). Put in such absolute terms, this is incorrect. *Elijah* recently made clear that a district court cannot eschew de novo review *solely* because the objecting party has "repeated his previous arguments" and the magistrate judge has already addressed these arguments. *Elijah*, 66 F.4th at 460–63 (explaining that "objections need not be novel to be sufficiently specific" and remanding for de novo review where "[t]he district court concluded that because Elijah repeated his previous arguments, he did not object with sufficient specificity to warrant de novo review"). Plaintiff in this case has clearly objected to the conclusions set forth in the Report with sufficient specificity to warrant de novo review, which the Court is now obliged to apply.

**Rule 56**

9

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## IV. Discussion

<u>Adverse Employment Action</u>

Plaintiff objects on several grounds to the magistrate judge's conclusion that she cannot establish an adverse employment action because she resigned before the reorganization was implemented by BMW MC. Plaintiff contends (ECF No. 115 at 3) that the magistrate judge's analysis went awry as an initial matter based on the conclusion that *Ricks*, 449 U.S. 250, and *Chardon*, 454 U.S. 6, do not apply because *Ricks* and *Chardon* "deal with when the statute of limitations accrues and not what constitutes an adverse employment action." (ECF No. 113 at 14). Plaintiff, however, points out that the Report did not question whether removal from one's job or a demotion meets the "some harm" standard for establishing an adverse action under *Muldrow* but instead focused on *when* the proposed demotion occurred. Indeed, the magistrate judge agreed with Defendants that there was no adverse employment action because "*at the time the plaintiff resigned*, she had neither been removed from TX-60 nor transferred to TX-64." (ECF No. 113 at 13–14 (emphasis added)). Therefore, Plaintiff argues, cases addressing when a claim accrues are generally relevant here. The Court agrees.

Citing to *Ricks*, Plaintiff contends that "(1) an adverse action happens when a claim accrues; (2) a claim accrues and the statute of limitation commences at the same time; and (3) both happen when the employer announces the decision." (ECF No. 115 at 3–4). *See Ricks*, 449 U.S. at 258 (concluding that discrimination claim under Title VII and § 1981 arose for purposes of the limitations period when decision to deny tenure was communicated to plaintiff professor); *Chardon*, 454 U.S. at 8 ("In *Ricks*, we held that the proper focus is on the time of the discriminatory

act, not the point at which the consequences of the act become painful."). Thus, notification of the discriminatory action is key—"the mere notice of termination is a cognizable adverse employment action *regardless of whether the employer follows through*." *Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019) (emphasis added) (discussing *Ricks* in the FCA context). Under *Ricks* and *Chardon*, "a discrimination claim accrues upon notice of termination, rather than upon the implementation of that decision, necessarily imply[ing] that the notification of termination qualifies as an adverse employment action." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 305 (2d Cir. 2017) (explaining that a Title VII claim "is actionable on the date 'when the employer notifies the employee he is fired, not on the last day of his employment'" (quoting *Green v. Brennan*, 578 U.S. 547, 564 (2016)). *See also Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011) ("As applied to the employment discrimination context, . . . a claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff.").

A few months ago, the Court of Appeals for the District of Columbia Circuit addressed adverse employment action issue in similar circumstances in *Van Horn v. Del Toro*, No. 23-5169, 2024 U.S. App. LEXIS 15154, at *1 (D.C. Cir. June 21, 2024). Because *Van Horn* was issued the same day that the magistrate judge issued the Report in this case, the magistrate judge was unable to consider it; however, the Court finds *Van Horn* instructive. In considering an employment discrimination claim by a Plaintiff who retired rather than accept an unwanted transfer required by her employer, the court explained as follows:

> *[It does not] matter to the adverse-action analysis that the [unwanted] transfers were never effectuated.* As *Singletary v. Howard University*, 939 F.3d 287, 300 (D.C. Cir. 2019), recognized, an adverse employment action becomes cognizable *when the employer provides notice of the action to the employee*, "regardless of whether the employer follows through." *See also Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("The proper focus is upon the time of the

12

discriminatory acts, not upon the time at which the consequences of the acts became most painful." (cleaned up)); *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011) (Gorsuch, J.) ("[A] claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff."). Accordingly, *the [unwanted] Naples and Great Lakes transfers were adverse employment actions on announcement, no matter that Plaintiff] never went to Naples and retired rather than relocate to Great Lakes.*

*Id*. at *3. Similarly, in this case, the fact Plaintiff resigned before her transfer to a less desirable position with a lower salary range and less prospects for advancement took effect does not mean that Plaintiff cannot show an adverse employment action because the transfer was announced *before* she left Defendants' employment. The Court agrees with Plaintiff that limiting *Ricks* and its progeny to the statute of limitations context (ECF No. 113 at 14) would be problematic as the limitations period would begin to run upon announcement, but Plaintiff would not be able to bring a claim until the employer followed through on the adverse action, effectively shortening the time for bringing an action. Accordingly, the Court agrees that Plaintiff has offered sufficient evidence to permit a finder of fact to conclude that the adverse employment action occurred when BMW MC announced Plaintiff would be demoted.

