In the United States District Court
District of South Carolina
Greenville Division

| | |
|---|---|
| Kelly Dawsey,<br>        Plaintiff,<br><br>v.<br><br>Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC collectively d/b/a "BMW Group,"<br>        Defendants. | 7:22-03738-TMC<br><br>Plaintiff's Motion in Limine Regarding Defendant BMW MC's Economic Expert Report |

## I. Introduction

Kelly Dawsey seeks damages from the cessation of her employment at BMW. Dawsey retained John E. ("Jay") Gibson to calculate what Dawsey would have earned if she remained in her job, less her mitigation. [ECF 58]. BMW MC has responded with a report from Nicholas R. Harris. [ECF 143; Exh. 1].

Harris argues that Dawsey has no damages. He relies on disputed factual issues and legal arguments that are way beyond any disclosed training or expertise. For example, Harris plans to tell the jury that, in his expert opinion, (1) Dawsey's resignation cannot lead to the award of lost wages and benefits; (2) BMW did not force Dawsey to resign; (3) Dawsey would have remained in HR at BMW after the reorganization at issue; and (4) BMW would have continued to employ Dawsey after the reorganization.

Dawsey moves to bar Harris's improper testimony pursuant to Rules 702 and 403 of the Federal Rules of Evidence.

1

## II. Background

### A. Nicholas Harris's qualifications and background

Nicholas Harris is a CPA with experience in testifying about business valuation. [Exh. 1 at BMW MC 1967]. It does not appear that he has had any experience or purports to be an expert about liability issues in Title VII/Section 1981 cases, including the link between alleged wrongdoing and an entitlement to damages. [*Id.* at BMW MC 1967-73].

### B. Harris's "opinions" regarding liability and other contested issues[1]

Harris seeks to testify that Dawsey's damages do not flow from any wrongful conduct of BMW. [Exh. 1 at 7 ("Mr. Gibson's Calculation is a measure of losses attributable to Ms. Dawsey's decision to resign from BMW, not BMW's alleged wrongdoing."); *id.* at 9, 12]. In fact, Harris chides Gibson for not opining on wrongful conduct. [*Id.* at 8 ("The Gibson Report fails to even identify BMW's alleged wrongful conduct."); *id.* ("[T]he Gibson Report does not state any alleged wrongdoing by BMW").

Harris really goes off the rails in concluding that BMW never forced Dawsey to resign. [*Id.* at 9 ("I have seen no evidence that BMW's alleged wrongdoing forced Ms. Dawsey to resign when she did"); *id.* at 8 ("Mr. Gibson's Calculation . . . assumes that BMW's alleged wrongdoing forced Ms. Dawsey to resign. It also assumes that BMW's alleged wrongdoing forced Ms. Dawsey to resign precisely when she did and take a purportedly lower-paying position with another employer ...")].[2]

---

1   Dawsey generally does not oppose Harris's qualifications to give damage calculations or to counter Gibson's calculations.

2   Harris constructs a straw man argument by faulting Gibson for making assumptions he never made. [*Id.* ("These assumptions conflict with available evidence.")] Gibson never expressed an opinion on the voluntariness of Dawsey's resignation.

2

Harris also improperly speculates: "Ms. Dawsey could have continued her employment with BMW, perhaps until her retirement, or at least until her eventual employment with GSP." [*Id.* at 9].[3] And Harris even claims to know where Dawsey would have worked within BMW. Harris acknowledges Dawsey's assertion that BMW arranged for Dawsey to interview with other departments, but had not offered her any job, let alone in HR. [Exh. 1 at 4-5]. But Harris seeks to testify that, as an accountant and valuation expert, he determined that "Ms. Dawsey was going to stay within HR." [*Id.* at 11].[4]

### III. Argument

BMW bears the burden of showing that Harris's challenged testimony meets the requirements of Rule 702. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 482 (D.S.C. 2016) ("*In re Pella Corp.*") (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n. 10 (1993)).

*Daubert* requires that expert testimony be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). And *Kumho Tire* instructs

---

[3] This assertion is the foundation of Harris's argument that Dawsey has no damages. Harris tries to recast the entire theory of damages: "[A] properly constructed damages analysis would compare (a) Ms. Dawsey's would-be earnings at BMW, but for her alleged demotion, to (b) Ms. Dawsey's would be earnings at BMW after her alleged demotion. As discussed below, these two amounts are the same. Thus, Ms. Dawsey has not been damaged." [*Id.* at 10]. Harris's opinion is not directed to either the alleged damages or Gibson's opinion. Gibson measured the damages incurred from the cessation of employment based on what Dawsey would have earned, not from the demotion.

