# LITIGATION SERVICES HANDBOOK
## The Role of the Financial Expert

SIXTH EDITION

Edited by
Roman L. Weil
Daniel G. Lentz
Elizabeth A. Evans

7-22-cv-03738-TMC   Date Filed 11/24/25   Entry Number 144-2   Page 1 of 11

WILEY

**4 • 2   DAMAGES THEORIES AND CAUSATION ISSUES**

## 4.1   INTRODUCTION

This book describes approaches, issues, and nuances associated with damages claims of many types—intellectual property, antitrust, government contracts, and accountant liability, to name a few—and provides guidance to practitioners involved in those types of cases. To set the context for a deeper understanding of these areas, this chapter provides an overview of the fundamentals of causation and other legal standards, a general framework for selecting a damages theory, and guidance on developing a model to calculate damages. It also summarizes the most commonly accepted damages theories and models, describes accepted methods and elements that practitioners use in measuring damages claims, and discusses the practical aspects of expert testimony related to damage causation issues.

Accepted damages theories and elements can differ widely between state and federal court systems, in different jurisdictions, and for various types of matters. We cannot discuss all potential differences in this chapter. Practitioners should discuss the appropriate standards and elements of damages with counsel before investing time and effort on a wrong approach. Accordingly, this chapter provides a general framework to prepare an effective analysis and will help practitioners identify relevant questions when they begin to assess damages.

Historically, based on the English court system, two types of civil courts existed in the United States: courts of law and courts of equity. Courts of law made their judgments in accordance with federal or state law and awarded monetary damages as their remedy. Courts of equity, on the other hand, used a set of principles based on fairness, equality, moral rights, and natural law, rather than a strict interpretation of the law. In a court of equity, relief came in the form of an action, rather than the payment of money.[1] The wide variety of equitable remedies includes:[2]

- **Rescission:** undoing (or reversing) the actions taken under a contract;
- **Reformation (or rectification):** restructuring the terms of a contract to prevent an inequitable outcome;
- **Specific performance:** requiring performance of the contract according to its terms;
- **Injunction:** requiring a party to refrain from certain acts;
- **Subrogation:** providing that one party can assume the rights of another;
- **Account of profits:** assessing profits improperly gained by a fiduciary that breached its duty; and
- **Declaratory relief:** seeking a preemptive court ruling as a common mechanism of relief in divorce and certain contract matters. For example, in insurance coverage disputes, a party can preemptively seek the court's decision as to whether an insurance policy provides coverage for certain types of losses.

In the United States, most states have merged their law and equity courts. As a result, courts now administer both legal and equitable remedies and often consider a combination of the two depending on the matter at hand. While this chapter focuses on the legal remedy of damages, it will address several equitable remedies because they commonly involve expert services and often relate to damages claims.

Whether the plaintiff seeks legal, equitable, or both types of remedy, legal standards exist that affect the determination of culpability and the veracity of a claim before one considers a remedy. Sections 4.2 and 4.3 address these legal standards.

## 4.2 FUNDAMENTALS OF CAUSATION

### (a) Introduction to Causation

Causation is a simple concept: Did the defendant's wrongful conduct produce the damages suffered by the plaintiff? Proof that a defendant's wrongful conduct *caused* a plaintiff's alleged damages is a key concept in the determination of culpability in civil litigation. Testimony of a qualified expert can help the trier of fact (the jury, or the judge in a nonjury trial) to decide whether the plaintiff has proved this causal link.

Some situations have obvious causation, such as when a gunshot fired by the defendant hits the plaintiff. In others, however, such clarity does not exist. Does a public company's announcement that it will miss quarterly earnings projections cause its share price to drop (as plaintiffs in a shareholder class action lawsuit might claim), or is some other factor at work (such as bad news about the economy that made the entire securities market plummet the same day)?

The law follows logic. It requires that the plaintiff prove more than correlation to establish causation.[3] Accordingly, courts reject expert testimony on causation that identifies merely a correlation between two variables.

Courts similarly refuse to find causation when an expert neglects to consider other factors that could have caused—or at least contributed to—the plaintiff's damages, even when the defendant has indisputably engaged in legally actionable misconduct. This refusal makes clear that to ensure the credibility and sometimes even admissibility of their testimony, expert witnesses must understand both the applicable causation standards and the relevant facts regarding causation.

