**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| KELLY DAWSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 7:22-cv-03738-TMC |
| | ) |
| BAYERISCHE MOTOREN WERKE | ) |
| AKTIENGESELLSCHAFT and BMW | ) |
| MANUFACTURING CO., LLC collectively | ) |
| d/b/a "BMW GROUP," | ) |
| | ) |
| Defendants. | ) |

**BMW MANUFACTURING CO., LLC'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE REGARDING DEFENDANT BMW MC'S ECONOMIC EXPERT REPORT**

Defendant BMW Manufacturing Co., LLC ("BMW MC"), by and through its undersigned counsel, respectfully submits this Response to Plaintiff's Motion in Limine Regarding Defendant BMW MC's Economic Expert Report (ECF No. 144). For the reasons set forth below, Plaintiff's Motion in Limine should be denied.

## I.   INTRODUCTION

Title VII's back pay provisions, 42 U.S.C. § 2000e-5(g)(1), permit a court to award sums for wages lost prior to the time of trial so that a plaintiff may "be placed as near as may be, in the situation he would have occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19, 95 S. Ct. 2362, 2372 (1975). In ordering this case to trial, this Court decided that a jury might conclude that "the adverse employment action occurred when BMW MC announced Plaintiff would be demoted." (ECF No. 119 ("SJ Order") at 13.) This Court further determined that "there is sufficient evidence to show that the TX-64 [to which Plaintiff alleges she

would be demoted] was an established position with an assigned FL and compensation range." (SJ Order at 14.)

Rather than use the "assigned FL and compensation range" of the new position to which she would be demoted to determine her damages, Plaintiff retained an expert to opine that she lost more than half a million dollars solely as a result of her decision to resign voluntarily before BMW MC demoted her. In her Motion in Limine, Plaintiff seeks to prevent BMW MC's economic expert, Nicholas R. Harris, from testifying that Plaintiff has no damages because she has failed to identify any wages that she did or would have lost because of BMW MC's allegedly discriminatory demotion. (ECF No. 144 at 1.) Plaintiff wrongly contends that such testimony from Harris would be improper pursuant to Rules 702 and 403 of the Federal Rules of Evidence and thus should be barred under the standard established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiff's arguments are not supported by prevailing law. Mr. Harris easily meets the expert criteria under *Daubert* and Fed. R. Evid. 702 and should be permitted to testify.

In this case, Plaintiff has conceded repeatedly that she is not pursuing damages under a constructive discharge theory that would treat her voluntary resignation as a termination. (ECF 117 at 12 ("constructive discharge – is not an issue in this case); *Id.* at 14 ("Dawsey is not alleging constructive discharge"). Yet Dawsey's expert—to whom Mr. Harris is responding—has attempted to specifically tie the alleged damages in this case to Dawsey's voluntary resignation from employment, not the actions of BMW MC in allegedly demoting Dawsey to "an established position with an assigned FL and compensation range." In order to rebut the position taken by Daswey's expert, the testimony of Mr. Harris regarding the nonexistence of damages is proper under both Rule 702 and Rule 704 of the Federal Rules of Evidence. Moreover, the fact that Plaintiff disagrees with Mr. Harris' expert opinion is not grounds for exclusion. Rather, Plaintiff

2

maintains the right to cross-examine Mr. Harris at trial. Accordingly, Plaintiff's Motion In Limine should be denied.

## II.     BACKGROUND

This case arises out of Plaintiff Kelly Dawsey's decision to resign voluntarily from employment at BMW MC in January 2022 prior to a planned reorganization of the Human Resources (HR) Department. As this Court stated in its summary judgment order (which viewed the facts most favorably to Dawsey), BMW MC employed Plaintiff as the Department Manager of the TX-60 Department (responsible for Human Resources Planning and Steering, Compensation and Benefits) prior to her decision to resign. (SJ Order at 3.) As part of the reorganization, BMW MC planned for Plaintiff to move to the Department Manager of the TX-64 Department (responsible for Recruiting, Health Management, Occupational Safety, Food Services). (SJ Order at 4.) In December 2021, Plaintiff met with the employees in her Department and notified them of the reorganization plan, including her transfer to the TX-64 Department Manager position. (SJ Order at 5.) However, rather than accept the reorganization plan and continue her employment at BMW MC, Plaintiff voluntarily resigned to accept the Director of Human Resources position at Madewell Concrete, a position which paid significantly less than the Department Manager role at BMW MC. (SJ Order at 5-6.)

