## In the United States District Court
## District of South Carolina
## Greenville Division

| | |
|---|---|
| Kelly Dawsey, | ) |
|         Plaintiff, | ) 7:22-03738-TMC |
| | ) |
| v. | ) |
| | ) |
| Bayerische Motoren Werke | ) **Plaintiff's Reply in Support of Motion** |
| Aktiengesellschaft and BMW | ) **in Limine [ECF 144]** |
| Manufacturing Co., LLC collectively | ) |
| d/b/a "BMW Group," | ) |
| | ) |
|         Defendants. | ) |

BMW MC's response merely confuses the issues raised in the Motion and argues disputed facts about liability. Dawsey never attacked the qualification of BMW MC's expert to provide economic damage testimony. Nor are BMW MC's misguided criticisms of Dawsey's expert witness at issue. BMW's response is nothing but a veiled effort to have this Court find that Dawsey voluntarily resigned. But as explained below, any such finding is not only beyond the scope of this Motion, but it also would not affect damages. And none of this has anything to do with the purported scope of Harris's expertise.

The only issue before this Court is whether Harris can opine on the liability facts. BMW argues that, because Harris may have expertise in one area, his decision to go beyond that area is merely "methodology" and giving an opinion on an ultimate subject. BMW MC really misses the target. Certainly, experts may provide opinions on ultimate issues *if those opinions fall within the scope of their expertise*. But an expert in calculating damages is not an expert in whether BMW MC did anything wrong.[1]

---

[1] "'An expert's qualification depends on the nature of the opinion he offers.'" *Estate of Ravenell v. Pugmill Sys.*, No. 2:13-cv-00815-PMD, 2014 U.S. Dist. LEXIS 172778, at * 13 (D.S.C. Dec. 15, 2014) (quoting *Bombardiere v. Schlumberger Tech.*

1

BMW keeps pounding the nail that Dawsey is not claiming constructive discharge, as if that is some kind of concession on Dawsey's part.  Allowing Harris, under the guise of "expert testimony," to make BMW's argument would mislead the jury.  Dawsey is entitled to compensation for the loss of her BMW employment, even if she resigned voluntarily.  BMW's incessant arguments about constructive discharge are immaterial. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002) (citing *Spanguolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir. 1981)).[2]  But that is not the issue in this Motion.  And Harris's accounting expertise sheds no light on the matter. [ECF 144 at 5-6].

---

*Corp.*, 934 F. Supp.2d 843, 846 (N.D.W. Va. 2013)); *see also SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp.2d 628, 639-40 (E.D.N.C. 2013) (expertise in marketing does not permit one to opine as to the falsity of a marketing claim related to software products); *Virginia Vermiculite, Ltd. v W.R. Grace & Co. - Conn.*, 98 F. Supp.2d 729, 732-35 (W.D. Va. 2000) (expert with extensive experience in providing market analysis did not have the requisite experience to opine on anti-trust matters arising from that market); *accord Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 537-38 (D. Md. 2002).

[2]     In *Dennis*, the employer passed over the plaintiff for a promotion.  *Id.* at 643.  On appeal, the defendant challenged the back-pay award on appeal on grounds that plaintiff voluntarily quit.  *Id.* at 651.  As noted above, the *Dennis* Court rejected the argument that back pay can only be awarded in termination or constructive discharge situations. *Id.* at 651.  Although employers still argue post-*Dennis* that a resigning plaintiff must prove constructive discharge to receive back and front pay, courts within the Fourth Circuit faithfully apply the *Spagnulo-Dennis* rule.  *E.g.*, *Bennett v. CSX Transp.*, 907 F. Supp. 2d 694, 702 (E.D.N.C. 2012), rev'd on other grounds, 552 F. App'x 222, 223 (4th Cir. 2014); *Holmes v. Wal-Mart Stores E., L.P.*, No. 1:10cv75, 2011 U.S. Dist. LEXIS 46020, at *26 (E.D. Va. Apr. 27, 2011) ("Walmart's argument—namely, that a victim of discrimination is not entitled to back pay if the plaintiff voluntarily resigned from employment—does not accurately state the law in the Fourth Circuit."); *id.* at 27 (noting that "the Fourth Circuit has expressly rejected the constructive discharge rule."); *Benson v. Thompson Cadillac-Oldsmobile, Inc.*, No. 5:04-CV-237-F(1), 2006 U.S. Dist. LEXIS 97666, at *42 n.9 (E.D.N.C. July 18, 2006).  Consistent with *Spagnuolo*, courts rejected the constructive discharge rule pre-*Dennis*.  *See Scott v. Ameritex*, 7:99-cv-00173-HMH DE 46 at 6-7 (D.S.C. March 16, 2000) (backpay is not limited to termination or constructive discharge situations) (citing and quoting *Hansel v. Public Serv. Co.*, 778 F. Supp. 1126, 1135 (D. Colo. 1991)).

BMW also never explains how Harris can speculate that BMW would have continued to employ Dawsey in HR (when it never offered her a job). Again, that is not expertise within the purview of an accountant. That is just testimony-for-hire, and BMW offers nothing to carry its burden regarding Harris's speculation. [ECF 144 at 5 (citing cases)].

Nor is this testimony based on any admission from Dawsey. BMW cites Dawsey's testimony regarding an earlier meeting at which slides were shown projecting that Dawsey would fill the TX-64 position (i.e., the demotion). [ECF 145 at 9]. But BMW never offered Dawsey the position. Rather, BMW had Dawsey interview for positions outside of human resources. [ECF 97 at 15]. These are all issues the jury can resolve, but Harris cannot.

BMW oddly argues that "the issue of the amount of damage flowing from Dawsey's resignation decision is squarely at issue in this case." [ECF 145 at 4]. Yes, it is. But that does not mean that accountants can testify about underlying disputed facts. Likewise, BMW argues: "[W]hether Plaintiff suffered lost wages as a result of BMW MC's alleged discrimination where she voluntarily resigned from employment at BMW MC before the alleged demotion occurred is a critical issue in this case." [*Id.* at 7]. Putting aside the numerous disputed issues in that premise, the question remains: What expertise does Harris have for resolving such issues, other than the calculation of damages? BMW bears the burden on this point, and it never attempts to meet it.

The best test of these arguments would be to assume, for purposes of argument, that BMW is right about everything. Assume Dawsey resigned voluntarily. Assume also that BMW offered Dawsey a job that would have resulted in no loss in economic benefits.

3

Assume further that this all matters in the way BMW wants it to. In other words, assume BMW did nothing wrong and Dawsey would never have lost a dime if she had stayed at BMW. If all these assumptions are correct, then Harris's testimony still adds nothing. The jury does not need Harris's accounting expertise for anything.

Finally, BMW ignores Harris's claimed basis for his opinion. Harris justified his opinion based on two treatises, which do not support his testimony under Title VII. [ECF 144 at 6-9]. Dawsey even pointed out how Harris improperly changed the key concept of "incident date" in one treatise to "discrimination." [*Id.* at 8-9]. BMW's decision to ignore this issue is both understandable and telling. BMW cannot defend Harris's misuse of the materials. They do not warrant his testimony about "causation" or suggest that economic experts can opine on underlying facts. BMW's decision to ignore Harris's own justifications should not go unexcused since BMW bears the burden here.

For the foregoing reasons, as well as those in the Motion, the Court should grant Dawsey's Motion in Limine and limit Harris's testimony to the calculation of economic damages.

                                                  s/ Brian P. Murphy
                                                 Brian P. Murphy
                                                 Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601