# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
 2                    SPARTANBURG DIVISION
               CASE NO.  7:22-cv-03738-TMC-KFM
 3
    Kelly Dawsey,
 4
         Plaintiff,
 5
     vs.
 6
    Bayerische Motoren Werke
 7  Aktiengesellschaft and BMW
    Manufacturing Co., LLC,
 8  collectively d/b/a "BMW Group",

 9       Defendants.

10  _____

11           VIDEOTAPED DEPOSITION OF KELLY DAWSEY

12  _____

13  DATE TAKEN:          August 30, 2023

14  TIME BEGAN:          9:41 a.m.

15  TIME ENDED:          7:03 p.m.

16  LOCATION:            Stephenson & Murphy, LLC
                         207 Whitsett Street
17                       Greenville, South Carolina   29601

18  REPORTED BY:         Traci L. Barr, RPR

19  VIDEOTAPED BY:       Brandon Dufala

20
    _____
21

22           EXPEDITE COURT REPORTING, LLC
                Traci L. Barr & Associates
23               Post Office Box 25882
             Greenville, South Carolina 29616
24              info@expeditereporting.com
                     (864) 509-0914
25
```

```
 1   A.   Yes.
 2   Q.   All right.  And the initial e-mail that we received
 3        from Ms. Miller -- and I don't believe we received
 4        from you -- was an e-mail from Greg Dawsey on
 5        Wednesday, September 8, at 4:43 in the morning.
 6        Do you see that, ma'am, on --
 7   A.   I do.
 8   Q.   -- document 1?
 9   A.   Yes.
10   Q.   All right.  So your husband sent your information
11        to a recruiter on Wednesday, September 8.  Is that
12        what this e-mail reflects, ma'am?
13   A.   Yes.
14   Q.   All right.  So why is your husband sending your
15        resume on September 8 to a recruiter?
16   MR. MURPHY:  Object to the form.
17   THE DEPONENT:  Because my husband is supportive of me.
18                     EXAMINATION RESUMED
19   BY MR. MOODY:
20   Q.   Okay.  And were you dissatisfied with BMW
21        Manufacturing in early September of 2021?
22   A.   So communications were chaotic.  It was this.  It
23        was that.  And I started really praying hard about
24        what my positions should be, what I should do, and
25        very ironically, my husband met Sherrill Miller at
```

```
1   Q.    Okay.  So I think I get your difference.
2         The companies interested in pursuing, you did that
3         the weekend?
4   A.    What do you mean?
5   Q.    You said you put this together on the weekend?
6   A.    Yes.
7   Q.    And the companies not interested in pursuing, you
8         put that together on the weekend as well?
9   A.    Yes.
10  Q.    All right.  So this recruiting arrangement, you
11        actually wrote a check to Sherrill Miller, didn't
12        you?
13  A.    I did.
14  Q.    And it's the 15th of September that you received a
15        service agreement from her, right?
16  A.    I will have to verify that.
17  Q.    Well, it's in the e-mails, ma'am, and
18        unfortunately, I don't have a lot of --
19  MR. MURPHY:  What page are you on?
20  MR. MOODY:   Huh?
21  MR. MURPHY:  What page are you on?
22  MR. MOODY:   On what?  The 15th of September on the
23        service agreement?  It's one of her e-mails.
24  THE DEPONENT:  Wednesday, September 15, yes.  Please find
25        attached the service agreement.
```

|   |   |
|---|---|
| 1 | EXAMINATION RESUMED |
| 2 | BY MR. MOODY: |
| 3 | Q.   Okay.  Thank you, ma'am. |
| 4 | A.   Uh-huh. |
| 5 | Q.   And that is also the date that you testified that |
| 6 |      you heard that Sherry McCraw was going to be the |
| 7 |      TX-6, correct? |
| 8 | A.   Correct. |
| 9 | Q.   And the consultant agreement is on document 19, if |
| 10 |     you see that. |
| 11 | MR. ROZELSKY:  Bates number 19? |
| 12 | MR. MOODY:  Bates level -- number 19. |
| 13 | THE DEPONENT:  Yes. |
| 14 | EXAMINATION RESUMED |
| 15 | BY MR. MOODY: |
| 16 | Q.   All right.  And I don't have a signed agreement |
| 17 |     from Ms. Miller or you.  But this is what you |
| 18 |     agreed to on the 15th of September; is that |
| 19 |     correct? |
| 20 | A.   Let me look at my check. |
| 21 | Q.   What are you looking for, ma'am? |
| 22 | A.   The check. |
| 23 | Q.   Okay.  It's not in this group.  This is from Ms. |
| 24 |     Miller. |
| 25 | A.   Okay.  I recall that I signed the check on |

