IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| KELLY DAWSEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BAYERISCHE MOTOREN WERKE )<br>AKTIENGESELLSCHAFT and BMW )<br>MANUFACTURING CO., LLC collectively )<br>d/b/a "BMW GROUP," )<br>)<br>Defendants. )<br>) | C.A. No. 7:22-cv-03738-TMC |

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY AND REPORTS OF PLAINTIFF'S PURPORTED EXPERT WITNESS, JOHN E. GIBSON, JR.**

Defendants Bayerische Motoren Worke Aktiengesellschaft ("BMW AG") and BMW Manufacturing Co., LLC ("BMW MC") submit this Motion in Limine to Exclude the Testimony and Report of Plaintiff's Purported Expert Witness, John E. Gibson, Jr. Pursuant to Local Civil Rule 7.04 because the grounds for this Motion are fully set forth below, no supporting memorandum is attached.

**I.        INTRODUCTION**

Plaintiff Kelly Dawsey, a former employee of BMW MC, voluntarily resigned her employment with BMW MC in January 2022. (ECF No. 119 ("SJ Order) at 5-6.) Though she has repeatedly acknowledged that her resignation was not compelled by anything BMW MC did *e.g.*, ECF 117 at 12, 14), Dawsey has retained an accountant to opine about the losses that flowed solely from her decision to resign. (Gibson Dep. at 47:7-49:22.) Dawsey's putative damages expert has testified that the quantifiable damages associated with her employment at BMW MC

1

are zero dollars. (*Id.*) Yet Plaintiff now proposes to elicit testimony from an expert at witness at trial that BMW MC owes her more than a half million dollars in back and front pay on account of her voluntary decision to resign. (*See generally* Third Report of John E Gibson, Jr., ECF No. 145-3.)[1]

Dawsey's proposed expert testimony on damages turns on their head the purposes of damage awards under Title VII and the express statutory duty to mitigate damages. Rather than attempt to prove up the economic damages relating to BMW MC's alleged decision to demote her and the resulting consequence she would have suffered by being put into a different function level with a different compensation range, Dawsey seeks a windfall by asserting through an expert that she should recover all of the losses she experienced by voluntarily electing to take a substantially lower paying position outside of BMW MC. Rather than mitigate her damages, Dawsey markedly exacerbated them and now seeks to introduce evidence, under the guise of expert testimony, that she is entitled to all the losses she voluntarily occurred. For the reasons detailed more fully below, BMW MC moves this Court to exclude the testimony of John E. Gibson, Jr. relating to Dawsey's alleged damages flowing from her resignation.

## II.     GIBSON'S REPORTS

On May 19, 2023, Plaintiff designated Gibson as a purported expert to support her alleged claims for economic losses flowing from the resignation of her employment at BMW MC. (ECF No. 58). On that same date, counsel for Plaintiff provided Defendants with a first report of alleged damages prepared by Gibson. (*See* ECF No. 145-1.)   In that first report, Gibson calculated

---

[1] Plaintiff provided a Fourth Report of John E. Gibson Jr. today. As this Fourth Report was provided on the date that motions in limine are due, Defendants have not had the opportunity to process additional changing opinions and calculations for a fourth time. However, the fact that Gibson has been required to prepare a Fourth Report purportedly to clean up errors and omissions from his previous three reports further supports the arguments made herein.

Plaintiff's alleged damages as $829,537. (*Id*.) The parties subsequently mediated the case two times – before mediator Mark Bakker and before United States Magistrate Judge William Brown – with this alleged damage number from Plaintiff's designated expert.

On October 31, 2025, after the case was set for trial, Gibson prepared a second report of Plaintiff's alleged damages. (*See* ECF No. 145-2.) In the second report, Gibson determined that Plaintiff's alleged damages were $662,702, a reduction of more than $165,000 from his initial report. (*Id*.) After BMW MC's rebuttal expert witness, Nick Harris, submitted a report in which he pointed out errors in Gibson's calculations, Gibson prepared a third report of Plaintiff's alleged damages on December 1, 2025. (*See* ECF No. 145-3.) In this third report, Gibson calculated Plaintiff's alleged damages as $579,471.00. (*Id*.) Therefore, Gibson's calculation of Plaintiff's alleged damages resulting from her resignation has decreased by more than $250,000 from his first report to his third report.

