# EXHIBIT A

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 1

1            UNITED STATES DISTRICT COURT

2             DISTRICT OF SOUTH CAROLINA

3               SPARTANBURG DIVISION

4

5    KELLY DAWSEY,

6            Plaintiff,

7        vs.           C/A NO. 7:22-cv-03738-TMC

8    BAYERISCHE MOTOREN WORKE

9    AKTIENGESELLSCHAFT AND BMW

10   MANUFACTURING CO., LLC,

11   COLLECTIVELY D/B/A "BMW

12   GROUP,"

13           Defendants.

14

15   DEPOSITION OF:  JOHN E. GIBSON, JR.

16   DATE:           December 4, 2025

17   TIME:           1:05 p.m.

18   LOCATION:       Law Offices of Jackson Lewis

19                   15 South Main Street

20                   Suite 700

21                   Greenville, SC

22   TAKEN BY:       Counsel for the Defendants

23   REPORTED BY:    ERIC GLAZIER, Court Reporter

24

25

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 17

1           And when you say we didn't touch the
2    file, who is we?
3           A.    So I retired from Elliot Davis in June
4    of '25, and I've used some Elliot Davis people to
5    help me in October with some of the additional
6    information we received.
7           Q.    Okay.
8                 Who -- who are those people?
9           A.    Rocky McClure Williams -- or Rocky
10   Williams-McClure.
11          Q.    Where is Rocky?
12          A.    He is with Elliot Davis.
13          Q.    Okay.
14                He st- -- has stayed with Elliot Davis?
15          A.    He has the same position that Peter had
16   when Peter --
17          Q.    Okay.
18          A.    Peter is no longer with Elliot Davis.
19          Q.    Well -- and so we includes Rocky
20   Williams-McClure and who else?
21          A.    Matt Carroll provided some Excel math
22   checks.
23          Q.    What does that mean?
24          A.    Just checking the formulas in Excel
25   that I used.

John E. Gibson , Jr.                          December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 19

1        Q.    Was your portion of Elliot Davis
2    impacted by the acquisition?
3        A.    Yes, sir.
4        Q.    All right.
5              When I asked you we, you said you've
6    been using Rocky Williams-McClure, Matt Carroll,
7    and that's it?
8        A.    Yes, sir.
9        Q.    And we would also include you?
10       A.    Correct.
11       Q.    Do you have any additional
12   administrative or other help with your current
13   enterprise?
14       A.    No, sir.
15       Q.    And your current business is called
16   what?
17       A.    Gibson Advisory, LLC.
18       Q.    All right.
19             So for purposes of what you know I have
20   from communications, you have additional
21   communications that you brought with you today?
22       A.    Yes, sir.
23       Q.    All right.
24             And are -- are those printed out so
25   that I can --

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 20

```
1          A.   Yes, sir.

2          Q.   -- see them in -- in a break?

3          A.   Correct.

4          Q.   Thank you very much, sir.

5               So you have the communications.  You

6     have an Excel document on your computer.  Any other

7     documents you brought with you today that we've not

8     discussed?

9          A.   There are -- I guess there's a couple

10    that are related to the report.  Some -- I think

11    they were cited in the report.  Like the cost of

12    living for social security, the South Carolina

13    Retirement benefit pages from the internet that I

14    referenced.

15         Q.   Okay.

16              And -- and -- and the reason I ask

17    about Elliot Davis and the fact that you're not

18    there, for purposes of compiling the documents that

19    you have seen --

20         A.   Yes, sir.

21         Q.   -- you know, I was under the impression

22    that you had 2,872 of them.  But that's not what

23    happened?

24         A.   No, sir.

25         Q.   Historically, do you have access to be
```

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

                                                    Page 33

1    been in this report.

2         Q.    Okay.

3         A.    I didn't --

4         Q.    I think I made --

5         A.    -- delete those by --

6         Q.    All right.  Well, let --

7         A.    I didn't intend to delete and

8    substitute that in.

9         Q.    Okay.  So you're saying that was just a

10   mistake?

11        A.    Yes, sir.

12        Q.    All right.  And are you the one that

13   made that mistake or did somebody else?

14        A.    Yes, sir.

15        Q.    Okay.  Nobody else was doing the

16   changing for you?

17        A.    No, sir.

18        Q.    Thank you.

19              In your expert testimony that you've

20   listed, there's six items, Sandifer versus

21   Sandifer.  Was that a divorce, sir?

22        A.    Yes, sir.

23        Q.    William Allen versus the Commissioner

24   of the IRS.  Is that a tax court proceeding?

