**In the United States District Court**
**District of South Carolina**
**Spartanburg Division**

| | |
|---|---|
| **Kelly Dawsey,** | 7:22-03738-TMC |
| **Plaintiff,** | |
| v. | **Plaintiff's Opposition to Defendants' Motion Regarding ExPat Guidelines for Plant Spartanburg [ECF 154]** |
| **Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC collectively d/b/a "BMW Group,"** | |
| **Defendants.** | |

## I.  Introduction

Citing Rule 401 on relevance, BMW seeks an Order to exclude one of the smoking guns in this case relied on by both Dawsey and the Court.  BMW does not challenge the authenticity of the document.  Rather, BMW now claims no one knew about it, even though BMW produced it.  But BMW does not even make that showing.  Nor would a jury be compelled to believe it if BMW tried.  Every decision-maker recited the policy and followed it.  The notion that the policy is somehow irrelevant boggles the mind.

## II.  Background

From the start, Dawsey has relied on both oral and written directives that positions be filled based on nationality.  [See ECF 1 at 5 ¶ 24 ("Plaintiff first learned of this initiative during the tenure of the fourth vice president of the plant, a German national named Johannes Trauth.  The practice was documented at the time.")].   The written policy is entitled "Expat Guidelines." [ECF 97-23].

1

A. **The Expat Guidelines**

In this Court's denial of summary judgment, it summarized the importance of the Expat Guidelines:

> Defendants' "Expat Guidelines for Plant Spartanburg" ("Expat Guidelines") . . . reduce[] to writing their preference for "an alternating reporting structure of international and domestic below the Senior Management level." (ECF No. 97-23 at 4). The Expat Guidelines also contains an organizational chart, color-coded by domestic or international status, explaining that the "T[X]-60 department has a need for an international inbound (Planner or Dept Mgr ideally from [BMW AG] - tie to network) and should follow the status of T[X]-6" and specifically stating that if TS-6 is filled by an international employee, the TS-60 will be filled by a domestic employee, and vice-versa. Id. at 6.

[ECF 119 at 4; see also ECF 97 at 3-5 (Dawsey Opposition to BMW MC Motion for Summary Judgment)]. The Expat Guidelines also were central to the Court's rejection of BMW AG's claim that it has nothing to do with this case:

> "Expat Guidelines" . . . made clear that the BMW Group used "an alternating reporting structure of international and domestic below the Senior Management level" and even noted that "an international inbound (Planner or Dept. Mgr ideally from AG . . . should follow the status of [TX-6]." (ECF No. 97-23 at 4, 6 (emphasis added)).

[ECF 119 at 17; see ECF 104 at 4, 25 (Dawsey Opposition to BMW AG Motion for Summary Judgment)].

B. **Dawsey objected to the Expat Guidelines and neither "drafted" nor "authored" them.**

BMW first misstates Dawsey's testimony regarding her role with respect to the Expat Guidelines. BMW states that Dawsey admitted she "drafted" the Guidelines, which implies she created the Expat Guidelines for review. [ECF 154 at 3 (citing ECF 154-1 at

3:14-16].[1]  It even represents that she "authored" them.  [*Id.* at 6].  BMW knows that this is not true.

Dawsey never said she drafted or authored the Expat Guidelines.  She "prepared" the document.  [ECF 154-1 at 3:16].[2]  Johannes Trauth, a BMW AG executive, created the guidelines during his tenure as vice president of human resources for BMW MC.  [ECF 104 at 4].

BMW now tries to blame Dawsey for the Expat Guidelines, but it ignores the contrary record evidence.  The Expat Guidelines document "does not reflect what [Dawsey] advised Trauth.  To the contrary, . . [Dawsey] told Trauth that BMW cannot segregate positions by nationality."  [ECF 45-1 at 5-6 ¶ 20].

**C.     Po-tay-to, po-tah-toh:  Guidelines and policies**

Dawsey testified that the Expat Guidelines are "formal guidelines for use of expat assignments."  [ECF 154-1 at 4:18].  But BMW suggests that guidelines somehow differ from a policy.  [ECF 154 at 3].  BMW offers nothing to substantiate any distinction.  Nor does the English language. *See* Merriam-Webster's Collegiate Dictionary 555 (11th ed. 2003) (defining "Guideline" as "an indication or outline of policy or conduct").

