**In the United States District Court**
**District of South Carolina**
**Spartanburg Division**

| | |
|---|---|
| **Kelly Dawsey,** | 7:22-03738-TMC |
| **Plaintiff,** | |
| v. | **Plaintiff's Opposition to Defendants' Motion to Exclude the Testimony of Plaintiff's Expert [ECF 156]** |
| **Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC collectively d/b/a "BMW Group,"** | **Request for scheduling guidance (Section II(B))** |
| **Defendants.** | |

## I. Introduction

This Motion is moot, given the agreement of the parties to have the Court address economic damages. [*See* Dawsey response to ECF 153 § II(A)]. That said, BMW's arguments not only lack merit, they tilt at windmills. Dawsey's expert does not engage in any legal analysis. Nor does he offer an opinion on what damages are legally available. More concerning, however, is that BMW continues to argue against precedent, which is no basis for excluding Dawsey's expert.

BMW's argument that damages should exclude the effect of any discrimination is puzzling, at best. But in the end, these are matters the Court can decide on another day.

## II. Argument

**A.	This Motion is moot.**

John E. Gibson's expert report is limited to the calculation of pecuniary damages (front pay, back pay, and the value of lost benefits). BMW contends that the Court should decide these issues. [ECF 153]. As noted in Dawsey's response to ECF 153, she does not object.

Thus, this Motion is moot because the jury need not hear from the parties' experts. Motions in limine are inappropriate where the parties try issues to the bench. *See Accident Ins. Co. v. U.S. Bank Nat'l Ass'n*, Civil Action No. 3:16-cv-02621-JMC, 2019 U.S. Dist. LEXIS 103923, at *11 (D.S.C. June 21, 2019); *Mancilla v. Chesapeake Outdoor Servs., LLC*, No. 1:22-cv-00032-JMC, 2024 U.S. Dist. LEXIS 16598, at *5 (D. Md. Jan. 31, 2024).

**B.	Plaintiff requests guidance on scheduling.**

Dawsey planned to call Gibson as the second live witness, and the Undersigned told him that his likely testimony date is February 18. The Undersigned assumes that it would be inefficient to interrupt the jury trial and sequester the jury to take damages evidence at that time. *See Tompkins v. Eckerd*, Civil Action No. 8:09-02369-JMC, 2012 U.S. Dist. LEXIS 46718, at *13 (D.S.C. Apr. 3, 2012) (stating that the normal procedure is to trial legal issues first before back pay and front pay) (citing *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1422 (4th Cir. 1991)).

Thus, Dawsey would greatly appreciate prompt guidance on how the Court wishes to proceed if the Court agrees with Dawsey's view, which will necessitate rescheduling Gibson's testimony.

**C.    The Court should focus on Gibson's final report and BMW's arguments about errors in draft reports do not affect the admissibility of Gibson's final report.**

BMW continues to find ways to complicate the simple.  Gibson issued updated draft reports at different points in this case.  Gibson's produced his first draft almost three years ago, very shortly after Dawsey obtained employment with the Greenville-Spartanburg International Airport ("GSP").  Fortunately, Dawsey's performance has resulted in improved income not anticipated in the first report.  As things changed and we obtained additional information, Gibson updated the report.  In December, Gibson issued his final report, which corrected a few errors and provided an updated backpay date based on the trial date.

Any argument about why something changed (including dates that do not affect the calculation), or whether it should have, goes merely to the weight of the evidence, not admissibility.[1]  For example, in another case in this District, the Court found a damages expert's report to be seriously wanting in many ways.  Even then, the Court found that this was not grounds for excluding the report:

> Mr. Joyner's apparent lack of preparation for his deposition, failure to grasp essential facts of the case, and flimsy to non-existent knowledge of relevant sources . . . are all matters that go to the weight to be afforded his testimony by the fact finder, rather than to its admissibility.

