**In the United States District Court
District of South Carolina
Spartanburg Division**

| | |
|---|---|
| Kelly Dawsey, | 7:22-03738-TMC |
| Plaintiff, | |
| v. | Plaintiff's Opposition to Defendant BMW AGs' Motion in Limine [ECF 157] |
| Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC collectively d/b/a "BMW Group," | |
| Defendants. | |

## I. Introduction

This Court has already addressed issues raised in BMW AG's Motion. For the reasons already found, this Motion lacks merit.

## II. Background

On or about September 15, 2021, BMW's vice president of human resources, Christine Petrasch (German), told Dawsey that BMW was replacing Petrasch with Sherry McCraw, an American. [ECF 97-4 at 61:13-15]. Petrasch repeated the long-standing rule that a German national must be at Level III if there is a domestic VP (Level II). [ECF 97-4 at 61:24 – 62:5]. She confirmed that the only way BMW could get an American into the HR VP position in Spartanburg was to have a German in TX-60 to serve as a "bridge to Germany." [*Id.* 70:12-18].

Petrasch further explained to Dawsey that two executives/directors of BMW AG participated in the decision alongside Englehorn. Petrasch cited "T" and "P." Although BMW AG oddly refers to "T" and "P" as "some unnamed person or persons at BMW AG"

1

[ECF 157 at 3], their identities are known and established.  "T" refers to Milan Nedelijkovic, the head of manufacturing and a BMW AG board member (Germany); "P" refers to Ilka Horstmeier.  [ECF 97-11 at 9:8-11; ECF 45-1 ¶ 7(b)-(c); Petrasch Dep. 113:17 – 114:5 (Exh. 1)].

Petrash left no doubt that BMW Group in Germany was making the decision.  In fact, Petrasch complained that the German executives had called her on a Sunday.  [ECF 45-1 ¶ 3].  BMW MC confirms that, in making the decision, "Dr. Engelhorn communicated by telephone with Ilka Horstmeier regarding his decision to place Ms. McCraw in the TX-6 role."  [ECF 45-2 at 3].

The German national that BMW Group chose to replace Dawsey is Eva Burgmeier. [DE 97-4 at 35:12-14].  Engelhorn states that he decided to appoint Burgmeier after speaking with two AG executives: Horstmeier and her direct report, Barbara Burghardt. [ECF 104 at 4; ECF 104-4 at 6:1 - 8:7; *see also* DE 45-7].  According to Petrasch, "BMW AG collected candidates for this position."  [ECF 104-8 53: 20 – 54:20; *id.* 55:10-18]. Claudia Kopnik (another Horstmeier direct report)[1] determined the candidates for TX-60 at BMW MC.  [ECF 104-8 at 54:3-20].   Consistent with BMW's policy of excluding Americans from TX-60 when an American sits in TX-6, none of the candidates included Americans.  [*Id.* 55:19-21].

---

[1] ECF 104 at 4.

### III.  Argument

**A.    BMW has waived objections to this evidence by relying on the same.**

BMW's Motion is improper because BMW seeks to both admit and exclude the same evidence.  Defendants designate multiple exhibits containing the very statement they seek to ban.

**1.    Dawsey's handwritten notes**

BMW's Motion quotes Dawsey's deposition testimony about what Dawsey "wrote." [ECF 157 at 2 (citing Dawsey Dep. 226:12-18)].  But BMW does not show the Court *what* she wrote.

What Dawsey wrote was Dawsey Deposition Exhibit 35, which counsel identified as Dawsey 2659-62.  [Dawsey Dep. 125:20 – 126: 3 (Exh. 2)].  As BMW AG's own excerpt shows, BMW questioned Dawsey about her notation (on Dawsey 2660): "Only way to get local TX-6 is to have an int[ernational] TX-60 to be a bridge to Germany.  Already discussed with T+P + its' done."

