**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | | |
|---|---|---|
| KELLY DAWSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 7:22-cv-03738-TMC |
| | ) | |
| BAYERISCHE MOTOREN WERKE | ) | |
| AKTIENGESELLSCHAFT and BMW | ) | |
| MANUFACTURING CO., LLC collectively | ) | |
| d/b/a "BMW GROUP," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT, JOHN E. GIBSON, JR.**

Defendants Bayerische Motoren Worke Aktiengesellschaft ("BMW AG") and BMW

Manufacturing Co., LLC ("BMW MC"), submit this Reply to Plaintiff's Opposition to

Defendant's Motion to Exclude the Testimony of Plaintiff's Expert, John E. Gibson, Jr.  In

responding to Defendants' motion, Plaintiff asks this Court to sweep away Gibson's three prior

reports and their myriad errors and pretend that only his last effort is material.  Furthermore,

Plaintiff distorts the facts and holdings of prevailing Fourth Circuit law on back pay in order to

argue that Gibson's opinions about how much Dawsey lost by resigning should be admissible.

Plaintiff's response fails to provide a sufficient basis on which to admit Gibson's testimony.

**I.     GIBSON'S SUCCESSION OF AMENDED REPORTS SHOW THAT HIS
OPINIONS ARE NOT RELIABLE**

Rather than confront the numerous errors in Gibson's multiple reports—all delivered as

final reports, not drafts—Plaintiff argues that the factfinder should ignore Gibson's mistakes and

limit his testimony to his final report, as if this would be a penalty to Plaintiff.  Of course, Plaintiff

would like to conceal her continuous failure to provide information that would mitigate alleged employer damages and protect Gibson from exploration of the <u>numerous</u> (*i.e.*, more than the "few" characterized by Plaintiff) errors, mistakes, and omissions made in his calculations.  These errors are due to flawed methodology, failure to receive correct information from Plaintiff, and assumptions made due to Gibson's failure to properly vet the information utilized.  Neither Plaintiff nor her expert should have a shield regarding all the prior efforts to overstate damages.[1]

## II.     GIBSON SHOULD NOT BE PERMITTED TO SERVE AS A CALCULATOR FOR PLAINTIFF

In her Response, Plaintiff alleges that BMW's criticism of Gibson because he relied too much on information from Dawsey is immaterial.  Gibson's reliance on Dawsey for information that he merely summarizes back to the factfinder is not appropriate.  An expert is held to a higher standard than merely parroting the aspirations of the Plaintiff.  Gibson, who has never before been an expert in an employment matter, should not merely be a calculator to dress up the damage claims of the Plaintiff.

## III.    GIBSON'S OPINION ANSWERS A QUESTION THE LAW DOES NOT ASK

The law in the Fourth Circuit is clear that a damages expert that bases his calculations on a model that is inconsistent with the type of damages under prevailing law should be excluded.  *See Moore v. Equitrans, Ltd., P'ship*, 27 F.4th 211, 223 (4th Cir. 2022). Plaintiff concedes she is not bringing a claim for constructive discharge and, therefore, does not claim that BMW MC is responsible for her resignation.  (ECF No. 162 at 2.)  Her Response fails to address that Gibson's report provides no opinion on how the alleged discrimination impacted her salary grade

---

[1] Of note, Plaintiff again glosses over the fact that in the court-ordered mediations that occurred twice in this case, Plaintiff utilized these faulty numbers. The report used at mediation overstated alleged damages by several hundred thousand dollars.  And now, there is a new fourth report following the deposition of Mr. Gibson that once again changed the calculation of her damages.

classification or her personal grade—the damages, if any, that would have flowed from the alleged discriminatory demotion by BMW MC.

Indeed, if Dawsey had not resigned and stayed at BMW MC, she would have zero damages. Plaintiff tries to gloss over this fact and Gibson's explicit opinion and by stating in her opposition that the calculations were provided by Gibson "on what she would have made absent any adverse actions." (ECF No. 162 at 4.) In other words: "(1) What Dawsey would have made if she had not been demoted and removed from her job: minus (2) what she has made since leaving BMW." (ECF No. 152 at 4.) The testimony of Gibson contradicts the formula the Plaintiff proposes in her brief. Her damages would simply be "[w]hat Dawsey would have made if she had not been demoted and removed from her job." Consistent with this common-sense formula, Gibson testified that Dawsey's damages if she had stayed at BMW are zero dollars. (Gibson Dep. at 44:4-45:24.)[2]

