**In the United States District Court**
**District of South Carolina**
**Spartanburg Division**

| | | |
|---|---|---|
| Kelly Dawsey, | ) | |
| | ) | |
| | ) | **7:22-03738-TMC** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Bayerische Motoren Werke | ) | |
| Aktiengesellschaft and BMW | ) | |
| Manufacturing Co., LLC collectively | ) | |
| d/b/a "BMW Group," | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Motion for Fees and Expenses**

Brian P. Murphy, Bar No. 6770

Attorney for Plaintiff
Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400

**Table of Contents**

I.      Introduction..................................................................................................1

II.     Timing and Procedure ...............................................................................1

III.    Analysis ......................................................................................................2

    A.    Attorney Fees .......................................................................................2

        1.    Dawsey is the prevailing party.....................................................2

        2.    The three-step process for determining "reasonable fees"................3

            a.    Step One:  Application of the *Barber* factors..............................4

                1)    Time and labor expended.......................................................7

                2)    Novelty and difficulty of the questions raised.....................12

                3)    Skill required to properly perform the legal services rendered
                      ...........................................................................................13

                4)    Attorney's opportunity costs in pressing the instant litigation
                      ...........................................................................................13

                5)    Customary fee for like work ................................................15

                    a)      Hourly rates charged by Dawsey's counsel........15

                    b)      Other evidence of market rates .........................16

                6)    Attorney's expectations at the outset of the litigation..........17

                7)    Time limitations imposed by the client or circumstances....18

                8)    Amount in controversy and the results obtained.................19

                9)    Experience, reputation, and ability of the attorney..............19

                10)   Undesirability of the case within the legal community in
                      which the suit arose.........................................................22

                11)   Nature and length of the professional relationship between
                      attorney and client..........................................................23

                12)   Attorneys' fees awards in similar cases.............................24

            b.    Step Two: Hours spent on unrelated claims .............................24

            c.    Step Three: Adjustment for degree of success..........................29

    B.    Costs and litigation expenses..................................................................30

    C.    Prejudgment Interest ..............................................................................32

IV.        Conclusion.......................................................................................................... 32

V.         Verification 28 U.S.C. § 1746 ........................................................................ 32

## I.    Introduction

Plaintiff, Kelly Dawsey, moves for an award of fees, expenses, and costs pursuant to Federal Rule 54(d)(2), Local Rule 54.02-.03, and 42 U.S.C. §§ 12205, 12117.  Dawsey requests that the Court amend the Judgment to add the following in addition to amounts substantiated in forthcoming amendments after the parties have completed work on post-trial motions:

| | |
|---|---|
| Attorney Fees: | $ 385,800 |
| Litigation Costs and Expenses: | $ 24,159.49 |
| Total to date: | $ 409,959.49 |

## II.  Timing and Procedure

Dawsey submits this Motion now to comply with the timing requirements of Rule 54(d)(2)(B)(i) to the extent applicable.  [*See infra* n. 29].  There will be additional time spent while this matter is pending before this Court, including preparation for an participation in the damages hearing set for March 13 and responses to post-trial motions.

Dawsey submits that the Court should rule on this Motion after Dawsey supplements this Motion with the remaining work to be concluded after all post-trial motions.  *See Duerr v. Richland Cnty*, 3:22-cv-00111-SAL, ECF 151, at 2 (D.S.C. Jan 20, 2026) (finding that the Court should rule on attorney fee petitions even while an appeal is pending) (citing Fed. R. Civ. P. 54(d)(2), adv. cmt. note to 1993 amendment and *Langham-Hill Petroleum, Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1331 (4th Cir. 1987)).

1

### III.  Analysis

### A.     Attorney Fees

Section 7(k) of Title VII provides for an award of reasonable attorneys' fees to prevailing parties. 42 U.S.C. § 2000e-5(k). "Prevailing plaintiffs in Title VII actions ordinarily are entitled to attorneys' fees unless special circumstances militate against such an award." *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012) (citing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417 (1978)).[1]

### 1.     Dawsey is the prevailing party

"The term 'prevailing party' is a legal term of art that [courts] interpret consistently across all federal fee-shifting statutes." *Reyazuddin v. Montgomery Cnty.,* 988 F.3d 794, 796 (4th *Cir. 2021)* (citing *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002)). [2]  A plaintiff prevails when receiving "some relief on the merits of h[er] claim."

---

[1]     *Abdelhalim v. Lewis*, 90 F.4th 265, 271 (4th Cir. 2024) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978)) ("Where the plaintiff is the prevailing party, she should typically be awarded fees in the normal course."); *Reyazuddin v. Montgomery Cnty.,* 988 F.3d 794, 796 (4th *Cir. 2021)* ; *Blanchard v. Bergeron,* 489 U.S. 87, 89 n.1 (1989) ("[T]he prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'") (quoting *Newman v. Piggie Park Enters.,* 390 U.S. 400, 402 (1968) and citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir. 1995) (citing *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 174 (4th Cir.1994)).

[2]     This Motion cites authority under various fee-shifting statutes.  The same standard of reasonableness is "generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party."  *Hensley*, 461 U.S. at 433 n. 7; *EEOC v. Correct Care Sols.*, 3:15-cv-4655-MGL-TER, 2017 U.S. Dist. LEXIS 106880, at *4 n. 2 (D.S.C. June 23, 2017) (citing *Small v. Dellis*, No. 99-1068, 2000 U.S. App. LEXIS 7739, at *5 (4th Cir. Apr. 25, 2000)).

*Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 792 (1989) (quoting

*Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).  Because Dawsey proved intentional

discriminated based on national origin, there can be no question that she is a prevailing

party.[3]

The next issue is what is reasonable in terms of fees and expenses.

### 2.     The three-step process for determining "reasonable fees"

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to

undertake the representation of a meritorious civil rights case."  *Perdue v. Kenny A. ex*

*rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted).

