**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

|  |  |  |
|---|---|---|
| KELLY DAWSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 7:22-cv-03738-TMC |
| | ) | |
| BAYERISCHE MOTOREN WORKE | ) | |
| AKTIENGESELLSCHAFT and BMW | ) | |
| MANUFACTURING CO., LLC collectively | ) | |
| d/b/a "BMW GROUP," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT BMW MANUFACTURING'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

COMES NOW Defendant BMW Manufacturing Co., LLC ("BMW MC"), pursuant to Federal Rules of Civil Procedure 50(b) and 59, and moves for judgment as a matter of law or, in the alternative, for a new trial for the reasons set forth herein.

## I.    BACKGROUND

Plaintiff Kelly Dawsey filed this lawsuit in October 2022 asserting four causes of action against Defendant BMW MC and Defendant Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"). (ECF No. 1.)  Plaintiff's causes of action included national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), race discrimination under Title VII, race discrimination under 42 U.S.C. § 1981 ("Section 1981"), and sex discrimination under Title VII. *Id*.  A jury trial in this matter was held from February 17, 2026, through February 25, 2026.  On February 25, 2026, the jury rendered a verdict in favor of Plaintiff as to her cause of

action against BMW MC for national origin discrimination under Title VII.[1]  (ECF No. 216.)  The jury awarded Plaintiff compensatory damages in the amount of $100,000 and punitive damages in the amount of $5 million.  *Id*.  On March 18, 2021, BMW MC filed a Consent Motion to Amend the Judgment requesting that the Court reduce the total award of compensatory and punitive damages to $300,000 based upon the damages cap established by 42 U.S.C. § 1981a.  (ECF No. 231.)  The Court granted the Motion and entered an Amended Judgment on March 25, 2026.  (ECF Nos. 235, 236.)

For the reasons set forth herein, BMW MC submits that it is entitled to judgment as a matter of law or, alternatively, a new trial on Plaintiff's cause of action for national origin discrimination and claim for punitive damages.  BMW MC further submits that it is entitled to a new trial based upon the Court's errors related to the admission of evidence and instructions to the jury.

## II.     LEGAL STANDARD

The Court may grant judgment as a matter of law under Rule 50(b) if the "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue." *See Moskos v. Hardee*, 24 F.4th 289, 294 (4th Cir. 2022).  In deciding a Rule 50(b) motion, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Horne v. WTVR, LLC*, 893 F.3d 201, 210 (4th Cir. 2018). However, "[u]nless there is substantial evidence to support the verdict asked of the jury, the reviewing court must direct the verdict upon request." *Id*. (citing *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

---

[1] The jury ruled in favor of BMW MC on Plaintiff's causes of action for sex discrimination and race discrimination (under both Title VII and Section 1981).  (ECF No. 216.)  The jury ruled in favor of BMW AG as to all of Plaintiff's claims.  *Id*.

evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To avoid judgment as a matter of law, Plaintiff must have presented sufficient evidence to establish a *prima facie* case. *Gairola,* 753 F.2d at 1285. In other words, "if the nonmoving party failed to make a showing *on an essential element of his case* with respect to which he had the burden of proof," judgment as a matter of law is properly granted. *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) (internal quotation marks omitted) (emphasis added). "'As a consequence, the case should be withdrawn from the jury when any verdict in favor of the nonmoving party necessarily will be premised upon speculation and conjecture.'" *Horne,* 893 F.3d at 210 (quoting *Gairola*, 753 F.2d at 1285 (4th Cir. 1985)).

"Under Rule 59(a), a motion for new trial should be granted if '1) the verdict is against the clear weight of the evidence, or 2) is based upon evidence which is false, or 3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Arroyo v. North Carolina*, No. 5:22-CV-161-FL, 2023 U.S. Dist. LEXIS 59551, at *2 (E.D.N.C. Apr. 4, 2023) (quoting *Doe v. Fairfax County School Board*, 1 F.4th 257, 269 (4th Cir. 2021)). "While according due respect to the findings of the jury, the judge should not hesitate to set aside a jury verdict and grant a new trial in any case where the ends of justice so require." *Frizzell Constr. Co. v. First Citizens Bank & Tr. Co.*, 759 F. Supp. 286, 289 (E.D.N.C. 1991) (citing *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 353-54 (4th Cir. 1941)).

