**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| KELLY DAWSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 7:22-cv-03738-TMC |
| ) | |
| BAYERISCHE MOTOREN WORKE ) | |
| AKTIENGESELLSCHAFT and BMW ) | |
| MANUFACTURING CO., LLC collectively ) | |
| d/b/a "BMW GROUP," ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT BMW
MANUFACTURING'S MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

COMES NOW Defendant BMW Manufacturing Co., LLC ("BMW MC"), and submits

this Reply to Plaintiff's Opposition to Defendant BMW MC's Motion for Judgment as a Matter of

Law or, In the Alternative, For a New Trial.

**I.      Plaintiff Is Not Entitled to an Award of Punitive Damages.**

In her Opposition to Defendant BMW MC's Motion for Judgment as a Matter of Law or,

In the Alternative, For a New Trial (hereinafter Plaintiff's "Opposition"), Plaintiff attempts to shift

the burden of proof as to punitive damages to BMW MC.  (ECF No. 240 at 2-8.)  However,

prevailing Fourth Circuit law requires Plaintiff to present evidence establishing that BMW MC

discriminated against her "in the face of a perceived risk that its actions will violate federal law."

*Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535-36, 144 L. Ed. 2d 494, 119 S. Ct. 2118 (1999).

The Fourth Circuit's decision in *Duvall v. Novant Health, Inc.*, 95 F.4th 778 (4th Cir. 2024)—

which vacated an award of punitive damages where the plaintiff failed to adduce *any evidence* of

the decision-makers' knowledge of the law or perception of legal risk—directly controls the issues in this case and requires the Court to grant to BMW MC judgment as a matter of law on Plaintiff's claim for punitive damages.

### A. Plaintiff's Waiver Arguments Are an Attempt to Distract the Court From The Dearth of Evidence to Support an Award of Punitive Damages.

Plaintiff dedicates much of her Opposition to readily disprovable assertions about waiver. Plaintiff first contends that BMW MC waived its argument that BMW MC could not possibly have perceived a risk that its decision to transfer Plaintiff would violate federal law because the legal standard regarding a discriminatory transfer under Title VII changed with the issuance of the Supreme Court's decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), more than two years after the pertinent decision in this case. (ECF No. 237 at 6-7; ECF No. 240 at 3-4.) For this waiver argument, Plaintiff does not cite the transcript from the Rule 50(a) arguments during trial. There, BMW MC made detailed Rule 50(a) arguments regarding the change in the law resulting from the *Muldrow* decision and the requirement for Plaintiff to prove that the decision makers acted with knowledge of the potential risk that their actions would violate federal law. (TT, 2/24/26, pp. 66:9-81:25, 96:9-97:16.) BMW MC's Rule 50(a) arguments during trial put the Court on notice of its position with regard to the insufficiencies of proof in Plaintiff's case, and Plaintiff's inability to offer a substantive response to this unassailable logic essentially concedes that no law supports awarding punitive damages under these facts.

Plaintiff next argues that BMW MC failed to properly preserve the Rule 50(b) arguments that it made with regard to the Fourth Circuit's decision in *Duvall v. Novant Health, Inc.*, 95 F.4th 778 (4th Cir. 2024). (ECF No. 240 at 8.) In support of this argument, Plaintiff cites selectively to portions of the trial transcript to argue that BMW MC's Rule 50(a) punitive damage argument was limited in scope. However, Plaintiff's argument ignores the extensive Rule 50(a) arguments

2

regarding the *Duvall* decision and its impact on the punitive damages issue in this case. BMW MC's counsel made a specific argument that Plaintiff failed to meet the punitive damages burden established by the Fourth Circuit, and counsel for both parties made additional rebuttal arguments that directly addressed *Duvall*.  (TT, 2/24/26, pp. 96:9-97:16, 121:15-123:6, 123:18-22, 126:3-15.)  Based upon the exhaustive arguments made by both parties regarding the *Duvall* decision during BMW MC's Rule 50(a) motion, Plaintiff's claim that BMW MC "did not preserve a *Duvall* argument" is demonstrably incorrect.

