**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| KELLY DAWSEY,<br><br>Plaintiff,<br><br>v.<br><br>BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT and BMW MANUFACTURING CO., LLC collectively d/b/a "BMW GROUP,"<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 7:22-cv-03738-TMC

**DEFENDANT BMW MANUFACTURING'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR FEES AND EXPENSES**

Defendant BMW Manufacturing Co., LLC ("BMW MC"), hereby responds in opposition to Plaintiff's Motion for Fees and Expenses (ECF No. 225) and Plaintiff's Supplements to Motion for Fees and Expenses (ECF Nos. 241, 244). For the reasons stated below, this Court should significantly reduce the attorneys' fees sought by Plaintiff's Counsel.

## I.    INTRODUCTION

Plaintiff asks the Court to award attorneys' fees for 818.75 hours at $500 per hour, plus costs, for a total of $438,804.89. The request is not reasonable. The Court should apply a reasonable rate of no more than $405 per hour because (1) there is no evidence that Plaintiff's Counsel has collected $500 per hour from fee-paying clients, (2) the declarations submitted herein show that the prevailing market rate for partner-level employment litigators is $350 to $450, and (3) Plaintiff's Counsel spent hundreds of hours on research, drafting, discovery, and other work that fee-paying clients expect to be performed by associate-level attorneys at much lower rates. The record further reflects that Plaintiff's counsel spent at least 140 hours on unnecessary and

1

unsuccessful litigation against BMW AG. Those hours, which primarily relate to peripheral jurisdictional and joint employment issues, should be excluded from the fee award. It is unreasonable to charge BMW MC for unsuccessful litigation against a different defendant. Finally, the fee award should be subject to further reduction based upon Plaintiff's limited success compared to her original settlement demand and based upon improper billing practices, including block billing and vague time entries.

As detailed herein, application of the above principles results in a reasonable fee award to Plaintiff of $219,801.60, which is comparable to the $221,935 in fees that this Court awarded another recent employment case tried to verdict by Plaintiff's counsel. BMW MC does not oppose Plaintiff's request for $29,504.89 in costs.

## II.     LEGAL STANDARD

The Fourth Circuit has adopted a three-step process for awarding fees. *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013). First, the court must determine the lodestar. *Id.* To do so, a court must determine a reasonable hourly rate and multiply that rate by the number of hours reasonably expended. *Robinson v. Equifax Info Servs., LLC,* 560 F.3d 235, 240 (4th Cir. 2009). Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee,* 738 F.3d at 88 (quotation omitted). Third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

In performing the above analysis, the Court is guided by a number of factors.[1]  *Robinson,* 560 F.3d at 244 (4th Cir. 2009). "'The most critical factor' in calculating a reasonable fee award

---

[1] The factors include: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the

'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *accord McAfee,* 738 F.3d at 92. "The court, in awarding attorney's fees, has discretion to 'attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *O'Fay v. Sessoms & Rogers, P.A.*, No. 5:08-cv-615, 2010 U.S. Dist. LEXIS 80128, at *6 (E.D.N.C. Aug. 9, 2010) (quoting *Hensley*, 461 U.S. at 436-37).

In a dispute over attorneys' fees, the burden of proving a reasonable fee is on the fee applicant. *Blum v. Stenson,* 465 U.S. 886, 898 (1984); *Har-Tzion v. Waves Surf & Sport, Inc.*, No. 7:08-CV-137-D, 2011 U.S. Dist. LEXIS 86454, at *1-2 (E.D.N.C. Aug. 4, 2011). A reasonable attorney's fee is one that is "adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." [2] *Blum*, 465 U.S. at 897.

---

legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *McAfee,* 738 F.3d at 88 n.5. Many of the factors are incorporated into the lodestar analysis of reasonable hours and rates. *Id.* at 89. While these factors should be considered, they need not be applied in a "strict manner," and "a district court is under no obligation to go through the inquiry of those factors that do not fit the circumstances of the particular case." *Sonoco Prods. Co. v. Güven,* No. 4:12-cv-790-BHH, 2015 U.S. Dist. LEXIS 1906, at *34-36 (D.S.C. Jan. 8, 2015); *accord Knussman v. Maryland,* 73 F. App'x 608, 613 n.3 (4th Cir. 2003); *Clark v. Experian Info. Sols., Inc.,* No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 32063, at *58 (D.S.C. Apr. 20, 2004).

[2] Fee-shifting statutes in employment statutes were "not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement." *Decker v. Subway Sandwiches & Salads, LLC*, No. 3:12-CV-563, 2014 U.S. Dist. LEXIS 24316, at *6 (E.D. Tenn. Jan. 24, 2014) (quotation omitted). "Congress did not intend that lawyers, already a relatively well off professional class, receive excess compensation or incentives beyond the amount necessary to cause competent legal work to be performed in these fields." *Coulter v. Tennessee*, 805 F.2d 146, 148-49 (6th Cir. 1986).

