**In the United States District Court**
**District of South Carolina**
**Spartanburg Division**

| | |
|---|---|
| Kelly Dawsey, ) | |
| ) | **7:22-03738-TMC** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Bayerische Motoren Werke ) | **Plaintiff's Reply in Support of Motion** |
| Aktiengesellschaft and BMW ) | **for Fees, costs, Expenses [ECF 225]** |
| Manufacturing Co., LLC collectively ) | |
| d/b/a "BMW Group," ) | |
| ) | |
| Defendants. ) | |

A.    **BMW's hourly rate arguments**

   1. **The Undersigned's rate**

        a.      **BMW misstates the Undersigned's representations in *Carter*.**

BMW asserts that the rate requested is higher than the Undersigned's actual rate. [ECF 255 at 4]. That is untrue. [Murphy Supp. Decl. ¶ 2 (Exh. 1)].[1]  BMW also claims that the argument in *Carter* is different than the position taken here. [ECF 255 at 4]. Also untrue. The Undersigned cut and pasted the argument from *Carter. Compare Carter v. Ascend*, 8:20-cv-04379-TMC, ECF 214 at 13- 14 & n.14, *with* ECF 225 at 19 & n.16.

---

[1]      The language in the Undersigned's *Carter* declaration acknowledged that the $450 rate was not yet in effect at the time of the Motion in Carter. *Carter*, ECF 214-1 ¶ 16. That is not the case here. [*See* Murphy Supp. Decl. ¶ 2].

1

**b.    The Undersigned's 5.41% annual rate of increase is below market.**

BMW complains that the Undersigned's rates were lower in 2021 and 2024. So too were the rates of Jackson Lewis. BMW provides no authority for the argument that the "rate of inflation" should apply. [ECF 255 at 5-6]. Jackson Lewis does not use "rate of inflation" to adjust its rates; it raises its rates by "roughly 6%" each year. [Exh. 3 at 2; Exh. 4 at 2]. Applying that growth rate, the Undersigned's rate should be $535.[2] The latest data shows that the market rate of fee increases for labor and employment lawyers is 7.3%. [Exh. 5 at 5]. If one applied that rate of increase, the Undersigned's hourly rate would be even further below the market rate.

**2.  Rates of other attorneys**

BMW never discloses the regular billing rate of the numerous partners at Jackson Lewis, SpencerFane, and Morgan Lewis & Bockius who defended this case.  The Court should consider this information in evaluating BMW's claim that the Undersigned is overpriced.  [ECF 256].

BMW points to the declaration of Andy Arnold, who attests that the Undersigned's rate is reasonable. [ECF 225-4 at 5-6 ¶ 17]. BMW notes that Arnold's hourly rate is $50 less. But it fails to mention that Arnold explains that his rate applies to cases with no risk.

---

[2]  Multiplying each year by 1.06. 2021 = $400; 2022 = $424; 2023 = $449; 2024 = 476; 2025 = $505; 2026 = 535. Even applying a 6% rate of growth to the rate in effect immediately after *Carter* also shows that the Undersigned's request is a little light. 2024 = $450; 2025 = $477; 2026 = $506. The Undersigned's annual rate of increase from 2024 ($450) to 2026 ($500) is 5.41%.

[*Id.* ¶ 16]. Further, the fact that one lawyer's rate is reasonable does not mean that another's rate is unreasonable. Certainly not every defense lawyer with the same number of years at the Bar charges the same.

BMW next points to declarations from wage and hour cases.[3] None of them address how the *Barber* factors apply in an employment discrimination case with a lawyer who has 34 years of focused experience and many jury trials under his belt.[4]

**B.     Dawsey's "top heavy" representation**

BMW oddly refers to the Undersigned's solo representation of Dawsey as "top-heavy staffing." [ECF 255 at 9; see also *id.* n.5 (arguing that "[p]erhaps [the Undersigned] likes to do all the work himself or is not interested in training younger attorneys")]. BMW

---

[3]     In the typical FLSA case, the issues are duties, salary or hourly basis, application of an exemption, and the hours worked. These cases rarely reach a trial. Title VII cases involve the inherently difficult task of proving motive. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716-17 (1983) (quoting *Edgington v. Fitzmaurice*, 29 Ch. Div. 459, 483 (1885)).

