

**In the United States District Court**
**District of South Carolina**
**Spartanburg Division**

| | |
|---|---|
| Kelly Dawsey, | 7:22-03738-TMC |
| Plaintiff, | |
| v. | Plaintiff's Reply in Support of her Motion for Production of Invoices of Defense Counsel [ECF 256] |
| Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC collectively d/b/a "BMW Group," | |
| Defendants. | |

## I.  Introduction

BMW argues in the abstract and ignores its own representations. Nobody argued

that discovery of an opponent's billing records is necessary as a matter of course. The

essence of the case law is that it depends on the arguments before the Court. And BMW's

arguments are of the kind that warrant discovery. So either the Court should reject those

arguments, or it should require BMW to back them up.

## II.  Argument

### A.    BMW's false claims

Before examining the three areas that warrant discovery, BMW makes several

assertions that require an explanation.

#### 1.    BMW's reliance on *Buie*

BMW argues that Judge Coggins rejected the need for discovery in *Buie*. BMW

claims that Judge Coggins "summarily denied the request for production of Charter's

billing records, apparently **deeming it unworthy to even mention** the request in the

1

Order on fees." [ECF 264 at 7 (emphasis)].    Judge Coggins did not "deem *it* unworthy" because there was no "it" to "deem" one way or the other. *Buie* never filed a motion to produce such records.[1]  Buie's position is the same as Dawsey's. Judge Coggins noted that Charter "[did] not take issue with the requested hourly rate or the number of hours spent on any particular task." *Buie v. Charter Communs.*, No. 6:17-cv-03007-DCC, 2021 U.S. Dist. LEXIS 181628, at *10 (D.S.C. June 9, 2021). If BMW had not taken issue with either the Undersigned's rate or time spent, Dawsey would not have sought its invoices either. [*See* ECF 256 at 2 ("Most courts that have addressed the issue require disclosure of defense billing records **where the party opposes a fee petition based on rates or time spent**.") (emphasis added, citations omitted)]. This is a predicament of BMW's own creation.

2.     **BMW repeats the false narrative regarding a $2.85MM demand that never happened**

BMW should also explain its repeated misrepresentation that the Undersigned made a $2.85MM demand. BMW states that it filed "an affidavit showing that Plaintiff made a settlement demand of $2.85 million and then refused to negotiate at the outset of the case."  [ECF 264 at 13; see also ECF 255 at 17 ("Plaintiff recovered only 24% of the $2.85 million she initially demanded")]. There was no demand. There was only a February 2022[2] email for a discussion (initiated by Paul Lindemann) that included a calculation of anticipated lost wages and benefits only. [ECF 255-11 at 5]. That email includes nothing

---

[1]     The last Motion filed in *Buie* was the attorney fee petition. [*Buie v. Charter Communs.*, No. 6:17-cv-03007-DCC, ECF 225 (filed 4/07/21)].

[2]     This is a month after Dawsey and BMW parted ways and well before she secured her position at GSP.

that would be included in a demand, including language saying it is a demand or other terms of settlement. Nor does it even address all forms of relief. BMW did not disclose the other emails preceding the February 22 email—none of which mention any demand. [*See* ECF 259-6]. Even Lindemann acknowledges that the Undersigned declined to discuss settlement at that time. [ECF 255-11 at 3 ¶ 8; *see* ECF 259-1 at 1 ¶ 1].[3]

## B.     BMW's specific challenges require discovery or rejection

In opposing Plaintiff's fee motion, BMW argued that the Undersigned's rates are above market, that he staffed the case incorrectly, and that the time he spent is excessive and should be slashed across the board. [ECF 255]. These contentions are what triggers the need for a review of BMW's own records. And all three of BMW's arguments have now wilted under even the threat of sunlight.

BMW's argument that Dawsey is trying to "shift the burden" is a classic red herring. BMW made the assertions at issue. That Dawsey bears a burden highlights her need for the information to refute those assertions. This Court should not take seriously any argument that a party runs away from when called to back it up.

### 1.     BMW's hourly rate challenge

As to the Undersigned's rate, BMW's counsel are far better comparators than the less experienced lawyers in FLSA cases cited by BMW. BMW's attorneys practice in the same market, are just a couple of years junior to the Undersigned, and they are working on the same matters. None of them claim to have tried more cases, so it would be

---

[3]     The one assurance the Undersigned can give the Court is that this will not happen again. If the Undersigned cannot trust BMW or its counsel to the point that we cannot exchange information for discussion purposes, it won't happen again. Lesson learned.

unsurprising to see that they have lower rates. But one must assume that is not the case given their unyielding opposition to even disclosing that much.

BMW's arguments go further than partner rates. BMW wants the Court to apply associate rates to the Undersigned's work. That raises two issues. Do the partners represent that BMW use multiple rates when doing the same activities as Dawsey's cousel?  Second, what is the appropriate associate rate?  BMW has had one associate of record. Is the Undersigned expected to bill at her rate?  If so, what is it?  BMW raised these issues, so it should either answer them or abandon the argument.

### 2.     BMW's staffing argument

BMW also challenged the "top heavy" staffing on Dawsey's side, including the assertion that 70% of attorney activity should be performed by associates. The candor of that argument would be called into serious question by anyone who observed any part of this litigation. But that is BMW's argument, and it deserves scrutiny. When called out, however, BMW's only response is that the standard it advocates should apply to plaintiffs, but not to defendants.

