**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| Kelly Dawsey,<br><br>Plaintiff,<br><br>v.<br><br>Bayerische Motoren Werke Aktiengesellschaft and BMW Manufacturing Co., LLC,<br><br>Defendants. | Civil Action No. 7:22-cv-3738-TMC<br><br>**ORDER**<br><br>**as to Attorney Fees** |

Following completion of a jury trial in this case, Plaintiff's counsel filed a motion seeking $ 448,654.89 in attorney fees and $ 29,504.89 in costs and expenses. (ECF Nos. 225, 241, 244, 260). Defendant BMW Manufacturing Co., LLC filed a response in opposition to Plaintiff's request for fees and costs (ECF No. 255), and Plaintiff submitted a reply (ECF No. 259). The issues before the court in connection with Plaintiff's motion are adequately addressed by the substantial materials presented to the court, and the court concludes a hearing is unnecessary for the court to issue a ruling. As set forth below, the court grants with modification Plaintiff's motion for fees and costs.

## DISCUSSION

### I. Background

Plaintiff Kelly Dawsey ("Plaintiff") brought this action against her former employer Defendant BMW Manufacturing Co. LLC ("BMW MC"), which is based in Spartanburg, South Carolina, and its parent company Defendant Bayerische Motoren Werke Aktiengesellschaft

("BMW AG"), a German corporation headquartered in Munich. Plaintiff asserted claims against Defendants for national origin, race and sex discrimination in violation of Title VII, and race discrimination in violation of 42 U.S.C. § 1981. On February 17, 2026, Plaintiff's case against Defendants proceeded to trial before a jury. (ECF No. 198).

On February 25, 2026, the jury returned a verdict in favor of *Defendant BMW AG* on all claims, concluding that it was not an integrated employer and, therefore, was not liable on the employment discrimination claims asserted by Plaintiff. (ECF No. 216).

The jury also returned a verdict in favor of *Defendant BMW MC* on three of Plaintiff's four claims—race and sex discrimination under Title VII and race discrimination under § 1981. *See id*. Plaintiff did, however, obtain a favorable verdict on one of her claims against Defendant BMW MC—the jury returned a verdict in favor of Plaintiff on her Title VII national origin discrimination claim, and awarded compensatory damages in the amount of $100,000 and punitive damages in the amount of $5 Million against BMW MC. *See id*.

Following trial, BMW MC, with the consent of Plaintiff and BMW AG, filed a motion to amend the $5,100,000 judgment amount to conform to the damages cap set forth in 42 U.S.C. § 1981a. (ECF No. 231). For companies with more than 500 employees, non-economic damages in a Title VII action are capped by statute at $300,000. 42 U.S.C. § 1981a(a)(1) and (b)(3)(D). The parties agreed the statutory cap applies in this case. The court entered an order finding that the award of compensatory and punitive damages should be reduced to a total of $300,000 and granting BMW MC's consent motion to amend the judgment to apply the statutory damages cap under 42 U.S.C. § 1981a. (ECF No. 235). The court then entered an amended judgment consistent with the ruling. (ECF No. 236).

Finally, on March 13, 2026, the court conducted a hearing on the question of economic damages pursuant to the agreement of the parties that the question of the amount of economic damages to award to Plaintiff, if any, should be decided by the court rather than the jury. (ECF No. 226). Following the hearing, the court entered an order awarding Plaintiff $389,907 in back pay and adjusting the amended judgment to reflect this additional amount. (ECF No. 238). The court declined to award any front pay to Plaintiff. *Id*.

**II. Attorney fees and costs**

Title VII grants a court discretion to award reasonable attorney's fees and costs of the action to a prevailing party. 42 U.S.C. § 2000e-5(k). The burden is on a party requesting fees and costs to demonstrate, by clear and convincing evidence, that the fees and costs requested are reasonable. *Triplett v. N. Carolina Dep't of Pub. Safety*, No. 5:15-cv-00075RLVDCK, 2017 WL 3840422, at *1 (W.D.N.C. Sept. 1, 2017). When awarding fees, the court applies a three-step process. "First, it must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. Second, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Third, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Hudson v. Pittsylvania Cnty.*, 774 F.3d 231, 237 (4th Cir. 2014) (internal quotation marks and citations omitted).