Plaintiff also objects to the magistrate judge's conclusion that Plaintiff's evidence of an adverse employment action was speculative because the "HR reorganization plan changed throughout the course of the latter part of 2021, and it may have changed again." (ECF No. 113 at 15). Plaintiff contends that "[e]ven if BMW had some evidence that things were up in the air, the Magistrate Judge erred by construing facts in the light most favorable to BMW." (ECF No. 115 at 9). In suggesting that a dispute of material facts exists, Plaintiff noted that,

> [b]y the fall of 2021, the reorganization plan was not preliminary or speculative. Burgmeier was coming from Germany. Nobody claimed otherwise. Once BMW decided that, Dawsey had to leave TX-60. BMW's policy left no other choice. Burgmeier had to go into TX-60 because the policy required that a German be in that position since an American would be in TX-6. [ECF 97 at 3-5]. Because Burgmeier was the only German at that level in HR, Dawsey could not have remained in TX-60. [*Id*.]

13

*Id*. The Court is constrained to agree that, viewed in a light most favorable to Plaintiff, there was nothing speculative above the fact that Plaintiff would be removed from her TX-60 position and demoted. The evidence presented here is unlike the speculative evidence presented in *Ratcliff v. Spencer*, No. 1:18-cv-757, 2019 WL 2375131 (E.D. Va. June 4, 2019), a constructive discharge case relied upon by Defendants and cited in the Report. In *Ratcliff*, the district court granted summary judgment against a plaintiff who resigned rather than accept an assignment to a position that had not yet been created but which plaintiff insisted would not be equivalent as required by a memorandum of understanding. In particular, the district court noted the plaintiff "speculates on the impact of reassignment if she had not resigned, but she cannot cobble together an adverse employment action based on what might have been." *Id*. at *4. But, as Plaintiff points out, the position in *Ratcliff* "was merely a concept" and the plaintiff in that case resigned before the parameters of the position had been fully fleshed out—therefore, the district court was unable to determine without speculating whether an adverse action had occurred. By contrast, there is sufficient evidence to show that the TX-64 was an established position with an assigned FL and compensation range. No speculation is required to determine that a transfer from TX-60 to TX-64 would be a demotion.

The Court respectfully declines to adopt the Report and, therefore, **DENIES** BMW MC's Motion for Summary Judgment (ECF No. 92). The Court likewise **DENIES** BMW AG's Motion for Summary Judgment (ECF No. 102) to the extent it is based on Plaintiff's failure to establish an adverse employment action; however, BMW AG pursues summary judgment on three additional grounds not addressed by the Report. *See* (ECF No. 117 at 2). The Court now addresses these arguments.

<u>BMW AG's Additional Grounds</u>

1. *FCN Treaty*.  BMW AG argues it is shielded from liability by the Treaty of Friendship, Commerce and Navigation between the United States and the Federal Republic of Germany ("FCN Treaty"), 7 U.S.T. 1839 (1956). (ECF No. 103 at 26–27).  The FCN Treaty between the United States and Germany was one of approximately two dozen similar post-World War Two treaties intended "to encourage and facilitate private international investment."  Silver, Gerald D., *Friendship, Commerce and Navigation Treaties and United States Discrimination Law: The Right of Branches of Foreign Companies to Hire Executives "Of Their Choice*," 57 Fordham L. Rev. 765, 784 (1989).  These FCN treaties generally include a provision specially allowing companies of signatory countries to hire executive personnel "of their choice."  Article VIII of the FCN Treaty provides, in pertinent part, as follows:

> Nationals and *companies of either Party shall be permitted to engage*, within the territories of the other Party, accountants and other *technical experts, executive personnel, attorneys, agents and other specialists of their choice*. Moreover, such nationals and companies shall be permitted to engage accountants and other technical experts regardless of the extent to which they may have qualified for the practice of these professions within the territories of such other Party, for the particular purpose of making for internal purposes examinations, audits and technical investigations for, and rendering reports to, such nationals and companies in connection with the planning and operation of their enterprises, and enterprises in which they have a financial interest, within such territories.

*Id*. (emphasis added).  BMW AG contends that even if it is found to have direct control over personnel decisions at the BMW plant in Spartanburg, it is nonetheless immune from liability for national origin discrimination claims pursuant to the foregoing provision. (ECF No. 103 at 26–27).  The plain language of Article VIII "entitles companies of either nation to hire *executive personnel* of their choice in the other nation, which at the very least entitles them to discriminate in favor of their own citizens even if the other nation prohibits such discrimination." *Wallace v. SMC Pneumatics, Inc*., 103 F.3d 1394, 1401 (7th Cir. 1997) (emphasis added).  However, the FCN Treaty employer choice provision does not give companies formed under the laws of a signatory

15

country the right to favor their own citizens for *non-executive* positions. *See* Hamabe, Yoichiro, *The JFCN Treaty Preemption of U.S. Anti-Discrimination Laws in Executive Positions: Analysis in International Contexts*, 27 Law & Pol'y Int'l Bus. 67, 80 (1995); Silver, 57 Fordham L. Rev. at 766 n.2.