[4] Harris argues that the best-case scenario of a demotion "would not have affected Ms. Dawsey's compensation." [*Id.* at 11; *see id.* at 12 ("BMW's alleged demotion of Ms. Dawsey from Function Level III to Function Level IV had no apparent financial impact to Ms. Dawsey.")] He has no way of knowing that. Even if he did, he is measuring something completely different than Gibson.

3

that *Daubert* applies to all areas of specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999).

This Court's gatekeeping function precludes the old "let it all in for what it's worth" or "it goes to weight, not admissibility" approach. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 278-79, 281 (4th Cir. 2021). That is because "[e]xpert witnesses have the power to be both powerful and quite misleading." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *accord Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "As such, 'the importance of [the] gatekeeping function cannot be overstated.'" *Sardis*, 10 F.4th at 283 (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)). Courts must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. In other words, it is the Court's role to keep experts in their lane.

**A.  BMW cannot bear its burden of showing that Harris's opinions on "causation" and "wrongdoing" are proper.**

"[A]n expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise." *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 496 (D.S.C. 2016) ("*In re Pella Corp.*") (citations omitted, cleaned up). Nor can Harris show that he has any unique insight into workplace discrimination that the jury lacks. *Williams v. Sig Sauer, Inc.*, No. 4:22-CV-48-D, 2025 U.S. Dist. LEXIS 179628, at *11-12 (E.D.N.C. Sep. 8, 2025) ("To be helpful to the trier of fact, the proposed expert testimony must be outside

the common knowledge or function of the fact finder."); *Mincey v. Se. Farm Equip., Co.*, No. 4:24-cv-05121-JD, 2025 U.S. Dist. LEXIS 165687, at *19 (D.S.C. Aug. 25, 2025).

Harris cannot, for example, contend that his impressive accounting credentials give him unique insight into:

- Whether Dawsey's damages flow from BMW's actions;
- Whether BMW "forced" Dawsey to resign;
- Whether Dawsey could have continued her employment when BMW had not offered her any job; or
- Whether BMW was going to keep Dawsey in HR.

In fact, no expert can speculate on issues such as whether Dawsey "could have continued her employment with BMW" or whether BMW would have kept her in HR. *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."); *e.g., Antekeier v. Lab. Corp. of America*, No. 1:17-cv-786, 2018 U.S. Dist. LEXIS 158130, at *4 (E.D. Va. May 1, 2018) (speculative testimony cannot form the basis of economic damage expert testimony).

Economic experts are not per se qualified to testify on subjects such as causation. *Mincey*, 2025 U.S. Dist. LEXIS 165687, at *34 (noting that economic loss expert relies on "standard economic tools—such as present value discounting, inflationary adjustments, and work-life expectancy modeling—to project future wage loss, fringe benefits" and approving of a damages report because it does not "render any clinical opinions on the cause . . . of" injury); *e.g., Taylor v. Fluor Corp.*, Civil Action No. 6:17-1875-BHH, 2020 U.S. Dist. LEXIS 22604, at *5-6 (D.S.C. Feb. 10, 2020) (barring economic damages

testimony under Title VII and Section 1981 because the opinion was not based on any accepted principles and was outside an accountant's expertise).

Putting aside Harris's lack of expertise to posit that BMW did not "force" Dawsey to resign, that opinion is itself both irrelevant, untrustworthy, and highly prejudicial. Whether BMW "forced" Dawsey to resign has nothing to do with her entitlement to back pay or front pay.

Relatedly, Harris should not be allowed to provide his erroneous legal view of damages. "[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); see also *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) ("Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination").[5] The court decides and instructs whether Plaintiff can recover economic losses as part of Title VII/Section 1981's "make whole" relief. *E.g. Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348 (11th Cir. 2000); see *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 670 (4th Cir. 2015).

**B.     Harris's improper reliance on cited authorities**

Harris purports to rely on two authorities for his opinions: (1) The Litigation Services Handbook ("LSH"); and (2) an AICPA[6] Practice Aid. Neither publication supports Harris's effort to testify on such issues as whether BMW engaged in wrongdoing.