The legal standard for establishing causation varies, depending on both the nature of the legal claim (e.g., negligence, common law fraud) and the law of the relevant jurisdiction. All courts, however, require that the defendant's wrongful conduct *cause* the damages allegedly suffered by the plaintiff. An expert retained to measure damages must therefore understand and be prepared to explain the following:

- The defendant's wrongful conduct;
- How the plaintiff alleges the defendant's wrongful conduct caused damages to the plaintiff and how the defendant alleges that it did not cause damages;
- The logic that connects the defendant's alleged wrongful conduct and the plaintiff's damages;
- Other factors that could have caused or exacerbated the plaintiff's damages; and
- Whether the plaintiff's damages were reasonably expected to result from the defendant's alleged wrongful conduct.

The first half of this section focuses on the legal standards for establishing causation in the cases where experts most often testify. The second half explains why experts need to account for causation in their analyses and assessments.

**4 • 4    DAMAGES THEORIES AND CAUSATION ISSUES**



**Exhibit 4-1.  Actual versus Legal Cause**

### (b) Causation Fundamentals

Exhibit 4-1 illustrates the two components of causation required regardless of the legal claim asserted: (1) actual cause and (2) legal cause. We will first discuss whether (or how) these components are present in the cases that experts are most often involved in or provide testimony in.

---

**Components of Causation**

*Actual Cause + Legal Cause = Liability*

Actual cause:  The defendant's conduct actually causes the plaintiff's damages.

Legal cause:   The defendant's conduct gives rise to legal liability for the plaintiff's damages.

---

### (c) Negligence

Causation plays a central role in establishing the defendant's liability in negligence cases, including those that involve alleged malpractice by professionals.[4] Plaintiffs bear the burden of proving negligence by a preponderance of evidence[5] (i.e., by showing that their allegations are more likely than not to be true).[6] For example, suppose a radiologist failed to diagnose a cancerous tumor visible on an x-ray when it could have been treated successfully and led to full recovery. Instead, the cancer went untreated and the person died as a result. In such a case, the failure to diagnose the early-stage tumor when it was visible on the x-ray constitutes negligence within the professional medical field of radiology, and this negligence was the cause of the wrongful death.

*(i) Actual Cause*   Although courts lack consensus on a standard for actual causation in negligence cases, "the focus [always] remains on the fundamental and sometimes metaphysical inquiry into the nexus between the defendant's negligent act and the resultant harm to the plaintiff."[7] Regardless of the standard, the plaintiff can use either direct or circumstantial evidence to prove actual cause.[8]

Some courts cast actual cause in negligence cases in terms of a but-for or *sine qua non* (literally, "without which not") test: "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it."[9]

Other courts consider whether the defendant's conduct is a substantial factor in bringing about the plaintiff's damages.[10] Following § 433 of the *Restatement (Second) of Torts*, those courts have identified the following considerations as relevant in deciding whether the defendant's conduct meets the standard, generally referred to as the substantial factor test:

- The number of other factors that contribute in producing the harm and the extent of the effect that they have in producing it;
- Whether the actor's conduct has (1) created a force or series of forces that are in continuous and active operation up to the time of the harm or (2) has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and
- Lapse of time.[11]

These three elements address the concern in situations where two independent causes, each by a different defendant, bring about the plaintiff's damages and, when either cause by itself would have resulted in the same damages, courts would absolve both defendants of liability for negligence to the plaintiff's detriment.[12] The test also helps resolve those cases where "a similar, but not identical result would have followed without the defendant's act ... [or] one defendant has made a clearly proved but quite insignificant contribution to the result, [such] as where he throws a lighted match into a forest fire."[13]

Aside from these two situations, the but-for and substantial factor tests should produce the same legal conclusion.[14] This congruence follows from the fact that "the substantial factor test subsumes the but-for test. If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries."[15]

**Standards for Actual Cause in Negligence Cases**

*Sine qua non* (but-for test): But for the defendant's conduct, the plaintiff would not have suffered damages.

*Substantial factor test:* Even though it was not the only cause, the defendant's conduct was a substantial factor causing the plaintiff's damages.