Plaintiff retained John E. Gibson, Jr. as an economic expert in this case. (ECF No. 58.) Mr. Gibson has prepared three versions of his expert report on behalf of Plaintiff, the most recent of which was issued on December 1, 2025.[1] In each of his three Reports, Mr. Gibson measures Plaintiff's alleged damages from the date of her resignation from BMW MC, which Mr. Gibson

---

[1] The Expert Report of John E. Gibson, Jr., issued on January 18, 2023, is attached hereto as Exhibit A. The Report issued on October 31, 2025, is attached hereto as Exhibit B. The Report issued on December 1, 2025, is attached hereto as Exhibit C.

refers to as the "Date of Incident." (Exs. A-C at 3.) In his report, Mr. Gibson did not determine whether BMW MC's alleged decision to demote Mr. Dawsey did, would have or even could have caused her to suffer economic harm—instead conceding during his deposition that Plaintiff incurred no damages prior to the date of her resignation from BMW MC. (Gibson Dep. at 91:23-92:9.)[2] However, Mr. Gibson opines that Plaintiff has lost more than a half million dollars as a result of her decision to voluntarily resign from BMW MC and take a lower paying job.[3] (Ex. C at 4.) Therefore, the issue of the amount of damages flowing from Plaintiff's resignation decision is squarely at issue in this case.

In response to the report prepared by Mr. Gibson, BMW MC retained Nicholas Harris of GreerWalker LLP to prepare a rebuttal report. In his report, Mr. Harris lists his qualifications which, opposed to Mr. Gibson's admission that this is his first employment related case, includes providing "opinions and analysis on the valuation of lost wages resulting from alleged wrongful termination[.]" (ECF No. 144-1 at 3.) The scope of his engagement is spelled out as a review of the Gibson report and he recognizes that "liability, and findings of fact, will ultimately be determined by the trier of fact in this matter. My opinions on Ms. Dawsey's alleged damages are intended to assist the trier of fact." (ECF No. 144-1 at 4.) In the Background section of his report, Mr. Harris provides prolific citation to source material in this matter with citations to 32 footnotes, 25 of which refer to Plaintiff's Amended Complaint. As opposed to Mr. Gibson who relied on Ms. Dawsey and her counsel to provide information, Mr. Harris specifically explains his

---

[2] The pertinent pages of the Deposition of John E. Gibson, Jr. ("Gibson Dep.") are attached hereto as Exhibit D.

[3] Notably, with each revision to Mr. Gibson's Expert Report, Plaintiff's alleged damages decrease. Mr. Gibson's initial report, prepared in January 2023, calculated Plaintiff's damages at more than $829,000 (*See* Ex. A at 4.) Mr. Gibson's second report, issued on October 31, 2025, calculated Plaintiff's damages at more than $662,000 (*See* Ex. B at 4.) Mr. Gibson's most recent report reduces the damage calculation to approximately $579,000. (*See* Ex. C at 4.)

4

methodology and cites to professional guidance from the American Institute of Certified Public Accountants ("AICPA") on technical guidance to practitioners in the valuation of economic damages and the Litigation Services Handbook that outlines the Role of the Financial Expert. *Id.* at 9-10, 30. These qualifications outline the assumptions and opinions that frame the Rebuttal Report to Plaintiff's proffered expert. Mr. Harris opines that Mrs. Dawsey has no damages. *Id.* at 9-12. Mr. Harris also opines that Mr. Gibson's calculations are "unsupported and overstated because of errors and omissions." *Id.* at 13-18.

## III.     APPLICABLE LAW

Federal Rule of Evidence 702 provides that the testimony of a proffered expert witness is admissible when the witness is qualified "by knowledge, skill, experience, training, or education" to testify to his or her opinion. Fed. R. Evid. 702. Courts should admit expert testimony when the proponent of the evidence shows that it is "more likely than not" that:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of this case.

*Id*.

The Fourth Circuit distills the requirements of Rule 702 into two crucial inquiries: 1) whether the proposed expert's testimony is relevant; and 2) whether it is reliable. *See Nease v. Ford Motor Co.*, 848 F.2d 219, 228-29 (4th Cir. 2017). While many factors will bear on the inquiry, the Fourth Circuit does not set out a definitive checklist or test. *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019). The trial court's inquiry is a flexible one, and it exercises broad discretion in choosing which *Daubert* factors to apply and how to consider them. *Nease,* 848 F.2d

at 232. "[A] district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable. In performing this gatekeeping role, a district court is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019); *see also Doe v. Coastal Carolina Univ.*, No. 4:18-cv-268-SAL, 2021 U.S. Dist. LEXIS 82292, at *2 (D.S.C. Mar. 8, 2021) (cases after Daubert have shown that "the rejection of expert testimony is the exception rather than the rule").