```
 1            resignation notice on January 3 saying that my last
 2            day of work will be Friday, January 14?
 3       A.   After the way I was treated, absolutely.
 4       Q.   Okay.  As a SHRM-certified professional, do you
 5            view it as being professional to provide a
 6            resignation notice with, essentially, 11 days?
 7       A.   As is -- as I stated, customary and professional in
 8            the United States is a two-week notice.
 9       Q.   Even for someone at your level?
10       A.   Even for someone at my level.
11       Q.   All right.  Was Eva Burgmeier even at work at BMW
12            Manufacturing as of January 3?
13       A.   Eva had been on a look-and-see trip.  I don't
14            recall the dates.  But I had worked with her over
15            the time she was not working at the plant.  She was
16            on a look-and-see.
17       Q.   So the answer is, no, she had not reported to work
18            at BMW MC as of January 3?
19       A.   Yeah, I don't -- I don't know her report date.
20       Q.   Okay.  And BMW MC allowed you to continue to work
21            through the requested date of what you told them,
22            January 14, correct?
23       A.   In the office, yes.
24       Q.   Yes, ma'am.
25            And did you tell people at BMW Manufacturing that
```

| | | |
|---|---|---|
| 1 | | God had opened a door for you? |
| 2 | A. | I did. |
| 3 | Q. | Did you tell people that over the holidays you were |
| 4 | | approached with a new job? |
| 5 | A. | Potentially, I did. |
| 6 | Q. | Did you tell anybody that you had accepted that job |
| 7 | | on Friday, December 10? |
| 8 | A. | Not that I recall. |
| 9 | Q. | In this period of time that you were employed at |
| 10 | | BMW through January 14 of 2022, did you have |
| 11 | | discussions with Robert Engelhorn about your |
| 12 | | departure? |
| 13 | A. | I did. |
| 14 | Q. | Tell me what was said. |
| 15 | A. | So he returned from his holidays and scheduled a |
| 16 | | meeting with me, and he wanted to know why I was |
| 17 | | leaving. |
| 18 | Q. | What did you tell him? |
| 19 | A. | I told him that I thought the way that I was |
| 20 | | treated was wrong, I thought displacing me for a |
| 21 | | German was wrong, and I had chosen to leave. |
| 22 | Q. | Okay.  Did you tell him anything else? |
| 23 | A. | I -- I think that was the crux of it. |
| 24 | Q. | Okay.  So -- |
| 25 | A. | Oh, no, no, no.  I did.  I asked him if he knew |