On December 4, 2025, Defendants took the deposition of Gibson. During the deposition, Gibson admitted to making numerous errors (or as he preferred to call them, "mistakes" or "oversights") that led to the dramatic reduction in his calculations. (Gibson Dep 33:10, 33:13; 50:20; 56:10, 17, 19-20; 57:3,14; 58:7,11; 59:15-17; 70:15; 97:7; 121:24)[2] Gibson admitted to relying on salary and benefits information provided to him by Plaintiff that was not accurate. (Gibson Dep. 52:7-20; 54:10-12; 57:18-25). Finally, during the deposition, Gibson stated that he would provide Defendants with his spreadsheets detailing the methods that he used to calculate Plaintiff's damages. (Gibson Dep. 67:4-21) As of the filing of this Motion, more than three weeks following Gibson's deposition, those documents still have not been provided to Defendants.

---

[2] The cited pages from the Deposition of John E. Gibson, Jr. are attached hereto in Exhibit A.

Defendants oppose the admission of Gibson's testimony and multiple reports because he has applied an incorrect legal standard in measuring damages in employment litigation, admittedly has made numerous errors in calculating Plaintiff's alleged damages, and relied solely on information provided by Plaintiff in rendering his opinions without properly verifying or vetting that information. Accordingly, Gibson's proffered testimony does not meet the standards of Rule 702 and his testimony and reports should be excluded pursuant to the Federal Rules of Evidence.

### III.     ARGUMENTS AND AUTHORITIES

Rule 702 of the Federal Rules of Evidence governs expert testimony. This rule states that the testimony of an expert witness is admissible only if the expert's scientific, technical, or other specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue" and is the product of "reliable principles and methods" that are reliably applied to the facts of the case. The Court has the obligation to serve as the "gatekeeper" for any proposed expert testimony. *See, e.g., Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1171 (1999). The Fourth Circuit has distilled the requirements of Rule 702 into two crucial inquiries: 1) whether the proposed expert's testimony is relevant; and 2) whether it is reliable. *See Nease v. Ford Motor Co.*, 848 F.2d 219, 228-29 (4th Cir. 2017). In the instant matter, the testimony proffered by Gibson does not meet the standards, and his testimony and report should be excluded.

**A.     Gibson's Testimony and Report, Which Calculate Back Pay and Front Pay in a Manner Contrary to Title VII, Mislead Rather than Assist the Factfinder.**

Title VII's equitable remedies provision, 42 U.S.C. § 2000e-5, provides that, following a finding of intentional discrimination, the court may order "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay. . . . ." 42 U.S.C. § 2000e-5(g)(1). "Interim earnings or amounts earnable with reasonable diligence . . . shall operate to reduce the back pay otherwise allowable." *Id.* Here,

4

under the guise of expert testimony, Dawsey attempts to proffer as "back pay" the losses that she voluntarily assumed by resigning from BMW MC rather than accepting the demotion she alleges was forecast to her.

The Supreme Court has observed that the purpose of Title VII's equitable remedies is "to make persons whole for injuries suffered on account of unlawful discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S. Ct. 2362, 2372 (1975). Appealing to longstanding principles of relief, the Court has stated that this "'make whole' purpose of Title VII" operates such that "[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.* at 418-19, 95 S. Ct. at 2372.

This "make whole" constraint on back pay awards flows directly from the text of the statute, because "the right of a successful Title VII plaintiff to claim back pay is limited in degree by the statutory duty to mitigate employer damages." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985). "The ordering equitable principle is that a compensatory back-pay award should only make the wrongly discharged employee monetarily whole under his employment contract; it should not provide a windfall." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 490 (4th Cir. 1982).

In view of these precepts, the vast majority of courts to consider the question have held that a plaintiff who voluntarily resigns her employment and cannot prove constructive discharge has no right to back pay. *See, e.g.*, *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 28 (1st Cir. 2002); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 155 (3d Cir. 1999); *Boehms v. Crowell*, 139 F.3d 452, 461 (5th Cir. 1998); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001); *Major v. Rosenberg*, 877 F.2d 694, 695 (8th Cir. 1989); *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir. 2000).

Dawsey has at times appealed to two published decisions by the Fourth Circuit over the last five decades in which it has declined to adopt the categorical rule against backpay awards in cases involving uncoerced resignation, instead holding that back pay awards are constrained by "the general statutory duty . . . to mitigate employer damages." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002). This allowance of back pay damage claims in cases where constructive discharge is absent, says Dawsey, gives Title VII plaintiffs like her license to resign their employment no matter the triviality of the discrimination they experienced and sue for all of the economic consequences that result from their having voluntarily left employment for a lower paying job.