25        A.    Yes, sir.

John E. Gibson , Jr.                     December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 44

1    on your CV?

2            A.    No, sir.

3            Q.    All right.

4            Mr. Gibson, what were you asked to do

5    in this case?

6            A.    I was asked to provide calculation of

7    wages as if Mrs. Dawsey was still employed with BMW

8    against what her wages were after she left

9    employment.

10           Q.    All right.

11           So if -- if Ms. Dawsey would have

12   stayed at BMW, what would her damages be?

13           MR. MURPHY:    Object to the form.

14           A.    I was not asked to -- I was just asked

15   to provide an opinion as to what her wages would

16   have been versus what they are today.  I wasn't

17   asked to opine on the legality of whether she would

18   have stayed at BMW or not.  She wasn't there, so...

19           Q.    Well, I'm asking you.

20           MR. MURPHY:    Object to the form.

21           A.    Can you repeat the question?

22           Q.    Absolutely.

23           If she would have stayed at BMW, what

24   would her damages be?

25           MR. MURPHY:    Object to the form.  Calls

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 45

 1   for speculation.
 2          A.   If she had stayed at BMW --
 3          Q.   Yes, sir.
 4          A.   -- I assume she would have had the same
 5   wages that I would have calculated.
 6          Q.   Okay.
 7               So what would her damages be?
 8               MR. MURPHY:  Object to the form.
 9          A.   There would be none because she would
10   still be employed there.
11          Q.   So the answer to the question is zero,
12   right?
13               MR. MURPHY:  Object to the form.
14          A.   If she was still there.
15          Q.   So the answer to the question is zero?
16               MR. MURPHY:  Object to the form.
17          Q.   Correct?
18          A.   But she's not there.
19          Q.   I'm not asking that.  I'm asking, if
20   she stayed at BMW, her damages would be zero,
21   right?
22               MR. MURPHY:  Object to the form.  Calls
23   for speculation.
24          A.   Correct.
25          Q.   Thank you, sir.

John E. Gibson , Jr.                          December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 47

1          Q.    Thank you for that.

2                Let's go to Page 3, sir.  You say Kelly

3    Dawsey began employment with BMW Group in 1995.

4                Do you see that --

5          A.    Yes, sir.

6          Q.    -- right at the top?  And resigned from

7    BMW Group in January of 2022.  And her last day of

8    employment was January 17, 2022.  And then you say,

9    paren, quote, date of incident, close paren, are,

10   quote, DOI, close quote, and, quote, incident,

11   close quote, close paren.

12               What is the incident?

13         A.    The way I understand the case is,

14   Ms. Dawsey is alleging discrimination, employment

15   discrimination in the case.  And if it is proved in

16   court that there was discrimination, then this

17   would be the damages related to that.

18         Q.    Okay.

19               And where did you obtain that

20   understanding?

21         A.    From the complaint.

22         Q.    Okay.

23               What -- what specific part of the

24   complaint?

25         A.    Well, it had alleged discrimination in

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 48

```
 1   an -- in the de- -- in the complaint somewhere.  I
 2   don't regard exact sections.
 3           Q.   Okay.  All right.
 4                So you did review the complaint?
 5           A.   Yes, sir.
 6           Q.   Did you review several versions of the
 7   complaint?
 8           A.   I don't remember which version I had.
 9           Q.   Yeah, and I -- I don't know which
10   version you had either.  Because you're going to
11   send me all that, right?
12           A.   Yes, sir.
13           Q.   All right.
14                And does the complaint use the term,
15   incident?
16           A.   No, sir.
17           Q.   Who chose the word, incident?
18           A.   I chose it as I couldn't think of
19   another word to use for it.
20           Q.   Okay.
21                And so just so I completely understand,
22   and for purposes of the record, your choosing of
23   the word, incident, relates to alleged
24   discrimination?
25           A.   Yes, sir.
```

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 49

1          Q.    And why did you choose the date of
2     January 17th, 2022?
3          A.    Because that was her last day of
4     employment with BMW.
5          Q.    Okay.
6                And so when you use the date of
7     January 17th, 2022, that's the last date of her
8     employment.  And you say she resigned, correct?
9          A.    That's what I remember reading in...
10         Q.    Thank you.
11               And the significance of January 17th,
12    2022, was the fact that she had resigned.  And that
13    was her last day that she worked, correct?
14               MR. MURPHY:  Object.  Asked and
15    answered.
16         A.    Yes.
17         Q.    Thank you.
18               Are you -- do you recall that you used
19    a different date in prior reports?
20         A.    I don't recall if I did on the initial
21    report or not.
22         Q.    All right.
23               Well, you -- prior to this change to
24    January 17th, you used the date of January 14th.
25    And if you need to see it, I'll -- I'll pull it

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 50

1    out, but...