Nor does it matter.  BMW does not deny the policy or the practice.  So what is the point?

---

[1]     BMW cites to lines 29, but transcripts contain only 25 lines.  The balance of the page relates to dates of preparation.

[2]     The word "draft" was never used in conjunction with this document.

**D.      BMW was aware of the Expat Guidelines.**

As noted above, BMW produced the Expat Guidelines. The only version bears BMW MC's Bates-stamp. [*See* ECF 97-23].

### III.  Argument

**A.      BMW's claimed ignorance of its own policy highlights the frivolity and wastefulness of these Motions.**

BMW's attempt to disavow its own policy (or "guideline," if that makes a difference) is a ploy to throw everything against the wall in the hopes that something will stick.

BMW does not challenge the authenticity of the document. Instead, it argues that it somehow did not know about it. The only management witness who testified about the guidelines was Petrasch. She said: (1) she did not know if she had seen the document before; and (2) she didn't know who prepared it. [See ECF 154 at 4]. She did not deny knowing the policy itself. And *when* Trauth created the Expat Guidelines was prepared is irrelevant to whether it was BMW's policy (or guideline, if that matters). That said, BWM offers nothing from Engelhorn or McCraw to support its Motion.

BMW wrongly believes that its mere denials define the bounds of admissibility. That has never been the law. Any evidence, including circumstantial evidence, of notice creates a jury issue even in the face of steadfast and self-serving denials. *E.g., Stowe v. Cumberland Farms, Inc.*, No. 2:22-cv-00026-NT, 2023 U.S. Dist. LEXIS 165981, at *24 (D. Me. Sep. 19, 2023) (evidence that a decision-maker should have known about something is sufficient to create an issue of fact notwithstanding denials of knowledge).

> Credibility determinations, the weighing of the evidence, **and the drawing of legitimate inferences** from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (emphasis added).

The evidence that everyone knew of the policy is compelling. Every BMW witness followed, recited, and defended it:

- BMW followed the policy every time, even after Trauth returned to Germany. [ECF 97 at 4 (reciting the uninterrupted pattern of Germans and Americans alternating in TX-6 and TX-60)]

- Petrasch and BMW AG followed the policy of filling positions based on nationality consistent with the guidelines. [*Id.* at 4-5]

- When Petrasch advised Dawsey she would have to leave TX-60 to make way for a German, she recited the very terms of the Expat Guidelines. [ECF 97 at 6].

- During the November department meeting, Petrasch reiterated the terms of the Expat Guidelines. [*Id.*]

- Corey Epps, who was responsible for succession planning, recounted the policy, which he claimed to have "lived . . . for 23 years." [*Id.* at 6-7].

- By all accounts, including his own, Dr. Engelhorn followed the Expat Guidelines to a T in making the decision. [*Id.* at 7].

BMW should be allowed to argue to the jury that it did not know about the guidelines it produced while every key player recited and followed them precisely. But the authenticated codification of an undisputed rule to unlawfully discriminate cannot seriously be called irrelevant.

And even if BMW's witnesses all toe the line and deny knowledge, the jury "obliged to accept" such testimony. *United States ex rel. Cody v. Mantech Int'l Corp.*, 746 F. App'x 166, 181-82 (4th Cir. 2018); *e.g.*, *Morrisette v. MDV SpartanNash, LLC*, Civil Action No.

2:15cv199, 2016 U.S. Dist. LEXIS 100946, at *26 (E.D. Va. Aug. 1, 2016) (finding in the context of a retaliation claim that a jury is not obligated to believe employer's claim that it was unaware of the plaintiff's protected activity).  Credibility is "classically a question for the jury" even where management witnesses all say the same thing, which is common in employment cases.  *Hoffman v. Bear Chase Brewing Co. No*. 1:21-cv-1443, 2023 U.S. Dist. LEXIS 167862, at *6-9 (E.D. Va. Sep. 18, 2023) (citing *Gilliam v. Montgomery Ward & Co.*, 121 F.3d 698).  Any other rule would undermine every discrimination case involving a discriminatory policy.[3]

**B.    BMW's argument that the Expat Guidelines are not "direct evidence" is immaterial.**

For reasons unclear, BMW argues that the Expat Guidelines are not "direct evidence."  [ECF 154 at 4-6].  Whether the Expat Guidelines are direct or circumstantial evidence has nothing to do with admissibility.  The only issue here is relevance.