*Taylor v. Fluor Corp.*, Civil Action No. 6:17-1875-BHH, 2020 U.S. Dist. LEXIS 22604, at *3 (D.S.C. Feb. 10, 2020); *see also EEOC v. BMW Mfg. Co., LLC*, No. 7:13-1583-HMH, 2015 U.S. Dist. LEXIS 125367, at *10 (D.S.C. July 30, 2015) (declining to address

---

[1]    BMW's 26(a)(3) responses and Gibson's 3 1/2 hour long deposition forecast a protracted and pedantic review of every change in Gibson's drafts over the years.  Of course, the Court can decide how much of that it will tolerate.  Dawsey contends, however, that the focus should be on Gibson's final report.

motions in limine that "involve consideration of the weight to be given the experts rather than their admissibility").

**D.     Gibson's reliance on information from Dawsey is not grounds for exclusion.**

BMW's criticism that Gibson relied too much on information from Dawsey is immaterial for several reasons. First, there is no person in this case who knows more about compensation at either BMW or GSP than Dawsey. This is unlike the typical case where the plaintiff is unaware of compensation and benefits policies. That was much of Dawsey's job over the years, and she heads the human resources function at GSP.

Second, conclusions based on information from the plaintiff, "go to the weight of the testimony rather than admissibility." *Evans v. Quintiles Transnational Corp.*, Civil Action No. 4:13-cv-00987-RBH, 2015 U.S. Dist. LEXIS 171750, at *16 (D.S.C. Dec. 23, 2015). "[E]xpert witnesses can be thoroughly cross-examined . . . as to each . . . concern[] regarding any information relied on or assumptions made by the experts . . . ." *Id.* at *21-22.

**E.     Gibson's report is not based on any legal principles.**

BMW's argument that Gibson's testimony misapplies the law is both puzzling and hypocritical. [See ECF 156 at 4-5]. Although BMW seeks to have its accountant testify about what is legally recoverable [see ECF 144, 146], Gibson never ventures into those waters.

Gibson provides only a calculation of the economic losses Dawsey incurred since she left BMW based on what she would have made absent any adverse actions. In other words: (1) What Dawsey would have made if she had not been demoted and removed from her job; *minus* (2) what she has made since leaving BMW.

4

Gibson made clear that he was not opining as to whether such damages are recoverable. "I was asked to provide calculation of wages as if Mrs. Dawsey was still employed with BMW against what her wages were after she left employment." [Exh. 1 at 44:13-18]. He added: "I'm not hired or get into giving opinion about employment, legal and what all the legal components of it are, whether there's discrimination or not." [Id. 135:18-21].

F.    **BMW's efforts to distinguish *Dennis* are baseless.**

BMW's discussion regarding *Dennis* is misplaced. Nothing in Gibson's report is based on *Dennis*. Yet BMW cites cases *from other circuits* for the proposition that "the vast majority of courts to consider the question have held that a plaintiff who voluntarily resigns her employment [] cannot prove constructive discharge [and] has no right to backpay." [ECF 156 at 5]. Another district court in our circuit took Walmart to task for doing the same:

> A review of Fourth Circuit case law provides a ready explanation for Walmart's decision to cite out-of-circuit authority rather than Fourth Circuit precedent: in contrast to the majority of circuits, the Fourth Circuit has expressly rejected the constructive discharge rule. *See Dennis v. Columbia Colleton Med. Ctr. Inc.*, 290 F.3d 639, 651 (4th Cir. 2002).

*Holmes v. Wal-Mart Stores E., L.P.*, No. 1:10cv75, 2011 U.S. Dist. LEXIS 46020, at ** 26-27 (E.D. Va. Apr. 27, 2011).

BMW knows this because Dawsey previously cited *Holmes*. [ECF 146 at 2 n. 2]. Thus, BMW now begrudgingly acknowledges "published decisions by the Fourth Circuit over the last five decades in which it has declined to adopt the categorical rule against backpay awards in cases involving uncoerced resignation. . . ." [ECF 156 at 6]. But BMW argues that the rule of law clarified in *Dennis* does not apply because the facts are

5

different. As the Fourth Circuit remarked in another context, "The facts are indeed different—as the facts in different cases tend to be." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 728 (4th Cir. 2019). But differing facts are no basis for dismissing legal principles. That is especially true given the specious grounds that BMW advances.