In their 26(a)(3) disclosures, both BMW AG and BMW MC Dawsey designate Deposition Exhibit 35 as BMW Trial Exhibit 35.  [BMW AG 26(a)(3) Disclosures, ECF 150-1 at 3, Exh. 35 (designating Dawsey 2659-62); BMW MC 26(a)(3) Disclosures, ECF 149-1 at 4 Exh. 35 (same)].  Dawsey 2660 also is page 2 of ECF 46-2.

Not only is BMW seeking to introduce the document, but neither Defendant objected to Dawsey's designation of the same document as Dawsey Trial Exhibit 06. [Dawsey 26(a)(3) Disclosures, ECF 151 at 14 Exh. 06].  On December 30, the parties met to review and mark exhibits.  After the meeting, BMW AG's counsel confirmed that the only issue with Dawsey 06 was BMW's request that the Undersigned redact a

3

reference to another person mentioned as the top of the page at issue (which the Undersigned agreed to do during the meeting). [Exh. 3].

### 2. Dawsey's Amended Complaint

Both BMW Defendants designated Dawsey's Amended Complaint as their first exhibit. [BMW MC 26(a)(3) Designation, ECF 149-1 at 2 (Exhibit 1); BMW AG 26(a)(3) Designations, ECF 150-1 at 1 (Exhibit 1)].

Paragraph 44 of BMW Exhibit 1 states:

> Petrasch reiterated that the decision was made by two executives/directors of BMW AG and Englehorn (a German national assigned to BMW Manufacturing). Petrasch specifically cited "T" and "P." "T" is a reference to Milan Nedelijkovic, the head of manufacturing and a BMW AG board member (Germany). "P" is Ilka Horstmeier, the head of personnel and a board member of BMW AG.

[ECF 20 at 9 ¶ 44]. BMW again seeks to introduce the very statement about which it now complains.

Both logic and law dictate that a party cannot identify an exhibit and then object to the admission of the same exhibit. *E.g.*, *Phillips v. Morbark, Inc.*, 519 F. Supp. 2d 591, 596 (D.S.C. 2007); *1100 W., LLC v. Red Spot Paint & Varnish Co.*, No. 1:05-cv-1670-LJM-JMS, 2008 U.S. Dist. LEXIS 79425, at *4 (S.D. Ind. Oct. 8, 2008) (overruling objections to exhibits that also appear on the objecting party's exhibit list).

## B. BMW AG's hearsay arguments

### 3. BMW AG's arguments merely rehash its failed summary judgment arguments.

BMW already made its hearsay arguments. [ECF 103 at 15]. And Dawsey has already addressed them at length. [ECF 104 at 21, 22-25]. As discussed below, this

4

Court has already found there is ample evidence of both BMW AG's direct involvement and its control over BMW MC.

### 4. Any statement implied by Petrasch's words are not hearsay.

#### a. Rule 801(d)(2)(D)

BMW's statements are not hearsay. Rule 801(d)(2)(D) defines as not hearsay any statement that "was made by the party's agent or employee *on a matter* within the scope of that relationship and while it existed." Fed. R. Ev*id.* 801(d)(2)(D) (emphasis added).[2]

Both BMW MC and BMW AG are parties opponent. Even where a statement passes through multiple agents of a party opponent, "a statement that is offered against an opposing party, which was made by the party's agent or employee on a matter within the scope of that relationship and while it existed is not hearsay." *Taylor v. Fluor Corp.*, Civil Action No. 6:17-1875-BHH, 2020 U.S. Dist. LEXIS 22604, at *15 (D.S.C. Feb. 10, 2020) (citing Fed. R. Evid. 801(d)(2)(D)).

Nobody questions Petrasch's involvement in the decisions at issue. And that is all that is necessary to have the statement admitted against those with whom she was