## IV.    TITLE VII AND FOURTH CIRCUIT LAW REQUIRE MITIGATION OF DAMAGES AND DO NOT REWARD DECISIONS TO EXACERBATE DAMAGES

Contrary to Plaintiff's attempts to impugn Defendants, their motion admits and cites to the precedent governing this matter—the *Dennis* and *Spagnuolo* cases—and explicitly acknowledged that constructive discharge is not an absolute prerequisite for back pay in the Fourth Circuit. (ECF No. 162 at 6.) It is Plaintiff, however, that misapprehends and mischaracterizes the facts and application of controlling law.

Plaintiff alleges that if "Dawsey resigned due to unlawful discrimination,[3] *Dennis* mandates that she is entitled to equitable remedies." (ECF No. 162 at 7.) That language is not

---

[2] The cited pages from the Deposition of John Gibson are attached hereto in Exhibit A.

[3] Even this contention concedes the point. Dawsey did not resign "due to unlawful discrimination." She concedes that she has no claim to constructive discharge. (ECF No. 162 at 2.) Her resignation was a wholly voluntary choice, as were the losses that she suffered as a result of that decision.

found in *Dennis*.  Instead, the Fourth Circuit follows the established principle that a plaintiff has

statutory duty to mitigate employer damages. *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290

F.3d 639, 651 (4th Cir. 2002) (back pay awards are constrained by "the general statutory duty . . .

to mitigate damages.")   A resignation to accept a vastly lesser paying job prior to any actual

demotion does not entitle one to equitable remedies under *Dennis* and the precedents of this Court.

Here, Plaintiff's voluntary resignation exacerbated, rather than mitigated, her damages.  To

argue her entitlement to relief, her Response distorts the facts in *Dennis*. It is correct that in *Dennis*,

the Court allowed an award of back pay damages in the absence of a constructive discharge.

*Dennis*, 290 F.3d at 644. But Plaintiff states in her Response that "[t]he plaintiff in *Dennis* was

unemployed for a period and then had a succession of jobs, the last of which apparently was the

higher-paying position."  (ECF No. 162 at 6.) This statement implies that the plaintiff in *Dennis*

left for a lower-paying position, but nothing in the Court's decision says that.  Instead the Court in

*Dennis* stated the following:

> In this case, Dennis reasonably mitigated Colleton's damages even though she left
> its employ. Because she was at a low paying job, she could be reasonably certain
> of finding equivalent pay elsewhere. After leaving Colleton, Dennis actively
> applied for other work and quickly did find comparable alternative employment in
> a doctor's office, and later as an emergency medical technician. **Dennis' expert**
> **testified that she made substantially more money over the three year period**
> **between leaving Colleton and trial than she would have made had she stayed**
> **at the hospital after being denied promotion.** Dennis' case is thus parallel to the
> facts in *Spagnuolo*, where the court refused to overturn an award of back pay to an
> employee who voluntarily left his employer to work for a higher paying competitor.

290 F.3d at 651-52 (emphasis added).

Likewise, in *Spagnuolo v. Whirlpool Corporation,* the Fourth Circuit focused on the

actions of Plaintiff in mitigating damages following a demotion where the demotion caused a 50%

compensation reduction down to $900 per month plus capped expenses.  641 F.3d 1109, 1114 (4th

Cir. 1981). In that case, *Spagnuolo* later took a job with a competitor paying $1,200 per month

plus various benefits such as a commission and an automobile—a job that paid better than the job to which he had been demoted, but less than the one to which he claimed he was entitled. When determining whether Plaintiff could recover, the Court stated: "[C]onsistent with his obligation to mitigate damages, plaintiff sought and obtained a better-paying job. _Plaintiff did not resign from Whirlpool and accept employment paying him lesser compensation._" _Id._ Because Spagnuola mitigated by taking a higher paying job than the one he was demoted to, the court allowed recovery of the amount between Spagnuolo's former job paying $2285 per month and the job that paid $1,200 per month, rather than the $900 per month job from which he resigned. _Id._ The plaintiff there fulfilled by mitigating and by obtaining employment that paid him more than the position he resigned.