> The purpose of awarding fees is to encourage attorneys to prosecute cases
> that vindicate the objectives of [the civil rights acts] though they might be
> economically unattractive under a contingency fee arrangement.  *See Daly*
> *v. Hill*, 790 F.2d 1071, 1076-77 (4th Cir.1986) (analyzing 42 U.S.C. §

---

[3]     Winning a single issue justifies fees and expenses.  *Farrar v. Hobby,* 506 U.S. 103, 112–13 (1992) ("A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit."); *Hensley*, 461 U.S. at 433; *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 603 (2001)* (adopting the Black's Law Dictionary definition of "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded."), *cited and quoted in Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653 (4th Cir. 2002).  "The plaintiff need not achieve his 'central' goal to prevail" as long as "'the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought.'"  *Stinnie v. Holcomb*, 77 F.4th 200, 206 (4th Cir. 2023) (quoting *Garland Indep. Sch. Dist.*, 489 U.S. at 791-92); *see also Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (quoting *Farrar*, 506 U.S. at 111-12); *see, e.g., Timpson v. Haley,* No. 6:16-cv-1174-DCC, 2018 U.S. Dist. LEXIS 10488, at *3–4 (D.S.C. Jan. 23, 2018); *Buie v. Charter Communs.*, No. 6:17-cv-03007-DCC, 2021 U.S. Dist. LEXIS 181628, at *1 (D.S.C. June 9, 2021) (finding that the plaintiff was a prevailing party where she won her ADA claim, but lost on her FMLA claim); *Glidewell v. City of Greenville,* 6:09-01932-JMC, 2012 U.S. Dist. LEXIS 37681, at *8–9 (D.S.C. Mar. 20, 2012).

1988).  Fees should be high enough to encourage attorneys to take cases without awarding windfalls. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir.1995).

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir. 2002).

This and other courts review fee petitions with "a three-step process."  *Carter v. Ascend Performance Materials Holdings*, 8:20-cv-04379-TMC, ECF 231 at 2 (D.S.C. Oct. 30, 2024).

> First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.* at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

*McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), cited in *Jones v. Southpeak Interactive Corp.,* 777 F.3d 658, 675–76 (4th Cir. 2015); *Carter*, ECF 231 at 2 (quoting *Hudson v. Pittsylvania Cnty.*, 774 F.3d 231, 237 (4th Cir. 2014)).

Both the Fourth Circuit and this Court have long used the *Johnson* factors. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978); *see also* Local Civil Rule 54.02(A) (D.S.C).

### a.     Step One:  Application of the *Barber* factors

The starting point for a fee award is to determine a lodestar.  "[T]he lodestar method yields a fee that is presumptively sufficient."  *Perdue, 559 U.S. at 552* ; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *City of Burlington v. Dague*, 505 U.S. 557, 562

(1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.")

The lodestar has two elements. "[A] court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit requires that a district court consult and comment on the *Barber* factors. *See Robinson, 560 F.3d at 243.* (citations omitted); *cf.* Local Civil Rule 54.02(A) (D.S.C.) (directing that the moving party address the factors).

The *Barber* factors are:

(1)     the time and labor expended;

(2)     the novelty and difficulty of the questions raised;

(3)     the skill required to properly perform the legal services rendered;

(4)     the attorney's opportunity costs in pressing the instant litigation;

(5)     the customary fee for like work;

(6)     the attorney's expectations at the outset of the litigation;

(7)     the time limitations imposed by the client or circumstances;

(8)     the amount in controversy and the results obtained;

(9)     the expertise, reputation, and ability of the attorney;

(10)    the undesirability of the case within the legal community in which the suit arose;

(11)    the nature and length of the professional relationship between attorney and client; and

(12)    attorney's fee awards in similar cases.

*Barber, 577 F.2d at 226* ; *EEOC v. Service News Co.*, 898 F.2d 958, 964 (4th Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  These factors are not "exhaustive of the considerations which should guide courts." *Arnold v. Burger King Corp.,* 719 F.2d 63, 67–68 (4th Cir. 1983).  Likewise, it is unnecessary "to strictly apply the factors in every case since all of the factors are not always applicable." *McClaran v. Carolina Ale House Operating Co., 2015* U.S. Dist. LEXIS 112985, *7 (D.S.C. Aug. 26, 2015) (citing *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (finding that factors 3, 4, 6, 7, 9, and 10 did not apply)).[4]  In other words, the Court is not required "to go through the inquiry of those factors that do not fit." *Bergstrom v. Dalkon Shield Claimants Tr. (In re A. H. Robins Co.)*, 86 F.3d 364, 376 (4th Cir. 1996) (citing *Service News Co.*, 898 F.2d at 965).

"'[T]he district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Daly v. Hill,* 790 F.2d 1071, 1078–79 (4th Cir.1986) (quoting *Hensley*, 461 U.S. at 437); *Ballard v. Schweiker*, 724 F.2d 1094, 1098 (4th Cir. 1984) ("It is important that the district

---

[4]    *E.g., McCurley v. Flowers Foods, Inc.,* 5:16-cv-00194-JMC, 2018 U.S. Dist. LEXIS 226234, at *7–8 (D.S.C. Sep. 10, 2018) (citing *Arnold*); *Super Duper, Inc. v. Mattel, Inc.*, No. 6:05-1700-HFF, 2009 U.S. Dist. LEXIS 29356, at *7 (D.S.C. Mar. 31, 2009) (citing *Service News*); *All Am. Title Loans, Inc. v. Title Cash of S.C., Inc.,* 3:05-1280-CMC, 2007 U.S. Dist. LEXIS 36431, at *15 (D.S.C. May 17, 2007) (same).

court remain primarily responsible for resolving fee disputes, because it is in the better position to evaluate the quality and value of the attorney's efforts.")

Finally, the Court need not micro-analyze every question raised when a non-prevailing party attempts to flyspeck a fee petition.  "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

### 1)      Time and labor expended

The Court should award fees for the entire representation.  This includes time spent handling prior administrative proceedings,[5] conferring with the client,[6] and on post-trial motions,[7] including attorney fee and other post-trial motions.[8]  "The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717; *E.g., Riverside v. Rivera,* 477 U.S. 561, 573 n.6 (1986); *Daly*, 790 F.2d at 1079 (quoting *Ballard*).

---

[5]      *Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986) ("Fees for services performed at the administrative level are clearly available if the plaintiff eventually prevails.") (citing *N.Y. Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980)); *see also Tinsley v. City of Charlotte*, 397 F. Supp. 3d 803, 807 (W.D.N.C. 2019).

[6]      *Daly*, 790 F.2d at 1079.

[7]      *Jardien v. Winston Network*, 888 F.2d 1151 (7th Cir. 1989).

[8]      *Sky Cable, LLC v. DirecTV, Inc.*, 23 F.4th 313, 318 (4th Cir. 2022); *Mercer v. Duke Univ.,* 401 F.3d 199, 202 n.3 (4th Cir. 1999) (quoting *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir.1995)); *Daly*, 790 F.2d at 1080; *see, e.g., Summers v. Adams,* 3:08-2265-CMC, 2010 WL 2179571  (D.S.C. May 26, 2010) (awarding almost 78 hours for preparation of fee petition); *Hymes v. Harnett Cnty. Bd. of Educ., 664 F.2d 410, 413 (4th Cir. 1981)* .

7

The parties engaged in extensive discovery.  There were twelve depositions in this case,[9] all of which were used either at trial or at the summary judgment stage.  There were several rounds of written discovery and third-party subpoenas.  Plaintiff submitted three sets of discovery to BMW AG (five requests to admit, nine interrogatories, and thirty-seven specific requests to admit) and three sets to BMW MC (twenty-three interrogatories and 104 specific requests to produce).  Dawsey also responded to sixteen interrogatories and twenty-six requests to produce from BMW, and she produced almost 2900 pages of responsive documents.  [Murphy Decl. ¶ 24 (Exh. 1)].

Such in-depth discovery is essential to winning because, as this case illustrates, defendants often create new theories and narratives at trial.  For example, BMW counsel questioned both Dawsey and McCraw about the TX-61 JFDS to create the narrative that Dawsey downgraded the function level of Corey Epps's position a month after BMW informed Dawsey that she was being removed from her job and demoted to TX-64.  [*See* Pl. Exh. 29].  McCraw doubled down on the new theory that the date on the JFDS proved that the change from FL III to FL IV occurred on October 24, 2021.[10]  Dawsey conducted

---

[9]      (1) Kelly Dawsey; (2) Clarence "Eddie" Bailey; (3) Eva Burgmeier; (4) Robert Engelhorn; (5) Corey Epps; (6) John E. Gibson, Jr.; (7) Neal Gilmore; (8)  Kathy Keiser; (9) Sherry McCraw; (10) Scott Medley (11) Sherrill Miller; and (12) Christina Petrasch.

[10]      Dawsey correctly testified that the JFDS date simply showed that the Function Level was a IV as of that date, but that the date did not necessarily show when the function level change occurred.  She added that, to answer that question, she would need to see the underlying SAP data.

8

detailed on the data, and it is fortunate that she did so.  The SAP data proved that BMW's latest story was fiction.  BMW changed TX-61 from FL III to FL IV was made the prior December.  [Pl. Trial Exh. 47,  p. 2].  McCraw (and anyone else with SAP access or a copy of Plaintiff's exhibits) had access to this data.  This is why plaintiffs must conduct comprehensive discovery on even underlying data.  You never know what they will throw at you in trial.

Dawsey prevailed on all four dispositive motions: Two motions to dismiss from BMW AG and two summary judgment motions from BMW MC and BMW AG.[11] This resulted in 141 pages of briefs on behalf of Dawsey, with 77 exhibits, for these motions alone.[12]

---

[11]     ECF 14 (BMW AG Motion to Dismiss, mooted by ECF 20), ECF 42 (BMW AG Motion to Dismiss Amended Complaint), ECF 92 (BMW MC Motion Summary Judgment), and ECF 102 (BMW AG Motion for Summary Judgment).

[12]     BMW AG"s Motion to Dismiss Plaintiff's Amended Complaint [ECF 42] required fifty pages of briefing by Dawsey and twelve exhibits.  [*See* ECF 69 (fifteen page reply to BMW AG objections [ECF 68] to Report and Recommendation [ECF 65]; ECF 45 and 59 (twenty-five page brief with 11 exhibits in opposition to BMW AG Motion to Dismiss [ECF 42] and ten page supplement with Engelhorn testimony included)].

BMW MC's Motion for Summary Judgment [ECF 92] required Dawsey to submit fifty-six pages of briefing and forty-two exhibits.  [*See* ECF 97 (thirty-four pages of briefs with thirty-nine exhibits); ECF 107 (*Muldrow* supplemental authority filing); ECF 110 (five page brief with two exhibits discussing application of *Muldrow*); ECF 115 (twenty-one page objections to Report and Recommendation [ECF 113]).

BMW AG's Motion for Summary Judgment [ECF 102] required Dawsey to submit thirty-five pages of briefing with twenty-three exhibits.  [ECF 104].  Dawsey objected to the Report and Recommendation, and those efforts are included in the briefing discussed above as to BMW MC.

Dawsey also prevailed on most of the motions in limine, which also required extensive work. BMW filed five motions. Two were fully resolved by the agreement to have this Court address economic damages. [See ECF 186, resolving ECF 156 (Daubert Motion on Plaintiff's expert) and ECF 155 (Motion re testimony that Dawsey was "forced" to resign)]. One motion was partially resolved on this basis. [ECF 182, 184 (resolving part of ECF 153)]. Plaintiff prevailed on all contested aspects of BMW's motions. [ECF 185 (denying BMW Motion re Expat guidelines [ECF 154]); ECF 184 (denying disputed aspects of ECF 153 related to evidence of compensatory damages and punitive damages and trial bifurcation of liability and punitive damages); ECF 180 (denying ECF 157 regarding statements made by Petrasch)]. The Court also granted in part and denied in part Plaintiff's Motion in Limine regarding statements made about the naming of the Courthouse [ECF 202]. [See ECF 204]. At trial, the Court sustained Dawsey's hearsay objection when BMW tried to offer this evidence through McCraw. The Court denied Dawsey's Motion re disparagement not related to the decisions at issue [ECF 152]. [See ECF 179]. After briefing the issues, however, BMW did not seek to introduce the subject testimony from either Medley or Burgmeier.

The Undersigned expended significant time on other motions that were necessary to the case. [*See* ECF 88 (three page opposition to BMW AG Motion to Extend time for Summary Judgment [ECF 87], which the Court granted [ECF 89]); ECF 81 (three page motion with two exhibits seeking a protective order, which the Court denied [ECF 82]; ECF 73 and 76 (nine page motion with three exhibits to compel responses from BMW AG

and fifteen page reply with one exhibit, which the Court granted in part [ECF 78]); ); ECF 57 and 62 (4 page motion with two exhibits to compel discovery and two page reply, which the parties resolved [ECF 70-71]); ECF 49 (7 page opposition to BMW Motion to Stay Discovery, which the Court denied [ECF 54]); ECF 24 (3 page Motion to Stay, which the Court granted [ECF 25]).

Dawsey seeks compensation of 771.6 hours for the time spent to date by counsel. [Murphy Decl. ¶ 22 & Exh. 2; *see* Arnold Decl. ¶ 14 (Exh. 4); Thompson Decl. ¶ 8 (Exh. 6)]. For a case tried on the merits, this number is substantially lower than the hours approved for a nonjury trial the Undersigned had in this District. *Buie v. Charter Communs.*, No. 6:17-cv-03007-DCC, 2021 U.S. Dist. LEXIS 181628, at *9 (D.S.C. June 9, 2021) (860 hours found reasonable in a nonjury case).

If BMW challenges the reasonableness of the Undersigned's time, it should produce its own time entries for all attorneys. *Stastny v. S. Bell Tel. & Tel. Co.*, 77 F.R.D. 662, 663 (W.D.N.C. 1978); *see Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 U.S. Dist. LEXIS 78202, at ** 6-8 (E.D. Tenn. May 9, 2019) (collecting cases involving private parties). BMW found it reasonable to pay multiple attorneys for every hour the parties spent in a hearing, court conference call, or trial. At trial, BMW huddled with no less than

11

seven lawyers present (and that was *after* the Morgan Lewis attorneys withdrew).[13]  [*See* Dunlaevy Decl. ¶ 16 (Exh. 5)].

### 2)     Novelty and difficulty of the questions raised

Several issues and arguments posed in this case were challenging to present to the jury.  The jury needed to understand the relationship between three complex and interrelated concepts: (1) the differences between positions known as TX-60, -61, and 64; (2) the concept of function levels and how they are supposed to be treated vs. how they were treated; and (3) the concept of personal grades and how they related to the function levels under the policy versus how BMW treated them.

Compounding the complexity was BMW's outright denial of gradings, which caused great confusion.  For example, BMW maintained that TX-64 was never graded as a FL IV, which took considerable time and testimony to debunk, including cross-examination of McCraw, who tried to contradict statements made in a Petrasch email by "translating" the chain for the jury.  [*See also* Pl. Exh. 41, 49-50].  Discerning and refuting new claims, including the allegation that Dawsey changed function levels for purposes of litigation, also posed a challenge as the Undersigned had to both define and solidify the allegation and then walk the jury through the documents that dispelled it.

---

[13]     Throughout the trial, BMW had four lawyers of record at the table, plus two current inhouse and one retired inhouse attorney present at all times and obviously participating and providing input and feedback during the trial.

And the biggest challenge was in trying to prevent the avalanche of distractions, defenses, and tangential issues from lessening the impact of the core evidence of discrimination.  This was a long trial, full of stories about rowing championships, picnics, and claims that other people were not discriminated against.  BMW witnesses testified for most of the trial, and they spent more time on these issues and in attacking Dawsey than they did on the Expat Guidelines or Petrasch's statements about the adverse employment decisions.  It was a challenge to keep the evidence of national origin discrimination front and center and to unravel and expose BMW's denials and deflections.

### 3) Skill required to properly perform the legal services rendered

The *Johnson* Court advised:

> The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration.

*Johns*on, 488 F.2d at 718.

Ultimately, this factor is one for the Court's determination.  Undersigned's work product appears to have, at least at times, met the Court's expectations given the number of favorable rulings.  The Undersigned respectfully submits that this factor also should weigh in favor of a full recovery of fees.  *See Carter*, ECF 231, at 4.

### 4) Attorney's opportunity costs in pressing the instant litigation

*Barber* and *Johnson* recognize the need of a plaintiff's counsel to forgo other work when consumed with activities on a single case:

13

> This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney the time spent on the client's behalf for other purposes.

*Johnson*, 488 F.2d at 718.

Opportunity costs include work for fee-paying clients, consultations that could result in new work (and that also, at times, generate fees), and other matters that might have been settled expeditiously. [Murphy Decl. ¶ 21]. The time devoted to this case further required that the Undersigned decline or defer attention to consultations with new clients and other contingency cases. This results in a loss of other opportunities, or, at a minimum, it further delays a recovery for those matters.[14] *Banks v. Allied Crawford Greenville, Inc.*, 2011 U.S. Dist. LEXIS 63105, *5 (D.S.C. June 13, 2011); *DeWitt v. Darlington Cnty.,* 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *32 (D.S.C. Dec. 6, 2013). The Undersigned has advanced all expenses as he typically must do with his plaintiff clientele. [Murphy Decl. ¶ 22]. Where, as here, one lawyer represents a plaintiff, this factor should weigh heavily in favor of a full recovery of fees. *See Carter*, ECF 231 at 4.

---

[14]    Most of the Undersigned's work is contingency-based, plaintiff-side litigation. Every day spent out of the office on one matter is a day that could be spent in consultations to find new matters. The impact of that choice often does not appear on the books until years later.

### 5)     Customary fee for like work

Determining a market rate is critical to finding a reasonable hourly rate. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010) (citing and quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

Dawsey seeks $500 per hour for the work performed to date by the Undersigned. [Murphy Decl. ¶¶ 16-17].  As discussed below, courts typically look at both what the attorney charges and at other evidence of market rates.  This includes reviewing affidavits of counsel experienced in the market.  Both considerations support the hourly rate requested.

### a)  Hourly rates charged by Dawsey's counsel[15]

A key factor in determining reasonableness is what the attorney charges other clients by the hour. *Ellington v. Hayward Baker, Inc.*, No. 2:18-cv-3436-DCN, 2019 U.S. Dist. LEXIS 146139, at *9 (D.S.C. Aug. 28, 2019) (citing and quoting *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007)); *Miller v. HSBC Fin. Corp.*, No. 3:08-cv-01942-MJP, 2010 U.S. Dist. LEXIS 68339, at *6 (D.S.C. June 9, 2010) ("The fact Plaintiff seeks actual billing rates used for all clients strongly favors a finding the rates per

---

[15]     The contingency fee that could be earned is not a consideration, and not a cap, as to what constitutes a reasonable fee in these cases. *Blanchard v. Bergeron*, 489 U.S. 87 (1989) (fees to be awarded not capped by contingency rate in a fee agreement); *see also Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988) (same).  At the same time, a contingency fee arrangement is not the basis for enhancing the lodestar analysis. *City of Burlington v. Dague*, 505 U.S. 557 (1992).

15

se reasonable.") (citing *Liberty Mut. v. Emp. Res. Mgmt., Inc., 176 F. Supp. 2d 510* (D.S.C.2001) ).

The $500 sought here had been in effect for new matters since the beginning of this year (and at the time of the verdict).  [Murphy Decl. ¶ 17].  This represents the market rate for the Undersigned.  [Arnold Decl. ¶ 17; Dunlaevy Decl. ¶ 19; Thompson Decl. ¶ 9].

The awarded hourly rate should typically reflect prevailing or actual rates **at the time of the award**, and not the rates in effect when the attorney performed the services. *Daly*, 790 F.2d at 1081 (reversing a trial court's award of fees based on rates when the attorney performed the services); *Hensley*, 461 U.S. at 448-49.[16]

### b) Other evidence of market rates

A key factor in determining the rate is evidence of prevailing market rates. *Ellington*, 2019 U.S. Dist. LEXIS 146139, at *9 (quoting *Depaoli*, 489 F.3d at 622).  The Undersigned's peers affirm that the rate sought here is reasonable for this market.  [*See* Arnold Decl. ¶ 15; Thompson Decl. ¶ 6].

---

[16]     *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) (approving application of current market rates because, "[a]n adjustment for delay in payment is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee . . . ."); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987) ("When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later, as in this case. Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.").

16

The requested rate is also supported by cases, especially when placed in the context of time and the relative experience of the attorneys involved. *E.g., Black v. Mantei & Assocs. Civ. Action No. 3:23-04149-MGL*, 2024 U.S. Dist. LEXIS 70943, at *7 (D.S.C. Apr. 18, 2024) (noting that rates of $600-$700 for senior litigators was market rate in 2024); *Duerr v. Richland County*, 3:22-cv-00111-SAL, ECF 151, at 6-8 (D.S.C. Jan 20, 2026) (finding that $450 reasonable for plaintiff employment attorney with approximately 11 years of experience); *EEOC v. Fluor Fed. Glob. Projects, Inc., Civ. Action No. 6:22-cv-1960-HMH-KFM*, 2023 U.S. Dist. LEXIS 216513, at *8 n.1 (D.S.C. Sep. 14, 2023) (accepting the representation that $450 per hour reflected the hourly rate in 2023 charged by experienced labor and employment law practitioners representing employers in the Greenville, South Carolina market); *Cf. Nutramax Labs., Inc. v. Manna Pro Prods., LLC, Civ. Action No. 0:16-cv-01255-JMC*, 2017 U.S. Dist. LEXIS 210129, at *9 (D.S.C. Dec. 21, 2017) (determining – over eight years ago – that experienced commercial litigator rates range from $475 to $535 per hour).[17]

### 6)    Attorney's expectations at the outset of the litigation

At the beginning of a plaintiff's employment case, there is no way to tell how it will come out.   Each case these days draws multiple defense lawyers who, with full access to witnesses and documents, make every conceivable argument.   At most points in this

---

[17]    Adjusted for the rate of growth in the industry, the amount requested is less than these awards.  [See Murphy Decl. ¶ 17 & n. 3].

17

case, the Undersigned faced off against *seven* known attorneys of record (plus an unknown number of others providing support).[18]  [*See* Dunlaevy Decl. ¶ 16].

Even the most experienced plaintiff's lawyer struggles to assess whether, for example, the plaintiff has the stamina to stick it out for four years or more.  One must also try to predict whether a potential plaintiff can effectively convey his or her story to a jury, or whether he or she can endure cross-examination by an experienced litigator.  It also is difficult to predict an outcome because the plaintiff side is at the mercy of the defendant to produce evidence.  [*Id.* ¶ 18].  And, of course, one must assess a clients' veracity to predict whether they are leaving out key facts or are vulnerable to an after-acquired evidence attack.  These cases can go bad in many ways.

At the same time, this case appeared to be very strong from the start.  Dawsey's credibility was never reasonably in doubt (although BMW attacked it at trial).  The direct evidence and corroborating evidence all pointed to intentional discrimination based on national origin.  In all candor, this case was no crapshoot at the outset.  So this element does not factor in much to the analysis.  *See Carter*, ECF 231 at 5.

### 7)    Time limitations imposed by the client or circumstances

"Priority work that delays the lawyer's other legal work is entitled to some premium."  *Johnson*, 488 F.2d at 718.  Because the Undersigned worked alone [Murphy

---

[18]    It is now common for defendants in single-employee cases before this Court to use four to seven attorneys (from different states).  *E.g., Smith v. BASF Corporation*, 6:23-cv-03328-TMC-KDW (Miami, Chicago, Newark, and Greenville attorneys for a single plaintiff v. defendant case out of Seneca).

18

Decl. ¶ 20], it appears that any issues that might pertain here are subsumed by factor number 4.  *See Super Duper*, 2009 U.S. Dist. LEXIS 29356, at *12.

### 8)   Amount in controversy and the results obtained

"The most critical factor in calculating a reasonable fee award is the degree of success."  *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (citing *Hensley*, 461 U.S. at 436); *Farrar v. Hobby,* 506 U.S. 103, 114–15 (1992).

> The Supreme Court has recognized that the "most critical factor" in determining a reasonable fee is the degree of success obtained by the plaintiff. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "When considering the extent of the relief obtained, we must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005). However, courts should not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall," *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007), nor should courts reduce a fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit," *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015) (internal quotation marks omitted). Ultimately, "the court must ask . . . whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *McAfee [v. Bozar]*, 738 F.3d [81,] 92 [(4th Cir. 2013)] (alterations and internal quotation marks omitted).

*Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 231 (4th Cir. 2017).

This "most critical factor" supports a full fee.  As discussed below, the jury's verdict appears to be the largest Title VII verdict in South Carolina.  [*See infra* § II(A)(2)(c) (discussing the third step of the degree of success); Arnold Decl. ¶ 18].

### 9)   Experience, reputation, and ability of the attorney

"An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience."  *Johnson*,

19

488 F.2d at 718-19.  Various judges have commented on the Undersigned's reputation and ability.  *See, e.g.,* Carter, ECF 231 at 6 ("In addition to the aforementioned affidavits . . . from fellow labor and employment law practitioners, multiple judges, including the undersigned, have commented favorably on Plaintiff's counsel's experience, reputation, and ability"); *Buie v. Charter Comms.,* 2021 U.S. Dist. LEXIS 181628 (D.S.C. June 9, 2021 ("Plaintiff's counsel has recognized expertise in the field of employment law, is an experienced litigator and mediator, and enjoys an outstanding reputation both professionally and ethically."); *Styles v. Southeastern Grocers, LLC*, 8:19-cv-3451-DCC, 2019 U.S. Dist. LEXIS 220409, at *5 (D.S.C. Dec. 23, 2019) (referring to counsel as "an experienced and reputable member of the Bar"); *Mullinax v. Parker Sewer & Fire Subdistrict*, 6:12-cv-01405-TMC, 2014 U.S. Dist. LEXIS 199340, at *6 (D.S.C. Mar. 11, 2014) (referring to the Undersigned as "an experienced and well-respected mediator and employment law practitioner"); *Banks*, 2011 U.S. Dist. LEXIS 63105, *7 ("It is undisputed that Mr. Murphy and Mr. Nichols are both experienced litigators and enjoy a strong reputation in the community.")

Several colleagues have also weighed in on this point.  [Arnold Decl. ¶ 4, 12; Thompson Decl. ¶ 7; Dunlaevy Decl. ¶¶ 15, 17].  The Undersigned's colleagues on both sides have voted to include him in peer-nominated recognitions (*e.g.*, SuperLawyers, Best Lawyers in America, Best Lawyers – Judicial Edition, and Legal Elite of the Upstate).  He has maintained an AV rating from Martindale Hubbell since his first rating in 1998.  [Murphy Decl. ¶ 7].  He also is a member of the Haynsworth-Perry Inn of Court

20

and has served on its board.    [*Id.* ¶ 8].   He graduated, *cum laude*, in 1992 from the University of South Carolina School of Law, where he was associate editor-in-chief of the Law Review, Order of the Coif, Order of Wig and Robe, and a student member of the John Belton O'Neall Inn of Court.  [*Id.* ¶ 4].  He has practiced labor and employment law his entire career, starting with two defense firms (Morgan, Lewis and Bockius and Ogletree, Deakins).  [*Id.* ¶ 5].  Before law school, the Undersigned obtained a Labor Studies degree from Penn State and worked in employee relations after graduation.  [*Id.* ¶¶ 2-3].  In short, the Undersigned has devoted his professional life to employment issues since he was an undergraduate student.  [*See also id.* ¶¶ 11-12].

This case represents the Undersigned's twenty-first civil trial, twenty of which are labor and employment matters, and eighteen of which are jury trials in South Carolina. Of these twenty-one trials (including the bench trials), the Undersigned's clients have prevailed in all but one case—a directed verdict entered over twenty-five years ago on "pretext plus" grounds.   [*Id.* ¶ 13].   In other words, the Undersigned's clients have prevailed on every case fully tried on the merits.  [*Id.*]

The Undersigned has appeared in 254 cases in this District alone, and even more than that number in South Carolina state courts.  [*Id.* ¶ 14].  Of all these cases in South Carolina over the last 30 years,[19] the Undersigned's clients have lost less than a handful of times on the merits.  [*Id.* ¶¶ 14-15].

---

[19]    The Undersigned initially practiced in Pennsylvania.

The Undersigned is unaware of any attorney (plaintiff or defense) who has tried more employment cases in this District.  [*Id.* ¶ 25].

**10)     Undesirability of the case within the legal community in which the suit arose**

Most lawyers, including those that have dabbled in employment law, conclude that the juice is not worth the squeeze.  Employment law ranks on the lower end of the spectrum in terms of desirability.[20]   *Carter*, ECF 231 at 6-7.  As Judge Childs has repeatedly recognized, this reality affects access to justice across the country:

> The risk of non-recovery in a case involving discrimination and harassment makes it an undesirable undertaking for many attorneys. Courts across the country have recognized the dearth of lawyers willing to represent plaintiffs in employment and civil rights cases. *See Lattimore v. Oman Contr.*, 868 F.2d 437, 439 (11th Cir. 1989); *see also Stokes v. City of Montgomery, Ala.*, 706 F. Supp. 811, 817 (M.D. Ala. 1988); and *Caston v. Sears, Roebuck & Co., Hattiesburg, Miss.*, 556 F.2d 1305, 1309 (1977).

*Saulsberry v. Savannah River Remediation, LLC, Civ. A. No. 1:16-cv-02792-JMC*, 2020 U.S. Dist. LEXIS 269018, at *12 (D.S.C. May 29, 2020); *Banks v. Allied Crawford Greenville, Inc.*, 2011 U.S. Dist. LEXIS 63105, *7 (D.S.C. June 13, 2011).

---

[20]     Employment law deals not only with a host of federal statutes (e.g., Title VII, Section 1981, ADA, ADEA, FMLA, ERISA, FLSA) but state laws as well.  Unlike other areas of the law, many different events can give rise to liability, each with its own unique body of law (*e.g.*, failure to hire, promote, hostile environment, pay, discipline, termination).  Every case presents unique facts.  Almost every employment case is defended by multiple employment law specialists.  There is no "form book" that can assist a practitioner evaluate, plead, conduct discovery, or litigate an employment matter.  It takes a lot of study and experience.  Dabblers get crushed in this area, and they often learn the complexities of handling these cases when they find themselves on the losing end of a summary judgment motion.

Chief Judge Harwell has observed:

> [E]mployment cases do not appear to be eagerly sought out by the majority of the plaintiffs' bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved. . . . [O]btaining counsel would be extremely difficult were it not for the statutory provisions for attorney's fees and costs for prevailing parties.

*DeWitt v. Darlington Cnty.,* 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *27–28 (D.S.C. Dec. 6, 2013).

Few attorneys in South Carolina take on representing individuals in employment cases as their sole, or even primary, means to make a living.  Defense lawyers get paid every month: win or lose.  And personal injury is a quicker buck.  Few lawyers commit to fronting tens of thousands in costs.  Nor are many attorneys willing to work 500-800 hours in the hopes that, if the stars all align, they might recoup costs and receive a reasonable fee years down the road.

Add to that the likelihood that this case could be far from over.  BMW will file post-trial motions.  It will also likely appeal because, to date, it has shown no willingness to accept the jury's verdict.  And its lawyers will continue to bill and collect every month. This case is likely far from over and will keep the Undersigned from working on other matters.  This factor compels a full fee.

**11)     Nature and length of the professional relationship between attorney and client**

The Undersigned has worked with Dawsey since September 2021.  [Murphy Decl. ¶ 19].  Relationships on the plaintiff side are typically for one matter only.  Ms. Dawsey has never brought other employment cases.  She likely will never have another dispute

23

or need to resort to litigation.   Nor do plaintiff-side attorneys seek out clients that will generate repeat business.   This is not much of a factor in these cases.   *Carter*, ECF 231, at 7.

### 12)   Attorneys' fees awards in similar cases

As further proof of the perceived undesirability of these cases, there is little contemporary data against which the Court can compare the pending petition.   Two years ago, this Court awarded fees reflecting 522.2 hours of work.   *Carter*, ECF 231 at 7.   Five years ago, Judge Coggins awarded fees and found that 860 hours expended was reasonable.   *See Buie*, 2021 U.S. Dist. LEXIS 181628, at *9.[21]   Most recently, Judge Lydon approved 626.7 hours for two Columbia lawyers in a case involving only a summary judgment motion prior to trial and far fewer issues than this case.   *Duerr v. Richland Cnty.*, 3:22-cv-00111-SAL, ECF 151, at 4-5 (Jan. 20, 2026).

### b.   Step Two: Hours spent on unrelated claims

Non-prevailing defendants almost always argue for a reduction when the plaintiff does not prevail on every legal theory or every motion.   Both the Supreme Court and the

---

[21]     This case fits between *Carter* and *Buie*.   Counsel for Defendants in *Carter*, like those representing BMW, were cooperative and professional throughout.   *Buie* was a bloodbath.   At the same time, however, the issues here were more complex than *Carter*, and the amount of proof that Dawsey needed to amass to counter BMW's many defenses and assertions (e.g., the grading of TX-61 and TX-64).   So while BMW did not launch the inappropriate missives at issue in *Buie*, it has taken more time to address the merits than in *Carter*.

Fourth Circuit have rejected such arguments. *See Carter*, ECF 231, at 8-9 (citations omitted).

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435; *see id.* at 448 (Brennan, Marshall, Blackmun, Stevens, JJ., dissenting in part and concurring in part) (agreeing with majority on this proposition). Claims that "involve a common core of facts or will be based on related legal theories" make it too "difficult to divide the hours expended on a claim-by-claim basis." *Id*. at 435. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

In other words, "[f]ull compensation for hours expended does not require plaintiff to prevail on every claim. For example, where all claims are closely related because based on common facts or related legal theories, a court is not obligated to determine which hours were spent on which claims. A contrary rule would be unworkable, and would discourage innovative litigation." *Cooper v. Dyke,* 814 F.2d 941, 950–51 (4th Cir. 1987) (citing *Rivera*, 477 U.S. 561 (1986)). [22] Aside from being "unworkable," reducing time

---

[22]     *See also Tinsley v. City of Charlotte*, 397 F. Supp. 3d 803, 809 (W.D.N.C. 2019); *see also Randolph*, 715 F. App'x at 230 ("When 'all claims involve a common core of facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'") (quoting *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998)); *Banks v. Allied Crawford Greenville, Inc.*, 2011 U.S. Dist. LEXIS 63105, *6 (D.S.C. June 13, 2011).

based on the number of claims is reversible error. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1419 (4th Cir. 1992); *Abshire v. Walls,* 830 F.2d 1277, 1282–83 (4th Cir. 1987).

This rule exists because a "'lawsuit cannot be viewed as a series of discrete claims,' and rather than attempting to so parse the case, 'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 134 F.4th 265, 272 (4th Cir. 2025) (quoting *Hensley*, 461 U.S. at 435).

*Hensley* applies not only to related but unsuccessful claims, but also to unsuccessful motions:

> The Supreme Court's admonition in *Hensley* to evaluate success in light of the whole case applies not just to different claims, but also to counsel's work in different stages of the case. Generally speaking, "status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way." *Jenkins* [*by Jenkins v. Missouri*], 127 F.3d [709,] 714 [(8th Cir. 1997)]. Thus, the court should not simply deny fees for particular matters on which the plaintiff did not prevail. *Id.* at 717. Any award for time spent on matters on which a plaintiff lost, however, must be reasonable, considering "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Id.* at 718.

*Emery v. Hunt,* 272 F.3d 1042, 1047–48 (8th Cir. 2001).

26

In *Buie v. Charter Communs.*, No. 6:17-cv-03007-DCC, 2021 U.S. Dist. LEXIS 181628, at *12 (D.S.C. June 9, 2021),[23]  Judge Coggins noted that "'[l]awsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.'"  *Id.* (quoting *Cabrales v. Cnty. of L.A.,* 935 F.2d 1050, 1053 (9th Cir. 1991)); *accord Ashraf-Hassan v. Embassy of Fr. in the U.S.,* 189 F. Supp. 3d 48, 61 (D.D.C. 2016); *True the Vote, Inc. v. IRS, Civ. Action No. 13-734* (RBW), 2020 U.S. Dist. LEXIS 174429, at *33 (D.D.C. Sep. 23, 2020).

Moreover, BMW AG's presence in this case did not materially affect the amount of time conducting discovery or presenting the case at trial.  BMW AG named no witnesses.  Dawsey deposed nobody from Germany.  BMW AG called no witnesses at trial.  And it served no discovery.  As best as the Undersigned can recall, counsel for BMW AG asked no questions at depositions.  But the written discovery Dawsey conducted on BMW AG was critical.  The full picture of the national origin discrimination was revealed only

---

[23]     "[D]istrict courts in [the Fourth] [C]ircuit award fees for unsuccessful motions if the moving party was successful on the underlying claim and the motion advanced that claim in some permissible way."  *Carpet Super Mart, Inc. v. Benchmark Int'l Sales Specialist, LLC,* No. 1:18CV398, 2020 U.S. Dist. LEXIS 139107, at *33 (M.D.N.C. Aug. 5, 2020); *see id*. at ** 30-33 (collecting cases).

because Dawsey conducted discovery on BMW AG, as BMW MC disavowed what it could.[24]

Likewise, none of the witnesses deposed related solely to the race or sex discrimination claim. The only witness BMW could argue in this regard is Corey Epps. But Epps also was necessary to debunk BMW's argument that TX-64 was FL-IV and to corroborate Dawsey's testimony that there were only two FL III positions, which were traditionally TX-60 and TX-61.

It does not matter that Dawsey did not prevail on every legal theory or whether she received every dollar sought. *See also Super Duper*, 2009 U.S. Dist. LEXIS 29356, at *13. The degree of success element may be more important in a case where, for example, a verdict or award was equal to or less than what a defendant was willing to pay. In such a case, it might matter that a plaintiff put the court and its staff through trial and post-trial proceedings. BMW cannot make that argument. *See McAfee*, 738 F.3d at

---

[24]     One example is the key document regarding the real succession planning and how all candidates for TX-60 changed from American candidates to German candidates. [Pl Trial Exhibit 37, second page; see also Def. Exh. 43, second page]. At trial, Petrasch testified that Claudia Kopnik created the document. That became an issue after Petrasch's deposition where the same document appeared as Petrasch Dep. Exh. 1, second page and Petrasch Dep. Exh. 18. BMW MC denied knowing who created the document (even though BMW MC employed Petrasch at the time of the communications). [Exh. 7 (BMW response to Interrogatory 21)]. BMW AG admitted that Kopnik created the document. [Exh.8 (BMW AG response to Interrogatory 9)].

28

90-91 (quoting the trial judge comments "that failure to contemplate a settlement strategy 'makes for expensive litigation,' and the defendant must bear the consequences").[25]

### c.      Step Three: Adjustment for degree of success

The verdict appears to be the largest Title VII verdict in the history of South Carolina.   Given the caps under 42 U.S.C. § 1981a, the ultimate result will be the maximum result available for compensatory and punitive damages.

The maximum result possible merits a significant fee because fees are not reduced even when a party achieves only partial success. As Judge Coggins discussed in *Buie*:

> [A]t the third step, the court must consider the "degree of success enjoyed by the plaintiff." *Hudson*, 774 F.3d at 237. There is no "precise rule or formula" for determining a plaintiff's degree of success. *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 676 (4th Cir. 2015) (quoting Hensley, 461 U.S. at 436). The court "must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). E courts do not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (citations omitted). Where an attorney has obtained "excellent results," his fee should not be reduced "simply because the plaintiff failed to prevail on every contention." *Hensley*, 461 U.S. at 435. If, however, the plaintiff "has achieved only partial or limited success," a reduction of the fee award may be appropriate. Id. at 36.

*Buie*, 2021 U.S. Dist. LEXIS at *3-4.[26]

---

[25]      In *McAfee*, the Fourth Circuit took the rare step of reducing a trial court's attorney fee award.  While recognizing *Riverside*'s holding, the Fourth Circuit reduced an attorney fee to $100,000 on a $2,943.60 verdict where the plaintiff sought more than $500,000 plus punitive damages.

[26]      The relative size of the fee award and verdict is largely unrelated.  Although the amounts sought here are less than the verdict, it is both common and entirely

29

In *Jones*, the Fourth Circuit characterized a recovery of one-third as warranting a full recovery of attorney fees. *Id.* at 676-77 (quoting *Hensley* for the proposition that, "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.")[27]

## B.    Costs and litigation expenses

A prevailing party is entitled to reasonable litigation expenses, which are not limited to taxable costs. *Daly*, 790 F.2d at 1083-84.[28]  They encompass "out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client."   *Spell v.*

---

reasonable for a fee request to greatly *exceed* the damages obtained.  *Riverside*, 477 U.S. at 574 ("We reject the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers" and approving a fee award of $245,456, which was more than seven times the jury verdict of $33,350); *Cooper*, 814 F.2d at 951 (citing *Riverside*); *e.g.*, *Dennis*, 289 F.3d at 644 (back pay verdict of $31,302 in supported fee and costs award of $104,765.80); *W.S. v. Daniels,* 2019 U.S. Dist. LEXIS 183894, *18, 2019 WL 5448374 (D.S.C. Oct. 24, 2019) (approving fees approximately six times greater than the amount of verdict).

[27]    *Buie* is illustrative in that the plaintiff prevailed on only a portion of what she sought to prove in the case.  As noted by the defendant, Judge Coggins (in a bench trial) awarded about twenty percent of the recovery sought.  *Buie v. Charter Comms.*, 6:17-cv-03007-DCC ECF 228, at 7-8 (D.S.C. 4/21/2021).  The Court agreed to a point: "By any measure, Plaintiff's success here was limited. She prevailed on only one of her claims and her recovery was reduced by evidence of pre-existing emotional distress as well as her voluntary resignation from almost fully mitigating subsequent employment."  *Buie*, 2021 U.S. Dist. LEXIS 181628, at *10.  These factors, plus the Court's view that extensive interstate travel should not be billed at full rate, justified "a small percentage reduction." *Id.*  None of those factors are present here.

[28]    The standard for granting attorney's fees under Section 7(k) of Title VII is the same as the standard under 42 U.S.C. § 1988.  *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 n.10 (4th Cir. 1995) (citing *Hensley*, 461 U.S. at 433 n.7).

*McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (cleaned up).[29]  Examples of expenses under Title VII include mediator fees, meals, mileage, depositions, and printing. [30]

The expenses and costs total $ 24,159.49 as set forth in Exhibit 3.  [Murphy Decl. ¶ 22].

---

[29]     The Fourth Circuit has held that "[w]here attorneys' fees are expressly authorized by statute ... Rule 54(d) is no longer relevant. Instead, the question is whether the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses." *Wheeler v. Durham Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir.1978). "A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988) (internal quotation marks and citation omitted). Section 1988 permits recovery of expenses that are not compensable under Rule 54(e) because the statute "is intended to encourage [meritorious civil rights plaintiffs] to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers." *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir.1986); *see also Wheeler*, 585 F.2d at 624 ("Reimbursement of related litigation expenses would ... plainly further the congressional purpose ....").

[30]     *E.g., In re Allura Fiber Cement Siding Litig., Civ. A. No. 2:19-mn-02886-DCN*, 2021 U.S. Dist. LEXIS 96931, at *18 (D.S.C. May 21, 2021); *McCurley v. Flowers Foods, Inc., Civ. A. No. 5:16-cv-00194-JMC*, 2018 U.S. Dist. LEXIS 226234, at *9 (D.S.C. Sep. 10, 2018); *Reynolds v. Fid. Invs. Institutional Operations Co.*, No. 1:18-CV-423, 2020 U.S. Dist. LEXIS 2718, at *13 (M.D.N.C. Jan. 7, 2020); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013); *Wyatt v. Owens,* 7:14-cv-492, 2018 U.S. Dist. LEXIS 235871, at *50–51 (W.D. Va. Jan. 23, 2018). The term "expenses" also includes any deposition "when the taking of a deposition is reasonably necessary at the time of its taking." *La Vay Corp. v. Dominion Fed. Sav. & Loan Assoc.*, 830 F.2d 522, 528 (4th Cir. 1987).  It also includes statutory taxable costs, including transcript fees and fees for copying materials.  28 U.S.C. § 1920(2)–(3).

31

## C.     Prejudgment Interest

Dawsey does not seek prejudgment interest as to compensatory or punitive damages. *Gilliam v. Allen,* 62 F.4th 829, 847–48 (4th Cir. 2023). Dawsey intends to amend this request, however, if the Court awards economic damages.

## IV.  Conclusion

Dawsey asks this Court to amend the Judgment at this time to add $ 409,959.49 in fees, costs, expenses, and prejudgment interest at this time. Post-judgment interest should continue to run in accordance with Local Civ. Rule 54.02(B) (D.S.C.).

## V.  Verification 28 U.S.C. § 1746

I declare under penalty of perjury under the laws of the United States of America that the statements of fact in the foregoing are true and correct.

Respectfully submitted this 10th day of March 2026.


_s/ Brian P. Murphy_____
Brian P. Murphy, Bar No. 6770

Attorney for the Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400

32