### III.    <u>ARGUMENT</u>

**A.      BMW MC Is Entitled to Judgment as a Matter of Law or a New Trial on Plaintiff's Claim for Punitive Damages.**

The Fourth Circuit has held that "[a] successful Title VII plaintiff may recover punitive damages, but only in limited circumstances." *Duvall v. Novant Health, Inc.*, 95 F.4th 778, 792 (4th

Cir. 2024).  42 U.S.C. § 1981a authorizes punitive damages for Title VII plaintiffs only if they can demonstrate that an employer engaged in unlawful intentional discrimination and acted "with malice or with reckless indifference to [a plaintiff's] federally protected rights. . . ." 42 U.S.C. § 1981a(b)(1) (2003); *Ward v. AutoZoners, LLC*, 958 F.3d 254, 263 (4th Cir. 2020). This standard requires proof that the employer discriminated "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535-36, 144 L. Ed. 2d 494, 119 S. Ct. 2118 (1999).  This "is a high standard to meet." *United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 151 (4th Cir. 2017).  Here, because Plaintiff has failed to meet that high standard, BMW MC is entitled to judgment as a matter of law on the issue of punitive damages.

The Fourth Circuit's opinion in *Duvall v. Novant Health, Inc*., 95 F.4th 778 (4th Cir. 2024), resolves the issues here and establishes that there was no evidence on which the jury could have reached its conclusion.  In *Duvall*, the Fourth Circuit vacated the punitive damage award because the plaintiff failed to present sufficient evidence to establish that the employer discriminated in the face of a perceived risk that its actions would violate federal law.  *Id*.  In particular, the Court found that the plaintiff had failed to produce any affirmative evidence at trial to show that the employer's managerial agent had at least a rudimentary knowledge of the federal anti-discrimination statute that the employer violated. The Court noted that counsel for the plaintiff had cross-examined the decision maker but "never elicited from him testimony establishing his personal knowledge of federal anti-discrimination law, let alone that he perceived a risk that his decision to fire [the plaintiff] would violate it."  In reversing the award of punitive damages to the plaintiff, the Fourth Circuit stated the following:

> Duvall doesn't contest this lack of direct evidence. He instead relies solely on an inference that [the decision maker] had the requisite knowledge given his career as a corporate executive. But Duvall hasn't identified any case in which this Court, or any other, has

4

> affirmed an award of punitive damages based solely on that kind of inference. That's not surprising. After all, "[p]unitive damages are an extraordinary remedy." *Ward*, 958 F.3d at 269. And we are not persuaded that extraordinary remedy is proper here merely because [the decision maker] is a "highly educated . . . executive with a long career in corporate America." Response Br. 59. Indeed, to affirm the punitive damages award on that basis alone would water down the "high standard" imposed on a Title VII plaintiff, *Consol Energy, Inc.*, 860 F.3d at 151, and contradict Congress's clear directive that punitive damages are "not to be awarded automatically in every successful Title VII suit," *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 982 (4th Cir. 1997).
>
> It was Duvall's burden to come forward with sufficient evidence at trial that [the decision maker] acted "in the face of a perceived risk that [his] actions [would] violate federal law." *Ward*, 958 F.3d at 263 (citation omitted). Based on our review of this record, Duvall failed to meet that high burden. Accordingly, the jury's award of punitive damages must be set aside.

95 F.4th at 792-93.

Here, just as in *Duvall*, Plaintiff has presented no evidence to establish that BMW MC discriminated "in the face of a perceived risk that its actions [would] violate federal law." *Ward*, 958 F.3d at 263. Plaintiff's sole evidence relating to punitive damages was her testimony that BMW MC has an anti-discrimination policy in its employee handbook and that BMW MC regularly conducts training on that policy for its employees. (TT, 2/18/26, pp. 84:9-85:8.)[2] However, such evidence that BMW MC made a good-faith effort to prevent discrimination in the workplace cuts against an award of punitive damages in this case. *See Bryant v. Aiken Regional Medical Centers Inc.,* 333 F.3d 536, 548 (4th Cir. 2003) (overturning an award of punitive damages to the plaintiff where the employer had "an extensively implemented organization-wide Equal

---

[2] Citations to the trial transcript will be referenced herein as "TT" followed by the date and page number. Citations to Plaintiff's trial exhibits will be referenced herein as "Pl. Ex." followed by the exhibit number. Citations to Defendant's trial exhibits will be referenced herein as "Def. Ex." followed by the exhibit number.

Employment Opportunity Policy" that was published in its employee handbook and provided training for all employees on its anti-discrimination policies). "As the Court noted in Kolstad, giving protection from punitive damages to 'employers who make good-faith efforts to prevent discrimination in the workplace accomplishes Title VII's objective of motivating employers to detect and deter Title VII violations.'" *Id*. at 549 (citing *Kolstad*, 527 U.S. at 545-46).

At trial, Plaintiff presented no evidence that any of the BMW MC managers involved in the pertinent decisions in this case – Robert Engelhorn, Christine Petrasch, and Sherry McCraw – were aware that their actions would potentially violate federal law. All three of those decisions makers testified at trial, but none were questioned by Plaintiff's counsel regarding their understanding of federal employment law or their knowledge that BMW MC's actions with regard to Plaintiff would potentially violate the law. Finally, to the extent that Plaintiff relies on the existence of the "Expat Guidelines for Plant Spartanburg" ("Expat Guidelines") to provide support for her punitive damages argument, the undisputed evidence in the record shows that none of the decision makers in this case were even aware that the Expat Guidelines document existed in the fall of 2021 when those decisions were made.[3]  (Pl. Ex. 17; TT, 2/19/26, pp. 202:16-203:1-3, p. 204:1-11; TT, 2/20/26, p. 43:20-23; TT, 2/23/26, pp. 176:13-15, 242:16-243:10.)

Because punitive damages require proof that the decisionmaker acted "in the face of a perceived risk" that its conduct violated federal law, courts routinely deny such damages where the employer lacked clear notice that its conduct was unlawful. *See Kolstad*, 527 U.S. at 535-36; *Ward*, 958 F.3d at 264; *Bryant,* 333 F.3d at 548. Therefore, where the governing law is unsettled

---

[3] Plaintiff testified that she drafted the document in January 2016 at the direction of Johannes Trauth, who at that time was the Vice President of Human Resources at BMW MC. (TT, 2/18/26, p. 27:13-22.) However, Mr. Trauth left BMW MC in January 2018 and thus was not involved in the decision made in 2021.  (TT, 2/20/26, p. 5:1-3.)

or later clarified, the requisite state of mind cannot be established as a matter of law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (finding that where no court of appeals had spoken on the issue and no authoritative guidance had come from the FTC on the issue, SafeCo's reading "was not objectively unreasonable and falls short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability"). Here, the decisions on which Plaintiff's national origin discrimination claim are based were all made in the fall of 2021. In June 2024, the Supreme Court issued its decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), which altered the standard of proof under Title VII in a discriminatory transfer case. Given this change in the law nearly three years after the transfer decision in this case, there is no reasonable basis for a finding that BMW MC discriminated against Plaintiff "in the face of a perceived risk that its actions [would] violate federal law." *See, e.g.*, *Kolstad*, 527 U.S. at 537 (noting that punitive damages are not appropriate where the "underlying theory of discrimination may be novel or otherwise poorly recognized").

The Fourth Circuit has clearly held that in employment discrimination cases, "punitive damages are an extraordinary remedy" and should only be permitted in limited circumstances. *Duvall*, 95 F.4th at 793 (citing *Ward*, 958 F.3d at 269); *Consol Energy, Inc.*, 860 F.3d at 151; *Harris v. L & L Wings, Inc.*, 132 F.3d at 982. In the absence of any affirmative evidence that BMW MC acted with malice or with reckless indifference to Plaintiff's federally protected rights, those limited circumstances are not present in this case. Accordingly, the Court should grant BMW MC's Motion for Judgment as a Matter of Law and set aside the award of punitive damages to Plaintiff. *See Duvall*, 95 F.4th at 793 (holding that because the plaintiff failed to meet the "high burden" to prove punitive damages, the jury's award of such damages must be set aside). In the

7

alternative, the Court should grant BMW MC's Motion for a New Trial because the jury's verdict as to punitive damages was against the clear weight of the evidence.

**B.      BMW MC is Entitled to Judgment as a Matter of Law or a New Trial because Plaintiff Failed to Produce Sufficient Evidence of Harm to an Identifiable Term or Condition of Employment.**

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1).  In *Muldrow v. City of St. Louis*, the Supreme Court held that in order "[t]o make out a Title VII discrimination claim, a transferee must show some harm *respecting an identifiable term or condition of employment*." 144 S. Ct. 967, 974 (2024) (emphasis added).  In *Muldrow*, the plaintiff, a police sergeant, alleged sex discrimination after she was transferred from a job in the intelligence division to a different role in the department and her intelligence position was taken by a male employee. *Id*. at 977.  The plaintiff alleged that she suffered harm because the new role involved primarily administrative work and because she lost certain job benefits when she was transferred, including a preferable schedule and a vehicle she could drive home when off duty.  *Id*.  Based upon this evidence that the transfer resulted in some actual harm to the terms and conditions of the plaintiff's employment, the Supreme Court held that she had met the burden under Title VII to establish an adverse employment action.  *Id*.

In this case, Plaintiff alleges national origin discrimination because BMW MC communicated to her that it planned to take her out of the TX-60 Department Manager role and assign her to the TX-64 Department Manager position.  At trial, Plaintiff provided the following evidence related to the harm that potentially would have resulted from the transfer:

- At the time that Plaintiff resigned from employment at BMW MC, TX-64 was a Function Level III position. (TT, 2/18/26, p. 62:2-7; TT, 2/20/26, p. 66:2-11; TT 2/23/26, p. 184:10-16.)

- Plaintiff testified that Ms. Petrasch told her that the TX-64 role would be changed to a Function Level IV position at some unidentified time in the future because recruiting would move to a different department. (TT, 2/18/26, p. 51:15-19.)

- Plaintiff testified that if she was moved to TX-64 and if TX-64 was downgraded to a Function Level IV position, then that might have a negative impact on her earnings at BMW MC in future years. Specifically, Plaintiff testified that a policy she had implemented at BMW MC in July 2021 referred to as "Misaligned Personal Grade" would result in BMW MC reducing her Personal Grade one to three years following the downgrade of the TX-64 position, further resulting in a loss of compensation to her. (TT, 2/18/26, p. 53:16-24.)

- When asked by her own attorney to identify how that change in Function Level would impact her from a financial standpoint, she said, "I cannot answer that." (TT, 2/18/26, p. 53:18-24.)

- Plaintiff also claims that moving to TX-64 would have impacted her chance for promotion, based on her testimony that she was not aware of any employee who has been promoted from a Function Level IV position to a Function Level II position. (TT, 2/18/26, p. 56:17-19; TT, 2/19/26, p. 55:4-11.)

None of this evidence, however, shows harm to an identifiable term or condition of employment. Plaintiff's admission that she "cannot answer" the extent to which, if at all, her pay would have been affected in the one to three years following her transfer cannot be evidence of

9

harm to an identifiable term or condition of employment.  This is especially true in view of the uniformly contrary evidence presented by BMW MC that her compensation would not have been affected by her move to the TX-64 position.  (TT, 2/19/26, p. 180:8-10; TT, 2/23/26, pp. 171:10-12, 173:10-15, 197:4-15, 204:7-10.)

Similarly, any contention that the transfer would have impaired Plaintiff's opportunity for promotion is unsupported by the evidence.  The fact that Plaintiff could not identify an individual who had been promoted from a Function Level IV position to a Function Level II position is not evidence of a company policy or practice that prohibited it.  In fact, BMW MC executives that testified at trial uniformly rejected Plaintiff's contention. (TT, 2/23/26, p.189:18-23.) Furthermore, Plaintiff acknowledged that, during the seven years she held the TX-60 position, she had never taken any step to seek validation for promotion to a Function Level II role.  (TT, 2/19/26, p. 55:12-24, 56:1-4.) She further testified that she intended to stay in the TX-60 role, a Function Level III role, until her retirement. (TT, 2/19/26, p. 41:8-9.)  In the absence of any documentary evidence or concession from BMW MC, there was no evidence that Plaintiff's unsupported speculation about impaired promotion prospects—for positions she never sought and testified she did not intend to seek—amounts to a change in an identifiable term or condition of employment.

Plaintiff resigned from employment on January 3, 2022, and her last day working for BMW MC was January 17, 2022. (TT, 2/19/26, p. 62:15-22.)  There is no dispute that when Plaintiff left BMW MC in January 2022, she was still in the TX-60 position, and there had been no change to any of the terms, conditions, or privileges of her employment. The evidence presented at trial established that Plaintiff never suffered any actual harm in this case.  Instead, this case is based solely upon speculation about the harm that might have occurred had she remained at

BMW MC instead of resigning to take the job at Madewell Concrete. As detailed below, such speculation fails to meet the legal standard required to prove discrimination under Title VII.

In denying BMW MC's summary judgment motion, this Court relied upon the ruling of the DC Circuit in *Van Horn v. Del Toro*, 2024 U.S. App. LEXIS 25290 (D.C. Cir. June 21, 2024). In *Van Horn*, the plaintiff was told that she was being transferred to a position that would require her to relocate and that was less desirable than the position that she previously held. *Id*. at *7. The DC Circuit ruled that even though the plaintiff never actually took another assignment, the announcement of the transfer constituted an adverse employment action under the "some harm" standard established in *Muldrow*. *Id.* at *8. Specifically, the Court in *Van Horn* found that there was no dispute that the plaintiff would have suffered harm had she accepted the transfer as it would have required her to physically relocate for work. *Id*. at *7.

Here, Plaintiff alleged that the notice of transfer to the TX-64 position was an adverse employment action because TX-64 was a less desirable position with a lower salary range and less prospects for advancement than the TX-60 position that she was in at the time. However, the testimony presented during the trial provided no support for these allegations. In October 2021, when Plaintiff was told that she would be moved to TX-64, Plaintiff admits (and the documented evidence shows) that the position was a Function Level III position – therefore, it was not a less desirable position with a lower salary range and less prospect for advancement. (Def. Ex. 13; TT, 2/18/26, p. 110:10-16; TT, 2/20/26, pp. 65:12-66:1-11.)

Instead, Plaintiff's entire case is built upon her testimony that Ms. Petrasch told her that TX-64 would be downgraded to a Function Level IV position at some unknown time in the future. However, even Plaintiff could not specify under oath when her supposed downgrade of Function Level would occur. As a result, the "harm" alleged by Plaintiff in this case is completely

11

speculative. In the *Van Horn* case, there was no such speculation required – the role to which the plaintiff was being transferred was already in existence, and there was no doubt that the plaintiff would suffer "some harm" by being required to move to that new role. In this case, the only way to get to the same conclusion that the Court reached in *Van Horn* is to speculate about what would happen to the TX-64 role in the future. Such speculation is clearly prohibited by decades of Fourth Circuit law. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc*., 53 F.3d 55, 62 (4th Cir. 1995); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Consistent with BMW MC's position, the Eleventh Circuit recently upheld summary judgment for an employer in a Title VII case where the plaintiff's allegation of harm was based upon speculation. *Zienni v. Mercedes-Benz U.S. Int'l, Inc.,* No. 24-13932, 2025 U.S. App. LEXIS 33457 (11th Cir. Dec. 22, 2025). Zienni, a Muslim employee at the Mercedes facility in Alabama, needed to take breaks throughout the workday to pray and, at times, the prayer breaks did not coincide with the time of his scheduled breaks. *Id.* at \*4. A supervisor at Mercedes caught Zienni praying outside of a schedule break and told him that he was not allowed to take a prayer break while the line was running. *Id*. at \*4-5. Zienni alleges that he was subjected to harm because if he was caught praying outside of breaks, he would be subject to discipline, including potential termination. *Id*. at \*5. However, there was no evidence that Zienni was ever disciplined by Mercedes. *Id*. at \*5. During the two-week winter shutdown at the Mercedes plant, Zienni decided to resign and seek other employment. *Zienni v. Mercedes Benz United States Int'l*, *Inc*., No. 7:23-cv-01002-LSC, 2024 LX 251159, \*6 (N.D. Ala. Nov. 19, 2024). He then sued Mercedes, alleging religious discrimination under Title VII. *Id.* at \*1.

The U.S. District Court for the Northern District of Alabama granted Mercedes' motion for summary judgment on the basis that Zienni could not establish an adverse employment action.

*Id*. at \*15-16.  In reaching that conclusion, District Judge Coogler stated that "these hypothetical actions did not occur and thus caused no actual harm to an identifiable term or condition of Zienni's employment. . . .  In reality, the only change to Zienni's employment occurred when he made the choice to resign from MBUSI and look for work elsewhere."  *Id*. at \*18.  In upholding the award of summary judgment to Mercedes, the Eleventh Circuit, in an unpublished opinion, stated the following:

> Zienni argues he experienced harm because he was exposed to the risk of discipline for taking additional breaks.  But MBUSI never disciplined or threatened to discipline Zienni . . . . Zienni rests on a speculation about what would have happened if he was caught praying during an unscheduled break.  But adverse action cannot be speculative.  The Supreme Court's decision in Muldrow did not alter that requirement.  Thus, any risk of discipline that Zienni experienced was too speculative to show a change in a term or condition of his employment.

2025 U.S. App LEXIS 33457 at \*5.

The opinions from the Northern District of Alabama and Eleventh Circuit are instructive here, since Plaintiff's claim of national origin discrimination in this case is built entirely upon speculation.  There is no dispute in this case that Plaintiff never moved out of the TX-60 position prior to her resignation from BMW MC.  Plaintiff's entire case is based upon what might have happened had she transferred into the TX-64 position, which never happened.  Given the requirement to speculate about the potential harm to Plaintiff, no reasonable jury could conclude that BMW MC's communication to her that it would transfer her to the TX-64 position impaired an identifiable term or condition of employment.

To establish a claim for national origin discrimination under Title VII, Plaintiff must prove that BMW MC discriminated against her with respect to the compensation, terms, conditions, or privileges of her employment because of her national origin.  42 U.S.C. § 2000e-2(a)(1).  Because

Plaintiff resigned from employment before there was any change to her compensation, terms, conditions, or privileges of employment at BMW MC, and before there was any definitive statement from the company about what would happen to her compensation, terms, conditions or privileges of employment in the future, no reasonable jury could find that she has met her legal burden to establish discrimination.  Accordingly, Defendant BMW MC is entitled to judgment as a matter of law as to Plaintiff's claim for national origin discrimination under Title VII.  In the alternative, should the Court deny BMW MC's Motion for judgment as a matter of law, the Court should grant a new trial on the basis that the jury verdict was against the clear weight of the evidence.

**C.     BMW MC Is Entitled to a New Trial Because The Court Erred By Allowing Admission of the Expat Guidelines Document Into Evidence at Trial.**

In asserting a claim of national origin discrimination against BMW MC, Plaintiff's primary evidence of discriminatory intent was a document titled Expat Guidelines, which was drafted by Plaintiff in January 2016.  (Pl. Ex. 17.)  Prior to trial, BMW MC filed a Motion in Limine (ECF No. 154) seeking to exclude this document from being introduced at trial pursuant to Rules 401 through 403 of the Federal Rules of Evidence.  The Court denied BMW MC's Motion in Limine, finding that it was the responsibility of the jury to weigh this evidence. (ECF No. 185.) During trial, BMW MC renewed its objection to the introduction of this document as evidence, but the Court overruled the objection for the reasons previously articulated in response to BMW MC's Motion in Limine.  (TT, 2/18/26, p. 26:9-18.)  BMW MC asserts that the introduction of this document at trial to establish discriminatory intent was erroneous, and thus the Court must grant a new trial as to Plaintiff's claim of national origin discrimination.

Plaintiff's bases her claim upon BMW MC's decision to reassign her to a new Department Manager position (TX-64) and bring in a German employee from BMW AG to fill her current

14

Department Manager position (TX-60).  Plaintiff contends that BMW MC's discriminatory intent is revealed by the Expat Guidelines document, which supposedly required BMW MC to hire a German for the TX-60 position after BMW MC made the decision to select an American, Sherry McCraw, for the Vice President of Human Resources position.  The evidence presented at trial revealed that the Expat Guidelines were drafted by Plaintiff in January 2016, more than five years before the planned job changes at issue this case. (TT, 2/18/26, pp. 18:13-22, 28:9-12; TT, 2/19/26, pp. 38:24-39:12.) Moreover, the testimony from Plaintiff and BMW MC officials at trial revealed that the Expat Guidelines document resulted from a workshop of the Human Resources Department and was never established as a policy of BMW MC. (TT, 2/19/26, p. 40:16-18; TT, 2/20/26, p. 43:20-23; TT, 2/23/26, p. 176:1-15.)  Plaintiff testified that she drafted the document at the direction of Johannes Trauth, who at that time was the Vice President of Human Resources at BMW MC.  (TT, 2/18/26, p. 27:13-22.) However, Mr. Trauth has not worked at BMW MC since January 2018.  (TT, 2/20/26, p. 5:1-3.)  At trial, the BMW MC executives involved in making the decisions related to the 2021 HR Department reorganization – Dr. Engelhorn, Ms. Petrasch, and Ms. McCraw – were asked about the Expat Guidelines document.  None of them were even aware that the document existed.  (TT, 2/19/26, pp. 202:16-203:1-3, 204:1-11; TT, 2/20/26, p. 43:20-23; TT, 2/23/26, pp. 176:13-15, 242:16-243:10.)

During trial, Plaintiff argued to the jury that the Expat Guidelines document established discriminatory intent by BMW MC, even going so far as to show a chart to the jury in closing argument that was premised upon the language from that document.  However, in assessing such evidence of discriminatory intent, the Fourth Circuit has held that such documentation must be both proximate in time to the adverse employment decision at issue and related to that employment decision. *See Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023).  Here, the Expat Guidelines

fail to meet the relevancy requirements applied by the Fourth Circuit for at least three separate reasons:

- The Expat Guidelines document was prepared in January 2016, more than five years before the decision at issue in this case. As a result, the document is not sufficiently proximate to the alleged employment decision to provide admissible evidence of discrimination. *See Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 155 (4th Cir. 2023) (holding that discriminatory statements made six to eighteen months before the alleged adverse action were not valid evidence of discrimination); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993) (stating that a discriminatory statement made one year before an adverse employment decision was too remote in time)).

- According to Plaintiff, she prepared the Expat Guidelines document at the direction of Johannes Trauth, a former Vice President of Human Resources who has not worked at BMW MC since January 2018.  Neither Plaintiff nor Mr. Trauth were involved in making the decision at issue in this case.

- There is no evidence that any of the decision makers – Dr. Engelhorn, Ms. Petrasch, and Ms. McCraw – had any knowledge of the Expat Guidelines document or in any way relied on that document in making the decision to transfer Plaintiff from the TX-60 position to the TX-64 position.

Therefore, based upon relevancy principles and applicable Fourth Circuit case law applying those principles, the Expat Guidelines document should have been excluded by the Court on the grounds that it was not sufficiently related to the adverse employment action at issue in this case.  Because the Court's decision to allow this document into evidence was clear error that affected the

16

substantial rights of BMW MC and swayed the verdict, this error can only be remedied through the granting of a new trial to BMW MC as to Plaintiff's claim of national origin discrimination. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).

Moreover, the Expat Guidelines document should have been excluded on the grounds that any probative value is greatly outweighed by the danger of unfair prejudice and because such evidence confused the trier of fact. *See* Fed. R. Evid. 403. Specifically, the Court's decision to allow Plaintiff to introduce this document into evidence misled the jury into believing that a document created in 2016 was used as the basis for an employment decision in 2021, when there is no evidence in the record to support such a conclusion. Furthermore, BMW MC suffered prejudice because Plaintiff was allowed to establish discriminatory intent through a document that she herself authored many years before the alleged discriminatory action accompanied by Plaintiff's explanations of the meaning she subjectively ascribed to its terms.[4] For these reasons, Rule 403 dictates that the Expat Guidelines document should have been excluded by the Court. Accordingly, BMW MC is entitled to a new trial on Plaintiff's claim of national origin discrimination because of the erroneous admission of this prejudicial evidence.

**D.** **BMW MC Is Entitled to a New Trial Because The Court's Jury Instruction on Adverse Employment Action was Improper and Confused the Jury.**

In order to recover under Title VII, Plaintiff must prove that BMW MC discriminated against her with respect to the "compensation, terms, conditions, or privileges of her employment." 42 U.S.C. § 2000e-2(a)(1). As discussed above in detail in Section III.B., the Supreme Court and

---

[4] The Expat Guidelines did not reference national origin on their face in any way. However, Plaintiff claims that the terms "Domestic" and "International" used in the guidelines were intended to convey national origin. In *Douglas v. Eaton Corp.*, 577 F. App'x 520, 523 (6th Cir. 2014), the Sixth Circuit rejected a similar attempt to create a national origin discrimination claim where the employer had a stated preference for "local" candidates.

17

Fourth Circuit have interpreted this language in Title VII to require a plaintiff to establish the existence of harm to an identifiable term or condition of employment. *See Muldrow*, 144 S. Ct. at 974; *Coleman*, 626 F.3d at 190. At trial, the Court improperly instructed the jury regarding the "adverse employment action" standard, and that improper instruction resulted in confusion for the jury as to Plaintiff's claim of national origin discrimination. As a result, BMW MC is entitled to a new trial on this claim.

In this case, the facts are undisputed that prior to her resignation from BMW MC in January 2022, Plaintiff never actually suffered any change to the terms, conditions, or privileges of employment because she remained in the TX-60 Department Manager position until her last day. However, Plaintiff testified that in early October 2021, Ms. Petrasch told Plaintiff that she would move from the TX-60 Department Manager position to the TX-64 Department Manager position and that the TX-64 position would be downgraded to a Function Level IV position at some unspecified time in the future. (TT, 2/19/26, pp. 33:4-34:1.) Based upon this evidence, Plaintiff requested that the Court issue an instruction to the jury stating that "act of discrimination occurs when the employer announces the decision about which the employee complains, and not when the employer implements the decision." Plaintiff's Request to Charge No. 5 ("When Cause of Action Accrues"). In support of this proposed instruction, Plaintiff cites to the rulings of the Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), and *Chardon v. Fernandez*, 454 U.S. 6 (1981). BMW MC submitted written objections to the Court regarding this proposed instruction from Plaintiff, as well as to Plaintiff's Request to Charge No. 4, which provided a proposed instruction regarding "Adverse Employment Action."

After considering the arguments of both parties, the Court crafted a jury instruction on "Adverse Employment Action" that incorporated, in part, Plaintiff's request for an instruction as

18

to when a cause of action accrues. During the charge conference prior to closing arguments, BMW MC objected to this proposed jury instruction. (TT, 2/24/26, pp. 158:6-160:24.) Over BMW MC's objection, the Court issued the following instruction to the jury regarding Adverse Employment Action:

> Title VII prohibits employers from taking adverse actions against an employee based on a protected characteristic, such as national origin, race, or sex. Thus, Plaintiff must show by a preponderance of evidence, as part of her discrimination claims, that she suffered an adverse employment action.
>
> To do so, Plaintiff must show she suffered some disadvantageous change in an employment term or condition. You may find that an adverse employment action occurs when an employer provides notice of or communicates a future action to the employee rather than when such future action actually goes into effect if you find that the notice was of a non-speculative disadvantageous change in an employment term or condition.

(TT, 2/25/26, p. 131:2-16.)

BMW MC submits that the instruction issued by the Court on adverse employment action was improper for two reasons. First, the concept of adverse employment action was developed by the federal courts as an element of the plaintiff's prima facie case at summary judgment. The Fourth Circuit has regularly cautioned trial courts against charging juries on summary judgment standards. *See, e.g., Smith v. Univ of N.C.*, 632 F.2d 316, 334 (4th Cir. 1980).

Moreover, even if it was proper to charge the jury on adverse employment action, the instruction issued by the Court was improper because it misstates the legal standard established by the Supreme Court in *Muldrow*. In advocating for this instruction, Plaintiff argued that such language is proper under the Supreme Court's decisions in *Ricks* and *Chardon*. However, those cases are factually distinguishable from the present case because they both involved an unequivocal, written notice of termination by the employer. *Ricks*, 449 U.S. at 258; *Chardon*, 454

19

U.S. at 7. Because of the nature of such notice, the Supreme Court found that the statute of limitations for a discrimination claim began to run at the date of notice, not at the subsequent date when the termination actually took effect. *Ricks*, 449 U.S. at 258; *Chardon*, 454 U.S. at 7-8. It is undisputed in this case that no such unequivocal notice of demotion was ever issued to Plaintiff, as demonstrated by Plaintiff's own testimony on direct examination that she could not specify when she would suffer harm as a result of BMW MC's plan to move her to the TX-64 Department Manager position. (TT, 2/19/26, pp. 33:4-34:1.) Furthermore, the Court in *Muldrow* held that the plaintiff in a discriminatory transfer case "must show some harm respecting an identifiable term or condition of employment." 144 S. Ct. at 974. Under this standard, it is not sufficient for Plaintiff to simply show the possibility of some future harm, she must establish actual harm. Therefore, the Court's instruction that lowers Plaintiff's burden of proof on this issue was improper.

In addition, the "Adverse Employment Action" instruction issued to the jury was confusing. This fact was borne out by the second note that the jurors sent to the Court during deliberations. (ECF No. 211.) In that note, the jurors asked the following: "What is it that she never actually went to TX-64 but it was said in a meeting? You said something about the potential move." (TT, 2/25/26, p. 153:2-10.) The only reasonable conclusion that can be drawn from the jury's reference to the Court saying "something about the potential move" is that they were confused by the language in the Adverse Employment Action instruction. The Court's response to the question confirms this conclusion by specifically referring the jury to the Adverse Employment Action instruction. (TT, 2/25/26, p. 153:10-23.) Shortly after the note was sent by the jury and the Court provided a response, the jury rendered a verdict for Plaintiff on the national origin discrimination claim.

Therefore, the Court's instruction to the jury regarding Adverse Employment Action was both legally deficient and confusing.  As a result of this error, BMW MC is entitled to a new trial on Plaintiff's claim of national origin discrimination.[5]

## IV.     CONCLUSION

For the reasons set forth above, BMW MC respectfully requests that this Court grant its Motion for Judgment as a Matter of Law or, in the alternative grant its Motion for a New Trial.

Respectfully submitted this the 25th day of March, 2026.

By: *s/ Ellison F. McCoy*
Ellison F. McCoy (Fed. I.D. No. 6389)
ellison.mccoy@jacksonlewis.com
D. Randle Moody II (Fed. I.D. No. 7169)
randy.moody@jacksonlewis.com
Mallory H. Gantt (Fed. I.D. No. 13867)
mallory.gantt@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
(864) 232-7000

*ATTORNEYS FOR DEFENDANT*
*BMW MANUFACTURING CO., LLC*

---

[5] The erroneous instruction regarding adverse action plainly affected only the jury's verdict on Plaintiff's claim of national origin discrimination.  The jury necessarily determined that an adverse action had occurred in reaching its verdict.  It follows then that its decisions in favor of BMW MC on Plaintiff's race and sex discrimination claims necessarily turned on its conclusion that the adverse action it identified did not occur because of Plaintiff's race or sex.  Accordingly, a new trial is necessary only on Plaintiff's claim of national origin discrimination so that the jury may be properly instructed on the statutory requirements for harm under Title VII.