Finally, Plaintiff argues that BMW MC failed to properly preserve the argument that it made good-faith efforts to prevent discrimination.  (ECF No. 240 at 9.)  However, this waiver argument is nothing more than an attempt to distract the Court from the deficiencies in Plaintiff's punitive damages arguments.  BMW MC never asserted a "good faith" defense in its Rule 50(b) Motion.  Instead, as set forth in the Memorandum in Support of Defendant BMW MC's Motion for Judgment as a Matter of Law or, In the Alternative, For a New Trial (hereinafter BMW MC's "Memorandum"), BMW MC noted that the only evidence put forth by Plaintiff in an effort to establish her right to punitive damages was her own testimony that BMW MC maintains an anti-discrimination policy and conducts training on that policy for its employees, facts which courts in the Fourth Circuit have regularly held do not support an award of punitive damages. (ECF No. 237 at 5-6.)

      **B.**      **Plaintiff Failed to Meet the High Standard Required to Establish That She Is Entitled to an Award of Punitive Damages.**

The Fourth Circuit's opinion in *Duvall v. Novant Health* establishes the pertinent punitive damages standard in a Title VII discrimination case.  Summarizing applicable Supreme Court and Fourth Circuit law, the Court in *Duvall* stated that "[a] successful Title VII plaintiff may recover punitive damages, but only in limited circumstances" where the plaintiff presents proof that the

3

employer discriminated "in the face of a perceived risk that its actions will violate federal law." *Id.* at 792. This "is a high standard to meet." *Id.* (citing *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 151 (4th Cir. 2017)). Because Plaintiff failed to present evidence to meet this high standard, the award of punitive damages to Plaintiff must be set aside as a matter of law.

In her Opposition, Plaintiff initially appears to argue that it was BMW MC's burden to prove that its decision makers were unaware that their actions with regard to Plaintiff would potentially violate federal law. (ECF No. 240 at 8.) This argument turns Fourth Circuit law on its head. In *Duvall*, the Fourth Circuit stated that "[i]t was Duvall's burden to come forward with sufficient evidence at trial that [the decision maker] acted 'in the face of a perceived risk that [his] actions [would] violate federal law.'" 95 F.4th at 793 (citation omitted). Thus, Plaintiff bears the burden of meeting this high burden of proof.

To be entitled to an award of punitive damages, Plaintiff is required to present evidence to establish that BMW MC discriminated "in the face of a perceived risk that its actions [would] violate federal law." *Id.*; *Ward v. AutoZoners, LLC*, 958 F.3d 254, 263 (4th Cir. 2020). To do so, the Fourth Circuit has held that a plaintiff cannot recover punitive damages where she "never elicited from [the decision-maker] testimony establishing his personal knowledge of federal anti-discrimination law, let alone that he perceived a risk that his decision [to take adverse action] would violate it." *Duvall*, 95 F.4th at 792. As in *Duvall,* the trial evidence in this case reveals that Plaintiff never elicited testimony from any BMW MC decision maker about his or her knowledge of the law, "let alone that he [or she] perceived a risk" relating to Plaintiff's transfer. Instead, Plaintiff attempts to meet this standard through her own testimony about BMW MC's anti-discrimination policy and training on that policy. (TT, 2/18/26, pp. 84:9-85:8.) Yet as the Fourth

4

Circuit recognized in *Duvall*, Plaintiff bears the burden of producing "affirmative evidence" of at least the rudimentary knowledge of the decision makers regarding the law and their perceptions of risk.  95 F.4th at 792.  All three of the decision makers testified at trial, yet counsel for Plaintiff never asked a single question of any of them about their knowledge of Title VII or the perceived legal risk of their actions with regard to Plaintiff.  The record reflects that Ms. Petrasch testified on direct examination that BMW MC has a non-discrimination policy and provides training to employees on that policy, but that testimony says nothing whatsoever about her knowledge of Title VII, let alone her perception that the decision to transfer Plaintiff to TX-64 would potentially violate that statute.  (TT, 2/20/26, pp. 83:18-84:11.)  Moreover, Plaintiff never followed up on that testimony to obtain the affirmative evidence required under the standard established in *Duvall*. This failure to present any "affirmative evidence" forecloses Plaintiff's claim for punitive damages under prevailing Fourth Circuit law.  See *Duvall*, 95 F.4th at 793 (holding that the jury's award of punitive damages must be set aside where the plaintiff failed to present any affirmative evidence that the decision maker had a rudimentary knowledge of federal employment statute at issue).

Attempting to sidestep *Duvall*, Plaintiff pleads with this Court to duplicate its decision in *Carter v. Ascend Performance Materials Holdings, Inc.*, No. 8:20-cv-04379-TMC.  However, this Court's opinion in *Carter*, contrasted against the facts in this case, shows the defects in Plaintiff's punitive damages claims here.  First, even though the Fourth Circuit issued its opinion in *Duvall* a few months before the filing of the Rule 50(b) motion in *Carter*, neither the defendant's motion (*Carter*, ECF No. 215) nor this Court's Order (*Carter*, ECF No. 229) make any reference to the holding in *Duvall*.  Second and more consequentially, the evidence presented at trial in *Carter* revealed that the decision maker had consulted with the defendant's legal department prior to terminating the plaintiff's employment, the decision maker had "extensive training" in the federal

employment law at issue in the case, and the decision maker had participated in classes offered through the Society for Human Resource Management in which he obtained regular updates on federal law. (*Carter*, ECF No. 229 at 6.)  As detailed above, <u>Plaintiff did not present any such evidence at the trial of this case</u>.  Accordingly, the stark factual differences reflected in this Court's decision in *Carter* provide affirmative support for BMW MC's Rule 50(b) motion with regard to punitive damages.

Consistent with *Duvall*, Plaintiff's claim for punitive damages fails as a matter of law.  As a result, the Court must set aside the award of punitive damages to Plaintiff.

## II.     Plaintiff Failed to Produce Evidence of Some Harm to an Identifiable Term or Condition of Employment.

Based on the Supreme Court's holding in *Muldrow v. City of St. Louis*, "[t]o make out a Title VII discrimination claim, a transferee must show some ***harm respecting an identifiable term or condition of employment***." 144 S. Ct. 967, 974 (2024) (emphasis added).  Therefore, for Plaintiff to prevail on a post-Muldrow discriminatory transfer claim, she bears the burden of identifying the term or condition of employment that was harmed.  Plaintiff failed to meet that burden in this case.

There is no dispute in this case that Plaintiff never transferred out of the TX-60 Department Manager position prior to her voluntary departure from BMW MC. (TT, 2/19/26, p. 62:15-63:13.)  Furthermore, Plaintiff admitted on cross-examination that at the time of her departure from BMW MC in January 2022, she still held a personal grade of 11, her pay had never been reduced, she had never received formal notice of a demotion, and her Function Level had never been downgraded.  (TT, 2/19/26, p. 62:15-63:19.)  As a result, there was no evidence presented at trial showing that there had been any change to the terms, conditions, or privileges of her employment.

Despite this lack of evidence, the Court denied BMW MC's Rule 50(a) motion during trial and sent the issue to the jury.

In denying BMW MC's Motion for Summary Judgment under the "some harm" standard articulated in *Muldrow*, this Court relied on evidence that TX-64 "was an established position with an assigned [Function Level] and compensation range" and thus would have been a demotion from the TX-60 position. (ECF No. 119 at 14.) Further, the Court found that Plaintiff would have diminished prospects for promotion if she was transferred to the TX-64 position. (ECF No. 119 at 13.) However, at trial, Plaintiff never came close to presenting evidence of the alleged harm on which the Court relied to deny summary judgment. Instead, the documented evidence shows that at the time that Plaintiff resigned from employment at BMW MC, TX-64 was a Function Level III position and thus did not have a lower compensation range. (TT, 2/18/26, p. 62:2-7; TT, 2/20/26, p. 66:2-11; TT 2/23/26, p. 184:10-16.) Moreover, Plaintiff testified that her prospects for advancement above Function Level III at BMW MC depended upon her being validated for a Function Level II position, which admittedly had never happened because she had decided not to seek validation and intended to stay in the TX-60 position for the rest of her career. (TT, 2/19/26, pp. 41:8-9, 55:12-24, 56:1-4.)

For Plaintiff's discriminatory transfer claim to properly be presented to the jury, there must be at least some evidence in the record to support a finding that she suffered "some harm to an identifiable term or condition of employment" as a result of the alleged notice of demotion. The evidence of alleged "harm" on which this Court relied in denying summary judgment did not appear at trial. Instead, by Plaintiff's own admissions, the harm on which her discriminatory transfer claim was based is all speculative, as none of it ever came to bear before she resigned from BMW MC. In the absence of evidence of "some harm" to an identifiable term or condition of

employment, Plaintiff's discriminatory "notice of demotion" claim should never have been allowed to go the jury. Accordingly, BMW MC is entitled to judgment as a matter of law as to this claim. In the alternative, should the Court deny BMW MC's motion for judgment as a matter of law, the Court should grant a new trial on the basis that the jury verdict was against the clear weight of the evidence.

**III.     The Court Erred By Admitting the Expat Guidelines Document Into Evidence.**

In her Opposition, Plaintiff asserts that the Court properly admitted the Expat Guidelines because BMW MC followed these guidelines when making the decision to transfer Plaintiff from the TX-60 position to the TX-64 position. (ECF No. 240 at 21.) However, in making this argument, Plaintiff ignores the undisputed evidence in the record, which revealed that none of the decision makers in this case had any knowledge of the Expat Guidelines document at the time the decisions regarding Plaintiff were made. Absent any evidence to connect a document that Plaintiff drafted in January 2016 with an employment decision made in September 2021, the Court erred in admitting the Expat Guidelines into evidence at trial.

Plaintiff contends that BMW MC's discriminatory intent is revealed by the Expat Guidelines document. However, the evidence presented at trial revealed that the Expat Guidelines were drafted by Plaintiff in January 2016, more than five years before the planned job changes at issue this case. (TT, 2/18/26, pp. 18:13-22, 28:9-12; TT, 2/19/26, pp. 38:24-39:12.) Plaintiff testified that she drafted the document at the direction of Johannes Trauth, who has not even worked at BMW MC since early 2018. (TT, 2/18/26, p. 27:13-22; TT, 2/20/26, p. 5:1-3.) In her Opposition, Plaintiff claims that the Expat Guidelines were reviewed by BMW MC's senior management group but cites to her own testimony as support for that claim even though she admittedly was not part of senior management. (ECF No. 240 at 21-22.) To the contrary, the

8

undisputed evidence at trial revealed that the BMW MC executives involved in making the decision to transfer Plaintiff were not even aware that the Expat Guidelines document existed. (TT, 2/19/26, pp. 202:16-203:1-3, 204:1-11; TT, 2/20/26, p. 43:20-23; TT, 2/23/26, pp. 176:13-15, 242:16-243:10.)  Therefore, since none of the decision makers were aware that the Expat Guidelines existed when they made the decision to transfer Plaintiff to TX-64, that document cannot be evidence of their discriminatory intent.

Plaintiff's Opposition further takes issue with BMW MC's reliance upon Fourth Circuit law regarding discriminatory remarks to provide support for its argument that the Expat Guidelines should not have been admitted as evidence of discriminatory intent.  (ECF No. 240 at 25-26.)  Yet in her pre-trial motions, Plaintiff argued the same legal principle: "allegations and assertions about matters unknown to the decision-makers is not relevant."  (ECF 152 at 4 (citing *Duggan v. Sisters of Charity Providence Hosps.*, 663 F. Supp. 2d 456, 469 (D.S.C. 2009)).)  Accordingly, for the alleged discriminatory documentation to be admissible, it must be both proximate in time to the adverse employment decision at issue and related to that employment decision. *See Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023).  There is no dispute in this case that the Expat Guidelines were prepared by Plaintiff more than five years before the decision at issue in this case and thus cannot be considered "proximate in time" to the adverse employment decision.  Further, given that the decision makers in this case all testified that they were not aware of the Expat Guidelines, that document could not have been related to the employment decision at issue. Ultimately, Plaintiff fails to point this Court to any case law that supports the admission of a document that is not proximate in time nor related to the decision to transfer her to the TX-64 position.

Here, Plaintiff built her claim of national origin discrimination on a document that she authored more than five years earlier and that was unknown to the decision makers at BMW MC. Federal Rules of Evidence 401, 402, and 403 were crafted to protect BMW MC from Plaintiff's use of such irrelevant, self-serving, and unfairly prejudicial documents.  Therefore, based upon relevancy principles and applicable Fourth Circuit case law applying those principles, the Expat Guidelines document should have been excluded by the Court on the grounds that it was not sufficiently related to the adverse employment action at issue in this case.  Because the Court's decision to allow this document into evidence was clear error that affected the substantial rights of BMW MC and swayed the verdict, this error can only be remedied through the granting of a new trial to BMW MC as to Plaintiff's claim of national origin discrimination.

**IV.     The Court's Jury Instruction on Adverse Employment Action was Improper and Confused the Jury.**

The issue of adverse employment action has been a hotly contested issue throughout this litigation.  Here, the Court improperly instructed the jury regarding the "adverse employment action" standard—a standard that appears nowhere in the text of Title VII—which resulted in confusion for the jury as to Plaintiff's claim of national origin discrimination.

In her Opposition, Plaintiff first offers a meritless and readily refuted argument that BMW MC waived any objections to the jury instruction given by this Court regarding adverse employment action.  Contrary to Plaintiff's assertions, prior to trial, BMW MC objected in writing to Plaintiff's proposed jury instructions entitled "Adverse Action" (Plaintiff's Request to Charge No. 4) and "When a Cause of Action Accrues" (Plaintiff's Request to Charge No. 5).  BMW MC renewed these objections at trial during the Charge Conference. (TT, 2/24/2026, p. 158:9-160:9.) As it relates to the Adverse Employment Action charge, the Court combined aspects of Plaintiff's Request to Charge Nos. 4 and 5 in the ultimate charge titled "Adverse Employment Action."

BMW MC made several arguments to the Court objecting to its Adverse Employment Action charge.  Among them, BMW MC:

- Stated that "[w]e want to preserve our rights" as to the adverse employment action charge.  (TT, 2/24/26, p. 158:23-159:1.)

- Specifically objected to the charge in that it (1) "adds to the statute," (2) is a "summary judgment concept a construct of the Court which is normally not charged to juries from our general practice", and (3) is "derivative of the Ricks and Chaudhry [sic] case and those cases as we have argued to the Court deal with tenured professors dealing with definite objective . . . verifiable outcomes of termination and we believe that is different in this case."  (TT, 2/24/26, p. 159:6-15.)

- Objected to the last sentence of the charge and clarified that "[w]e would like for it not to be there, but if it is, that communicate the action is troublesome."  (TT, 2/24/26, p. 159:17-19.)

- Attempted to comply with the Court's Order and decision and proposed "to the extent the last sentence stays in, we believe that there needs to be a clarification." Proposed language to the court "if it stays in [sic] that there be a sentence to the extent that nevertheless the action communicated must [sic] be concrete and not cause speculation on the impact to plaintiff.  And perhaps some language about an objectively verifiable change, something like that." (TT, 2/24/26, p. 159:15-24.)

- This Court engaged with questions regarding the charge and issues cited by BMW MC counsel and actually wrote some of the comments on a working copy of the proposed charge.  (TT, 2/24/26, pp. 159:25-160:10.)

Further evidencing the clarity with which BMW MC argued against the Adverse Employment Action instruction, counsel for Plaintiff responded at length regarding the summary judgment issue, *Ricks* and *Chardon*, and the whole charge since these are "really big issue[s]." (TT, 2/24/26, pp. 161:24-163:6).  In fact Plaintiff's counsel admitted that the issues are "so big that the Magistrate Judge in this case proposed throwing the whole case out on that one issue and so that is why that [last] sentence is so critical."  (TT, 2/24/26, p. 163:4-6.)  Counsel also mused that "what they are going to get up and argue to the jury, nothing ever happened, this never happened, this never happened this didn't occur, it is all speculative."  (TT, 2/24/26, pp. 162:25-163:2.)

The Court considered the objections and comments of both parties and issued a non-standard instruction.  In addition to the mistake of law applying *Ricks* and *Chardon* to the accrual of a cause of action, the Court gave a charge for adverse employment action that went far beyond the language of Title VII and *Muldrow*.

In this case, the Court charged the jury as follows:

> Have you heard the term adverse employment action. Title VII prohibits employers from taking adverse actions against an employee based on a protected characteristic, such as national origin, race, or sex. Thus, plaintiff must show by a preponderance of evidence as a part of her discrimination claims, that she suffered an adverse employment action.
>
> To do so, plaintiff must show she suffered some disadvantageous change in an employment term or condition. You may find that an adverse employment action occurs when an employer provides notice of or communicate a future action to the employee rather than when such future action actually goes into effect if you find that the notice was of a non speculative disadvantageous change in an employment term or condition.

(TT, 2/25/26, p. 131:1-16). This charge was improper because it charged the jury on a summary judgment standard instead of the requirements of the statute itself. It further reflected a mistake in law by stating that an action occurs when an employer "provides notice of or communicate[sic] a future action." This instruction was given over the objection of BMW MC who objected to the original version of this instruction pre-trial and objected to the instruction during trial. (Objections to Plaintiff Request to Charge No. 5; TT, 2/24/26, pp. 158:9-160:9.) BMW MC's concerns regarding this instruction were borne out by the jury's note during deliberations, as fully detailed in BMW MC's Memorandum. (ECF No. 247 at 20.)

In order to recover under Title VII, a successful Plaintiff must show that their terms, conditions, and privileges of employment were impacted by the contested action. Over the objections of BMW MC, the Court gave a jury instruction adopting Plaintiff's arguments under *Ricks* and *Chardon* that notice of an employment action whose consequences were disputed may equate to an adverse employment action. The charge also specifically allowed the jury to find an adverse action on matters that had not and did not occur to Plaintiff. The note of the jury indicated that the jury recognized that "she never actually went to TX-64" and that the jury seized upon the Court's instruction regarding "something about a potential move." The Charge allowed the jury to award legal damages for a matter that was speculative and never happened. In sum, charging the jury on standards developed by the courts to manage matters at summary judgment led to confusion, was superfluous, and was erroneous. *See Smith v. Univ of N.C., 632 F.2d 316, 334* (4th Cir. 1980). As a result of this error, BMW MC is entitled to a new trial on Plaintiff's claim of national origin discrimination.

## V.      CONCLUSION

For the reasons set forth above and in its Memorandum, BMW MC respectfully requests that this Court grant its Motion for Judgment as a Matter of Law or, in the alternative grant its Motion for a New Trial.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully submitted this the 14th day of April, 2026.

By: *s/ Ellison F. McCoy*
Ellison F. McCoy (Fed. I.D. No. 6389)
ellison.mccoy@jacksonlewis.com
D. Randle Moody II (Fed. I.D. No. 7169)
randy.moody@jacksonlewis.com
Mallory H. Gantt (Fed. I.D. No. 13867)
mallory.gantt@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
(864) 232-7000

*ATTORNEYS FOR DEFENDANT*
*BMW MANUFACTURING CO., LLC*

15