## III.    ANALYSIS

### A.    The Court Should Apply a Reasonable Hourly Rate.

To find a reasonable hourly rate, the Court should consider the "prevailing market rate" in the relevant community for similar services. *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum,* 465 U.S. at 895). "That rate may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Kilgore v. Hyung Chan Kim*, 2016 U.S. Dist. LEXIS 23833, at *9-10 (E.D. Tenn. Feb. 8, 2016); *accord Reaves v. Wilkerson,* No. 4:22-cv-318-JD, 2024 U.S. Dist. LEXIS 156870, at *5 (D.S.C. Aug. 30, 2024) ("The goal is to not overcompensate counsel with a 'liberal' fee, but to award the 'reasonable' fee necessary to encourage competent lawyers to undertake the representation.").

The Court may consider the rate actually charged by the petitioning attorney, affidavits of other South Carolina lawyers showing rates charged in the same practice area, and the Court's own personal knowledge of the relevant market rates. *See Rum Creek Coal Sales,* 31 F.3d at 175, 179; *Robinson,* 560 F.3d at 245. The lodestar should be based on a "reasonable, market-based rate, not the highest rates that lawyers can cherry-pick from the market." *In re Trans Union Corp. Privacy Litig.,* 2009 U.S. Dist. LEXIS 116934, at *47 (N.D. Ill. Oct. 1, 2009).

### 1.    *Plaintiff's Counsel's Actual Rate Is Less than His Requested Rate.*

Plaintiff's Counsel argues the Court should apply his "new hourly rate" that went into effect at some point in 2026 (*see* ECF No. 225-1, Murphy Decl. ¶¶ 16-17), as opposed to rates that he was actually charging during the course of this litigation. Yet, in a prior case, Plaintiff's Counsel testified under oath that "the case law suggests that consideration should be given to what clients have paid (past and current tense) rather than will be paying." *Carter v. Ascend Performance Materials Holdings, Inc.,* No. 8:20-cv-4379-TMC, ECF No. 214-1, Murphy Decl. ¶ 16 (06/04/24). In that case, Plaintiff's Counsel requested his most recent rate that clients have actually paid, rather

4

than his "new" rate. *Id.* His testimony in *Carter* was correct. As held by the Fourth Circuit, the "rate actually charged by the petitioning attorneys" is relevant "when it is shown that they have collected those rates in the past." *Rum Creek Coal Sales,* 31 F.3d at 175; *see also Daly v. Hill,* 790 F.2d 1071, 1081 (4th Cir. 1986) (holding that "it is within the discretion of the district court" to either apply current rates or adopt historic rates and otherwise "counterbalance the effect of inflation and foregone interest on the value of the fee").

Plaintiff seeks to recover for work performed from September 2021 through April 2026. (ECF No. 225-1, Murphy Decl. ¶ 19; ECF No. 225-2; ECF No. 244-2.)  In 2021, a Court in this District determined that a reasonable hourly rate for Plaintiff's Counsel was $400. *See Buie v. Charter Communs.,* No. 6:17-cv-3007-DCC, 2021 U.S. Dist. LEXIS 181628, at *6, 9 (D.S.C. June 9, 2021) (finding that $400 was reasonable rate for plaintiff's counsel in 2021). Further, Plaintiff's Counsel has conceded that his billing rate was $425 per hour from mid-2022 to mid-2024 and was $450 per hour from mid-2024 through 2025. *Carter,* No. 8:20-cv-4379-TMC, ECF No. 214-1, Murphy Decl. ¶¶ 16-17 (06/04/24).

At some point in 2026, Plaintiff's Counsel decided to increase his hourly rate to $500. (ECF No. 225-1, Murphy Decl. ¶¶ 16-17.) It is unclear if Plaintiff's Counsel changed his hourly rate before or after trial in this case, and he did not testify that he has actually charged and collected $500 per hour from any fee-paying clients. *See id.* Therefore, Plaintiff's Counsel's purported "new" hourly rate should not be applied. *See Rum Creek Coal Sales,* 31 F.3d at 175 (fee applicant's rate is relevant only if they have actually charged and collected that rate).  Moreover, Plaintiff's Counsel's purported increase of his hourly rate by $50 this year represents an 11% increase on his existing $450 rate (50/450), which substantially exceeds inflation. This Court recently found in another case that Plaintiff's Counsel's reasonable rate was $425 in June 2024. *See Carter,* No. 8:20-cv-4379-TMC, ECF No. 231, p.7. That approved rate of $425 in June 2024, adjusted for

inflation through March 2026, would be $446.70.[3] To be clear, Defendant is not advocating the court to award fees "on the basis of historic rates without accounting in any way for the effect of delay in payment on the value of the fee." *Daly,* 790 at 1081. But there is no evidence that Plaintiff's Counsel's new $500 rate has ever been charged and collected on. An hourly rate of $450 is reasonable for Plaintiff's Counsel because it is his most recent substantiated hourly rate, it exceeds his other historical rates during this case (2021-2023), and it aligns with the rate awarded to him in *Carter* in 2024 with an adjustment for inflation into 2026 dollars. This is adequate to "counterbalance the effect of inflation" under *Daly*.

> 2.    *Additional Evidence of Market Rates Shows that Counsel's Proposed Rate Is Excessive.*

An hourly rate of $450 for partner-level tasks is adequate to attract competent counsel in this market. Defendant submits the following evidence of competent partner-level employment litigators in the South Carolina market:

- ECF No. 225-4, Arnold Decl. ¶ 16 (employment litigator with 34 years of experience testified his "market" rate is **$450** per hour for a case with the same level of complexity) (3/10/26);

- Exhibit A, Mullaney Decl. ¶¶ 3, 8, 17 (testifying that **$350** is standard hourly rate in employment cases for litigator with 33 years of experience, including 15 years focusing on employment litigation) (2/8/26);

- Exhibit B, Ehman Decl. ¶¶ 3, 7 (testifying that **$395** is standard rate for litigator with over 20 years of experience in a wage-and-hour employment case) (11/4/25);

- Exhibit C, Davis Decl. ¶¶ 3, 5, 7-8, 11 (testifying, in an employment class action, that **$350** is hourly rate for attorney who has 34 years of experience and has tried hundreds of jury cases) (11/27/24);

---

[3] *See* U.S. Bureau of Labor Statistics, CPI Inflation Calculator, *available at* https://www.bls.gov/data/inflation_calculator.htm.

- Exhibit D, Falls Decl. ¶¶ 2-11, 21 (testifying that **$400** is regular hourly rate for accomplished attorney with 15 years of experience as a plaintiff-side employment litigator) (11/17/23);

- Exhibit E, Ricksecker Decl. ¶¶ 2-5, 18 (testifying that **$350** is hourly rate for lead counsel with 22 years of experience at firm specializing in representing employees in litigation) (5/1/23);

- Exhibit F, Spence Decl. ¶¶ 2-3 (testifying that **$325-$350** is market rate for partners with 15 or more years of experience in employment law) (5/1/23);

- *Carter,* No. 8:20-cv-4379-TMC, ECF No. 231, p.7 (Cain, J.) (finding the **$425** is reasonable rate for Plaintiff's Counsel) (10/30/24).

Collectively, this evidence shows that the prevailing market rate for partner-level employment litigators ranges from $350 to $450. Awarding Plaintiff's Counsel $450 per hour for his partner-level tasks would be at the very top of the market for skilled partner-level employment litigators.

> 3.      *Plaintiff's Counsel Billed All Tasks, Many of Which Were Appropriate for Associates or Paralegals, at a Partner Rate.*

Although $450 may be an appropriate market rate for partner-level work performed by Plaintiff's Counsel, this rate should be adjusted downward in this case because Plaintiff used a high-priced partner to do hundreds of hours of work that competent associates and paralegals could have done at much lower rates. In the private sector (and the judiciary), it is well known that research and drafting is expected to be done by associate-level attorneys. *See Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1023 (9th Cir. 2022) (affirming a reduction of fees where much work, including drafting documents, could have been performed by junior associates or even paralegals); *JTH Tax, LLC v. Manzo*, 2025 U.S. Dist. LEXIS 141357, at *8 (E.D. Va. July 23, 2025) ("Many of the tasks for which the Petition seeks compensation could have been done at a lower rate by a junior lawyer or paralegal with appropriate supervision, and counsel has not sufficiently addressed why that was not done here."); *Cowan Sys. v. Harleyville Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS

43951, at *2 (D. Md. June 15, 2007) (finding it reasonable for an associate to complete research at a lower rate).

Here, Plaintiff's Counsel seeks $500 per hour for hundreds of hours of research and drafting.  BMW MC has identified 129 time entries, representing **528.75 hours** of time spent by Plaintiff's Counsel on legal research; drafting pleadings, discovery, deposition outlines, motions, briefs, and memos; discovery tasks; document review; and other work that could have been by performed by associate-level attorneys. *See* Exhibit G (Examples of Time Spent on Research, Drafting, and Other Non-Partner Level Work).[4] Plaintiff's Counsel even seeks $500 per hour for some administrative and paralegal tasks, such as "create spelling list for court reporter" (7/12/25), preparing "cross indices for quick reference" (2/1/26), and "cross check exhibit lists to exams and TrialPad load" (2/16/2026). *See id.*

Plaintiff's Counsel is an experienced and tenacious litigator, but it is unreasonable to over-utilize partners or senior level attorneys. *See Monroe v. FTS USA, LLC,* No. 2:08-cv-2100, 2014 U.S. Dist. LEXIS 128451, at *20 (W.D. Tenn. July 28, 2014).  Courts do not tolerate such "top-heavy" staffing:

> **Purchasers of legal services generally require that work be performed by the person with the lowest billing rate who is competent to perform that service.** This usually results in a greater expenditure of associate time, while partners perform only those tasks that they alone can do.  The over-utilization of partners in this case, however, led to the opposite result. Virtually half the hours expended were billed by partners (1,013 partner hours against 1,096 associate hours), at hourly rates approximately double those charged for associates. Thus, the overstaffing of this case caused not only the billing of excessive hours but also the billing of many hours at an inappropriately high hourly rate. **If this situation had occurred in a case overseen by corporate counsel, it would have been remedied quickly.**

---

[4] All information in this summary chart and the other summary charts cited herein is sourced directly from Plaintiffs' billing records. (ECF Nos. 225-2, 244-2.)

*Fair Hous. Ctr. v. Hunt,* No. 1:09-cv-593, 2013 U.S. Dist. LEXIS 150692, at *44-45 (W.D. Mich. Oct. 21, 2013) (emphasis added).  The *Hunt* court stated that a "reasonable ratio" is "70% associate hours to 30% partner hours" and therefore cut down the partners' fees by an additional 10%.  *Id.* at *51-52; *see also Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) (finding it was appropriate for attorneys with lower rates to bill 65% of the hours). Here, the top-heavy staffing in this case was much more egregious than in *Hunt* because Plaintiff's Counsel billed *100% of the hours* at partner-level rates.[5]

To account for such top-heavy staffing in this case, the Court must further reduce the hourly rate of Plaintiff's counsel in calculating the lodestar amount.  Evidence submitted in other recent cases in this District reveals that the prevailing market rate for associate-level employment litigators is approximately $<u>300</u> per hour.[6] This rate should be factored into the overall rate awarded to Plaintiff's Counsel, given that Plaintiff's Counsel performed hundreds of hours of

---

[5] Plaintiff's Counsel may argue that he has no associate attorney. But that is a personal choice. Perhaps he likes to do all the work himself or is not interested in training younger attorneys. It matters not why. The private sector requires use of competent lower-level attorneys to perform lower-level work, and a fee applicant cannot charge the opponent for a more expensive business model. *See For Life Prods., LLC v. Virox Techs, Inc.*, 2022 U.S. Dist. LEXIS 135167, at *9-10 (W.D. Va. July 29, 2022) (finding that fee award must be reduced by one-third due to overuse of partner-level attorneys even while "recogniz[ing] that four of the attorneys work for smaller law firms that do not have the same staffing resources as larger firms, particularly as to junior-level attorneys"); *Gautreaux,* 491 F.3d at 661 (noting that "[h]aving one lawyer handle all of the work" would not be cost-efficient). Likewise, in the judiciary, our government recognizes that it is more economical to pay for judges and law clerks, rather than judges alone.

[6] *See* Exhibit H, Sturup Decl. ¶¶ 4, 9 (testifying that **$300** per hour is reasonable rate in South Carolina for associate attorney with five years of experience at plaintiff-side employment law firm) (12/3/25); Exhibit E, Ricksecker Decl. ¶¶ 2-4, 18 (testifying that **$280** is hourly rate for associates at plaintiff-side employment litigation firm) (5/1/23); Exhibit I, Quisenberry Decl. ¶ 6 (testifying that **$280** is market rate for associates with six or more years of experience in employment law) (5/1/23); Exhibit F, Spence Decl. ¶¶ 2-3 (same) (5/1/23); *Butler-Bohn,* No. 7:22-cv-156-TMC-KFM, ECF No. 55-1, Murphy Decl. ¶¶ 19-20 (testifying that **$300** is hourly rate of Matt Ozment, an employment litigator with 16 years of experience, who was playing a supporting role in a case handled by Plaintiff's Counsel) (2/17/23).

associate-level work.  Therefore, Defendant submits that the Court should reduce the reasonable hourly rate of Plaintiff's counsel by an additional 10% from $450 to $405 per hour.  An award of $405 per hour appropriately factors in the nature of the work performed by Plaintiff's Counsel, which was a mix of partner-level, associate-level, and administrative work.

4.      *Summary of Reasonable Hourly Rate.*

Considering all of the above evidence and factors, BMW MC submits that the lodestar amount in this case should be calculated using a rate of **$405** per hour.[7]  This rate is reasonable and adequate to attract competent counsel, as shown by the above-cited declarations of employment litigators in South Carolina (with partner-level rates ranging from $350 to $450). This rate also properly takes into account that Plaintiff's Counsel performed hundreds of hours of associate-level work that the market values at about $300 per hour.

**B.      Time Spent Litigating Against BMW AG Was Unnecessary, Unreasonable, and Unsuccessful.**

"In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *Doe v. Kidd*, 656 Fed. App'x 643, 656 (4th Cir. 2016) (quoting *Hensley,* 461 U.S. at 434).  It was unnecessary and unreasonable for Plaintiff to spend time litigating against BMW AG in this case. Typically, pursuing claims against an alleged joint employer is needed when the primary employer is insolvent or unlikely to satisfy a judgment. But, in this case, there was never any doubt that BMW MC would be able to satisfy a judgment. Likewise, if a direct employer has less than 500 employees, it may be logical for a plaintiff to pursue a claim against a joint employer because

---

[7] To the extent that Plaintiff argues that this hourly rate is lower than the rate awarded to Plaintiff's Counsel by this Court in the *Carter* case, BMW MC would note that the defendant in *Carter* did not file any arguments in opposition to the plaintiff's motion for attorney's fees in that case. *See Carter,* No. 8:20-cv-4379-TMC, ECF No. 231, p. 1.

establishing joint employment would increase the statutory cap on damages under Title VII. But here it was always known and undisputed that BMW MC has more than 500 employees.

The proof is in the pudding. Plaintiff obtained $300,000 in compensatory and punitive damages and $389,000 in back pay.  If Plaintiff had prevailed against BMW AG, it would not have increased her damage recovery by a single cent. Though BMW AG and BMW MC would have been jointly and severally liable for the judgment, this would provide no material benefit because BMW MC can obviously satisfy any judgment on its own. It was always pointless to pursue claims against BMW AG because success against BMW AG would not have changed the recovery.

Plaintiff argues that her written discovery on BMW AG was "critical" to prevailing on her claims.  (ECF No. 225 at 30-31.)  First, it was not necessary to name BMW AG to conduct third-party discovery on BMW AG via Rule 45 or other means. Thus, time spent litigating motions related to BMW AG's presence as a party (the motions to dismiss and for summary judgment) was not necessary or critical. Further, the jurisdictional and joint employment issues litigated against BMW AG cannot be considered closely related factually or legally to the successful discrimination claim against BMW MC. Second, Plaintiff dramatically overstates the importance of discovery aimed at BMW AG. In her Motion, Plaintiff cites only a single document to argue that discovery on BMW AG was important. (ECF No. 225 n.24 (citing Plf. Tr. Exh. 37/Def. Tr. Exh. 43).) But that exhibit was produced by BMW MC, *not BMW AG*, as shown on the Bates label "BMW_MC_000464." *See* Def. Tr. Exh. 43.  Plaintiff's reliance on a document that was produced by BMW MC only shows that discovery on BMW AG was not necessary. Plaintiff also cites BMW AG's Interrogatory Responses. (ECF No. 225 n.24.) But those Responses were not "critical" to the case. At no point during trial did Plaintiff rely on the BMW AG's Interrogatory Responses. She did not even include them in her exhibit list for trial. (ECF No. 171).  In sum,

11

Plaintiff has not shown that pleading and litigating claims against BMW AG played any "critical" role in helping her prevail against BMW MC or recover more damages.

It is also unreasonable to require BMW MC to pay for time spent on unsuccessful litigation against a different defendant. As the Third Circuit held:

> **We do not believe that a defendant may be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle or who are found not to be liable.** To require such compensation would be to allow a fee to a plaintiff for hours expended in an unsuccessful quest to establish liability, which, of course must be established before a fee may be awarded.
> …
> [W]e believe it incorrect for the district court not to have excluded the hours devoted to the case against Brauns [a defendant that won a directed verdict] and National Freight [a defendant that won a jury verdict]. No recovery whatsoever was had against those defendants. … We see no reason why Wilson [the defendant opposing the fee motion] should be required to compensate plaintiff's attorneys for any portion of the time devoted to the case against these defendants. Accordingly, in recalculating the number of hours reasonably devoted to the case against Wilson, **the district court should exclude those hours exclusively devoted to the prosecution of the case against all four of the other defendants**.

*Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1214-15 (3d Cir. 1978); *see also Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1418-19 (4th Cir. 1992) (holding it was appropriate for district court to reduce fee award because a significant amount of the work related to a defendant who settled).

Here, as in *Baughman*, the Court should exclude all hours devoted to prosecution of the case against BMW AG from the fee award. Here, BMW MC has identified 34 time entries which collectively represent 140.35 hours of time spent by Plaintiff's Counsel on motions and other tasks related directly to BMW AG. *See* Exhibit J (Examples of Time Spent on Litigation Against BMW AG). So, time spent against BMW AG represents at least 17% of the total hours (140.35/818.75). Yet, this surely undercounts time spent against BMW AG for several reasons. First, there are many general tasks, such as drafting the original complaint, "outline issues for case memo and upcoming SJ arguments," and preparing opening and closing arguments, that

necessarily involved some time devoted toward BMW AG but have not been included in the attached list of examples because such entries do not appear to be directed exclusively toward BMW AG. Second, identifying time spent on BMW AG is difficult because so many of Plaintiff's Counsel's time entries are impermissibly vague, as discussed in Section III.D.

The Court "should analyze the hours claimed by plaintiff to determine which hours were fairly devoted to the claim against [BMW MC] only" and use that analysis to estimate what fraction of the total hours incurred should be charged to BMW MC. *Baughman.,* 583 F.2d 1215. But the Court need not painstakingly nitpick the billing records because Plaintiff has the burden of showing what hours were devoted solely to BMW AG. *See id.* ("We emphasize that plaintiff bears the burden of proving what hours were devoted to such claim."). Here, Plaintiff has made no attempt to isolate such hours and thus failed to carry her burden. Therefore the Court should impose a significant reduction of *at least* 140.35 hours, or 17% of the total hours, though a more robust reduction of 20% or 25% of the total hours is justified by Plaintiff's failure to offer evidence showing how much time was devoted to the claims against BMW MC.

If the Court excludes 140.35 hours of unnecessary and unsuccessful time spent litigating against BMW AG, it would result in an award of 678.4 hours (818.75 - 140.35), which is more than reasonable for this case. In comparison, Plaintiff's Counsel billed only 522.2 hours in the *Carter* case. *See Carter,* No. 8:20-cv-4379-TMC, ECF No. 214, p.10.  As stated by Plaintiff's Counsel, the *Carter* case had "far more issues of fact and even more legal issues than in the typical case." *Id.* at 11. There was robust discovery, including 13 depositions, several rounds of written discovery and third-party subpoenas, and 17 document productions. *Id.* at 9. There were two summary judgment motions involving 191 pages of briefs and 176 exhibits. *Id.* There were also 16 motions in limine and 4 more amended motions in limine. *Id.* The appearance of *Muldrow* required re-submission of Rule 26(a)(3) responses and objections and additional work on jury

13

charges and objections. *Id.* at 10. There was a five-day jury trial. *Carter,* No. 8:20-cv-4379-TMC, ECF No. 231, p.3.

The *Dawsey* case should have involved a roughly comparable number of hours. Here, there were 12 depositions (slightly less than in *Carter*), several rounds of written discovery (similar to *Carter*), two dispositive motions litigated against BMW MC (same as in *Carter*), and 141 pages of briefing on dispositive motions and 77 related exhibits, even when including BMW AG's dispositive motions (less than in *Carter*). ECF No. 225, p. 11. BMW MC provided documents to Plaintiff in six document production responses (significantly less than the 17 in Carter). There were *Muldrow* issues (same as in *Carter*). There were seven motions in limine (far less than the 20 in *Carter*). ECF Nos. 144, 152-157, 202. There were seven trial days (slightly more than in *Carter*).

Given the similar case profiles, one would expect a similar number of hours worked. But Plaintiffs' Counsel billed 818.75 hours on the *Dawsey* case and only 522.2 hours on the *Carter* case. While there are surely some differences in these cases, they are not so different as to require nearly 300 extra hours of work – which can be explained most readily by the unsuccessful and unnecessary claims that Plaintiff prosecuted against BMW AG. Plaintiff's Counsel seeks to recover a total of $409,300 for fees in this case. (ECF No. 244.) This is clearly excessive compared to *Carter*, where this Court found that reasonable fees were only $221,935. *See Carter,* No. 8:20-cv-4379-TMC, ECF No. 231, p.7.

In summary, the Court should exclude the time spent litigating against BMW AG or otherwise find that Plaintiff's total hours were excessive. The lodestar fee should be calculated using no more than **678.4 hours.** Therefore, BMW MC submits that the appropriate lodestar fee

14

in this case is **$274,752** (678.4 hours x $405 per hour).  However, as detailed below, that number should be further reduced based upon Plaintiff's limited success and inadequate billing records.

### C.     Plaintiff's Limited Success Requires a Lodestar Reduction.

To evaluate the degree of success, "the court 'must compare the amount of the damages sought to the amount awarded.'" *Buie v. Charter Communs.,* No. 6:17-cv-3007-DCC, 2021 U.S. Dist. LEXIS 181628, at *3-4 (D.S.C. June 9, 2021) (quoting *Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir. 2005)). "If the plaintiff 'has achieved only partial or limited success,' a reduction of the fee award may be appropriate." *Id.* at *4 (quoting *Hensley,* 461 U.S. at 435).

Prior to the filing of this lawsuit, Plaintiff's Counsel made a demand of $2,855,514 to settle Plaintiff's claims.[8] *See* Exhibit K, Lindemann Decl. ¶¶ 5-6 & Ex. K-1.  The total judgment entered against BMW MC in this case was $689,907, which reflects $389,907 in back pay and $300,000 in punitive and compensatory damages. (ECF No. 239.)  Therefore, Plaintiff's recovery in this case was only 24% of what she sought in the original demand ($689,000/$2,855,514).  Recovering only 24% of the damages demanded reflects "only partial or limited success" and warrants a significant reduction to the lodestar.  In *Buie*, the plaintiff prevailed on an ADA claim and was unsuccessful on an FMLA claim. *See Buie,* 6:17-cv-3007-DCC, Dkt. 223 (3/25/21). The plaintiff also obtained significantly less damages than what she sought. As later described by Plaintiff's

---

[8] "Although Federal Rule of Evidence 408 bars consideration of settlement discussions in certain circumstances, it is appropriate to consider these discussions on a motion for fees for the purpose of determining what relief a plaintiff sought or the extent of success a plaintiff enjoyed."  *Caner v. Autry*, No. 6:14-cv-4, 2014 U.S. Dist. LEXIS 90179, at *13-15 n.3 (W.D. Va. July 1, 2014); *see also McAfee v. Boczar,* 738 F.3d 81, 90 (4th Cir. 2013) (holding that a district court has discretion to consider settlement negotiations in determining the reasonableness of fees); *Randolph v. Powercomm Constr., Inc.*, No. 13-01696, 2016 U.S. Dist. LEXIS 152972, at *24-25 (D. Md. Oct. 31, 2016); *Bratcher v. Dolphin*, No. 5:10-cv-01100, 2013 U.S. Dist. LEXIS 39865, at *19 (S.D. W. Va. Mar. 22, 2013). Settlement offers from mediation might also be relevant, but here the parties signed a mediation agreement that is stricter than Rule 408 and states that mediation communications are privileged and inadmissible for any purpose.

Counsel, in *Buie* "Judge Coggins (in a bench trial) awarded about twenty percent of the recovery sought." *Carter,* 8:20-cv-4379-TMC, ECF No. 214 n.22 (6/4/24) (discussing *Buie*).  In *Buie*, Judge Coggins found that Plaintiff's Counsel's limited success justified a **"15% reduction"** from the lodestar. *Buie,* 2021 U.S. Dist. LEXIS 181628, at *12. Judge Coggins explained: "By any measure, Plaintiff's success here was limited. She prevailed on only one of her claims and her recovery was reduced by evidence of pre-existing emotional distress as well as her voluntary resignation from almost fully mitigating subsequent employment." *Id.* at *10. Although it was not practical to parse out time spent on the unsuccessful FMLA claim, it was still necessary to adjust the lodestar downward and a "percentage reduction [of 15%] is the most appropriate method to fairly reflect Plaintiff's comparative success under these circumstances." *Id.* at *11.

Here, the considerations are similar to *Buie*. Plaintiff prevailed on only one claim (national origin discrimination under Title VII against BMW MC) and was unsuccessful on her other three claims against BMW MC. Plaintiff's failure on her § 1981 claim is particularly important because that claim was not subject to statutory damages caps. Plaintiff's failure to prevail on any of her four claims against BMW AG also shows "partial or limited success" and thus must be factored into a lodestar reduction, especially if the hours spent on BMW AG are not excluded from the lodestar (as argued above in Section III.B).  In *Knussman*, the Fourth Circuit found that a fee award must be reduced because the plaintiff asserted claims against multiple defendants but "ended up securing monetary relief against only one defendant."  *Knussman v. Maryland,* 73 F. App'x 608, 614 (4th Cir. 2003). The plaintiff's limited success "call[ed] for a significant reduction in his award of attorney's fees." *Id.* at 616. The Fourth Circuit reversed and remanded because the trial court abused its discretion in part by failing to adequately account for the plaintiff's failure to prevail against the other defendants. *Id.* at 609, 616. Similarly, the Ninth Circuit has held that a "discretionary reduction" for limited success is appropriate if the plaintiff "sued several

defendants, but prevailed against only one," when "all his claims arose out of a common core of facts." *Webb v. Sloan,* 330 F.3d 1158, 1169 (9th Cir. 2003); *see also Allen v. Allied Plaint Maintenance Co.,* 881 F.2d 291, 299 (6th Cir. 1989) (affirming reduction of lodestar by 35% to account for plaintiff's limited success where complaint included ten defendants, five causes of action, and a request for punitive damages, but plaintiff ultimately recovered against only two defendants and one cause of action and was not awarded punitive damages). A significant reduction is appropriate to address Plaintiff's failure to recover anything from BMW AG, especially if the Court does not exclude the 140.35 identifiable hours that Plaintiff's counsel spent litigating against BMW AG (*see* Exhibit J - Examples of Time Spent on Litigation Against BMW AG).

Here, Plaintiff recovered only 24% of the $2.85 million she initially demanded. *See* Ex. K, Lindemann Decl. ¶¶ 5-6. Accordingly, based on the holding in *Buie*, the Court should apply at least a **10%** reduction to the lodestar to account for Plaintiff's partial or limited success.[9]

### D.    Plaintiff's Billing Records Are Inadequate.

Billing records "must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and reasonably expended." *ECOS, Inc. v. Brinegar*, 671 F. Supp. 381, 394 (M.D.N.C. Oct. 1, 1987) (quotation omitted). Block billing and vague task descriptions "inhibit the court's reasonableness review and justify a percentage reduction in the fee awarded." *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 2015 U.S. Dist. LEXIS 95355, at *32, 34, 36 (D.S.C. July 21, 2015) (citing cases that applied 10%, 20%, 50%, 55% and 60% reductions due to block billing and vague task descriptions).  Block

---

[9] If the Court does not exclude the 140.35 hours that Plaintiff's counsel spent litigating against BMW AG, then the lodestar reduction should be significantly steeper, at least 25%, to account for the fact that Plaintiff lost all her claims and recovered nothing from BMW AG.

billing is where the attorneys lump multiple tasks into one time entry. *Id.* at *32 (citing *McAfee v*, 738 F.3d at 90). Here, Defendant has identified 129 block-billed entries in Plaintiff's Counsel's billing records, which collectively represent 563.3 hours of block-billed time. *See* Ex. L, Examples of Block Billed Entries. Therefore, over half of all the time entries submitted by Plaintiff's counsel are block-billed, which is egregious.

The Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed," which is "especially necessary" where, as here, the plaintiff "has not prevailed on all the claims." *Rum Creek*, 31 F.3d at 180. Impermissibly vague entries are those that fail to state the subject matter of a communication (*e.g.*, "email with client" or "conference with team") or use general terms and fail to specify what work is actually being done (*e.g.*, "trial preparation," "address strategy," "review documents," or "review status"). *See Gratz*, 353 F. Supp. 2d at 939; *Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 764 (S.D. Ohio 2002). Here, Plaintiff's Counsel's billing records are replete with vague entries, such as "review information" (1/26/22, 12/9/22), "review all discovery" (8/25/23), "review file" (1/16/23, 1/17/23, 5/1/23, 4/27/25), "meet with client," "client meeting," and just "meet" (1/26/22, 2/16/22, 3/17/22, 5/4/23, 8/16/23, 8/26/23, 8/27/23, 8/28/23, 12/12/23, 1/23/24, 2/2/24, 3/22/24, 2/17/26). There are at least 47 entries with vague descriptions, collectively representing 153.8 hours of vaguely billed time. *See* Ex. M, Examples of Vague Entries.

Indeed, these time entries are equally vague or worse than time entries rejected by other courts. *Compare Rum Creek*, 31 F.3d at 180 (criticizing time entries: "research" and "letter to client"); *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (affirming 20% reduction for vague entries, such as "met w/ client"); *Abusamhadaneh v. Taylor*, 2013 U.S. Dist. LEXIS 7451, at *63-64 (E.D. Va. Jan. 17, 2013) (reduction for vague billing entries that made "no mention of the subject matter of a meeting, telephone conference or the work performed" or its purpose);

18

*Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 520 (W.D. Va. 2016) (inadequate descriptions included: "research," "document review," "work on discovery," and "trial preparation"); *Route Triple Seven*, 127 F. Supp. 3d at 622 n.17 (impermissibly vague entries included: "revise discovery," "brief call with M. Reh," "research issues involving discovery," "review law concerning issues in the case," and "continue analysis of legal file"); *Gilster v. Primebank*, 884 F. Supp. 2d 811, 874 (N.D. Iowa 2012) (criticizing and reducing vague entries that, for example, "[did] not indicate the subject of the e-mails" and "fail[ed] to indicate what she researched"); *Vollenweider-Leos v. Hartford Life & Accident Ins.*, 2010 U.S. Dist. LEXIS 9061, at *14-15 (N.D. Iowa Feb. 1, 2010) (cutting all time spent on vague entries, such as "further work on file and appeal" and "review of additional documents").

The remedy is an across-the-board reduction. "Courts faced with excessively vague or inadequate descriptions of tasks in fee claims have reduced fee claims by percentages ranging from 20% to 90%." *Route Triple Seven, Ltd. v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015) (collecting cases); *see also Howe v. City of Akron*, 705 F. App'x 376, 383 (6th Cir. 2017) (affirming 35% reduction); *Uhlig, LLC v. Shirley*, 895 F. Supp. 2d 707, 715 (D.S.C. 2012) (reducing fees by 60% to address block billing entries); *Grant*, 2013 U.S. Dist. LEXIS 49180, at *23 (33% reduction); *Heath v. Metro. Life Ins.*, No. 3:09-cv-138, 2011 U.S. Dist. LEXIS 101504, at *29-33 (M.D. Tenn. Sept. 6, 2011) (20% reduction even though total number of hours was not suspicious); *Beasley*, 2011 U.S. Dist. LEXIS 129618, at *12 (reducing hours by 50% because many entries were "vague" and reflected absence of billing judgment).

Given that Plaintiff's billing records include hundreds of hours of vague and block-billed time, the Court should factor these deficiencies into the across-the-board reduction of at least **<u>10%.</u>**

19

**E.     Re-Calculation of a Reasonable Fee Award.**

As set forth in Section III.A, the Court should apply a reasonable billing rate of no more than $405 per hour. As set forth in Section III.B, the Court should apply a reasonable number of hours that does not exceed 678.4. Multiplying the proposed reasonable rate and hours results in a lodestar of $274,752.

As set forth in Sections III.C and III.D, that lodestar should be reduced by at least 20% to account for Plaintiff's limited success and inadequate billing records. Accordingly, the total amount awarded should not exceed **$219,801.60**. This is roughly equivalent to the fees awarded in by this Court in Carter ($221,935) for a comparable employment case tried to verdict. *Carter,* No. 8:20-cv-4379-TMC, ECF No. 231, p.7. The proposed award is adequate to incentivize competent counsel to pursue employment claims without producing a windfall. After all, Plaintiff's Counsel has not stopped taking new cases because the award in *Carter* was too small.

## IV.     CONCLUSION

For the reasons set forth herein, BMW MC respectfully requests that Court award a reasonable amount of attorneys' fees that does not exceed $219,801.60. BMW MC does not oppose Plaintiff's requested costs in the amount of $29,504.89. Accordingly, BMW MC respectfully requests that Court enter a total award for fees and costs of no more than **$249,306.49**. BMW MC reserves the right to further challenge any award of fees and costs if BMW MC prevails in whole or in part on its pending Motion for a Judgment as a Matter of Law or on its anticipated Appeal.

Respectfully submitted this 22nd day of April, 2026.

By: *s/ Ellison F. McCoy*
Ellison F. McCoy (Fed. I.D. No. 6389)
ellison.mccoy@jacksonlewis.com
D. Randle Moody II (Fed. I.D. No. 7169)
randy.moody@jacksonlewis.com
Mallory H. Gantt (Fed. I.D. No. 13867)
mallory.gantt@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
(864) 232-7000

*ATTORNEYS FOR DEFENDANT*
*BMW MANUFACTURING CO., LLC*