[4]     Ms. Mullaney is the only attorney cited with whom the Undersigned is familiar. BMW cites her declaration from another case for the proposition that $350 is the standard rate for a litigator with 15 years of employment law experience. [ECF 255 at 6]. But all Ms. Mullaney said (in an FLSA case) is that her rate is $350 per hour. [*Id.*] The next declarant cited (Ehman) also did not opine on market value or on anything remotely related to this type of dispute. The ECF system shows he has had less than 10% of the cases the Undersigned has handled in this District (24 vs. 254). The next declaration (Davis) is from an apparent personal injury attorney who handled a wage payment claim. [ECF 255-4]. The only pending case she has in this District is a personal injury case. She has had 50 cases before this Court. The same is true with the Ricksecker FLSA declaration, which also sheds no light. [ECF 255-5]. The final FLSA declaration from Ms. Spence clarifies that she is discussing the market rates for FLSA litigators. Her belief that $350 is the market rate for someone with less than half the Undersigned's experience is unenlightening. [ECF 255-5].

argues that the Court should mandate a big-firm staffing model and apply hypothetical junior-lawyer rates. "Speculation that less experienced attorneys or even a legal assistant, should have performed the work is unfounded." *ACLU of Fla., Inc. v. Dixie Cnty., No. 1:07-cv-00018-MP-GRJ, 2012 U.S. Dist. LEXIS 22486, at \*6-7 (N.D. Fla. Feb. 6, 2012)* . And it is error to "reduce[ an] hourly rate" just because "other firms could have staffed the case differently." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). That is particularly so where the losing party advocates for a multi-level scheme that is inherently less efficient because a "senior" attorney must review all work anyway. *Id.* at 1114–15. In preparing a case like this, one lawyer "can doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely." *Id.* at 1115.

BMW cites no cases in which a solo lawyer's rate was reduced because he or she did not staff additional attorneys or paralegals. As noted in *Moreno*, *Hensley* requires a determination of a reasonable rate for the prevailing attorney. Thus, a court should not parse each activity and assign a hypothetical rate. *Moreno*, 534 F.3d at 1115.[5]

---

[5]    BMW's pettiness is exemplified by its complaint that the Undersigned started a spelling list of German words for the Court reporter. The Undersigned recognized the need and started the list while reviewing the Petrasch deposition and preparing her witness outline and designation table entries. [ECF 255 at 8 (referring to ECF 225-2 at 5 (7/12 entry)]. In other words, it did not really take any more time than it would have taken to perform the other concurrent activities. And it surely would not have been more efficient to hire a paralegal to separately review tens of thousands of pages of documents and list every German word that the Undersigned would have to review and edit anyway.

This is not the first time a large firm has looked down its nose at small firm representation of a prevailing party. But, as the *Moreno* Court noted, contingency lawyers have an incentive to be efficient:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno*, 534 F.3d at 1112. The Undersigned has represented Dawsey for almost 4 ½ years, receiving no pay while advancing almost $30,000. Inefficiency is not a luxury that could be even considered.

BMW cobbles together five non-discrimination cases that are ridiculously off point. [See ECF 255 at 7-8]. *Shayler* is a Title III ADA (building access) case involving a "serial litigant" that filed boilerplate complaints.[6] *Shayler v. 1310 PCH, Ltd. Liab.*, 51 F.4th 1015, 1017–18 (9th Cir. 2022). *JHT Tax* is a breach of contract case arising out of the termination of a franchise agreement. As with *Shayler*, the plaintiff brought repeated

---

[6]    The Court described the plaintiff as a "serial ADA litigant" who brought Title III access (*i. e.* , not Title I employment) cases that the Court described as an example of "hallmark of abusive ADA litigation" involving a "cottage industry" that "use[s] form complaints" that are "frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation." *Shayler v. 1310 PCH, Ltd. Liab.,* 51 F.4th 1015, 1017–18 (9th Cir. 2022) (cleaned up). The case involved "a 'straightforward' ADA case with boilerplate pleadings, minimal legal complexity, and little in the way of difficult fact discovery." *Id.* at 1021. The Court found that "serial ADA litigation does not involve particularly complex work justifying partner-level billing rates." *Id.*

litigation where "the legal issues . . . were not particularly complicated." *JTH Tax, LLC v. Manzo*, No. 2:24-cv-505, 2025 U.S. Dist. LEXIS 141357, at *7 (E.D. Va. July 23, 2025).[7] *Cowan* is an insurance coverage case where there was "no challenge to the reasonableness of the hourly rates charged by Cowan's counsel." *Cowan Sys. v. Harleysville Mut.* , No. CCB-05-217, 2007 U.S. Dist. LEXIS 43951, at *2 (D. Md. June 15, 2007).[8]

Monroe involved a critique of the inefficiency inherent in using multiple senior-level attorneys on top of associates and staff. *Monroe v. FTS USA, LLC*, No. 2:08-cv-02100-JTF-cgc, 2014 U.S. Dist. LEXIS 128451, at *20 (W.D. Tenn. July 28, 2014). And even that case refutes BMW's argument that the Undersigned should not bill for research. The *Monroe* Court found that senior lawyers doing things like research is "quite necessary for the continued competency of an attorney's practice in his or her specialized area of law." *Id.* at *23.

Finally, BMW cites a case where a party seeking sanctions staffed the motion with "seven partner-level attorneys, one associate-level attorney, one law clerk, and four paralegals." *For Life Prods. , LLC v. Virox Techs. Inc.* , No. 1:20CV00016, 2022 U.S. Dist.

---

[7]     Citing five identical other matters, the court remarked that "[t]he lack of complexity in this case is further supported by Liberty's long history of litigating the non-competition and non-solicitation terms of its franchise agreements in state and federal jurisdictions across the country." *Id.* And like *Shayler*, the case involved "no lengthy hearings, depositions, substantial discovery, or opposed motions." *Id.* at *8.

[8]     The *Cowan* Court never cut the attorney's fee because work was improperly done by a partner. The only apparent issue was an argument that an associate's research work on appeal was block billed. *Id.* at ** 2-3.

LEXIS 135167, at *3 (W.D. Va. July 29, 2022), *cited in* ECF 255 at 9 n.5. Again, that looks far more like BMW's approach than Dawsey's.

BMW also urges the Court to compare Dawsey's case to *Carter*. [ECF 255 at 13-14]. So let's do that. BMW's own decisions demonstrate that *Carter* must have been a far simpler case. It only took a single lawyer to depose Latesha Carter for four hours. [*Carter*, ECF 59-1 at 1-2]. This case required two partners for BMW MC alone and almost 9 ½ hours to conclude Dawsey's video deposition. [ECF 97-4 at 1-2]. The facts of *Carter* only required one lawyer to defend the deposition of each company witness. This case required at least *two* partners and sometimes an associate (in addition to multiple in-house counsel and BMW AG's counsel) to *defend* most of the BMW depositions. Messrs. Moody and McCoy both covered the same seven BMW witness depositions.[9] Only the most complex of cases require multiple partners to decide when to say, "object to the form." BMW MC itself argues that "it is unreasonable to over-utilize partners or senior level attorneys." [ECF 255 at 8]. So BMW couldn't have been doing that.

The relative complexity of this case also required two more firms, with three additional counsel of record, to represent BMW AG, for a total of six outside counsel of record and three inhouse counsel. *Carter* only required half as many lawyers to represent both parent and subsidiary. So obviously this case is more complex than *Carter*. What other explanation could there be for these differences?

---

[9]     ECF 97-3 at 2 (Burgmeier); 97-5 at 2 (Engelhorn dep.); 97-6 at 2 (Epps); 97-8 (Keiser); 97-9 at 2 (McCraw); 97-10 (Medley); 97-11 (Petrasch).

And, as the Court is painfully aware, the trial in this case was 29% longer than the Carter trial.[10]

BMW also cites no authority for its argument that the Court should cut the Undersigned's rate across the board to form a "blended" rate that is way below market. [ECF 255 at 14-15]. Again, that runs afoul of every tenet in *Hensley*, *Barber*, *and* Local Rule 54.02-.03.

**C.    BMW's argument about BMW AG ignores both facts and controlling precedent**

**1.    The Rule in *Hensley* applies to hours spent litigating against BMW AG.**

BMW MC urges the Court to "exclude all hours devoted to the prosecution of the case against BMW AG." [ECF 255 at 12]. That runs directly afoul of *Hensley*. There is no difference between an unsuccessful claim against a single defendant and an unsuccessful claim against a separate defendant. Even a case cited by BMW illustrates that the test is the same: Were the unsuccessful claims related to the successful claims and do they arise from a common core of facts? *Knussman v. Maryland*, 73 F. App'x 608, 615 (4th Cir. 2003) (finding that the claims "did not share a core of common facts with his claims against the other individual defendants"). And BMW never explains how the facts underlying the claims against BMW AG differ from those underlying the claims against BMW MC. As the Court already knows, that is because the facts were the same. [*See*

---

[10]    The Carter trial lasted five days. [*Carter*, ECF 205]. This trial took seven days (six days of jury trial and one day nonjury). [ECF 198, 209, 226].

ECF 90 at 11 (denying BMW AG Motion to Dismiss because it "substantially engaged" with BMW MC in making the decisions giving rise to Dawsey's claims).

Neither case that BMW cites establishes that hours devoted to claims against a different prevailing defendant should be stricken. The closest authority BMW could find is a 48-year-old Third Circuit antitrust case that involves a defendant that settled. A truck driver sued five companies for blacklisting him. *Baughman v. Cooper-Jarrett, Inc.*, 391 F. Supp. 671, 673 (W.D. Pa. 1975). The plaintiff settled with two of the companies, and the parties stipulated that the settlement covered the one federal claim that provided attorney fees. *Id.* at 673-74. The issue on appeal was whether the nonsettling defendant should compensate the plaintiff for fees attributable to the settled claims against the separate companies. The Third Circuit cited language from the Sherman Act to find "that fees are to be recovered only from the party against whom liability has indeed been established, and only for the hours reasonably devoted to establishing that liability." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978). Allowing a prevailing plaintiff to settle a claim involving fees against one defendant and then claiming those fees against another defendant does raise a serious question. But it is not a question here.

For the same reason, *Johnson v. Hugo's Skateway* is not instructive. The Fourth Circuit agreed with the District Court that 914 hours for an assault case under Section 1983 was excessive. It did so because "much of the work" related to claims against settled defendants. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1418 (4th Cir. 1992). BMW's

9

requested relief would be unsupported even if Dawsey had settled with BMW AG. *Johnson* does not support the elimination of all fees incurred in pursuing the settling defendant. It merely approved the District Court's exercise of its broad discretion to *reduce* such fees.

### 2.      BMW shut down discussions about proceeding against only BMW MC.

BMW's complaint that Dawsey pursued her claims against both BMW entities ring hollow. BMW AG's counsel inquired about the Undersigned's willingness to proceed to trial solely against BMW MC. The Undersigned was receptive, and there was an initial discussion about the ramifications (for each side). This included the Undersigned's need for assurances that BMW MC would lay blame on BMW AG at trial. It also included the need for a stipulation that an agreement would not affect Dawsey's claim for fees. Those seem like easy issues to resolve, but, for reasons unclear, BMW decided not to pursue these options. Instead, BMW kept BMW AG in the case. [Murphy Supp. Decl. ¶ 4].

### D.      BMW's "limited success" argument is nonsensical and based on a misrepresentation.

### 1.      There was no demand in the discussions cited by BMW.

A perfect example of BMW throwing every argument against the wall is the claim that Dawsey obtained limited success. BMW argues: "Prior to the filing of this lawsuit, Plaintiff's Counsel made a demand of $2,855,514 to settle Plaintiff's claims." [ECF 255 at 15]. The only reason BMW does not violate Rule 408(a)(1) with this argument is that its statement is false. Even the Lindemann Declaration contradicts BMW's assertion. Mr. Lindemann initiated the conversation. [Exh. 6; Murphy Supp. Decl. ¶ 1]. Lindemann never

10

references a "demand." He merely states that: (1) the Undersigned sent a pre-suit spreadsheet actual damages calculation; and (2) that Plaintiff declined to have further discussions. [Exh. 255-11 at 3 ¶ 8]. The Court and Judge Brown, who conducted the second mediation, know Dawsey's settlement stance, both before and after trial. Dawsey never demanded anything close to the ballpark of $2.8MM. BMW's argument is disappointing for both its contravention of the settlement discussion rules and its falsity.[11]

The Undersigned is again required to spend time swatting these flies. Just as BMW offered false narratives at trial, it now offers false narratives about what happened years ago. And it argues that Dawsey should not receive a full fee award. This has to end, and not with the court penalizing Dawsey. *See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.")

### 2. The result here is not comparable to the result in Buie

BMW also points out that Judge Coggins imposed a 15% reduction in Buie for limited success. Judge Coggins reasoned that such a reduction was necessary because the plaintiff achieved "limited" results (*i.e.*, a $206,000 back-pay and interest award). *Buie v. Charter Communications*, 6:17-cv-03007-DCC, ECF 234 at 9 (D.S.C. June 9, 2021). That cannot be said here. The combined verdict and back pay award in this case (without interest) totals $5,490,000,[12] or 27 times the size of Ms. Buie's victory. Yet the ratio of

---

[11]     The Undersigned is aware of the Court's expectation that the parties explore resolution at every appropriate opportunity. Those discussions require a level of trust. And that trust is lost if BMW can litigate years-old discussions to defeat a fee request.

[12]     See ECF 216 (verdict); ECF 238 at 18-19 (back pay award).

fees to damages that Dawsey is requesting is a small fraction of what Judge Coggins awarded in *Buie*.[13]

### E.     The "billing deficiencies" arguments

BMW lists 182 objections, covering 61% of the time entries in the apparent hope that the Court will just impose an across-the-board reduction.[14]    That approach is improper, and it does not satisfy BMW's burden to explain each challenge.    *Kelly v. Comm'r SSA*, No. 1:15-cv-00762-MA, 2016 U.S. Dist. LEXIS 126549, at *4 (D. Or. Sep. 15, 2016).

### 1.  Block billing assertions

BMW's "block billing" challenges apparently flag any entry that has more than one verb, even though any fair examination shows that the activities are related and much of the language describes one activity or working session.

Where the Undersigned performed different, unrelated tasks on a single day, the Court will find multiple entries.[15]    Where, however, activities are related or are being done

---

[13]     Judge Coggins awarded 1.5 times the amount of actual damages as fees. Even if this Court considered the capped recovery here ($300,000 (compensatory and punitive) + $390,000(backpay)). That same ratio here would justify an award of $1.035MM in fees.

[14]     BMW challenges 135 of 222 time entries to date, but it challenges many of them as both "vague" and as "block billing." [ECF 255-12 to --13].

[15]     As recorded the dates on which there are more than one entry are: ECF 225-2 at 1 (10/6/21, 3/15/23*); *id.* at 2 (8/25/23); *id.* at 3 (8/26/23, 8/27/23, 12/5/23**, 2/2/24); *id.* at 4 (4/27/25, 4/28/25); *id.* at 5 (5/15/25, 7/11/25, 7/17/25, 7/31/25, 8/01/25); *id.* at 6 (12/15/25, 12/30/25, 1/3/26); *id.* at 7 (1/30/26, 2/17/26, 2/18/26, 2/22/26, 2/23/26, 2/24/26). Note, however, there are a couple of date errors (that do not affect the time claimed): * The second entry for 3/15/23 is likely a date error. A review of

concurrently, they are listed together. That is not block billing. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 621 (4th Cir. 2018); *e.g., Z.B. v. Florence One Schools*, 4:21-cv-01971-JD ECF 38 at 8 (D.S.C. 2024). Block billing is where *unrelated* activities, including non-billable activities, are lumped together. *Magnuson v. Newman*, No. 10-CV-6211 (JMF), 2014 U.S. Dist. LEXIS 105688, at *11 (S.D.N.Y. July 31, 2014). And even then, it is not an issue where the entries are reasonable on their face. *Id.*

BMW primarily complains about occasions when the Undersigned worked on more than one task concurrently. For example, when reviewing a witness's deposition, the Undersigned will work on the deposition designation table for 26(a)(3), the cross-exam outline, proof outlines, and notes for the DV outline *at the same time*. [See 255-12 at 5]. As the Undersigned's response to each entry explains, doing so saves considerable time and avoids duplication of effort. [Murphy Supp. Decl. ¶ 9]. Because the activities are happening simultaneously, any attempt to assign separate time values to them would result in prohibited guesswork and fabrication. And when the Undersigned worked on prep tasks for different witnesses, he made separate entries. [*See* ECF 255-12 at 5 (7/17, 7/31)].

---

contemporaneous communications between the Undersigned and Dawsey show that the second entry should be 3/16. **  The second entry for 12/5/23 is for 12/6/23.

Likewise, research and drafting arguments are not independent tasks done at different times (if you're doing it right). Most of what BMW calls "block billing" is simply multi-tasking and descriptive language.  [Murphy Supp. Decl. ¶¶ 5-9].

BMW also complains, for example, that the Undersigned billed 9.3 hours the day of Dawsey's deposition. [ECF 255-12 at 3 (8/31/23)]. The deposition started at 9:41 a.m. and ended at 7:03 p.m. (*i.e.*, 9 hours and 22 minutes later). [See ECF 97-4 at 2]. In other words, for final prep, deposition, and debriefing, the Undersigned claimed less time than the deposition took.

BMW has not shown that any of the entries involve unrelated tasks. It has not shown that any of the entries reflect unbillable or unnecessary work. Nor has it shown that the time spent is unreasonable. So there is no basis for any reduction. This is just another example of the wasteful practice of making every argument possible without regard to the merits or the time it causes the Undersigned or the Court to review. That said, paragraphs 10(a)-(yyyyy) of the Undersigned's Supplemental Declaration address each challenge.

### 2.  BMW's vagueness argument

BMW again ignores *Hensley* in arguing that time entries are vague. A prevailing attorney "is not required to record in great detail how each minute of his time was expended."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (emphasis added). He or she needs only to "identify the general subject matter of his time expenditures."  *Id.*

BMW's challenge to entries as vague is both absurd and wasteful. What is vague about "client meeting?" [See ECF 255-13 at 2]. Dawsey need not provide detail that would

14

"expose information protected under the attorney-client privilege and/or work product doctrine." *Eschert v. City of Charlotte*, No. 3:16-cv-295-FDW-DCK, 2017 U.S. Dist. LEXIS 141902, at *11 (W.D.N.C. Sep. 1, 2017). BMW also complains, for example, that the Undersigned billed 12 minutes (.2) reviewing a court's order on April 27, 2023. That is hardly "vague" when BMW knows what order the Court issued that day [*i.e.*, ECF 54].

Ironically, BMW's arguments are also improper because they are too vague. BMW simply lists entries in an exhibit without meeting its burden of establishing how each one is vague. *Indus. Supply v. G&S Supply, LLC,* Civ. Action No. 2:19-cv-324 (RCY), 2022 U.S. Dist. LEXIS 151648, at **21-22 (E.D. Va. Aug. 23, 2022). That said, paragraph 11(a)-(uu) of the Undersigned's Supplemental Declaration addresses each vagueness challenge.

**F.    If the Court finds any of BMW's arguments persuasive, it should permit discovery into Jackson Lewis's billing of BMW.**

Before the Court entertains any of BMW's requests to slash or eliminate time, the Court should require the production of BMW's own invoices. [ECF 256].

Respectfully submitted this 28th day of April 2026.

 s/ Brian P. Murphy
Brian P. Murphy, Bar No. 6770

Attorney for the Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400

15