BMW cannot have it both ways. It argues both that the Undersigned should adopt Jackson Lewis's it-takes-a-village approach to lawyering while it simultaneously argues that there is a reason its lawyers need not be as efficient or as cheap as the Undersigned. The only way to tell which assertion is possibly true is to review the records.

### 3.     BMW's challenge to hours expended

After challenging how long the Undersigned spent on this case, BMW tries to explain why its counsel spent more time than the Undersigned. BMW has made specific assertions about how cases should be handled. This includes its claim that its multi-tiered system of persons billing to the file is more efficient than one person doing everything.

4

BMW's rules-for-thee-but-not-for-me argument tacitly admits there was nothing behind its criticism of the time spent by the Undersigned. It's one thing to argue that a billing pyramid is superior and more efficient, but it's quite another thing to then turn tail and argue that it's less efficient for good reason.

BMW argues that defendants spend more time on cases because, somehow, they have more to lose. [ECF 264 at 9-10]. That notion is patently obnoxious. Dawsey's career was upended, her retirement plan scuttled, and her household earnings took a major hit because of BMW. BMW's inability to appreciate Dawsey's plight explains much about this case and its outcome. But it does not explain why BMW should be allowed to throw spitballs at the Undersigned's representation of Dawsey.  The Court should not let BMW off the hook once Dawsey calls it out on issues BMW raised.

**C.     BMW's authorities do not establish even a presumption against discovery under these circumstances.**

To create the illusion of a Fourth Circuit "majority rule," BMW scotch tapes together cases that create no such rule.  [ECF 264 at 4].  BMW first cites *Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 743 (M.D.N.C. 2003), which did not involve a request for bills in response to a fee petition challenge.

BMW next cites the Pfieffer case in which the court merely found that "discovery was unnecessary to resolve the attorneys' fees dispute." *Pfieffer v. Schmidt Baking Co.*, No. CCB-11-3307, 2014 U.S. Dist. LEXIS 42707, at *14 (D. Md. Mar. 28, 2014).  In a footnote, the court added that it denied a motion for discovery "without prejudice to the renewal of Pfieffer's requests if they became necessary in connection with the fee dispute." *Id.* n. 7.  Nothing in that decision indicates that the issues BMW has interjected into its opposition were present in that case.

Even farther afield is BMW's reliance on CSX Transp., Inc. v. Peirce, Civil Action No. 5:05CV202, 2012 U.S. Dist. LEXIS 154788 (N.D.W. Va. Oct. 29, 2012), which is not a fee petition case, but a run-of-the-mill discovery dispute during litigation.

*Yu Zhang* does not help BMW either, although it is closer to the issue. In that case, the plaintiff sought discovery after accepting an early offer of judgment, resulting in a fee claim of less than $25,000. *Yu Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 807-08 (E.D. Va. 2008). The court denied discovery because the case was in its early stages, and discovery of the defendant's fees would be unenlightening.

This is hardly the consensus BMW claims. And none of the cases go as far as BMW urges in terms of establishing a rule against discovery where, as here, the party opposing a fee petition makes specific assertions about how billing should occur.

**D.     BMW's privilege argument lacks merit**

In support of its claim that its bills are privileged, BMW cites *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999). [ECF 264 at 15]. *Chaudry* says: "Typically, the attorney-client privilege does not extend to billing records and expense reports." *Chaudhry*, 174 F.3d at 402 (citing *United States v. Under Seal (In re Grand Jury Proceedings)*, 33 F.3d 342, 353-54 (4th Cir. 1994)). So that's no help to BMW.

"The burden of proving that a communication falls under the attorney-client privilege rests on the proponent of the privilege." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). BMW makes no showing that its attorney bills contain anything privileged. There is no declaration or anything else. Thus, BMW cannot meet its burden.

BMW next argues that "Attorney billing records can be protected under the work product doctrine." [ECF 264 at 15]. Well, maybe. But BMW bore the burden of proving they are. And again, it makes no effort to do so. Thus, without a showing by BMW as to

how bills are attorney work product that are immune, the Court should reject BMW's perfunctory argument. *Strickland v. State Farm Auto. Mut. Ins. Co.*, No. 2:07-cv-00967, 2008 U.S. Dist. LEXIS 129966, at *8 (S.D. W. Va. Aug. 29, 2008).

BMW also complains that the bills will show counsel's activities. That's the point. For example, these bills will show multiple partners (and no associates) involved in the same activities (*e.g.*, 26(a)(3) meet and confer) and, as previously shown, almost every deposition. The bills will also show how much time these partners spent on the same activities they contend the Undersigned should not be performing at his level. In short, the bills will show what should be clear by now: BMW cannot support its efforts to slash both the Undersigned's hourly rate and the hours he spent winning the case.

### III. Conclusion

Because BMW's opposition highlights the need for more light to be shed on its arguments, this Court should either grant Dawsey's pending Motion or reject BMW's attacks on the Undersigned's hourly rate, his purported failure to use associates, or the hours he spent.

Respectfully submitted this 6th day of May, 2026.

_s/ Brian P. Murphy_____
Brian P. Murphy, Bar No. 6770
Attorney for the Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601

7