**1. Step One: Reasonableness of Rate and Hours Claimed**

"To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). Those factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill

required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation/whether their fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the attorney's experience, reputation, and ability; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717-19; *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990).

**1. <u>Reasonable Hours</u>**

**a. Time and labor expended**

Plaintiff seeks compensation for 838.15 hours spent by Plaintiff's counsel litigating this action from start to finish.[1] Plaintiff was represented by only one attorney throughout the course of litigation. The parties engaged in substantial and comprehensive discovery, which included conducting and defending twelve depositions, issuing and responding to multiple sets of written discovery and producing and assessing thousands of documents. Additionally, Plaintiff's counsel

[1] In her motion for attorney's fees, Plaintiff initially claimed 771.36 hours (ECF No. 225-2). Plaintiff's counsel then supplemented the number of hours to reflect his preparation for attendance at the court's hearing on economic damages, as well as preparation of Plaintiff's opposition to BMW MC's post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. (ECF No. 241-2). Plaintiff further supplemented her motion to claim an additional 25.2 hours for preparing Plaintiff's reply in support of her motion for fees and to subtract 5.5 hours to correct an earlier time-entry error. (ECF No. 260).

filed a motion to compel discovery from BMW AG (ECF No. 73), which was granted in part (ECF No. 78).

Plaintiff's counsel also spent substantial time and effort defending against three dispositive motions. BMW AG filed a motion to dismiss, (ECF No. 42)[2], and both defendants filed a motion for summary judgment (ECF Nos. 92 and 102). Each dispositive motion was submitted to the assigned magistrate judge for a Report and Recommendation, resulting in objections to the magistrate judge's recommendations and replies in support of the recommendations. Ultimately, Plaintiff prevailed on all of these dispositive motions. (ECF Nos. 90; 119).

After the undersigned denied the summary judgment motions, multiple status conferences were scheduled by the court, and the matter was scheduled for trial. In addition to the standard pretrial filings required of all parties by this court—including pretrial disclosures, a trial brief, proposed jury instructions, trial exhibits, and objections to the submissions of both Defendants--Plaintiff's counsel responded to five motions in limine, prevailing as to three of Defendants' motions (two were resolved by agreement of the parties), and filed two motions in limine of his own (prevailing in part as to one of the motions). Jury selection and the trial of this case took place over a seven-day period, during which Plaintiff's counsel was pitted against multiple lawyers representing Defendants. Plaintiff submitted affidavits from seasoned labor and employment attorneys practicing in this market who examined the hours spent by Plaintiff's counsel in light of the complexity, duration and vigorous defense offered in this case and concluded that the time spent was very reasonable. (ECF Nos. 225-4; 225-6).

[2] BMW AG also filed a motion to dismiss Plaintiff's initial complaint (ECF No. 14), but it was denied as moot (ECF No. 34) after Plaintiff filed an amended complaint.

BMW MC argues that the number of hours for which Plaintiff seeks fees must be reduced to the extent that the billing records submitted by Plaintiff's counsel are inadequate. (ECF No. 255 at 17). In determining whether the requested hours are reasonable, the court should exclude "those 'hours which it finds excessive, redundant or otherwise unnecessary.'" *Triplett v. N. Carolina Dep't of Pub. Safety*, No. 5:15-cv-00075-RLV-DCK, 2017 WL 3840422, at *3 (W.D.N.C. Sept. 1, 2017) (quoting *Alexander S. by & through Bowers v. Boyd*, 929 F. Supp. 925, 928 (D.S.C. 1995)). "'Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks. Fee claimants must submit documentation that reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity.'" *Id.* (quoting *E.E.O.C. v. Nutri/Sys., Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988)).

Specifically, BMW MC contends that the billing records submitted by Plaintiff's counsel are filled with impermissibly vague and improper "block-billed" time entries, requiring an across-the-board reduction in any fees awarded. (ECF No. 255 at 17–19). "Block billing" refers to timekeeping practice where several tasks are lumped "'together under a single entry, without specifying the amount of time spent on each particular task.'" *Owen v. Rutherford Supply Corp.*, No. 3:19-cv-0225-HEH, 2020 WL 4018937, at *8 (E.D. Va. July 16, 2020) (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (collecting cases)). When this "lumping" practice impedes reasonableness review, courts have reduced fee claims by 10 to 20 percent. *Banks v. City of Virginia Beach*, No. 2:24-cv-149, 2026 WL 500857, at *5 (E.D. Va. Feb. 23, 2026). BMW MC has identified what it believes are 129 instances of "block billing" or "lumping" in the timekeeping records submitted by Plaintiff's counsel. (ECF No. 255-12 (Exhibit L)). In response, Plaintiff notes that the challenged entries involve related tasks being performed simultaneously to avoid duplication of effort. For example, Plaintiff's counsel explains that "when reviewing a witness's

deposition, [he] will work on the deposition designation table for [Rule] 26(a)(3), the cross-exam outline, proof outlines, and notes or the [liked directed verdict motion at trial] *at the same time*." (ECF No. 259 at 13) (emphasis in original). The court has reviewed these entries and concludes the entries in question are not independently unreasonable, do not include tasks that might not be compensable, do not interfere with the court's reasonableness review, and are sufficiently detailed.

BMW MC identifies 47 entries it believes are impermissibly vague. (ECF No. 255-13 (Exhibit M)). *See Brown v. Mountainview Cutters*, *LLC*, 222 F. Supp. 3d 504, at 514 (W.D. Va. 2016) (noting that "the use of excessively vague time descriptions is a generally disfavored billing practice [because] [s]uch descriptions inhibit the court's reasonableness view") (internal citations omitted). The court has reviewed the challenged entries and does not find them to be unreasonably vague.[3]

In light of the foregoing, the court finds the number of hours claimed are not unreasonable for use in determining the loadstar figure in this case.

**b. Novelty and difficulty of the questions raised**

"Cases of first impression generally require more time and effort on the attorney's part." *Johnson*, 488 F.2d at 718. While Plaintiff's claims themselves were not novel, the litigation of such claims presented both difficult issues, such as the distinction between illegal national origin discrimination and permissible discrimination based upon citizenship, and issues addressed by very few courts, such as whether Defendants were afforded protection under the relevant Treaty of Friendship, Commerce and Navigation. Additionally, as noted below, employment

[3] Moreover, in reply to BMW MC's opposition to Plaintiff's motion for attorney's fees, Plaintiff's counsel submitted a supplemental declaration addressing each entry challenged as "block billing" or "vague" (ECF No. 259-1). This response is more than adequately demonstrates why these time entries are not improper.

discrimination cases under federal law are generally more difficult than other civil cases. As such, the court determines this factor supports the reasonableness of the requested number of hours.

**2. <u>Reasonable Rate</u>**

**a. Customary fee for like work and Experience, Reputation and Ability of Attorney**

Plaintiff argues the court should use an hourly fee of $500 in its loadstar analysis. "In addition to the attorneys' own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler*, 902 F.2d at 277. The fee applicants may draw from "a range of sources," including "evidence of the fees [counsel] ha[ve] received in the past," *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 290 (4th Cir. 2010), or "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community," *Plyler*, 902 F.2d at 278.

Plaintiff's requested fee award covers work performed from September 2021—when counsel first consulted Plaintiff—through trial and post-trial matters in 2026. (ECF No. 225-2). Plaintiff's counsel submitted an affidavit indicating his new hourly rate of $500 took effect in January 2026, which constituted a 5.41% annual increase from 2024 and 2025. (ECF No. 225-1 at 4). From 2024 through 2025, Plaintiff's counsel charged an hourly rate of $450. (ECF No. 225-1 at 5). From mid-2022 until 2024, Plaintiff's counsel's hourly rate was $425. *Id*. at n.4. In 2021, Plaintiff's counsel charged an hourly rate of $400. Although counsel's hourly rate was lower than $500 throughout most of this litigation, Plaintiff contends that courts generally use the rate in effect at the time of the fee award to account for the significant delay in payment in these cases. (ECF No. 225 at 19 (citing *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986)). In *Daly*, the Fourth Circuit remanded the trial court's award of attorneys' fees based upon rates in effect at the time the services

were performed because the court had not taken "delayed payment into account" and had failed to consider "the effect of delay in payment on the value of the fee." *Id*. The *Daly* panel instructed the district court on remand that it could "increase the hourly rates to reflect current market rates, or it [could] increase the lodestar to counterbalance the effect of inflation and foregone interest on the value of the fee." *Id*.

Defendant disagrees, arguing that the court's determination of a reasonable market rate in this case ought to reflect Plaintiff's counsel's hourly rates in effect from 2021 through 2025. (ECF No. 255 at 5–6). In support, BMW MC cites the fees awarded to Plaintiff's counsel in *Carter v. Ascend*, No. 8:20-cv-4379-TMC, at dkt. #231 (DSC October 30, 2024), in which the undersigned determined $425 was a reasonable hourly rate for work performed by the same Plaintiff's counsel from mid-2022 to mid-2024, a period which overlapped the litigation in this case. (ECF No. 255 at 4). In particular, BMW MC points out that Plaintiff's counsel in *Carter* sought only the rates clients had actually paid ($425) rather than his new hourly rate of $450. *Id*. at 4–5. As Plaintiff's counsel argues, however, in *Carter* his new rates were not yet in effect and had not been paid by any clients. In this case, Plaintiff's counsel's new hourly rate of $500 was in effect during the course of this action and had actually been charged for services rendered. BMW MC also notes that in 2021, a court in this district determined that a reasonable hourly rate for Plaintiff's counsel was $400. *See Buie v. Charter Comms*., No. 6:17-cv-3007-DCC, at dkt. #234 (D.S.C. June 9, 2021). The *Buie* award, however, covered legal services performed from 2016 until 2021, at which time Plaintiff's counsel charged an hourly rate of $400. *Buie*, at dkt. # 214-1 at 4. The court fails to see how *Buie* is instructive as to this issue. Ultimately, Defendant argues that an hourly rate of $450 is reasonable because "it is [Plaintiff counsel's] most recent substantiated hourly rate, it

exceeds his other historical rates during this case . . . and it aligns with the rate awarded to him in *Carter* in 2024 with an adjustment for inflation into 2026 dollars." *Id*. at 6.[4]

*Other evidence of market rates*. Plaintiff's evidence includes affidavits from other experienced labor and employment law attorneys practicing in upstate South Carolina. (ECF Nos. 225-4; 225-5; 225-6). The hourly rates of these attorneys for cases of similar complexity range from $450 to $500, and each attorney considered a $500 hourly rate for an employment attorney of Plaintiff's counsel's caliber and experience to be a reasonable request in this case, and perhaps even below market rate for employment attorneys of his experience. *See* (ECF No. 225-5 at 3 ("Mr. Murphy's requested billing rate of $500 per hour is well below what most employment lawyers with his level of experience charge for cases billed by the hour.")); (ECF No. 225-4 at 5 ("It is not uncommon for a partner at a national labor and employment defense firm to bill at $600 to $800 per hour or more.")). In opposition, Defendant submitted fee requests in other employment cases filed in this district. The requested rates in those cases ranged from $350 to $400 per hour. (ECF Nos. 255-1; 255-2; 255-3; 255-4). The court notes, however, that most of these attorneys do not

---

[4] Defendant further contends that "[a]lthough $450 may be an appropriate market rate for partner-level work performed by Plaintiff's counsel," the court should discount the lodestar hourly rate because Plaintiff's counsel performed work that Defense counsel believes could have been performed at a lower rate by paralegals or less experienced attorneys. (ECF No. 255 at 7–10). In support of this argument, BMW MC, having parsed Plaintiff's counsel's invoices, highlights hundreds of hours of legal work it believes were more appropriate for less expensive associate lawyers. BMW MC refers to the approach taken by Plaintiff's counsel as "top heavy" and urges the court to discount the market rate to $405 per hour. As Plaintiff's counsel points out, however, he is essentially a sole practitioner; he employs no junior associates, believing his approach to be more efficient for employment contingency cases than the staffing model favored by larger law firms and employed by counsel for BMW MC in this case. Indeed, Plaintiff's counsel's mastery of the evidence in this case at trial may be due in no small part to the fact that counsel did all of the work himself. The court declines BMW MC's invitation to discount the market rate based upon its view of how a case should be staffed.

have the same level of experience as Plaintiff's counsel in prosecuting Title VII jury trials. The court finds that this factor also supports the reasonableness of Plaintiff's fee request.

*Attorney's experience, reputation, and ability*. "An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience." *Johnson*, 488 F.2d at 719, *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989). As set forth in his motion, Plaintiff's counsel has practiced labor and employment law for more than three decades. (ECF No. 225-1). At the time of the trial of this case, Plaintiff's counsel had tried twenty labor and employment cases, prevailing on all but one. *Id*. at 2–3. In addition to the aforementioned affidavits submitted along with this motion from fellow labor and employment law practitioners, multiple judges, including the undersigned, have commented favorably on Plaintiff's counsel's experience, reputation, and ability. *See, e.g.*, *Buie* , No. 6:17-cv-03007-DCC, 2021 WL 4226166, *3 (D.S.C. June 9, 2021) (acknowledging "Plaintiff's counsel has recognized expertise in the field of employment law, is an experienced litigator and mediator, and enjoys an outstanding reputation both professionally and ethically"); *Carter v. Ascend Performance Materials Holdings, Inc*., 8:20-cv-04379-TMC, at dkt. # 231 at *6 (D.S.C. Oct. 30, 2024) (concluding that the experience, reputation and ability of Plaintiff's counsel supported the reasonableness of the fees requested in an employment case). The court finds that this factor strongly supports the reasonableness of the requested rate.

**b. Other factors supporting the reasonableness of the requested rate**

**(1) Skill required to properly perform the legal services rendered**

The court finds significant skill was required to perform the legal services rendered in this case, particularly in taking this case to trial. Based on the undersigned's years of experience on the bench, his review of Plaintiff's counsel's work product, and his observation of Plaintiff's counsel's

advocacy, decorum, and preparedness in the courtroom—particularly in light of the voluminous number of detailed documents and exhibits in this case—the court finds Plaintiff's counsel unquestionably demonstrated the requisite skill in this case and that this factor also supports the requested fee.

**(2) The attorney's opportunity costs in pressing the instant litigation**

"This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. Employment discrimination cases involving large corporations are labor intensive and time consuming. Plaintiff's counsel was the only attorney who represented Plaintiff, and he has advanced all expenses in this action. (ECF No. 225-3). The court finds that this is another factor supporting the reasonableness of the requested fees.

**(3) The undesirability of the case within the legal community in which the suit arose**

As Judge Childs aptly explained, "[t]he risk of non-recovery in a case involving discrimination and retaliation makes it an undesirable undertaking for many attorneys. Courts across the country have recognized the dearth of lawyers willing to represent plaintiffs in employment and civil rights cases." *Saulsberry v. Savannah River Remediation, LLC*, No. 1:16-CV-02792-JMC, 2020 WL 13647038, at *5 (D.S.C. May 29, 2020). Such cases are often complex and require great tenacity from plaintiff's counsel during the discovery phase against highly motivated corporations with the ability to raise every possibly argument or defense. *See, e.g., DeWitt v. Darlington Cnty.*, 4:11-cv-740-RBH, 2013 WL 6408371, *10 (D.S.C. Dec. 6, 2013) ("In the Court's experience, employment cases do not appear to be eagerly sought out by the majority of the plaintiffs' bar in South Carolina because of the difficulty of the cases and the complexity of

the issues usually involved. In situations like this case, where each individual's economic damages may be relatively modest and where the employee victims usually do not have the resources to pay substantial attorney's fees and costs in advance, obtaining counsel would be extremely difficult were it not or the statutory provisions for attorney's fees and costs for prevailing parties."). And even when Title VII plaintiffs achieve substantial success at trial—as was the case here—they typically face substantial post-trial and appellate challenges. Thus, the court finds this factor weighs in favor of the reasonableness of the fees requested.

**(4) Fee awards in similar cases**

Plaintiff's counsel highlights two fee awards granted in similar cases he litigated recently in this district. (ECF No. 255 at 27). In 2024, the undersigned awarded fees of $221,953 based on 522.2 hours of work in an employment discrimination case tried to a jury over the course of five days. *Carter*, No. 8:20-cv-4379-TMC, at dkt. #231 (DSC October 30, 2024). And, in 2021, Judge Coggins awarded Plaintiff's counsel $311,105.35 based on 860 hours of work in an employment discrimination action litigated for more than three years and tried to the bench over a four-day span. *Buie*, No. 6:17-cv-03007-DCC, at dkt. # 234 (DSC June 9, 2021). Plaintiff also submits for the court's consideration a 2026 fee award in this district granting Plaintiff $257,265.00 in attorney fees based on 626.7 hours of work in a disability discrimination case involving a five-day jury trial. *Duerr v. Richland Cnty.*, 3:22-cv-00111-SAL, dkt. # 151 (DSC Jan. 20, 2026).

**c. Factors not assigned weight**

**(1) Attorney's expectations at the outset of litigation**

*Johnson* explains this prong considers whether the attorney's fee is fixed or contingent in

order to assess the attorney's fee expectations when he accepted the case. Plaintiff's counsel asserts there was "no way to tell" how the case would come out. (ECF No. 225 at 20). Plaintiff suggests, and the court agrees, this factor should not be assigned much, if any, weight in the court's analysis.

**(2) Time limitations imposed by the client or circumstances**

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718. The court has already taken into account the limitations posed by working alone. Plaintiff, however, has not identified any additional considerations that would warrant any weight.

**(3) The nature and length of the professional relationship between attorney and client**

Although "[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office," *Johnson*, 488 F.2d at 719, Plaintiff's counsel acknowledges that because "[r]elationships on the plaintiff side are typically for one matter only," the client relationship consideration is not much of a factor in cases like this one. The court agrees and declines to give this factor any weight.

**Lodestar:** Having considered the *Johnson/Barber* factors in light of the parties' arguments and accompanying exhibits, the court finds Plaintiff's counsel's hourly rate of $500 and 838.15 hours claimed to have been expended are both reasonable considering the scope, complexity and duration of this case. The court, therefore, finds Plaintiff's counsel's requested fees of $448,654.89 is the appropriate lodestar.[5]

---

[5] In light of BMW MC's vigorous challenge to the reasonableness of the hours spent and hourly rate claimed by Plaintiff's counsel in this case, Plaintiff filed a motion for production of invoices for legal services performed by counsel for BMW MC in this case. (ECF No. 256). Because the

**2. Step 2: Subtraction of Hours for Unsuccessful Claims**

As noted previously, Plaintiff ultimately achieved success against Defendant BMW MC on one of four claims, as the jury returned a verdict in favor of Defendant BMW MC on race and sex discrimination under Title VII and race discrimination under § 1981 but returned a verdict in favor of Plaintiff against BMW MC on Plaintiff's Title VII national origin discrimination claim. Despite Plaintiff's failure to prevail on her two race discrimination claims and her sex discrimination claim, these claims involved a common core of facts—particularly as such facts pertained to the Defendants' corporate structure in the Human Resources Department and how employees at BMW MC are graded, promoted and compensated. The hours spent by Plaintiff's counsel discovering such information and preparing for and presenting such foundational information to the court and the jury would have been required for every claim Plaintiff asserted in this action against BMW MC or BMW AG. "[W]here all claims are closely related . . . based on common facts or related legal theories, a court is not obligated to determine which hours were spent on which claims. A contrary rule would be unworkable, and would discourage innovative litigation." *Cooper v. Dyke*, 814 F.2d 941, 950 (4th Cir. 1987). The court finds the factual basis for the claims asserted in this case to be so intertwined that it would be nearly impossible to divide the hours expended on a claim-by-claim basis. Accordingly, the court declines at this step to subtract hours from the total amount Plaintiff's counsel claims in this case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (recognizing that in some cases "the plaintiff's claims for relief will involve a common core of

---

court has determined that both the number of hours and hourly fees claimed by Plaintiff's counsel are reasonable, the court **DENIES** this motion (ECF No. 256) **without prejudice** to Plaintiff's ability to re-file this motion should the court be forced to revisit the matter of attorney fees. Accordingly, all counsel of record for Defendants are directed to maintain all time, billing and cost records associated with this action, including such records of all in-house counsel for Defendants relating to this litigation, until this action, including related appeals, is concluded.

facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation").

**3. Step 3: Reduction Based on Degree of Success**

"[A]t the third step, the court must consider the "degree of success enjoyed by the plaintiff." *Hudson*, 774 F.3d at 237. "'[T]he most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The court "must compare the amount of the damages sought to the amount awarded." *Mercer v. Duke Univ*., 401 F.3d 199, 204 (4th Cir. 2005). However, there is no "precise rule or formula" for determining a plaintiff's degree of success. *Jones v. Southpeak Interactive Corp*., 777 F.3d 658, 676 (4th Cir. 2015). BMW MC argues that Plaintiff only recovered 24% of the amount initially sought and should, therefore, receive a 10% - 25% reduction for limited success. (ECF No. 255 at 17).[6] But the monetary result cannot be the only measure of success. "The amount in controversy and the results obtained," however, "is 'only one of many factors that a court should consider in calculating an award' and does require that the attorney's fee award be proportionate to the damages recovered." *Parker v. Reema Consulting Servs., Inc*., No. CV-TDC-17-1648, 2022 WL 2905475, at *7 (D. Md. July 21, 2022) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (plurality opinion)). Plaintiff in this case prevailed on the primary issue in this case—national origin discrimination. Moreover, Plaintiff's success

[6] BMW MC suggests that if the court does not subtract hours at step two that it contends Plaintiff's counsel spent litigating solely against BMW AG—then the reduction for limited success should be closer to 25%. (ECF No. 255 at 17 n.9).

was substantial. The only reason Plaintiff's amended judgment did not far exceed the amount initial sought is because of the statutory cap. The $5,100,000 verdict reached by the jury amounted to a clear victory by Plaintiff against BMW MC on the primary issue in this action.

The court, however, does recognize that Plaintiff's success against BMW MC is tempered somewhat by her failure to achieve any success as to Defendant BMW AG. If the plaintiff "has achieved only partial or limited success," a reduction of the fee award may be appropriate. *Buie*, No. 6:17-CV-03007-DCC, 2021 WL 4226166, at *2 (D.S.C. June 9, 2021). Plaintiff asserted identical claims against BMW AG but was unable to hold BMW AG accountable as to any of her claims against it. Furthermore, despite Plaintiff's success against BMW MC on the most prominent issue in the case, Plaintiff completely failed on her claims that she was discriminated against based on her sex and race and was unable to prevail on any theory as to BMW AG. In light of Plaintiff's failure to prevail on any of the aforementioned claims, the court concludes it is appropriate to impose, in its discretion, a reduction in fees of 15%.

**Costs and Expenses**

"Expenses that attorneys customarily bill to their clients are recoverable by a successful civil rights plaintiff," including "litigation costs (court costs, deposition fees, copying), as well as expert witnesses fees." *Smith v. City of Bos.*, 496 F. Supp. 3d 590, 599 (D. Mass. 2020) (citing 42 U.S.C. § 2000e-5(k)). Plaintiff seeks $29,504.89 in costs and expenses, (ECF No. 260 at 1), which BMW MC does not oppose (ECF No. 255 at 20). The court has reviewed the expenses and costs submitted and determines that the initial request is reasonable.

**III. Conclusion**

As set forth above, the court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for attorney's fees and costs (ECF No. 225). Accordingly, the court awards $381,356.66 in attorney's fees and $29,504.89 in costs and expenses.

**IT IS SO ORDERED**.

s/Timothy M. Cain
Chief United States District Judge

September 14, 2026
Greenville, South Carolina