The Court agrees with Plaintiff that the TX-60 position in this case is not an executive-level position. Viewed in a light most favorable to Plaintiff, the evidence reflects that the executive level positions at BMW MC include the President and the Vice President level positions such as TX-6 (Vice President of Human Resources). Accordingly, Article VIII of the FCN Treaty does not permit Defendants to favor employees of German national origin for the TX-60 position.

2. *Personal Jurisdiction.* BMW AG also renews its argument that it is not subject to personal jurisdiction in this Court. On February 6, 2024, the Court denied BMW AG's Motion to Dismiss pursuant to Rule 12(b)(2), noting that BMW AG could "re-assert its challenge to personal jurisdiction at the summary judgment stage should discovery establish as a matter of law that the Court does not enjoy personal jurisdiction." (ECF No. 90 at 13). On March 8, 2024, BMW AG re-asserted this argument as a basis for summary judgment. (ECF Nos. 102, 103).

The evidence, viewed in a light most favorable to Plaintiff, fails to establish as a matter of law that the Court cannot exercise personal jurisdiction. The Court has carefully considered all of the evidence submitted by the parties and concludes that a substantial question of fact exists as to whether BMW AG was directly involved, participated in or controlled the decision to remove Plaintiff from her TX-60 position and place her in the TX-64 position—a move that can be viewed as a demotion. Plaintiff, who was employed in the HR Department from 2015 until she departed BMW in mid-January 2022, indicated that German nationals from BMW AG on assignment to BMW MC – like Petrasch – were "still BMW AG employees under contract with BMW AG to

16

work at BMW MC for a specific term" and "continue[d] to receive partial compensation from BMW AG." (ECF No. 104-9 at 1). Petrasch indicated that BMW MC could not create a new position without BMW AG's approval. *Id*. at 3. And, as noted previously, Petrasch explained to Plaintiff that McCraw would be taking the TX-6 position and that "there was a rule when TX-6 vice president of HR was a local, . . . there needed to be a German [next in] line." (ECF No. 92-2 at 21). Petrasch also testified that "BMW AG collected candidates for this [TX-60] position." (ECF Nos. 97-11 at 23; 104-8 at 54–55). "Expat Guidelines" likewise made clear that the BMW Group used "an alternating reporting structure of international and domestic below the Senior Management level" and even noted that "an international inbound (Planner or *Dept. Mgr ideally from AG* . . . should follow the status of [TX-6]." (ECF No. 97-23 at 4, 6 (emphasis added)). Based on the evidence in the record, including but not limited to that summarized above, the Court rejects BMW AG's personal jurisdiction argument on the same basis that it previously denied BMW AG's motion to dismiss in its order at ECF No. 90.

       3. *Integrated Employer*. Finally, BMW AG contends it was never Plaintiff's employer and that it is not subject to liability in this case under the "integrated employer" test. (ECF No. 103 at 23–26). *See Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 664 (D.S.C. 2017) (noting in a section 1981 action that "there are a variety of tests by which a defendant who does not directly employ the plaintiff may still be the plaintiff's 'employer'" including the "integrated employer test"); *Bruce v. Ladies Choice Fitness Ctr. Columbia, Inc*., No. 3:12-cv-2678-JFA, 2013 WL 3320785, at *4 (D.S.C. July 1, 2013) (applying integrated employer test in Title VII context). The "integrated employer" test requires consideration of four factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Hukill v. Auto Care, Inc*., 192 F.3d 437, 442

17

(4th Cir. 1999), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); *see Bittle-Lindsey v. Seegars Fence Co., Inc.*, No. 21-1044, 2022 WL 1566770, at *3 (4th Cir. May 18, 2022) (continuing to apply the *Hukill* factors). "[W]hether or not separate entities can be considered a single integrated employer is a question of fact." *Carter v. Ascend Performance Material Holdings, Inc.*, No. 8:20-cv-4379-TMC, 2022 WL 4463021, at *1 (D.S.C. Sept. 26, 2022).

There is sufficient record evidence to create a genuine issue regarding BMW AG's involvement in factual matters material to the case, including evidence suggesting: (1) Expat BMW executives and managers work at BMW MC but remain employed and compensated at least in part by BMW AG; (2) BMW AG must approve the creation of new HR positions; (3) BMW AG gathered candidates for the TX-60 position at the Spartanburg plant; (4) the alternating reporting structure is dictated by BMW AG; and (5) funding for any position at BMW MC requires approval or consultation with BMW AG. The Court concludes there is enough evidence to permit Plaintiff to clear the summary judgment hurdle on this issue as well.

## V. Conclusion

Having carefully considered the thorough Report of the magistrate judge in light of the record and the submissions of the parties, the court, for the reasons stated herein, respectfully declines to adopt the Report (ECF No. 113) and rejects BMW AG's additional summary judgment arguments not addressed by the Report. Accordingly, the Court **DENIES** both BMW MC's Motion for Summary Judgment (ECF No. 92) and BMW AG's Motion for Summary Judgment. (ECF No. 102).

**IT IS SO ORDERED**.

                                                                                 s/Timothy M. Cain
                                                                                 Chief United States District Judge

September 26, 2024
Anderson, South Carolina