---

[5]     Granted, Rule 704 does not bar "an opinion . . . just because it embraces an ultimate issue." Fed. R. Evid. 704. But that principle "should not, and does not, permit the expert witness to usurp the province of the judge." *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988).

[6]     Association of International Certified Professional Accountants.

6

1.  **The Litigation Services Handbook**

Harris cites Section 4.2 of the LSH to support his view as to what an expert must testify about. [Exh. 1 at 8 & n. 36]. Harris fails to understand both the LSH's plain text and the nature of Title VII/Section 1981 damages. The LSH discussion that Harris relies on addresses causation (and proximate cause) in the context of legal remedies for torts and contracts. [Exh. 2 at 8-9].[7] But back pay and front pay under Title VII and Section 1981 are *equitable* remedies that share no elements in common with the common-law claims discussed in the LSH. 42 U.S.C. § 2000e(5)(g)(1); *Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843, 849-50, 853 (2001); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975) (Section 1981).

Harris's discussion about "causation" is not only aimed at the wrong legal claims, but at the wrong issue as well. His improper use of "causation" will cause considerable confusion. Causation in the discrimination context involves the relationship between the protected characteristic and the adverse action, not between the wrongdoing and the harm. 42 U.S.C. § 2000e-2(m); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) (Title VII); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020) (Section 1981).

Harris also quotes the "Introduction to Causation" section of the LSH,[8] which is also devoted solely to common-law concepts, not Title VII or Section 1981. [Compare

---

[7]   It states, for example, that damages "[c]an be measured by the appropriate contract or tort." [*Id.* at 8]. It also discusses the tort concepts of the economic loss doctrine [*id.* at 9-10 § 4.3(b)], proximate cause [*id.* at 10-11 § 4.3(c)], and foreseeability [*id.* at 11 § 4.3(d)].

[8]   Harris's bullet-point list of testimonial subjects is from Section 4.2, not Section 4.3. [*See* Exh. 2 at 3].

Exh. 1 at 10 with Exh. 2 at 3 § 4.2(a)]. Harris does not cite any other authority that, under Title VII or Section 1981, an economic damages expert can opine on causation issues or declare whether the party that hired him engaged in wrongdoing.

### 2. AICPA Practice Aid

Harris also improperly cites an AICPA Practice Aid to support his belief that economic experts should provide opinions on "wrongdoing."[9] He first quotes the Practice Aid for a proposition that is consistent with Title VII/Section 1981 damage measurements:

> The AICPA practice aid titled "Measuring Damages Involving Individuals," states:
>
>> The forensic practitioner who is hired to calculate economic damages involving individuals determines monetary amounts that would have been realized "but for" the **damage incident**, and then applies reductions for amounts actually realized or received. A further reduction may apply for amounts that would have been received had the claimant mitigated damages, depending on the facts of the case.

[Exh. 1 at 7 (citing Exh. 3 at 3) (emphasis added)].

Harris then employs a sleight of hand. He immediately follows the above quote with this: "In other words, Ms. Dawsey's alleged damages are her economic losses caused by BMW's alleged wrongdoing. They do not include losses caused by other factors that would have existed but for BMW's alleged wrongdoing." [Exh. 1 at 7-8

---

[9] While the AICPA produces authoritative material, it disclaims the Practice Aid as a source of authority:

> This publication . . . . does not establish standards or preferred practices. The material . . . has not been considered or acted upon by AICPA senior technical committees or the AICPA Board of Directors and does not represent an official opinion or position of the AICPA.

[Exh. 3 at 2].

8

(emphasis added)]. See what he did there? Harris twice replaces the Practice Aid's term "damage incident" with the phrase, "BMW's alleged wrongdoing." The term "wrongdoing" does not appear in the Practice Aid. Nor does the Practice Aid condone economic experts testifying on liability issues or giving opinions as to whether there is evidence of "wrongdoing."

Harris's own cited authority demonstrates the untrustworthiness of his testimony. Harris's mixing of concepts and substitution of key concepts illustrates how unchecked expert testimony can mislead and prejudice these proceedings. *Cooper*, 259 F.3d at 199.

## IV. Conclusion

For the foregoing reasons, this Court should bar any testimony based on the assumptions, speculations, and factual conclusions addressed above.

Respectfully submitted this 24th day of November, 2025.

                            _s/ Brian P. Murphy_____
                            Brian P. Murphy
                            Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601