*(ii) Legal Cause* Proof of actual cause is alone insufficient to establish the defendant's liability for negligence; the plaintiff must show that the defendant's conduct is also the legal cause of the damages.[16] Legal cause "tempers the expansive view of causation [in fact]."[17] As one court has explained:

The law does not undertake to charge a person with all the *possible* consequences of a wrongful act, but only with its probable and natural result; otherwise, the punishment would often be entirely disproportioned to the wrong, thereby impeding commerce and the ordinary business of life, and rendering the rule [of causation] impracticable.[18]

**4 • 6   DAMAGES THEORIES AND CAUSATION ISSUES**

Thus, one can best understand legal cause as demarcating a certain point beyond which "the law arbitrarily declines to trace a series of events."[19] The determination of this point is not a matter of "logic" but instead of "practical politics," reflecting considerations "of convenience, of public policy, [and] of a rough sense of justice."[20]

- **Foreseeability.** Courts generally define legal cause in negligence cases in terms of foreseeability,[21] which they consider to be an issue of fact.[22] Courts do, however, vary somewhat in how they apply this concept. Some courts consider whether the plaintiff's injury is a "natural and probable consequence" of the defendant's conduct.[23] Others focus on whether a "reasonable person" would have foreseen the conduct causing the plaintiff's injury.[24] Finally, others (albeit a small number of courts) assess whether the plaintiff's injury is the natural and probable consequence of a negligent act *and* could have been reasonably foreseen in light of all the circumstances.[25] This divergence underscores the importance to the expert witness of understanding the applicable law concerning causation in the jurisdiction of the specific case.
- **Intervening causes.** As Exhibit 4-2 illustrates, legal cause fails to materialize when an independent act of another party intervenes subsequent to the defendant's conduct and produces the plaintiff's damages.[26] In this situation, the independent intervening act supersedes the defendant's conduct as the legal cause, thereby freeing the defendant of liability to the plaintiff.[27] Some courts characterize the occasion of an intervening cause as triggering "a legal metamorphosis [of the defendant's conduct] into a remote cause or 'mere condition.'"[28] To the same effect, other courts provide that "a remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence."[29] More important, a foreseeable intervening cause will not absolve the defendant of liability for the defendant's prior conduct.[30]

*Ventricelli v. Kinney System Rent A Car, Inc.* provides an example of how the intervening cause doctrine works. In that case, Joseph Ventricelli rented a car from Kinney System Rent A Car, Inc.[31] The car had a defective trunk lid that did not close satisfactorily. This problem persisted even after Ventricelli returned the car for repair. When the trunk lid later popped open again, Ventricelli parked the car along the street curb, got out, and attempted to shut the lid. While Ventricelli was trying to shut the lid, the car of Antonio Maldonado, which was parked behind where Ventricelli was standing, lurched forward and struck Ventricelli, severely injuring him.



**Exhibit 4-2.   Intervening Cause**



The Court of Appeals of New York overturned the jury's verdict that Kinney was primarily at fault for Ventricelli's injuries. This reversal rested on the following reasoning:

> The immediately effective cause of plaintiff's injuries was the negligence of Maldonado, the driver of the second car, in striking plaintiff while he was standing behind his parked automobile. That Kinney's negligence in providing an automobile with a defective trunk lid would result in plaintiff's repeated attempts to close the lid was reasonably foreseeable. Not "foreseeable," however, was the collision between vehicles both parked a brief interval before the accident. Plaintiff was standing in a relatively "safe" place, a parking space, not in an actively travelled lane. He might well have been there independent of any negligence of Kinney, as, for example, if he were loading or unloading the trunk. Under these circumstances, to hold the accident a foreseeable consequence of Kinney's negligence is to stretch the concept of foreseeability beyond applicable limits.[32]

This case illustrates how the unforeseeable intervening conduct of another party can render the defendant's conduct *not* the legal cause of the plaintiff's injuries, thereby absolving the defendant of liability to the plaintiff for negligence.

### (d) Common Law Fraud

Common law fraud, also known as actual or intentional misrepresentation, arises when, among other things:

- The defendant's material misrepresentation causes the plaintiff to act in reliance of it; and
- This reliance causes the plaintiff to suffer damages.[33]

Many courts require the plaintiff to provide clear and convincing evidence to prove common law fraud.[34] Courts recognize clear and convincing evidence as the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the existence of the fact in question.[35] As Exhibit 4-3 illustrates, this requires an evidentiary showing greater than that necessary to prove a fact by a preponderance of the evidence yet less than that necessary to prove a fact beyond a reasonable doubt, which is the standard of proof in all criminal cases (including those that allege fraud).[36]



**Exhibit 4-3. Standards of Proof from Least to Most Onerous**

Some courts, by contrast, allow the plaintiff to prove common law fraud by a preponderance of evidence.[37] A few other courts require clear and convincing evidence to establish all the elements of fraud except for damages, which may be proved by a preponderance of the evidence.[38]

*(i) Actual Cause*   Reliance equates with actual cause in the context of common law fraud.[39] No consensus prevails on the test for determining actual cause. As with other torts, some courts apply a but-for test, which requires the plaintiffs to show that "but for the alleged misrepresentation . . . , [they] would not have entered the transaction."[40] Others favor a substantial factor test, which provides that

> it is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.[41]

Most courts do not permit that reliance be presumed in common law fraud cases.[42] For example, some have refused to extend the rebuttable presumptions of reliance recognized in federal securities fraud law to common law fraud.[43]

*(ii) Legal Cause*   Courts generally equate legal causation with foreseeability in the context of common law fraud. They differ, however, in how they characterize foreseeability.

Some courts follow the definition of legal cause set forth in Section 548A of the *Restatement (Second) of Torts*, which provides that "a fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance."[44] Other courts frame the issue as whether the plaintiff's injury "is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud."[45] Yet another court focuses on whether "in an appreciable sense . . . the damage flowed from the fraud as the proximate and not the remote cause, and the damage . . . is the natural and probable consequence of the fraud."[46]

This divergence in definitions underscores the importance to the expert witness of understanding the applicable law concerning causation in the jurisdiction in which a fraud case is pending.

---

**Causation Elements of Common Law Fraud**

*Actual Cause = Reliance*

*Legal Cause = Foreseeability*

---

## 4.3  OTHER LEGAL STANDARDS

The judge or jury should award damages in cases where the harm:

1. Will occur or has occurred with reasonable certainty;
2. Can be measured by the appropriate contract or tort (referred to as *economic loss doctrine*) standard;

3. Is the proximate cause of the damage; and
4. Was foreseeable.

In addition, for damages to be awarded:

5. The harmed party must have made reasonable efforts to mitigate the damages.

This section explains these five legal concepts.

### (a) Reasonable Certainty

Section 352 of the *Restatement (Second) of Contracts* (1981) states, "Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty."[47] Yet while all courts require reasonable certainty for the award of damages, no single measure of reasonable certainty exists. Individual states and federal courts have all issued their own opinions as to the nature of reasonable certainty.[48]

Most cases concur on certain points:[49]

- The court must be certain that some injury to the plaintiff occurred.
- The defendant must not benefit from its wrongful actions, and courts generally resolve doubts in favor of the plaintiff.
- The defendant's intentional or willful action can result in a court requiring a lesser degree of certainty from the plaintiff.
- The plaintiff can estimate the amount of damages, but the court should have confidence in the accuracy of the estimate.
- For a well-established business, past performance reasonably predicts the future.
- For a new or speculative business, parties can establish the measure of damages with reasonable certainty by the use of expert testimony, business records, economic and financial data, and other verifiable data.
- The plaintiff must use the best available evidence.

Most important, the court must balance its judgment: it cannot favor the defendants to a contract by requiring too high level of proof that would encourage unscrupulous actions on their part, nor should the court favor the plaintiff by requiring too little proof, which would encourage the parties to undertake costly actions to avoid loss to plaintiffs who might file a lawsuit in the future.

### (b) Economic Loss Doctrine

The economic loss doctrine sets out the extent of loss that the plaintiff can recover in a tort case. When the facts of a case could result in a damages award either under a contract or under a tort, practitioners should know the distinctions between the two. We will first discuss the basic difference between contract law and tort law in order to set the place for a discussion of their differing damages measures.

Under the common law of contracts, the seller and buyer decide between themselves the nature of their respective rights and duties. If the buyer believes that the seller has breached his or her duty or responsibilities under the contract, the buyer can bring suit against the seller. Similarly, the seller can sue the buyer for the

breach of the buyer's duties under the contract. In addition, one can find another source of contract law in the Uniform Commercial Code (UCC), which discusses the rights and responsibilities of parties to a contract among its nine articles.[50] This chapter refers to both of these sources (the contract and the UCC) as contract law.

A tort involves the breach of a civil duty (not a contractual duty). Some define a tort as a personal injury. Torts include (but are not limited to) such wrongs as assault, battery, false imprisonment, defamation of character, interference with business, unfair competition, interference with contract, trespass, and negligence. Under tort law, an injured party can bring a civil lawsuit to seek compensation for a wrong done to the party or to the party's property.[51]

In many cases, the line between a contract issue and a tort problem appears nebulous. Judge Richard Posner, of the Seventh Circuit Court of Appeals, notes that "almost any tort problem can be solved as a contract problem, by asking what the people involved in an accident would have agreed on in advance with regards to safety measures if transaction costs had not been prohibitive."[52] He goes on to say, "Equally, almost any contract problem can be solved as a tort problem by asking what sanction is necessary to prevent the performing or paying party from engaging in socially wasteful conduct, such as taking advantage of the vulnerability of a party who performs his side of the bargain first."[53]

For a breach of contract that is also a tortious injury, what amount of damages should the injured party claim? Suppose a buyer in a contract receives and uses a defective machine, resulting in nonsalable goods, but none of the buyer's other machines or property receives harm due to the use of the defective machine. Should the buyer bring a product liability suit (tort) or bring a lawsuit for breach of contract? Most states and federal jurisdictions hold that a party cannot recover in tort for economic loss damages when physical property damage did not occur. Where the harm causes damage only to the product itself (the defective machine in our example), the buyer should have protected itself under contract law. We refer to this majority view as the *economic loss doctrine*.[54] On the other hand, a minority of states and federal jurisdictions hold that a party can recover additional losses related to negligence without the presence of damage to other physical property.[55] An intermediate position has also evolved where courts permit a products liability action under certain circumstances even when the product harms only itself. The Supreme Court in *East River v. Transamerican DeLaval Inc.*[56] summarizes the intermediate position, as well as the majority and minority views.[57]

While the attorney will choose whether to bring suit under the contract or in tort, the practitioner should understand the distinctions of each and ensure that the damages analysis matches the type of lawsuit filed.

### (c) Proximate Cause

Even though the plaintiff's harm would not have occurred but for the defendant's actions, courts nonetheless limit the plaintiff's ability to recover under the concept of proximate cause. That is, recoverable harm from the chain of events caused by the defendant's actions does not continue indefinitely.

At the point in which the court finds that the actions of the defendant did not proximately cause harm to the plaintiff, damages cease. Section 4.2(b) of this

chapter focuses on the two components of causation, actual (but-for) cause and proximate (or legal) cause, and discusses proximate cause in greater detail. Courts decide proximate cause on a case-by-case basis.

### (d) Foreseeability

One can test for proximate causation in several ways, but the most basic test involves foreseeability. If one cannot reasonably foresee the consequences resulting from the defendant's actions, the plaintiff cannot recover for the harm related to those actions. For example, if the defendant throws a rock at Person A but hits Person B standing next to Person A, a court would find that the harm to Person B was reasonably foreseeable. Hence, the defendant, by throwing the rock, proximately caused the harm to Person B, even if the defendant did not intend to hit Person B.

As with proximate cause, courts decide whether one can reasonably foresee the consequences of an action on a case-by-case basis.

### (e) Duty to Mitigate

A victim to a breach of contract has a duty to mitigate the actions caused by the other party's harm. That is, the plaintiff must take reasonable actions to avoid or reduce the damages. For example, assume that the defendant signed a contract for the purchase of 1,000 widgets from the plaintiff. The defendant breaches the contract and informs the plaintiff of the contract's termination before the plaintiff obtains a source for the material needed to manufacture these 1,000 widgets. The plaintiff should sue for the loss of the profits on the breached contract, but should not sue for the cost of the material that it has not yet obtained at the time the defendant terminated the contract. The cost of the material is an avoidable cost. Alternatively, assume that the defendant breaches the contract after the plaintiff manufactures the widgets. If reasonably possible, the plaintiff must sell the widgets to another party; by selling the widgets to another party, the plaintiff can reduce the damages to the difference between the defendant's price and the new party's price plus the additional costs required to find the new purchaser.[58]

## 4.4 DAMAGES THEORY

Parties to a lawsuit employ various theories of damage and related models in the legal remedy of damages, depending on the court and the nature of the case. This section describes damages theories that underlie models used to calculate damages. Exhibit 4-4 defines some categories of damages.

These categorizations are often interrelated. For instance, courts often remedy actual and consequential damages with compensatory or restitution payments from the defendant to the plaintiff. Courts may award punitive damages in addition to compensatory or restitution damages. In addition, statutes and case law often specify the type of damages attached to specific offenses or actions. We discuss these measures in more detail in subsequent sections of this chapter.