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. Fed R. Evid. 401. Relevant evidence is generally admissible unless excluded by the constitution, a specific rule or statute, or if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, misleading the jury, delay, wasting time, or presenting cumulative evidence. *See* Fed. R. Evid. 402 & 403. In order to be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993).

An expert may base his or her opinions on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Generally, questions relating to the basis and source underlying an expert's opinion go to the weight of the expert's testimony, not the admissibility. *See Lewis v. Circle K Stores, Inc.*, Case No. 4:23-cv-01720-JD, 2025 U.S. Dist. LEXIS 148207, at *20 (D.S.C., August 1, 2025) (citing *Bresler v. Wilmington Tr. Co*., 855 F.3d 178, 195 (4th Cir. 2017)); *see also Viterbo v. Dow Chem. Co*., 826 F.2d 420, 422 (5th Cir. 1987) (stating that "[q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's

consideration"). In this case, the jury should be allowed to hear an opinion contrary to Mr. Gibson's calculations and to properly weigh such testimony.

## IV.   ARGUMENT

### A.   Mr. Harris Is an Appropriate Expert Under *Daubert.*

BMW MC retained Mr. Harris, a Certified Public Accountant, to evaluate Plaintiff's economic expert report and to provide an assessment of the alleged damages incurred by Plaintiff as a result of her resignation from BMW MC. (ECF No. 144-1.) Mr. Harris's qualifications include a Bachelor's degree in Business Administration from the University of Michigan and a Certificate in Audit and Forensic Accounting from Northwestern University. *Id.* at 22. He also is a Certified Fraud Examiner (CFE), Chartered Financial Analyst (CFA), and is Accredited in Business Valuation (ABV). *Id.* at 23. Notably, Mr. Harris has frequently served as an economic expert in state and federal courts, including in the United States District Courts in South Carolina and North Carolina. *Id.* at 23-28. Therefore, Mr. Harris is qualified under *Daubert* to provide an expert opinion regarding the financial issues in this case. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("To be 'qualified' to render expert testimony under *Daubert*, [an expert] must merely 'possess specialized expertise,' and this requirement is interpreted 'liberally.'").

### B.   Mr. Harris' Expert Testimony is Relevant and Would Assist the Trier of Fact.

This Court should permit the expert testimony of Mr. Harris because it will help the trier of fact to understand the evidence and to determine a fact in issue. *See Nease*, 848 F.2d at 228-29. In the Motion in Limine, Plaintiff argues that Mr. Harris's testimony fails to meet this standard because he is offering opinions that are not relevant to the issues presented in this case. (ECF No. 144 at 4-6.) However, the issue of whether Plaintiff suffered lost wages as a result of BMW MC's alleged discrimination where she voluntarily resigned from employment at BMW MC before the alleged demotion occurred is a critical issue in this case.

7

The report of her Plaintiff's own expert witness belies the argument that she posits now, contending that the cause of her economic harm is not relevant to expert testimony. During his deposition, Plaintiff's expert, Jay Gibson, testified that the "incident" resulting in harm to Plaintiff was her resignation from employment. (Gibson Dep. at 47:7-49:22.) In fact, Mr. Gibson intends to testify that Plaintiff has lost more than a half million dollars as a result of her decision to voluntarily resign from BMW MC and take a lower paying job. (Ex. C at 4.) Therefore, the damage flowing from Plaintiff's resignation decision is a fundamental issue that will be before the trier of fact in this case. In his Report, Mr. Harris counters the position taken by Plaintiff's expert by stating that had Plaintiff remained at BMW MC instead of resigning, her damages would be zero. (ECF No. 144-1 at 9-12.) While Plaintiff may not like Mr. Harris's opinion on the issue of damages, his opinion meets the standard of relevance set forth in Rule 702 as it will benefit the trier of fact in assessing a key issue in this case.

Plaintiff also argues that Mr. Harris's opinion is not reliable because it is based on assumptions that are speculative and not supported by the evidence. In her Motion in Limine, Plaintiff contests Mr. Harris's statements that Plaintiff was not forced to resign from BMW MC, that Plaintiff could have continued her employment when BMW MC had not offered her any job, and that BMW MC was going to keep Plaintiff in HR. (ECF No. 144 at 5.) Yet, contrary to Plaintiff's argument, these statements are based upon undisputed facts from Plaintiff's own deposition testimony and the briefs she has submitted to this Court[4]:

- Mr. Harris's statement that Plaintiff was not forced to resign came directly from Plaintiff's sworn deposition testimony that she voluntarily resigned to accept a position with Madewell Concrete, a job that she admittedly could not turn down.

---

[4] The footnotes in Mr. Harris's Report reveal that these facts were taken from the allegations in Plaintiff's Amended Complaint and from Plaintiff's sworn deposition testimony.

8

(Pl. Dep. 304:25-305:5; Keiser Dep. 69:1-5.)[5] Moreover, by disclaiming any intent to proceed under a constructive discharge theory in pleadings filed with this Court, Plaintiff has conceded that she was not forced to resign. (ECF 117 at 12; SJ Order at 5-6.)

- Mr. Harris's statements that Plaintiff could have continued her employment with BMW MC and that she would have continued working in HR are based upon Plaintiff's sworn testimony regarding the reorganization of the HR Department. Specifically, Plaintiff admitted that in December 2021, she met with the employees in her Department and notified them of the reorganization plan, including the fact that Plaintiff was transferring to the TX-64 Department Manager position. (Pl. Dep. 253:14-254:13, 288:23-289:2; SJ Order at 5-6.)

Therefore, because Mr. Harris's opinions are based upon Plaintiff's testimony and admissions in the record, they meet the reliability requirements of Rule 702.

Under *Daubert* and its progeny, Plaintiff's disagreement with Mr. Harris's conclusions, methodology, and assumptions is not a basis for excluding his testimony. Instead, Daubert recognizes that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. Nothing about Mr. Harris's opinions are shaky—indeed, the absence of economic harm from BMW MC's alleged future demotion of Dawsey has been conceded by Plaintiff's expert. (Gibson Dep. at 44:23-45:25.) Here, because Mr. Harris's opinion meets the requirements of Rule 702, the proper action for the Court is to allow Mr. Harris to testify

---

[5] The pertinent pages from the Depositions of Plaintiff and Kathy Keiser were previously filed with the Court as exhibits to BMW MC's Motion for Summary Judgment (ECF Nos. 92-2 and 92-9).

and then provide Plaintiff the opportunity to challenge his expert opinion through cross examination.

C.      **Mr. Harris's Testimony is Admissible Under Rule 704.**

In her Motion in Limine, Plaintiff takes issue with the fact that Mr. Harris offers an opinion on what she labels as the ultimate issues in the case – whether her damages flow from BMW MC's actions, whether she was forced to resign, and whether she could have continued to work in HR at BMW MC.  (ECF No. 144 at 5.)   However, Plaintiff's argument ignores Rule 704 of the Federal Rules of Evidence, which expressly provides that an expert opinion "is not objectionable just because is embraces an ultimate issue."[6]  Fed. R. Evid. 704.  As the Fourth Circuit has recognized, Rule 704 "authorizes the trial judge to admit opinions on the ultimate fact when helpful to the trier of fact." *United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988), *cert. denied*, 487 U.S. 1205, 101 L. Ed. 2d 883, 108 S. Ct. 2846 (1988).  In this case, allowing Mr. Harris to provide testimony regarding the relationship between Plaintiff's resignation from BMW MC and her alleged harm flowing from that resignation will aid the trier of fact in assessing damages.  Accordingly, his testimony is admissible under Rule 704.

## IV.     CONCLUSION

For the reasons set forth herein, Defendant BMW MC respectfully requests that the Court enter an Order denying Plaintiff's Motion in Limine Regarding Defendant BMW MC's Economic Expert Report.

---

[6] In footnote 5 of the Motion in Limine, Plaintiff acknowledges that Rule 704 does not bar an expert's opinion on the ultimate issue but goes on to disclaim that statement by arguing that the expert should not be permitted to usurp the province of the judge. (ECF No. 144 at 6, n. 5.) However, Plaintiff fails to provide any explanation as to how Mr. Harris's opinion that Plaintiff has no damages usurps the province of this Court here.

Respectfully submitted this the 15th day of December, 2025.

> By: *s/ Ellison F. McCoy*
> Ellison F. McCoy (Fed. I.D. No. 6389)
> ellison.mccoy@jacksonlewis.com
> D. Randle Moody II (Fed. I.D. No. 7169)
> randy.moody@jacksonlewis.com
> Mallory H. Gantt (Fed. I.D. No. 13867)
> mallory.gantt@jacksonlewis.com
> JACKSON LEWIS P.C.
> 15 South Main Street, Suite 700
> Greenville, SC 29601
> (864) 232-7000
>
> *ATTORNEYS FOR DEFENDANT*
> *BMW MANUFACTURING CO., LLC*