```
1    Q.   All right.  You've also asked for compensatory and
2         punitive damages.
3         What amount of money are you going to ask a jury to
4         award you?
5    MR. MURPHY:  Object to the form.
6    THE DEPONENT:  So you would have to define compensatory
7         and punitive.  I'm -- I'm not an attorney, and I'm
8         relying on my attorney for those things.
9                     EXAMINATION RESUMED
10   BY MR. MOODY:
11   Q.   All right, ma'am.  Well, you're an individual who
12        has sued BMW MC, and what amount of money are you
13        going to ask for in your lawsuit?
14   MR. MURPHY:  Object to the form.
15   THE DEPONENT:  I -- I don't know at this point.  I -- I
16        am relying on my attorney.
17                    EXAMINATION RESUMED
18   BY MR. MOODY:
19   Q.   Okay.  Do you have any idea what you're going to
20        ask for, an amount?
21   MR. MURPHY:  Same objection.
22   THE DEPONENT:  I'm not -- I'm not an attorney.
23                    EXAMINATION RESUMED
24   BY MR. MOODY:
25   Q.   Okay.  You also list attorney's fees.
```

| | | |
|---|---|---|
| 1 | | How much have you paid in attorney's fees? |
| 2 | A. | I've not paid anything in attorney's fees. |
| 3 | Q. | You've paid zero? |
| 4 | A. | Yes. |
| 5 | Q. | You asked for expenses. |
| 6 | | How much have you paid in expenses? |
| 7 | A. | So I've had copying expenses, those kinds of |
| 8 | | things. |
| 9 | Q. | Okay. Ma'am, how much money have you lost? |
| 10 | A. | So I -- I can't -- I can't calculate the number as |
| 11 | | I sit here. |
| 12 | Q. | Okay. You don't know? |
| 13 | A. | This is what my expert financial report I relied |
| 14 | | on. |
| 15 | Q. | So you're relying on Mr. Jay Gibson to tell you |
| 16 | | what you've lost? |
| 17 | A. | I'm relying on an expert financial objective party. |
| 18 | Q. | All right. And you used the term "expert". |
| 19 | | What's the basis that you determine he's an expert? |
| 20 | A. | That is what I understood he was. |
| 21 | Q. | Okay. Thank you. |
| 22 | | So as you sit here today, you're relying on someone |
| 23 | | you paid to give a calculation for what you've |
| 24 | | lost; is that right? |
| 25 | A. | I'm relying on a financial person who's qualified |

```
 1              to do that.
 2    Q.   And you're paying him to do that, right?
 3    A.   I have not paid him.
 4    Q.   Okay.  Is he doing it for free?
 5    A.   I've not -- that -- that's been with Brian.
 6    Q.   Okay.  All right, ma'am.  I think we were looking
 7         at Saturday, September 11, right?
 8    A.   Yes.
 9    Q.   And do you -- were you able to ascertain what date
10         that meeting was from?
11    A.   I was not.
12    Q.   Okay.
13    A.   I can ascertain that it was the "be more BMW"
14         presentation --
15    Q.   All right.
16    A.   -- because I reference page 5.
17    Q.   Okay, ma'am.  And down below that -- since I'm
18         short on time, I'm not going to ask any more about
19         that, but down below that, is that a -- notes of
20         your discussion with your recruiter --
21    A.   Yes.
22    Q.   -- where it says, Sherrill?
23    A.   Yes.
24    Q.   Okay.  Let's go to Friday, September 24.
25    MR. MOODY:  Yeah, it's 2498, Brian.
```

```
 1                      CERTIFICATE
 2          I, the undersigned, Traci L. Barr, RPR, Notary
 3     Public in and for the State of South Carolina, do
 4     hereby certify that the deposition of KELLY DAWSEY
 5     was taken on the 30th day of August, 2023, that the
 6     within deponent was sworn to tell the truth, and
 7     that the foregoing is an accurate transcription of
 8     the testimony taken under oath; that all exhibits
 9     entered herein are attached hereto (if requested by
10     counsel) and made a part of this deposition.
11          I further certify that I am neither counsel
12     nor solicitor to any of the parties in said suit,
13     nor interested in the event of the cause.
14          In witness whereof, I have hereunto set my
15     hand and seal this 13th day of September, 2023.
16
17     _____
18     Traci L. Barr, RPR
19     Notary Public for South Carolina
20     My Commission Expires:  4/24/29
21
22
23
24
25
```