The Fourth Circuit case law recognizing the possibility of damages outside constructive discharge do not support the damages claim embodied by the Gibson report because in each case the plaintiff resigned to take a *higher paying job* than the one they held, thus mitigating their damages. In *Dennis*, the plaintiff was passed over for promotion and took a *higher* paying job than the job in which he remained. 290 F.3d at 651. "Dennis' expert testified that she made substantially more money over the three-year period between leaving [defendant's employ] and trial than she would have made had she stayed at the hospital after being denied promotion." *Id.* Accordingly, the Fourth Circuit in *Dennis* "refused to overturn an award of back pay to an employee who voluntarily left [her] employer to work for a higher paying competitor." *Id.*

*Dennis* relied on *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir. 1981), in which the plaintiff, after being demoted, took a job that paid him *more* than the job to which he had been demoted. In *Spagnuolo*, the Fourth Circuit specifically compared the compensation of the job from which he resigned—$900 month plus commission—against the greater amount he was able to earn by resigning and taking new employment—$1,200 per month, plus commission.

6

*Id.* "Thus, consistent with his obligation to mitigate damages, plaintiff sought and obtained a better-paying job." *Id.* Accordingly, in the only two cases in which the Fourth Circuit has affirmed back pay relief for an employee who resigned without a claim for constructive discharge, the court did so because that employee's resignation enabled her to earn *more money* than she would have had she continued to work for the defendant. Yet in this case, Dawsey claims a right to resign in order to earn *less money* than she would have had she continued to work for BMW MC and sue for those losses. Contrary to Dawsey's position and the expert testimony she seeks to elicit, there do not appear to be any cases interpreting or relying on *Dennis* or *Spagnuolo* in order to award relief to a plaintiff that voluntarily resigned from a position to take a lower-paying job—because such conduct would exacerbate rather that mitigate damages.

Gibson's putative attempt to calculate back and front pay relief turns the principles of mitigation on their head. In this case, it is undisputed that Dawsey voluntarily left BMW MC's employ in order to pursue a <u>lower paying</u> job. (SJ Order at 5-6.) It is undisputed that Dawsey's compensation at BMW MC <u>had not been reduced</u> as a result of the supposed demotion that she claims was to come at some indefinite time in the future. (Dawsey Dep. Ex. 16.)[3] Accordingly, the only "injury" that Dawsey suffered flowed from her free and voluntary decision to leave BMW MC and commence a job that paid her less. (Gibson Dep. at 44:4-9; 44:23-45:24; 47:6-17; 48:17-49:16.) This resignation did the opposite of mitigating her damages; it created the only economic damages she claims to have suffered. (*Id.* at 44:4-9.) Yet the law is clear that "the employer's back pay liability is not to be increased as a result of losses willingly incurred by the claimant." *Brady*, 753 F.2d at 1278.

---

[3] The cited pages from Plaintiff's Deposition are attached hereto in Exhibit B.

Here, the Gibson Reports will not assist the finder of fact in this case. Indeed, the Fourth Circuit has held that a damages expert that bases his calculations on a model that is inconsistent with the types of damages recoverable under prevailing law should be excluded. *Moore v. Equitrans, Ltd. P'ship*, 27 F.4th 211, 223 (4th Cir. 2022) (affirming exclusion of damages expert as "contrary to controlling law" where expert proposed to offer an opinion on real estate damages where that opinion included elements not recoverable under governing state law). In ordering this case to trial, this Court decided that a jury might conclude that "the adverse employment action occurred when BMW MC announced Plaintiff would be demoted." (SJ Order at 13.) This Court further determined that "there is sufficient evidence to show that the TX-64 [to which Plaintiff alleges she would be demoted] was an established position with an assigned FL and compensation range." (SJ Order at 14.)

Yet rather than use the "assigned FL and compensation range" of the new position to which she would be demoted to determine her damages, Plaintiff retained an expert to opine that she lost more than half a million dollars solely as a result of her decision to resign voluntarily before BMW MC demoted her. This opinion fails the test of admissibility because it is not helpful to the fact-finder. It answers a question—what did Dawsey lose by resigning?—that is not at issue in this case because Dawsey has disclaimed constructive discharge. Rather, at issue in this case is the extent to which BMW MC's proposed demotion of Dawsey to "an established position with an assigned FL and compensation range" caused her economic loss.

Gibson provides no opinion on how the alleged discrimination impacted her with the salary grade classification and her personal grade. Gibson's report is not helpful as it puts forward an opinion for a question that is not at issue under the damage theory in this matter. Gibson should be excluded.

8

### B. Gibson's Simple—Yet Often Erroneous—Mathematical Calculations Will Not Assist the Trier of Fact.

As an additional basis for showing that Gibson will not assist the trier of fact, Gibson's calculations were based on simple mathematics. Gibson is merely serving as a clearinghouse for Plaintiff's damages. Courts have recognized that simple math is not something that would assist a trier of fact. *See, e.g., Paired Pay, Inc. v. Clear Object, Inc., 2024* U.S. Dist. LEXIS 46359, 2024 WL 1097471 (D.S.C. Feb. 1, 2024)(excluding expert opinions that "consist of little more than adding invoices together to arrive at a damages figure."); *TruAuto MC, LLC v. Textron Specialized Vehicles, Inc.*, 2021 U.S. Dist. LEXIS 174355, 2021 WL 4167454 (D.S.C. Sept. 14, 2021)(exclusion of expert who contributed simple calculations as the opinions were "unhelpful" because it "did not require specialized knowledge."); *De Jager Construction,* 938 F. Supp. at 449 ("[i]t is of limited assistance to a jury for a CPA to do simple mathematical calculations which a reasonable juror or lawyer could perform").

Gibson admits that the mathematical tasks he performed were all junior high-level math.

```
             Q.   And all these calculations, they're --
       that's math, right?
             A.   Correct.
             Q.   And when we're talking about math,
       we're talking multiplication, division, addition,
       and subtraction, right?
             A.   Yes, sir.
             Q.   Is it all kind of junior high math that
       we're doing here?
             MR. MURPHY:   Object to the form.
             A.   It's not -- there's no complex formula.
             Q.   I -- I'm --
             A.   There's no -- there's no complex
       formula.
             Q.   There's no complex formula, meaning you
       take --
             A.   You multiply, divide, average.
             Q.   And would you agree with me that
       multiplication, division, addition, subtraction,
       those are all junior high level, from an
       educational standpoint?
             A.   Yes.
             Q.   All right.
```

(Gibson Dep 84:2-24.)

Plaintiff is trying to glamorize simple—and questionable—damage calculations through an expert. Expert testimony "is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Ward v. Autozoners, LLC*, 2018 U.S. Dist. LEXIS 233280, at *2-3 (E.D.N.C. Apr. 16, 2018) (quoting *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). "Expert testimony is not helpful to the jury if it concerns 'a matter which obviously is within the common knowledge of jurors.'" *Patterson v. City of Charlotte*, 2022 U.S. Dist. LEXIS

211141, at *3 (W.D.N.C. Nov. 22, 2022) (quoting *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986). The substance at issue and the report and testimony of Gibson do not assist the trier of fact, and math calculations are within the common knowledge of jurors.  Plaintiff, to the extent permitted by the Court, can testify as to what her alleged damages are, subject to cross-examination by counsel for Defendants.  Gibson's attempt to establish those matters for Plaintiff should be excluded as they do not fit the case.[4]

Gibson's report and testimony indicate that his opinions are basically voicing Plaintiff's or Plaintiff counsel's requests. These and other factors reveal the flaws in the proffered testimony and report as nothing more than information Plaintiff hopes for in the case or aspires to serve as an anchor point for a runaway jury.  Accordingly, his testimony is unreliable, is not based on sufficient facts or data, will not assist the trier of fact other than be a voice for Plaintiff, and should be excluded. *See* Fed. R. Evid. 702, 703.

### C. Gibson's Opinion Testimony Is Not Based on Sufficient Facts or Data and The Methodology Is Not Reliable.

Gibson's testimony and proffered reports are not reliable, because the sole source of his information is from Plaintiff's attorney or from Plaintiff herself and it was wrong, overstated or understated in her favor. (Gibson Dep. 71:9-12; 73:17-20; 86:18-20; 91:23-92:8; 97:3-8; 98:25-100:3; 108:23-109:17; 118:9-11; 124:18-125:4; 132:15-133:3).  Gibson admits that his report contains multiple errors, mistakes, and oversights.  (Gibson Dep 33:10, 33:13; 50:20; 56:10, 17, 19-20; 57:3,14; 58:7,11; 59:15-17; 70:15; 97:7; 121:24)  He has not relied on sufficient facts and data other than what was provided to him through Plaintiff or her counsel.[5] The result is that

---

[4] Fed. R. Evid. 703 is an additional ground for exclusion in this case, as the probative value in helping the jury evaluate the opinions does not substantially outweigh their prejudicial effect.

[5] For example, Gibson admits that he did not include Plaintiff's retirement benefits at GSP Airport in his calculations because Plaintiff did not disclose those to him.  Even though Plaintiff is the

11

Plaintiff attempts to use an "Expert" to parrot her and her counsel's damage theories or otherwise give credence to claims that Plaintiff herself cannot support or provide credible testimony. *See generally Schiller & Schmidt Inc. v. Nordisco Corp.,* 969 F.2d 410, 415 (7th Cir. 1992) (stating that "the enduing of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damages theories [makes] a joke of the concept of expert knowledge"); *JMJ Enters. v. Via Veneto Italian Ice Inc.,* No. 97-ev-0652, 1998 U.S. Dist. LEXIS 5098, at *26 (E.D. Pa. Apr. 14, 1998) (excluding testimony of expert on the grounds, among other things, that plaintiffs were "simply presenting their unrealistic hopes through the mouth of an expert").

When a licensed accountant such as Gibson is proffered to testify as an expert "Economist," he should be held to guidelines and professional standards that are rooted in expertise. *See De Jager Constr. Inc. v. Schleininger,* 938 F. Supp. 446, 455 (W.D. Mich. 1996) (recognizing that AICPA professional standards for accountants rendering litigation services require technical competence, review of sufficient evidence in formulating opinion, and exercise of due diligence). In this case, there is no indication that Gibson reviewed sufficient evidence in formulating his opinions (or at least that the first two reports had sufficiently faulty opinions to overstate alleged damages by almost $300,000.00). Instead, it appears that he accepted Plaintiff's assertions as to her damages, did not exercise due diligence, and, as a result, used flawed methodology, thereby rendering his opinions fundamentally unsound.

In making his determinations, Gibson made a number of assumptions that indicate a flawed methodology. Gibson assumed a violation without reviewing the facts or asking additional

---

Chief Human Resource Officer at the Airport, Gibson never questioned her about such benefits even though he was including retirement benefits in calculating what she would have earned at BMW MC. (Gibson Dep. at 132:2-133:13).

questions of the Plaintiff and further assumed that damages should be calculated from Dawsey's decision to resign rather than on the allegedly discriminatory employment action to be taken by BMW MC. Yet the standard for the admissibility for causation of economic losses places upon a plaintiff the burden to prove "how and why the expert could have extrapolated [his] opinions." *General Electric*, 522 U.S. at 144; *see also Claar v. Burlington N. R.R.*, 29 F.3d 499 (9th Cir. 1994) (testimony excluded where expert failed to consider other obvious causes for the plaintiff's condition). In reviewing the proffered expert testimony, the Court "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 119 S. Ct. at 1176.

Gibson has failed to exhibit the intellectual rigor required of an economic expert and thus he should be excluded from testifying at trial.

## IV.    CONCLUSION

For the reasons set forth above, Defendants submit that this Court should grant its motion to exclude the report and testimony of John E. Gibson Jr. This Court serves as a gatekeeper on matters of expert testimony, and Plaintiff's purported expert testimony should be excluded as it will not assist the factfinder in determining the equitable relief that would be awardable to plaintiff upon a finding of liability. Defendant further submits that the Court's determination of this evidentiary matter prior to trial will assist the parties in trial preparations, will expedite trial proceedings, and will minimize loss of time for the Court, the witnesses, and the parties.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted this the 29th day of December, 2025.

By: *s/ Ellison F. McCoy*
Ellison F. McCoy (Fed. I.D. No. 6389)
ellison.mccoy@jacksonlewis.com
D. Randle Moody II (Fed. I.D. No. 7169)
randy.moody@jacksonlewis.com
Mallory H. Gantt (Fed. I.D. No. 13867)
mallory.gantt@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
(864) 232-7000
*ATTORNEYS FOR DEFENDANT*
*BMW MANUFACTURING CO., LLC*

By: *s/Kurt M. Rozelsky*
Kurt M. Rozelsky (Fed I.D. No. 6299)
krozelsky@spencerfane.com
SPENCER FANE LLP
27 Cleveland St., Suite 201
Greenville, SC 29601
(864) 695-5200
*ATTORNEYS FOR DEFENDANT BAYERISCHE*
*MOTOREN WERKE AKTIENGESELLSCHAFT*

14