2              If you look at Exhibit 3.  That's your

3    January report.

4         A.    Yes, sir.

5         Q.    Page 3.  You see that?

6         A.    Yes, sir.

7         Q.    Do you know why you used the date of

8    January 14th before, sir?

9         A.    I don't recall.  That was over two

10   years ago.

11        Q.    All right.

12             So as you sit here today, you don't

13   know why you changed the date from January 14th to

14   January 17th?

15        A.    I imagine it was related to something I

16   saw in the time frame between that report and

17   today -- or December 1st.

18        Q.    All right.

19             Would you agree with me that your first

20   report contained an error regarding the date of the

21   incident?

22        A.    Yes, sir.

23        Q.    Thank you.

24             On Page 4 -- well, let me make sure I'm

25   not giving you the wrong page.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 52

1    Exhibit 5 is what?

2         A.    579,471.

3         Q.    All right.

4               So on each occasion, you've gone down,

5    right?

6         A.    Yes, sir.

7         Q.    So why did the number go from 800 and

8    something to 662 between January '23 and October of

9    this year?

10        A.    I had some additional information that

11   came to -- like on some actual numbers for the

12   airport compensation, some retirement benefits from

13   the airport I did not consider in the first report.

14   There may have been a couple other differences as

15   well.

16        Q.    All right.

17              So information from the airport would

18   have been under Ms. Dawsey's control, correct?

19              MR. MURPHY:   Object to the form.

20        A.    Correct.

21        Q.    I mean, she's -- she's the vice

22   president --

23        A.    Well, I had -- I had actual numbers for

24   '23 and '24.

25        Q.    Okay.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 54

```
 1   less than a month -- you went from 662 to 7 --
 2   662,702 to what number?
 3            A.   579,471.
 4            Q.   Okay.
 5                 Not quite $100,000, but it's close to
 6   six figures.
 7                 What changed so much in one month that
 8   almost $100,000 was reduced?
 9            MR. MURPHY:  Object to the form.
10            A.   Again, the re- -- I did not include any
11   retirement benefit at the airport in my October
12   report.  I did in the December report.
13            Q.   Okay.
14                 And -- and I say this with all due
15   respect.  Why did you not include retirement moneys
16   from the airport in your October report?
17            A.   I don't think I had the information
18   when I did the October report that said she was in
19   a 401(k) plan at the airport.
20            Q.   Okay.
21                 Is that because you're relying on
22   Ms. Dawsey for information, sir?
23            MR. MURPHY:  Object to the form.
24            A.   It was based on the information I had.
25            Q.   Okay.
```

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 56

1        Q.   I just want to make sure that's it.
2             Is there anybody else?
3        A.   No, sir.
4        Q.   Thank you.
5             On Page 4, sir, you have your table.
6    That's part of the summary.  And I'm trying to be
7    fair.  Would you agree with me that your failure to
8    include the airport-related compensation and
9    retirement computations and calculations, that
10   would have been an error?  Would you agree with me?
11            MR. MURPHY:  Object to the form.
12       A.   Would have been an oversight.
13       Q.   Okay.
14            (Court Reporter clarification)
15   BY MR. MOODY:
16       Q.   You wouldn't agree with me that that
17   was an error in your report?
18            MR. MURPHY:  Object to the form.
19       A.   It was an oversight.  If you want to
20   call error oversight.
21       Q.   Same thing?
22       A.   I didn't intentionally leave it out.
23       Q.   Oh, I'm not saying you intentionally
24   left it out.  I mean, you are a professional, as --
25   as most of us are here.  And if you don't include

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 57

1   critical information that results in the reduction

2   of your damage calculation, almost $300,000,

3   wouldn't you agree with me that that is an error?

4              MR. MURPHY:  Object to the form.

5       A.   You're talking about the October to

6   November -- I mean the October to December, or

7   you're talking about the January two years ago,

8   over two years ago, to December?  Which difference

9   are you talking about?

10      Q.   It -- it -- it -- it doesn't matter.

11  If you don't agree with me, you don't have to agree

12  with me.  I was just asking.

13      A.   Okay.

14      Q.   But you would say that's an oversight?

15      A.   Yes, sir.

16             MR. MURPHY:  Object to the form.

17      Q.   Thank you.

18             On Page 4, when you look at the summary

19  chart, are the ending dates that you included for

20  back pay and front pay accurate?

21      A.   It should say 12/31/25 for back pay

22  ending date.

23      Q.   All right.

24             So that's not accurate on this present

25  report, correct?

John E. Gibson , Jr.         December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 58

 1        A.    Correct.

 2        Q.    Are the beginning dates for back pay

 3   and front pay accurate?

 4        A.    Front pay should be 1/1/26.

 5        Q.    All right.

 6              So would you agree with me that those

 7   are errors?

 8        A.    Yes, sir.

 9        Q.    All right.

10              If you look at the footnotes, sir, do

11   the footnotes have the same date errors?

12        A.    Yes, sir.

13              MR. MURPHY:  Which footnote are you on?

14   I'm a little lost now.

15              MR. MOODY:  Page 4.

16              MR. MURPHY:  I don't see footnotes on

17   my 4.  Are we on the -- are we on 5?

18              MR. MOODY:  Yeah.

19              MR. ROZELSKY:  Footnotes, just below

20   the chart.

21              MR. MURPHY:  Oh, they're up there.

22              MR. MOODY:  Mm-hmm (affirmatively).

23              MR. MURPHY:  They're on -- okay.

24              MR. ROZELSKY:  Where it says,

25   footnotes.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 59

1              MR. MURPHY:  I see it now.  They aren't

2     in the footnotes.

3              MR. ROZELSKY:  Well, there is a

4     footnote too.

5              MR. MURPHY:  -- the actual footnote.  I

6     am a very literal person.

7     BY MR. MOODY:

8        Q.   Where it literally says, footnotes,

9     doesn't it, sir?

10       A.   Yes.

11       Q.   Thank you.  And you -- and you typed

12    that and said, footnotes, right?

13       A.   Yes, sir.

14       Q.   Thank you.

15              And so we have errors in the ending

16    date for back pay, an error in the beginning date

17    for front pay.  And the -- and the errors are

18    repeated in the footnotes, correct, sir?

19       A.   Correct.

20       Q.   Thank you.

21              On Page 5 -- and believe it or not, I'm

22    moving really fast compared to what I was going to

23    ask, so just bear with me.

24              On Page 5, you state that Ms. Dawsey's

25    future compensation consists of her base salary,

John E. Gibson , Jr.                              December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 67

```
 1   licensed CPA, and I know -- and I'm not.  And I
 2   know enough about Excel to know I need to let other
 3   people do Excel.
 4           When you say it's in that Excel file,
 5   do you have multiple tabs at the bottom of your
 6   Excel file?
 7       A.   Yes.
 8       Q.   Do --
 9       A.   I have a tab -- I have a tab that says,
10   work papers, and behind it are several tabs.
11       Q.   Great.
12           And is that something that you can just
13   kind of Dropbox to us?
14       A.   Yes, sir.
15       Q.   Thank you.
16           I'll -- I'll ask you to do that so that
17   we'll have that.  That may -- that may help a lot
18   of these questions I have.
19           So you will provide that to us?
20       A.   Yes, sir.
21       Q.   Thank you.
22           (This page contains information to be
23   supplied by counsel and/or the deponent.)
24   BY MR. MOODY:
25       Q.   On Page 5, it says you computed the
```

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 70

1            A.    I don't recall.

2            Q.    Well, there's a -- there's a footnote,

3    and this one is at the bottom of the page.  If you

4    look at footnote seven?

5            A.    Uh-huh.

6            Q.    Do you see what that says, sir?

7            A.    Yeah, per -- per discussion with

8    Mrs. Dawsey.

9            Q.    Did you have those discussions with

10   Mrs. Dawsey?

11           A.    Yes.

12           Q.    And do -- do you re- -- specifically

13   recall her saying six percent?

14           A.    I don't recall.  If -- if I had it,

15   I -- I don't know if it was a mistake or I didn't

16   write it down right or what.

17           Q.    Okay.

18                 Well, you're obviously at an advantage

19   to me here because I wasn't there.  But when you

20   say four percent of base salary, prior to that in

21   each of your reports you said six percent, and you

22   have the same footnote that said, per discussions

23   with Ms. Dawsey.  And you don't recall any specific

24   discussion about that with Ms. Dawsey?

25           A.    Well, I know we had a conversation

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 71

1    after I got the retirement statements --

2          Q.    Yes, sir.

3          A.    -- that showed the contributions.    I

4    don't think I had that statement before we had that

5    first con- -- con- --

6          Q.    Okay.

7          A.    -- the first call.

8          Q.    All right.

9                Would you agree with me that the source

10   of your information was Ms. Dawsey, as indicated by

11   this footnote?

12         A.    Yes, sir.

13         Q.    And would you agree with me that the

14   prior two reports had the same footnote, even

15   though it had the six percent number?

16         A.    Yes, sir.

17         Q.    Okay.

18               Can you see how I'm a little confused?

19               MR. MURPHY:    Object to the form.

20   Beyond his expertise.

21         A.    I -- I don't know how to answer that.

22         Q.    Okay.    All right.

23               Let -- let me ask it this way:    Did

24   Ms. Dawsey change her representations to you, sir?

25         A.    I don't recall the conversations we had

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 73

1          Q.    Okay.

2          A.    Or if there's discretion by BMW as to

3    what percentage they can do per year.

4          Q.    All right.

5                Did you ask to see the document?

6          A.    No.

7          Q.    All right.

8                Did you ask Ms. Dawsey?

9          A.    Ask her what?

10         Q.    About this up to point.

11         A.    I think so.

12         Q.    All right.

13               And do you recall what she told you?

14         A.    I'm assuming it's based on what I have

15   written in here.

16         Q.    All right.

17               Because if you didn't have a document,

18   the only source of your information would be

19   Ms. Dawsey, right?

20         A.    Yes, sir.

21         Q.    All right.

22               So do you know what Ms. Dawsey did at

23   BMW?

24         A.    She was in the HR department.

25         Q.    Do you know specifically what she did

John E. Gibson , Jr.                                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 84

1          A.    Yes, sir.

2          Q.    And all these calculations, they're --

3     that's math, right?

4          A.    Correct.

5          Q.    And when we're talking about math,

6     we're talking multiplication, division, addition,

7     and subtraction, right?

8          A.    Yes, sir.

9          Q.    Is it all kind of junior high math that

10    we're doing here?

11               MR. MURPHY:   Object to the form.

12         A.    It's not -- there's no complex formula.

13         Q.    I -- I'm --

14         A.    There's no -- there's no complex

15    formula.

16         Q.    There's no complex formula, meaning you

17    take --

18         A.    You multiply, divide, average.

19         Q.    And would you agree with me that

20    multiplication, division, addition, subtraction,

21    those are all junior high level, from an

22    educational standpoint?

23         A.    Yes.

24         Q.    All right.

25               We're -- we're not doing trigonometry

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 86

1          Q.    All right.  And that professional

2     opinion comes from what?

3          A.    Experience.

4          Q.    With other entities during COVID, or

5     where does that come from?

6          A.    With other entities in COVID, business

7     valuation.  You analyze a lot of financial

8     information, so we saw a lot of things happen in

9     COVID that would be impacted.  Some -- some good,

10    some bad.  I mean, it's just based on my experience

11    of having to deal with businesses and their

12    financial results during COVID.  I would -- that

13    would be my -- I don't know for sure, but that

14    would be my thought.

15         Q.    All right.

16               Did you ask Ms. Dawsey?

17         A.    No, sir.

18         Q.    You just ventured to guess instead of

19    talking to her about it?

20         A.    I didn't guess.  I just had an opinion

21    about what it is.  I didn't think it was relevant

22    to -- the analysis was lower, it was more

23    conservative.

24         Q.    Okay.

25               (Court Reporter clarification)

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 91

1          Q.    Okay.
2                Was it within the past couple weeks?
3          A.    I think so.
4          Q.    Before Thanksgiving or after?
5          A.    Could have even been 1st of December.
6     I don't...
7          Q.    Could have been the day that you did
8     the report?
9          A.    It could have been either right before
10    Thanksgiving or the -- the day I finalized her
11    report.
12         Q.    Okay.
13               So it's within the last week?
14         A.    I don't recall the exact date of the
15    conversation.
16         Q.    That's fine.  But within the last --
17         A.    It's in between November 23rd and
18    December 1st.
19         Q.    Thank you for that.
20               So very recent?
21         A.    Yes.
22         Q.    Thank you.
23               Sir, when we're talking all about these
24    numbers and the changes and the adjustments that
25    you made, the -- these are all numbers that you're

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 92

1   calculating alleged damages from January 17th of
2   '22, right?
3         A.   Yes.
4         Q.   There's no calculation of damages
5   before January 17th, right?
6         A.   Correct.
7         Q.   And that's because there are no damages
8   before January 17th, right?
9         A.   Correct.
10        Q.   Thank you.
11             If we look at Page 7, you also state, I
12  applied a ten percent bonus amount for the years
13  2025 through 2027.  And I will say, from my compare
14  version, Page 7 is a lot of new -- new language,
15  isn't it, Mr. Gibson?
16             MR. MURPHY:  Object to the form.
17  BY MR. MOODY:
18        Q.   From your prior reports, there's a lot
19  of additional language, right?
20        A.   I believe so, yes.
21        Q.   Okay.
22             And I -- I just -- I'm trusting
23  technology, but what I'm looking at, Page 7 is
24  almost predominantly new.  And you say, I applied a
25  ten percent bonus amount for the years 2025 through

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 97

1    benefit by six percent for the years 2026

2    through 2028.

3              In your prior reports, you excluded all

4    life insurance provided by GSP, right?

5         A.    Correct.

6         Q.    Why?

7         A.    It was an oversight, error.

8         Q.    Okay.

9              So why did you include it now?

10        A.    Because I -- I saw it in the -- when I

11   did an analysis of the compensation, once I got the

12   breakdown type of compensation versus just a total,

13   I saw it on there and just added it in.

14        Q.    Okay.

15             What's the basis for the six percent

16   growth?

17        A.    Again, I took the actual increase from

18   '23 to '24 and the actual increase from '24 to '25

19   and then averaged it and used six percent.  So

20   the -- the in- -- benefit increased some percent

21   one year and some percent next year.  The average

22   was six.

23        Q.    Okay.  All right.

24        A.    It'll be on that Excel work file.

25        Q.    Thank you for that.  And I -- I'm

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 98

1   trying to ask all my questions today.  If there's
2   something that comes on up from that Excel work
3   file that I don't know or don't understand, I will
4   work with Mr. Murphy to try to clarify that with
5   you, either through writing or, you know,
6   otherwise.
7              On Page 7, you state that Ms. Dawsey
8   will not have eight years of service upon her
9   retirement and will not receive an annuity upon her
10  retirement, and as such I have not included any
11  SCRS benefit in my analysis.
12             Mr. Gibson, did you consider whether
13  Ms. Dawsey can buy service years through the state?
14        A.   I did not consider that.
15        Q.   Do you know if someone can buy service
16  years?
17        A.   I believe they can, yes, sir.
18        Q.   And why do you believe they can?
19        A.   I believe I read it in the review of
20  the SCRS website I looked through.
21        Q.   Yes, sir.  Are you -- do you have any
22  prior personal professional experience with someone
23  who has purchased years through the South Carolina
24  Retirement System?
25        A.   No, sir.

John E. Gibson , Jr.                          December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 99

1          Q.    Okay.

2                Did you ask Ms. Dawsey if she could buy

3     service years?

4          A.    No, sir.

5          Q.    Do you think that may be important to

6     consider?

7          A.    I didn't think so at the time, no.

8                (Court Reporter clarification)

9     BY MR. MOODY:

10         Q.    Do you think now that it may be

11    important to consider whether she can purchase

12    service years?

13         A.    No.

14         Q.    Do you think it is relevant to this

15    case to ask her whether she can purchase service

16    years?

17                MR. MURPHY:   Object to the form.

18         A.    I didn't consider it.

19         Q.    Did you consider whether Ms. Dawsey can

20    continue working until she is eligible to receive

21    retirement benefits through the state?

22         A.    The assumption I made was under that

23    she would be retiring before that.

24         Q.    All right.

25                So you didn't consider whether she

John E. Gibson , Jr.                                December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

                                              Page 100

1    could become eligible for South Carolina retirement

2    benefits?

3            A.    No.

4            Q.    Thank you, sir.

5                  On Page 7, you state that you included

6    the employer match contributions for Ms. Dawsey's

7    401(k) at the airport GSP in your analysis.  Did

8    Ms. Dawsey contribute to her 401(k) at GSP in 2022?

9            A.    No.

10           Q.    Why not?

11           A.    I don't know.  I do not know.  I didn't

12   ask her.

13           Q.    Okay.

14                 If she had, would she have been

15   eligible for match by the GSP Airport?

16           A.    Yes.

17           Q.    Okay.

18                 Did she contribute to her 401(k) in

19   2023?

20           A.    No.

21           Q.    Did you ask her why she didn't?

22           A.    No.

23           Q.    All right.

24                 And if she had, would she have been

25   eligible for match?

John E. Gibson , Jr.                         December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 108

1          Q.    And the same thing for 2030 and the
2     10,754?
3          A.    Yes, sir.
4          Q.    All right.
5               What does note five say?
6          A.    Back pay refers to the period beginning
7     the day following Mrs. Dawsey's resignation through
8     December 31, 2024.  It is not discounted.
9          Q.    Is that date wrong?
10         A.    Yes.  It should be 2025.
11         Q.    All right.
12              Note six, is that date wrong in note
13    six for front pay?
14         A.    Should be January 1st, 2026.
15         Q.    Thank you, sir.
16              Let's go to C3.  Same source for your
17    analysis, everything we've discussed in the first
18    seven pages?
19         A.    Yes, sir.
20         Q.    Including your Excel worksheets that
21    you're going to provide to us?
22         A.    Yes, sir.
23         Q.    Are the 2022 through 2025 GSP pay
24    statements that were recently produced one of your
25    sources?

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 109

1          A.    Yes, sir.

2          Q.    When did you obtain those, sir?

3          A.    I believe it was around the date of

4    that report, the December 1st date.

5          Q.    Okay.

6                So re- -- very recent?

7          A.    Yes, sir.

8          Q.    Okay.

9                Within a week or two weeks from --

10         A.    Yes, sir.

11         Q.    -- we're sitting here today.

12               Why didn't you use them before?

13         A.    I didn't have them.

14         Q.    And why are you using them now?

15         A.    Because they were provided.

16         Q.    Did you ask for them before?

17         A.    I don't recall what I asked for.

18         Q.    Okay.

19               Give me one minute.  I've got a bad

20    folder there.  All right.  There we go.  Get that

21    one out of here.  When lawyers produce stuff,

22    sometimes we use the same number twice

23    unintentionally.

24               So I'm going to show you what I'm

25    marking as Exhibit 8.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 118

1    206,785.

2         Q.    Did you ask Ms. Dawsey what her bonus

3    amount would be for this year?

4         A.    I assumed it's been ten percent

5    incentive pay for every year forward based on the

6    last incentive pay plan that we discussed earlier.

7         Q.    Yes, sir.  Thank you for that,

8    Mr. Gibson.

9              My question was, did you ask Ms. Dawsey

10   what her 2025 bonus would be?

11        A.    No, sir.

12        Q.    Thank you.

13             For 2028, how did you calculate the

14   bonus?

15        A.    Ten percent of the total base salary

16   times the percentage of prorated days for that

17   year.

18        Q.    Okay.

19             So you just used the ten percent

20   number?

21        A.    Yes, sir.

22        Q.    Under the vehicle and group term life

23   insurance column, what is your basis for the group

24   term life insurance amount?

25        A.    It is the actual amounts in '23, '24,

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 121

1    earnings.  Base compensation for '25 through

2    Ms. Dawsey's retirement of July 5th, '28, are

3    increased based on annual increases observed during

4    her employment with GSP in '24 and '25.

5              Is that an accurate note?

6         A.   It should say base computation -- base

7    compensation for 2026 through Mrs. Dawsey's

8    retirement.

9         Q.   Okay.

10             So that's a -- that's -- you projected

11   her base compensation on 24 plus 6.1 percent,

12   right?

13        A.   Could you repeat the question, please?

14        Q.   Yes, sir.

15             So for '25 through July 5th of 2028,

16   you projected Ms. Dawsey's base compensation based

17   on 24 plus 6.1 percent.  Am I right?

18        A.   And I just stated that that should say

19   base compensation for 2026 through Mrs. Dawsey's

20   retirement.

21        Q.   Okay.  All right.

22             So that's a mis- -- mis-typo --

23        A.   Yes.

24        Q.   -- or an error?  All right.  So '26.

25             Those base compensation numbers you

John E. Gibson , Jr.                          December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

Page 124

1              VIDEOGRAPHER:  All right.  Not hearing
2    any objections, we are going off the record at
3    3:52 p.m.
4              (After a recess, proceedings were
5    continued as follows:)
6              VIDEOGRAPHER:  We are going back on the
7    record at 4:12 p.m.
8    BY MR. MOODY:
9         Q.   All right.
10             Mr. Gibson, I told you I think I'm in
11   the homestretch.  I can't -- don't know if
12   Mr. Murphy is going to ask anything and how long
13   he'll keep us here, but I think we will be quick.
14             You said prior and when we talked about
15   the incident -- date of the incident was
16   January 17th, 2022, right?
17        A.   Yes, sir.
18        Q.   What's your understanding of why
19   Ms. Dawsey resigned on January 17th, 2022?
20        A.   That she -- understanding that there
21   is -- her position was going to be filled by
22   somebody else, and there was possibility that she
23   could get another offer from BMW.  But I don't know
24   all the particulars, but that the offer didn't
25   come, and she went and looked for other work.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

                                                    Page 125

 1          Q.    Where did you get that understanding
 2     from, sir?
 3          A.    I think from the conversations with
 4     Mrs. Dawsey.
 5          Q.    Okay.
 6                Any other source of that understanding?
 7          A.    Can't remember if it was in the
 8     complaint or not.
 9          Q.    Okay.
10                Did you conduct any additional research
11     or investigation about that understanding from
12     Ms. Dawsey?
13          A.    It didn't seem to be relevant because
14     my opinion is only if the Court finds that there
15     was discrimination.
16          Q.    Well, and --
17          A.    This --
18          Q.    All right.
19          A.    This assumes that the Court would find
20     discrimination.  I'm not giving an opinion as to
21     whether it should be or not.  I'm not a
22     vocational --
23          Q.    All right.
24          A.    -- expert or anything else related to
25     her employment.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

                                                      Page 132

1          A.    No, sir.

2          Q.    Is Ms. Dawsey eligible for retiree

3    medical payments at GSP?

4          A.    I believe there's a ten-year service

5    requirement for that.

6          Q.    What's your -- what's establishing that

7    ten-year belief that you just testified to?

8          A.    I read it, I believe, either in the

9    footnotes to the GSP financial statements when it

10   talked about post employment benefits, or through

11   some other retirement documents I read online for

12   the --

13         Q.    Okay.

14         A.    -- South Carolina.

15         Q.    Well, we know that the people that

16   hired you, she's the chief human resources officer

17   for the airport.  Did you ask her if she's eligible

18   for retiree medical payments at GSP?

19         A.    I think I did.  I think --

20         Q.    And what was her answer?

21         A.    I believe -- I don't know if I

22   specifically asked that question or not.  I can't

23   remember if it was discussed on our last call when

24   we were talking about the benefits or not.  So...

25         Q.    All right.

John E. Gibson , Jr.                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

                                        Page 133

1              So is the answer to my question, I
2    don't know, or I don't recall?
3          A.   I don't know.  I don't recall.
4          Q.   Do you consider that important for
5    purposes of your opinions in this case, whether --
6    to know whether she's eligible for retiree medical
7    payments at GSP?
8          A.   It would be -- if she is entitled, it
9    would change the calculation.
10         Q.   And it would change the calculation to
11   be a calculation more favorable to BMW, and it
12   would reduce her alleged damages, wouldn't it?
13         A.   Correct.
14         Q.   What is your rate that you're charging
15   for your services in this case, sir?
16         A.   $450 an hour.
17         Q.   And -- and since that set fee of 7- --
18   7,500, do you have any estimate as to how many
19   hours that you've -- you've expended?
20         A.   Maybe -- I would estimate somewhere
21   between ten and 15.
22         Q.   All right.
23              Could Ms. Dawsey be promoted at GSP?
24              MR. MURPHY:  Object to the form.
25         A.   I'm not -- I don't know.  I don't have

John E. Gibson , Jr.                                    December 4, 2025
Dawsey, Kelly Vs. Bayerische Motoren Worke Aktiengesellschaft, Et Al.

                                                    Page 139

1                    CERTIFICATE OF REPORTER

2

3            I, Eric S. Glazier, Court Reporter and

4    Notary Public for the State of South Carolina at

5    Large, do hereby certify that the foregoing

6    transcript is a true, accurate, and complete

7    record.

8            I further certify that I am neither

9    related to nor counsel for any party to the cause

10   pending or interested in the events thereof.

11           Witness my hand, I have hereunto

12   affixed my official seal this 11th day of December,

13   2025, at Easley, Pickens County, South Carolina.

14

15

16

17

18

19

20

21           Eric S. Glazier, RPR, CLVS

22           My Commission expires

23           April 11, 2026

24

25