**C.    Implied expiration dates and regime changes:  BMW makes more baseless arguments that affect nothing.**

**1.    A change in managers does not repeal policies**

BMW's argument that policies implemented by one executive are per se irrelevant is unsupported by either fact or law.   No court has ever suggested that company policies

---

[3]    For example, consider a company that has a long-standing policy that it will not hire blacks for office jobs.  The policy is written and has been followed for years. Successive human resource managers never hired a black person to work in the office. The latest human resource manager even explained to an employee that "we don't hire blacks for office jobs."  What court would bar the written policy just because such a manager is willing to claim that he or she was unaware of the writing?  BMW cites no court that has ever gone there.

6

expire when managers change.[4] Nor would BMW (or any employer) ever take that position.

BMW scrupulously followed and recited the Expat Guidelines when removing Dawsey from TX-60. And BMW continues to justify its filling of positions based on nationality as being "in alignment with the policies from Germany." [ECF 97 at 7].

Likewise, BMW undermines its own argument by claiming that "Plaintiff admitted in her deposition that no ExPat Guidelines have been prepared since Mr. Trauth left BMW MC." [ECF 154 at 4]. That BMW never changed or revoked the policy is Dawsey's point.

### 2. The Court has already rejected BMW's effort to obtain a finding that German expat executives are not BMW AG employees

BMW wrongly suggests that BMW AG executives are not BMW AG when assigned to BMW MC. BMW already lost this argument.

BMW AG's executives, like Trauth, Christine Petrasch, Engelhorn, and Dawsey's replacement (Eva Burgmeier) are employed by both BMW AG and BMW MC while on assignment here. [ECF 104 at 14-15]. As this Court has already found:

> There is sufficient record evidence to create a genuine issue regarding BMW AG's involvement in factual matters material to the case, including evidence suggesting: (1) Expat BMW executives and managers work at BMW MC but remain employed and compensated at least in part by BMW AG; (2) BMW AG must approve the creation of new HR positions; (3) BMW AG gathered candidates for the TX-60 position at the Spartanburg plant; (4) the alternating reporting structure is dictated by BMW AG; and (5) funding for any position at BMW MC requires approval or consultation with BMW AG. The Court concludes there is enough evidence to permit Plaintiff to clear the summary judgment hurdle on this issue as well.

---

[4] The ramifications of such a rule would be staggering, and would complicate, for example, every *Ellerth-Faragher* defense. Once again, BMW is not thinking through these arguments. It's just shooting from the hip with no regard for facts or law.

[ECF 119 at 18].

BMW's desire to relitigate summary judgment is no basis for excluding the same evidence this Court relied on when setting the trial.

**D.    BMW's Rule 403 argument refutes the testimony of its own decisionmakers.**

BMW makes a perfunctory argument that the prejudicial value of the Expat Guidelines far outweighs its probative value under Rule 403. [ECF 154 at 6]. That would be an interesting argument if BMW had not steadfastly defended the policy. How would a jury be "confuse[d]" by a policy that merely says what everyone admits to be the practice? That's not confusion. That's corroboration.

BMW's representation that Dawsey "authored" the document [*id.*] further misrepresents her testimony. [*See supra* § II(B)]. And BMW's argument that the document is somehow "self-serving" on Dawsey's part is nonsensical. Dawsey is a victim of the policy, and the Record already shows she objected to it. [*Id.*]

**E.    The Expat Guidelines are admissible for other purposes.**

BMW does not address all reasons why the Expat Guidelines are relevant. Dawsey's objections and explanations to BMW as to the impropriety of the Expat Guidelines show BMW's knowledge of the illegality of its practice, which is directly relevant to its liability for punitive damages. *Duvall v. Novant Health, Inc.*, 95 F.4th 778, 792 (4th Cir. 2024).

## IV.  Conclusion

For these reasons, the Court should deny BMW's Motion.

Respectfully submitted this 5th day of January 2026.

            _s/ Brian P. Murphy_____
            Brian P. Murphy
            Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400

9