BMW claims that the rule explained in Dennis applies only if the plaintiff resigned to take a higher-paying job. [ECF 156 at 6]. Think about that for a minute: Economic damages are available only where the plaintiff incurred none? Unsurprisingly, the *Dennis* Court said nothing of the sort. Nor did the *Spagnuolo* Court, the *Holmes* Court, the *Bennett* Court, the Benson Court, or the *Scott* Court. [See ECF 146 at 2 n. 2]. BMW is just making this up.

Fourth Circuit cases belie BMW's proposed rule. In *Dennis*, for example, Judge Norton awarded $31,302 in backpay after considering mitigating income. *Dennis v. Columbia Colleton Med. Ctr.*, 2:98-cv-02694-DCN Ord. of January 29, 2021 ECF 135, 3–6 (D.S.C. 2001), *aff'd*, 290 F.3d 639 (4th Cir. 2002). The *Dennis* Court never suggested that the plaintiff immediately found a higher-paying job. The plaintiff in *Dennis* was unemployed for a period and then had a succession of jobs, the last of which apparently was the higher-paying position. *Dennis*, 290 F.3d at 651–52.

If a plaintiff, like Dennis, can resign with no job lined up and obtain backpay, how can Dawsey be denied backpay when she resigned after securing employment? And how can BMW seriously argue that periods of unemployment after a resignation, like those in *Dennis*, are compensable, but periods in which a plaintiff mitigates some of her losses are not?

6

BMW's repackages the same argument when asserting that Dawsey's damages do not flow from the demotion or removal from her job, but solely from her decision to resign.[2] [ECF 156 at 7]. That has been the argument in all these cases, and it is the proposition the Fourth Circuit has rejected. If Dawsey shows that she resigned due to unlawful discrimination, *Dennis* mandates that she is entitled to equitable remedies.

**G.  This Court should reject BMW's efforts to relitigate the summary judgment ruling.**

BMW argues that "it is undisputed that Dawsey's compensation *had not been reduced* as a result of the supposed demotion that she claims was to come at some indefinite time." [ECF 156 at 7, 8]. This is nothing short of an effort to argue again that no violation occurred at the time Dawsey left. The Court has already rejected that contention as the violation occurred when BMW notified Dawsey of the challenged decisions, and not when the decisions were scheduled to take effect. [ECF 119 at 11-14].

**H.  BMW's claim that damages should be measured based on a discriminatory demotion is mind boggling.**

Dawsey claims she was discriminated against (in part) when BMW stated it would demote her from FL III to FL IV, affecting several terms and conditions of employment. [*See* ECF 97 at 10-12; ECF 110 (Dawsey's supplemental memorandum regarding *Muldrow*)]. BMW now claims that damages should be measured based on "the 'assigned FL and compensation range' of the new position." [ECF 156 at 8]. That gets the whole

---

[2]  BMW's argument suffers from another flaw. As it has done at every step, BMW ignores that, as of the time Dawsey resigned, she had not been offered any employment at BMW. [ECF 97 at 15].

theory of make-whole relief backwards and would eliminate the damages flowing directly from the discriminatory demotion.

**I.    BMW's simple arithmetic argument is not so simple.**

BMW argues that "simple mathematics" will not assist the trier of fact. The Court—as the trier of fact—can decide for itself what is helpful. If this case, like those cited by BMW, involved the mere adding of numbers, the Undersigned would not have advanced the expenses necessary to retain an expert.

Concepts like present valuing of future damages, calculating retirement benefits, determining 401(k) or 457 plan contributions, or calculating state retirement benefits cannot be fairly characterized as "simple math." But the Court can decide that later.

### III.  Conclusion

For these reasons, the Court should deny BMW's Motion.

Respectfully submitted this 5th day of January 2026.

            _s/ Brian P. Murphy_____
            Brian P. Murphy
            Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400