---

[2]     "The statement itself is not required to be within the scope of the declarant's agency. Rather, it need only be shown that the statement be related to a matter within the scope of the agency." *United States v. Petraia Mar. Ltd.*, 489 F. Supp. 2d 90, 96 (D. Me. 2007) (citing *Larch v. Mansfield Mun. Elec. Dep't*, 272 F.3d 63, 72 (1st Cir.2001)). In *Cline* (relied upon in Watergate at Landmark), the Fourth Circuit reviewed a district court's rejection of objection to witness testimony "that, at several formal and informal meetings of terminal managers, certain of those managers, some specifically identified, indicated their understanding that Roadway's new policy was one designed to replace older workers with younger, better qualified ones." *Cline v. Roadway Exp., Inc.*, 689 F.2d 481, 488 (4th Cir. 1982). Even though the declarants were not agents for the purpose of speaking on the subject, the Fourth Circuit explained: "We agree with the district court's ruling that the evidence was admissible under Fed. R. Evid. 801(d)(2)(D), as admission of agents 'concerning a matter' within the scope of their employment." *Id.*

involved. *Watergate at Landmark Condo.*, 24 F.3d 635, 638-40 (4th Cir. 1994).[3] The *Watergate at Landmark* principle applies to corporate affiliates as well. *See Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001) (discriminatory statement by parent corporation executive admissible against subsidiary under Rule 801(d)(2)(D) because the declarant need only be significantly involved in the process) (citing *EEOC v. Watergate at Landmark Condo.*, 24 F.3d 635, 640 (4th Cir. 1994)).

Further, BMW AG premises its Motion on the fallacy that Petrasch was not an agent or employee of BMW AG at the time she made the statement. But Dawsey has already shown that she was. BMW AG employees, while assigned to BMW MC, remain employed by BMW AG and report regularly to their BMW AG colleagues. [ECF 104 at 14-15]. This Court relied on that fact in denying summary judgment. [ECF 119 at 18 ("Expat BMW executives and managers work at BMW MC but remain employed and compensated at least in part by BMW AG").

And because BMW AG was directly involved in the challenged decisions, there is no need to determine whether BMW AG controlled BMW MC to establish admissibility. This Court has already found that the evidence creates a jury issue on this point:

---

[3] In *Watergate at Landmark Condo.*, 24 F.3d 635 (4th Cir. 1994), the Fourth Circuit approved of the admission of inculpatory statements under Rule 801(d)(2)(D) of non-decisionmakers "whose involvement in the process here was palpable, though concededly not that of ultimate decisionmakers." *Id.* at 640 (emphasis added). "Significant involvement, either as advisor or other participant in a process leading to a challenged decision, may suffice to establish 'agency' for this purpose; it is not necessary that the declarant be the actual final decisionmaker." *Id.* (emphasis added) (citing *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 488 (4th Cir.1982)); *see also Crawford v. Coll. Life Ins. of Am.*, 831 F.2d 1057 (4th Cir. 1987) (statement attributed to decision-maker by a non-decisionmaker recruiter was admissible because it "concerned a matter within [his] scope of employment").

6

> The Court has carefully considered all of the evidence submitted by the parties and concludes that a substantial question of fact exists as to whether BMW AG was directly involved, participated in or controlled the decision to remove Plaintiff from her TX-60 position and place her in the TX-64 position—a move that can be viewed as a demotion.

[ECF 119 at 16].

Still, if the Court concludes that a showing of BMW AG's control over BMW MC is necessary, that is an easy layup. There have been several motions now on this issue, the last of which was BMW AG's Motion for Summary Judgment. [ECF 102]. Dawsey has already laid out evidence of BMW AG's direct involvement, including its day-to-day control of matters and financial control. [ECF 104]. This Court reviewed those arguments and concluded:

> There is sufficient record evidence to create a genuine issue regarding BMW AG's involvement in factual matters material to the case, including evidence suggesting: (1) Expat BMW executives and managers work at BMW MC but remain employed and compensated at least in part by BMW AG; (2) BMW AG must approve the creation of new HR positions; (3) BMW AG gathered candidates for the TX-60 position at the Spartanburg plant; (4) the alternating reporting structure is dictated by BMW AG; and (5) funding for any position at BMW MC requires approval or consultation with BMW AG.

[ECF 119 at 18].

BMW's counter is a head shaker. BMW argues: "Courts routinely exclude such testimony where, as here, the statement is offered solely to establish responsibility for an employment decision by a separate corporate entity." [ECF 157 at 4]. To establish this "routine," BMW cites two cases—both of which contradict its position. [*Id.* (citing *Integrated Commc'ns& Tech., Inc. v. Hewlett Packard Fin. Servs.*, 478 F. Supp. 3d 126 (D. Mass. 2020) (citing, in turn, *Big Apple BMW Inc. v. BMW of N. Am., Inc.*, 974 F.2d

7

1358, 1373 (3d Cir. 1992)]. [4]  Two cases finding evidence to be admissible is hardly a showing that courts "routinely exclude" anything.

### b.   Verbal act

Rule 801(c) also makes Petrasch's statement non-hearsay because the statement proves Dawsey's removal from TX-60, which is her first adverse action.  The advent of

---

[4]  In *Integrated Communications*, Hewlett Packard sought to exclude a Verification Report that purportedly contained statements by a non-party Chinese Hewlett Packard subsidiary (H3C) to Chinese police.  *See id.* at 131; see also *id.* at 132 (noting that the subsidiary was not a party).  Hewlett Packard objected on hearsay grounds.  *Id.* at 131.  The Integrated Communications Court ultimately found that the Verification Report was admissible: "[T]he Court concludes that Plaintiffs have established that the Verification Report is a non-hearsay document that the Court may consider for the truth of the matters asserted therein."  *Id.* at 137.

In the interest of full disclosure, Dawsey notes that, as the facts developed in *Integrated Communications*, the Court later found that the Verification Report was inadmissible.  *Integrated Communs. & Techs., Inc. v. Hewlett-Packard Fin. Servs.*, 573 F. Supp. 3d 513, 531–34 (D. Mass. 2021).  But nothing in that decision helps BMW either because it is fact-specific and sheds no light on the issues here.

In *Big Apple BMW*, the Third Circuit reversed a determination that a statement of certain BMW affiliates were attributable to BMW North America:

> We conclude that Mitchell's statement, made as a representative of BMW Credit and BMW Leasing, may be attributed to BMW NA. The statement of a subsidiary may be attributed to its corporate parent, consistent with agency theory, where the parent dominates the activities of the subsidiary. See Zenith Radio Corp. v. Matsushita Elec. Indus. Co. Ltd., 505 F. Supp. 1190, 1247-48 (E.D. Pa. 1980). This evidence of the relationship between BMW NA and BMW Credit and BMW Leasing, while close, does suffice to confer agency status on Mitchell. BMW NA's ownership interests, control through corporate officers, advertising, and the subsidiaries' use of the BMW logo on their documentation, together indicate a sufficiently dominating interest in its subsidiaries.

*Big Apple BMW,* 974 F.2d at 1373.

an adverse action is the touchstone to liability. *Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024). Petrasch's statement was her announcement to Dawsey of Dawsey's removal from TX-60 (the first adverse action). [ECF 115 at 7]. And the *announcement* constitutes an adverse action. [ECF 119 at 13 ("[T]he Court agrees that Plaintiff has offered sufficient evidence to permit a finder of fact to conclude that the adverse employment action occurred when BMW MC announced Plaintiff would be demoted.")].

Because the announcement of an adverse action affects the parties' legal rights (*e.g.*, giving rise to a claim and commencing the statute of limitations), it is a verbal act and not hearsay.

> A verbal act is an utterance of an operative fact that gives rise to legal consequences. Verbal acts; also known as statements of legal consequence, are not hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it.

*Lorraine v. Markel Am. Ins.*, 241 F.R.D. 534, 566 n.50 (D. Md. 2007); Black's Law Dictionary 31 (12th ed. 2024); Fed R. Evid. 801(c), adv. cmt notes ("The effect [of 801(c)] is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."); *see also Fiebelkorn v. IKON Off. Sols., Inc.*, 668 F. Supp. 2d 1178, 1185 n.5 (D. Minn. 2009); *Brewer v. Am. Power Source, Inc.*, 517 F. Supp. 2d 881, 888 (N.D. Miss. 2007).

Aside from any inference regarding the involvement of Horstmeir and Nedelijkovic, the statement has legal significance (the adverse action) that affects the parties' rights.

9

      **c.    Petrasch's state of mind and motive**

Petrasch's explanation of her reasoning for the adverse action reveals her state of mind, providing a non-hearsay basis for admitting the evidence. "A statement that is offered to prove state of mind is not hearsay." *Pounds v. Board of Trustees*, No. 98-2755, 2000 U.S. App. LEXIS 11037, at *23 (4th Cir. May 12, 2000) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995) for the proposition that discriminatory comments are not hearsay when offered to demonstrate discriminatory attitudes and not the truth of the comments)).

**5.    Even if the Court finds that something implied is hearsay, exceptions apply.**

      **a.    804(b)(3)**

Neither Nedelijkovic nor Horstmeier work or live in the United States. They are therefore unavailable to Dawsey. BMW AG's premise—that the statement is adverse to BMW AG's interest—establishes that the statement also is admissible as an exception to the hearsay rule as a statement against interest. Fed. R. Evid. 804(b)(3).

      **b.    The residual exception**

Finally, the trustworthiness of Petrasch's statement and the circumstances in which she made it also would qualify the statement as an exception under Rule 807. Petrasch's comment was not a flippant one. She was explaining to her subordinate why BMW AG and BMW MC were removing her. Petrasch cited the involvement of two high-ranking officials at BMW AG to whom she continues to report. Petrasch had every reason to be accurate in her statement, and no incentive to misstate anything.

Thus, although courts rarely invoke Rule 807, it applies here if the Court finds that the statement is hearsay. Petrasch's statement has "equivalent circumstantial

10

guarantees of trustworthiness" given Petrasch's direct involvement in the communications. Fed. R. Evid. 807(a)(1). The statement relates to a material fact. Fed. R. Evid. 807(a)(2). It is more probative on this point than any other evidence. Fed R. Evid. 807(a)(3). Finally, admitting the evidence will serve the purpose of these rules and the interests of justice. Fed. R. Evid. 807(a)(4). BMW AG has known about the statement attributed to it for almost three years. [See ECF 46-2 (filed March 20, 2023)]. BMW AG has had every opportunity to test or challenge the statement. Rather than do so, it seeks to admit it the statements as two of BMW's exhibits (1 and 35).

**C.    BMW's personal knowledge argument makes no sense.**

Without citing evidence, BMW AG baldly declares that Petrasch did not have personal knowledge of "BMW AG's internal deliberations." [See ECF 157 at 7]. What internal deliberations? Petrasch's statement demonstrates her personal knowledge of the discussions she had. She is free to take an oath and deny having them. But that is for the jury to assess. There is nothing before the Court that would justify excluding the evidence. Unverified arguments in a brief are not evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004); *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir. 1998); *U.S. Tobacco Co-op., Inc. v. Certain Underwriters at Lloyd's*, No. 5:19-CV-00430-BO, 2021 U.S. Dist. LEXIS 69206, at *40 (E.D.N.C. Apr. 9, 2021) (citations omitted).

**D.    There is no opinion evidence at issue**

BMW next argues that Petrasch's statement is improper opinion evidence. [ECF 157 at 8]. But this is pure fact testimony, and BMW fails to point to any opinion at issue.

11

**E.     BMW's Rule 403 argument ignores this Court's Summary Judgment Order and all the evidence provided to date.**

BMW cites Rule 403, but then fails to explain how it applies. The premise of BMW AG's argument is that it cannot be held liable as an employer. That is not a Rule 403 argument. And it ignores the Court's rulings that: (1) there is sufficient evidence of BMW AG's direct involvement; and (2) there is ample evidence that BMW AG is an integrated employer. [ECF 119 at 17-18].

BMW engages in no analysis to show that any evidence risks "unfair prejudice" under Rule 403. Again, BMW merely argues that it is right and Dawsey is wrong. That is an argument for another day.

## IV.  Conclusion

For these reasons, the Court should deny BMW's Motion.

Respectfully submitted this 5th day of January 2026.

                             _s/ Brian P. Murphy_____
                             Brian P. Murphy
                             Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400