Accordingly, neither plaintiff in _Dennis_ or _Spagnuolo_ fully mitigated his damages by resigning his employment, entitling them to some measure of back pay. But each did make _more_ than they would have had they stayed with the defendant employer, thus reducing the back pay they were awarded. Here, Gibson's proffered testimony runs directly contrary to the evidence credited in _Dennis_ and _Spagnuolo_. Rather than testify that Dawsey "made substantially more money over the [four] year period between leaving [BMW MC] and trial than she would have made had she stayed," 290 F.3d at 651-52, Gibson proposes to testify that Dawsey made substantially **less money** over the four-year period between leaving BMW MC and trial than she would have made had she stayed. Thus, Gibson's testimony will inform this Court only about how Dawsey exacerbated her damages, not about how she mitigated them. But, as the Fourth Circuit has observed, courts in this circuit "apply the general statutory duty located at 42 U.S.C. § 2000e-5(g) to mitigate employer damages." _Dennis_, 290 F.3d at 651. No less important in this case, "the employer's back pay liability is not to be increased as a result of losses willingly incurred by the

claimant." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1278 (4th Cir. 1985). Dawsey shows her misapprehension of the basic damages principles when she argues that BMW MC's contention that "damages should be measured based on a discriminatory demotion is mind boggling." (ECF No. 162 at 7.) But this is exactly the adverse action that Dawsey has claimed and the court has recognized: that "the adverse employment action occurred when BMW MC announced Plaintiff would be demoted." (ECF No. 119 at 13.) The injury inflicted by this alleged discriminatory act is the injury to be redressed by back and front pay: courts interpret back pay "as including all monetary awards based on earnings and other fiscal benefits that the plaintiff would have received but for the unlawful employment practice." 5 Larson on Employment Discrimination § 92.01.

In this case, Plaintiff concedes that she did not have to resign and voluntarily took employment with lesser compensation. Plaintiff is pushing a damages theory that runs contrary to existing precedent and the express mitigation obligations contained in Title VII. Plaintiff cannot resign and choose her measure of damage by taking a lesser-paying job. That is especially clear when her own proffered expert admits that she would have no damage had she stayed at BMW. BMW MC should not be forced to pay for the extraordinary consequences of that decision, nor does it help the finder of fact to learn about the calculation of amounts that are not awardable to Dawsey. Because the ability to recover is based on the statutory duty to mitigate employer (BMW) damages, Dawsey caused her own damages by voluntarily resigning. *Dennis* does not "entitle" Dawsey to damages.

At the end of the day, the question before this Court is whether BMW should have to pay Plaintiff for her decision to resign and accept a lesser-paying job when that decision was purely voluntarily. Under prevailing Fourth Circuit law, it should not. As a result, it should not allow or

consider the proffered expert evidence attempting to assign Plaintiff's voluntarily incurred losses to Defendants.

## V.     CONCLUSION

Defendants appreciate Plaintiff's acknowledgment and agreement to have the Court address economic damages.  The issues of this Motion, however, are not moot.  While Plaintiff states that these issues can be decided by the Court on another day, the value of this case (if any) depends on the Court's determination of the novel damage theory presented by Plaintiff. Plaintiff admits that BMW did not force her to resign.  Mr. Gibson concedes that Plaintiff would suffer no damage by staying at BMW. Because the general purpose of back pay in Title VII is to make a plaintiff whole after reasonable efforts to mitigate, the novel theory of Plaintiff is not logical.  The *Dennis* and *Spagnuolo* cases do not stand for the proposition that a plaintiff who does not assert constructive discharge can resign and then choose their measure of damages.  Defendants therefore respectfully request that the Court grant its Motion in Limine to exclude Plaintiff's expert testimony.

Respectfully submitted this the 7th day of January, 2026.

By: *s/ Ellison F. McCoy*
Ellison F. McCoy (Fed. I.D. No. 6389)
ellison.mccoy@jacksonlewis.com
D. Randle Moody II (Fed. I.D. No. 7169)
randy.moody@jacksonlewis.com
Mallory H. Gantt (Fed. I.D. No. 13867)
mallory.gantt@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
(864) 232-7000

*ATTORNEYS FOR DEFENDANT*
*BMW MANUFACTURING CO., LLC*

By: *s/ Kurt M. Rozelsky*
Kurt M. Rozelsky (Fed I.D. No. 6299)
krozelsky@spencerfane.com
SPENCER FANE LLP
27 Cleveland St., Suite 201
Greenville, SC 29601
(864) 695-5200

*ATTORNEYS FOR DEFENDANT BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT*